# No. 25-1848

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

THE CINCINNATI INSURANCE COMPANY,
*Plaintiff-Appellee*

v.

LEVI OWENS, Personal Representative for the Estate of Christopher McLean,
*Defendant-Appellant*

and

WILMINGTON SHIPPING COMPANY; WAYNE HUNT
*Defendants*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

# JOINT APPENDIX

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Defendant-Appellant*

John Elliott Parker, Jr.
Parker Law Group, LLP
P.O. Box 487
Hampton, SC 29924
803.534.5218
*Counsel for Defendant-Appellant*

Charles Daniel Atkinson
Wilkes Atkinson and Joyner
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
803.534.5218
*Counsel for Plaintiff-Appellee*

**TABLE OF CONTENTS**

1. Docket Report from U.S. District Court ............................................................. 1

2. Complaint (ECF Entry 1) ..................................................................... 14

3. Proposed Summons as to Hunt (ECF Entry 1-1) ............................................. 29

4. Proposed Summons as to Owens (ECF Entry 1-2) ........................................... 31

5. Proposed Summons as to Jacobs (ECF Entry 1-3) ........................................... 33

6. Proposed Summons as to Wilmington Shipping Co. (ECF Entry 1-4) .............. 35

7. Business Auto Policy (ECF Entry 1-5) ....................................................... 37

8. Excess Coverage Policy (ECF Entry 1-6) ....................................................... 161

9. Wrongful Death Summons and Complaint (ECF Entry 1-7) ........................... 177

10. Wrongful Death Proof of Service (ECF Entry 1-8) ........................................ 181

11. Wrongful Death Affidavit of Default (ECF Entry 1-9) .................................. 182

12. Wrongful Death Entry of Default (ECF Entry 1-10) ...................................... 183

13. Wrongful Death Order of Reference (ECF Entry 1-11) .................................. 184

14. Wrongful Death Notice of Hearing (ECF Entry 1-12) .................................... 185

15. Wrongful Death Order of Default Judgment (ECF Entry 1-13) ...................... 187

16. Jacobs Summons and Complaint (ECF Entry 1-14) ....................................... 192

17. Jacobs Proof of Service (ECF Entry 1-15) ...................................................... 195

18. Jacobs Affidavit of Default (ECF Entry 1-16) ................................................ 196

19. Jacobs Entry of Default (ECF Entry 1-17) ...................................................... 197

20. Jacobs Order of Reference (ECF Entry 1-18) ...................................................198

21. Jacobs Order of Default Judgment (ECF Entry 1-19).........................................199

22. Affidavit of Service (Levi Owens) (ECF Entry 7)...........................................202

23. Affidavit of Service (Wayne Hunt) (ECF Entry 9)...........................................206

24. Answer (ECF Entry 12) .............................................................................207

25. Motion for Entry of Default (ECF Entry 13) ................................................218

26. Affidavit of Default of Wayne Hunt (ECF Entry 13-1)....................................219

27. Affidavit of Default of Wilmington Shipping Co. (ECF Entry 13-2).............221

28. Proposed Order of Default (ECF Entry 13-3) ...............................................223

29. Certificate of Service (ECF Entry 13-4) .....................................................225

30. Affidavit of Non-Military Service (Hunt) (ECF Entry 14)............................227

31. Non-Military Service Certificate (ECF Entry 14-1) .....................................228

32. Entry of Default (ECF Entry 17)................................................................230

33. Motion for Default Judgment (ECF Entry 18)..............................................231

34. Affidavit of Atkinson as to Hunt (ECF Entry 18-1).....................................233

35. Affidavit of Atkinson as to Wilmington Shipping Co.
    (ECF Entry 18-2)...................................................................................235

36. Order Granting Motion for Default Judgment (ECF Entry 20) ......................237

37. Order Granting Motion for Default Judgment (ECF Entry 21) ......................241

38. Order for Discovery Plan (ECF Entry 23) ...................................................245

39. Motion to Dismiss (ECF Entry 24) .................................................... 246

40. Declaration of Levi Owens (ECF Entry 24-3) ................................... 248

41. Declaration of Maisha Jacobs (ECF Entry 24-4) ............................ 250

42. Collision Report (ECF Entry 25-1) ................................................. 252

43. Order Granting in Part and Denying in Part Motion to Dismiss

    (ECF Entry 36) ................................................................................ 254

44. Case Transfer (ECF Entry 37) ........................................................ 275

45. Motion to Stay (ECF Entry 39) ....................................................... 280

46. Wrongful Death Motion for Relief from Judgment (ECF Entry 39-2) ............ 289

47. Wrongful Death Affidavit of Mailing (ECF Entry 39-3) ................................. 291

48. Wrongful Death Demand (ECF Entry 41-2) ..................................... 295

49. Text Order Denying Motion to Stay (ECF Entry 45) ....................... 301

50. Rule 26(f) Report (ECF Entry 54) ................................................... 303

51. Rule 26(f) Discovery Plan (ECF Entry 55) ..................................... 305

52. Consent Amended Scheduling Order (ECF Entry 57) ..................... 313

53. Consent Motion to Amend Scheduling Order (ECF Entry 58) ........ 316

54. Second Consent Amended Scheduling Order (ECF Entry 60) ........ 323

55. Motion for Extension of Time (ECF Entry 61) ................................ 326

56. Wrongful Death Execution / Nulla Bona Return (ECF Entry 61-1) ............... 334

57. Wrongful Death Brief on State Court Jurisdiction (ECF Entry 61-2) ............. 337

58. Wrongful Death Order on Jurisdiction (ECF Entry 61-3) ............................... 340

59. Wrongful Death Scheduling Emails (ECF Entry 61-4) .................................... 344

60. Wrongful Death Consultation Emails (ECF Entry 61-5) .................................. 352

61. Text Order Granting Motion for Extension (ECF Entry 62) ............................. 357

62. Motion to Amend (ECF Entry 63) ..................................................... 359

63. Proposed Amended Answer (ECF Entry 63-1) ............................................ 370

64. Wrongful Death Hearing Emails (ECF Entry 63-2) ...................................... 382

65. Wrongful Death Proof of ADR (ECF Entry 63-3) ........................................ 391

66. Motion for Default Judgment (ECF Entry 65) .......................................... 392

67. SAFER Search Result (ECF Entry 69-1) ................................................ 394

68. FMCSA Licensing and Insurance Search (ECF Entry 69-2) ............................... 395

69. Motion to Stay Deadlines (ECF Entry 74) ............................................. 396

70. Joint Statement of Material Facts (ECF Entry 75) .................................... 399

71. Table of Contents for Appendix (ECF Entry 75-1) ..................................... 405

72. Appendix to Joint Statement (redacted) (ECF Entry 75-2) ............................. 406

73. Movant's Statement of Material Facts (ECF Entry 76) ................................. 472

74. Table of Contents for Appendix (ECF Entry 76-1) ..................................... 474

75. Appendix to Movant's Statement (ECF Entry 76-2) ..................................... 475

76. Motion for Summary Judgment (ECF Entry 77) .......................................... 487

77. Additional Attachment to Motion to Stay Deadlines (ECF Entry 78) .................... 489

78. South Carolina Supreme Court Order (ECF Entry 78-1) ................................ 490

79. Text Order Granting Motion to Stay Deadlines (ECF Entry 80) .................... 495

80. Motion to Stay (ECF Entry 81) .......................................................... 497

81. FMCSA Insurance History (ECF Entry 83-1) ...................................... 500

82. Text Order Denying Motion to Amend (ECF Entry 84) ............................... 501

83. Text Order Denying Motion to Stay (ECF Entry 85) ..................................... 503

84. Opinion and Order Granting Motions for Default Judgment and

    Summary Judgment (ECF Entry 88) ............................................... 505

85. AO 450: Summary Judgment in a Civil Action (ECF Entry 89) .................... 519

86. Notice of Appeal (ECF Entry 90) .................................................... 520

CM/ECF - scd                                                                    8/25/25, 21:35

<span style="color:green">APPEAL</span>,<span style="color:red">CLOSED</span>

# U.S. District Court
## District of South Carolina (Florence)
## CIVIL DOCKET FOR CASE #: 4:24-cv-00951-JDA

The Cincinnati Insurance Company v. Hunt et al
Assigned to: Honorable Jacquelyn D Austin
Case in other court:  United States Court of Appeals for the
                        Fourth Circ, 25-01848
                        North Carolina Eastern, 7:22-cv-00189
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 02/23/2024
Date Terminated: 06/25/2025
Jury Demand: None
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**The Cincinnati Insurance Company**                represented by **Brian Michael Peters , Jr**
Wilkes Atkinson and Joyner (Spa)
127 Dunbar Street
Suite 200
Spartanburg, SC 29306
717-713-9323
Email: bpeters@wajlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Morgan Taylor Petty**
Wilkes Atkinson and Joyner (Spa)
127 Dunbar Street
Suite 200
Spartanburg, SC 29306
828-400-7769
Email: tpetty@wajlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Daniel Atkinson**
Wilkes Atkinson and Joyner (Spa)
127 Dunbar Street
Suite 200
Spartanburg, SC 29306
864-591-1113
Fax: 864-591-1767
Email: datkinson@wajlawfirm.com
*ATTORNEY TO BE NOTICED*

**JA001**

V.

**Defendant**

**Wayne Hunt**

**Defendant**

**Levi Owens**
*Personal Representative for the Estate of*
*Christopher McLean*

represented by **Ashley Bruce Nance**
Parker Law Group LLP
101 Mulberry Street E
Hampton, SC 29924
803-903-1781
Email: anance@parkerlawgroupsc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason Scott Luck**
107 Parsonage Street
PO Box 47
Bennettsville, SC 29512
843-479-6863
Fax: 843-479-7222
Email: jason@luck.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Elliott Parker , Jr**
Parker Law Group LLP
PO Box 487
Hampton, SC 29924
803-943-2111
Fax: 803-943-3943
Email: jayparker@parkerlawgroupsc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Richard Simons**
Overholt Law Firm, PC
2505 S. College Rd.
Wilmington, NC 28412
910-798-5900
Fax: 910-799-8496

**Defendant**

**Maisha Jacobs**
*TERMINATED: 03/27/2024*

represented by **Gregory Richard Simons**
(See above for address)

**Defendant**

**JA002**

**Wilmington Shipping Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/08/2022 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ANCEDC-6813524.), filed by The Cincinnati Insurance Company. (Attachments: # 1 Proposed Summons to Hunt, # 2 Proposed Summons to Owens, # 3 Proposed Summons to Jacobs, # 4 Proposed Summons to Wilmington Shipping Company, # 5 Exhibit A - Business Auto Policy, # 6 Exhibit B - Excess Coverage Policy, # 7 Exhibit C - Wrongful Death Summons and Complaint, # 8 Exhibit D - Proof of Service for Wrongful Death Action, # 9 Exhibit E - Affidavit of Default for Wrongful Death Action, # 10 Exhibit F - Entry of Default for Wrongful Death Action, # 11 Exhibit G - Order of Reference for Wrongful Death Action, # 12 Exhibit H - Notice of Hearing for Wrongful Death Action, # 13 Exhibit I - Order of Default Judgment for Wrongful Death Action, # 14 Exhibit J - Summons and Complaint for Personal Injury Action, # 15 Exhibit K - Letter re Service for Personal Injury Action, # 16 Exhibit L - Affidavit of Default for Personal Injury Action, # 17 Exhibit M - Entry of Default for Personal Injury Action, # 18 Exhibit N - Order of Reference for Personal Injury Action, # 19 Exhibit O - Order of Judgment for Personal Injury Action) (Atkinson, Charles) (Attachments 1, 2, 3 and 4 flattened and replaced on 11/15/2022) (Edwards, S.). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/08/2022) |
| 11/08/2022 | 2 | Financial Disclosure Statement by The Cincinnati Insurance Company identifying Corporate Parent Cincinnati Financial Corporation for The Cincinnati Insurance Company. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/08/2022) |
| 11/14/2022 | | NOTICE OF DEFICIENCY regarding 1 Complaint - Counsel failed to file a JS44 Civil Cover Sheet as required by the Court. Counsel should file a Cover Sheet using the event "Notice-Other" as soon as possible. (Rudd, D.) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/14/2022 | 3 | Notice filed by The Cincinnati Insurance Company *Cover Sheet*. (Atkinson, Charles) (Main Document 3 flattened and replaced on 11/15/2022) (Edwards, S.). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/14/2022 | | Notice to Counsel regarding: [1-1] Proposed Summons, [1-2] Proposed Summons, [1-3] Proposed Summons, [1-4] Proposed Summons, 3 Notice - other *Civil Cover Sheet* - Counsel is reminded that the filing user must lock or flatten the PDF document. Failure to flatten documents may result in the clerks office issuing a notice of deficiency. Counsel should "flatten" (*the proposed summons, the civil cover sheet*) prior to attaching it in accordance with Section IV.B of the CM/ECF Policies and Procedures Manual. No further action is needed. (Rudd, D.) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/14/2022 | 4 | Summons Issued as to Wayne Hunt, Maisha Jacobs, Levi Owens, Wilmington Shipping Company. (*NOTICE: Counsel shall print the attached summons and serve with other case opening documents in accordance with Fed.R.Civ.P. 4.*) (Rudd, D.) [Transferred |

| | | |
|---|---|---|
| | | from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/14/2022 | | NOTICE OF DEFICIENCY regarding 1 Complaint. All counsel appearing on behalf of a party shall file a Notice of Appearance pursuant to Local Civil Rule 5.2(a). (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/14/2022 | 5 | Notice of Appearance filed by Charles Daniel Atkinson on behalf of The Cincinnati Insurance Company. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/14/2022) |
| 11/15/2022 | 6 | Affidavit of Service for Summons and Complaint filed by The Cincinnati Insurance Company served on Wilmington Shipping Company on 11/15/2022. (Attachments: # 1 Exhibit Proof of Service, # 2 Exhibit Receipt of Service) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/15/2022) |
| 11/15/2022 | 7 | Affidavit of Service for Summons and Complaint filed by The Cincinnati Insurance Company served on Levi Owens as PR of the Estate of Christopher McLean on 11/15/2022. (Attachments: # 1 Exhibit Proof of Service, # 2 Exhibit Receipt of Service) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/15/2022) |
| 11/21/2022 | 8 | Waiver of Service Returned Executed filed by The Cincinnati Insurance Company. Maisha Jacobs waiver sent on 11/21/2022, answer due 1/20/2023. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/21/2022) |
| 11/21/2022 | 9 | SUMMONS Returned Executed by The Cincinnati Insurance Company. Wayne Hunt served on 11/16/2022, answer due 12/7/2022. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 11/21/2022) |
| 12/06/2022 | 10 | Notice of Appearance filed by Gregory Richard Simons on behalf of Levi Owens. (Simons, Gregory) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/06/2022) |
| 12/06/2022 | 11 | Notice of Special Appearance for non-district by Gregory Richard Simons on behalf of Levi Owens. (Simons, Gregory) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/06/2022) |
| 12/06/2022 | 12 | ANSWER to 1 Complaint,,,,, by Levi Owens. (Simons, Gregory) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/06/2022) |
| 12/07/2022 | | NOTICE OF DEFICIENCY regarding 11 Notice of Special Appearance. Pursuant to Section VI.C.2 of the CM/ECF Policies and Procedures Manual, each attorney making an appearance in the case must be a registered CM/ECF filer with this court and must file his or her own Notice of Appearance to be recognized by the court as counsel of record for a party. Attorney Jason Scott Luck will not appear on the docket as counsel of record for the Defendant until a proper appearance by Attorney Luck is filed with the court. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/07/2022) |
| 12/08/2022 | 13 | MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping* |

|  |  | *Company* filed by The Cincinnati Insurance Company. (Attachments: # 1 Exhibit A - Affidavit of Default as to Wayne Hunt, # 2 Exhibit B - Affidavit of Default as to Wilmington Shipping Company, # 3 Text of Proposed Order Proposed Order of Entry of Default, # 4 Exhibit Certificate of Service) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/08/2022) |
|---|---|---|
| 12/13/2022 | 14 | AFFIDAVIT regarding 13 MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping Company* by The Cincinnati Insurance Company (Attachments: # 1 Exhibit Military Status) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 12/13/2022) |
| 01/11/2023 | 15 | Notice of Appearance filed by Jason Scott Luck on behalf of Levi Owens. (Luck, Jason) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 01/11/2023) |
| 01/11/2023 |  | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 13 MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping Company*. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 01/11/2023) |
| 01/11/2023 | 16 | ANSWER to 1 Complaint,,,,, by Maisha Jacobs. (Simons, Gregory) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 01/11/2023) |
| 01/12/2023 | 17 | **ENTRY OF DEFAULT as to Defendants Wayne Hunt and Wilmington Shipping Company. Signed by Peter A. Moore, Jr., Clerk of Court on 1/11/2023.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 01/12/2023) |
| 02/17/2023 | 18 | MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company* filed by The Cincinnati Insurance Company. (Attachments: # 1 Affidavit Exhibit A - Affidavit as to Hunt, # 2 Affidavit Exhibit B - Affidavit as to Wilmington Shipping Company, # 3 Supplement Memorandum in Support, # 4 Text of Proposed Order Proposed Order as to Hunt, # 5 Text of Proposed Order Proposed Order as to Wilmington Shipping Company) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 02/17/2023) |
| 02/17/2023 | 19 | Certificate of Service filed by The Cincinnati Insurance Company regarding 18 MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company* . (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 02/17/2023) |
| 03/13/2023 |  | Motion Submitted to Chief US District Judge Richard E. Myers II regarding 18 MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company*. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 03/13/2023) |
| 04/19/2023 | 20 | **VACATED** ORDER granting 18 Motion for Default Judgment. The Clerk shall enter judgment against Wilmington Shipping Company declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company. Signed by Chief U.S. District Judge Richard E. Myers II on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 04/19/2023) |

| 04/19/2023 | 21 | **VACATED** ORDER granting 18 MOTION for Default Judgment as to as to Defendant Wayne Hunt. The Clerk shall enter judgment against Hunt declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company. Signed by Chief U.S. District Judge Richard E. Myers II on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 04/19/2023) |
| --- | --- | --- |
| 04/19/2023 | 22 | **VACATED** JUDGMENT against Wayne Hunt and Wilmington Shipping Company. Signed by Peter A. Moore, Jr., Clerk of Court on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 04/19/2023) |
| 04/19/2023 | 23 | **ORDER FOR DISCOVERY PLAN sent to all parties. Signed by Peter A. Moore, Jr., Clerk of Court on 4/19/2023.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 04/19/2023) |
| 05/23/2023 | 24 | MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by Maisha Jacobs, Levi Owens. (Attachments: # 1 - memorandum in support, # 2SEALED Exhibit A - Collision report, # 3 Exhibit B - Decl. of Levi Owens, # 4 Exhibit C - Decl. of Maisha Jacobs) (Luck, Jason) Modified on 5/24/2023 to modify document security for Exhibit A (McNally, Kimberly). [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 05/23/2023) |
| 05/24/2023 | 25 | MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24-2)* filed by Levi Owens. (Attachments: # 1 Exhibit A - collision report (redacted)) (Luck, Jason) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 05/24/2023) |
| 05/25/2023 | | Notice to Counsel regarding: 25 Motion to Seal Document. Pursuant to Local Civil Rule 7.1(b)(3) and Section V(I)(3) of the CM/ECF Policy and Procedures Manual, parties must file a proposed order with any non-dispositive motion. Please file the proposed order using the 'Proposed Order' event in the Responses and Replies category and link it back to the motion to which it corresponds. Additionally, pursuant to the Practice Preferences of Chief Judge Myers, counsel shall also email proposed orders in a word processing format to Documents_Judge_Myers@nced.uscourts.gov. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 05/25/2023) |
| 05/30/2023 | 26 | Proposed Order regarding 25 MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24-2)* filed by Levi Owens. (Attachments: # 1 Text of Proposed Order) (Luck, Jason) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 05/30/2023) |
| 05/31/2023 | | Motion Submitted to Chief U.S. District Judge Richard E. Myers II regarding 25 MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24-2)*. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 05/31/2023) |
| 06/01/2023 | 27 | **ORDER granting 25 Motion to Seal Document at docket entry 24-2. Signed by** |

**JA006**

| | | |
|---|---|---|
| | | **Chief U.S. District Judge Richard E. Myers II on 5/31/2023.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/01/2023) |
| 06/02/2023 | 28 | Rule 26(f) Report (joint) filed by The Cincinnati Insurance Company. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/02/2023) |
| 06/05/2023 | | Document Referred: 28 Joint Rule 26(f) Report referred to U.S. Magistrate Judge Robert B. Jones, Jr. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/05/2023) |
| 06/05/2023 | 29 | **ORDER regarding 28 Rule 26(f) Report (joint) filed by The Cincinnati Insurance Company. The parties shall file any stay motion within seven (7) days from the date of this order, and if no motion is filed, the court will proceed with entry of a scheduling order. Signed by U.S. Magistrate Judge Robert B. Jones, Jr. on 6/5/2023.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/05/2023) |
| 06/09/2023 | 30 | Joint MOTION to Stay *All Discovery Deadlines and Entry of Scheduling Order* filed by Levi Owens. (Attachments: # 1 Text of Proposed Order) (Luck, Jason) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/09/2023) |
| 06/09/2023 | | Motion Referred to US Magistrate Judge Robert B. Jones, Jr regarding 30 Joint MOTION to Stay *All Discovery Deadlines and Entry of Scheduling Order*. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/09/2023) |
| 06/12/2023 | 31 | **ORDER granting 30 Motion to Stay Discovery. Signed by U.S. Magistrate Judge Robert B. Jones, Jr. on 6/12/2023.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/12/2023) |
| 06/13/2023 | 32 | Memorandum in Opposition regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by The Cincinnati Insurance Company. (Attachments: # 1 Exhibit A - S.C. Supreme Court Order, # 2 Exhibit B - Amended Complaint and Answer in Nautilus Case, # 3 Exhibit C - Affidavit of Non-Service re Hunt, # 4 Exhibit D - Jacobs Document, # 5 Exhibit E- Jacobs Motion for Relief, # 6 Exhibit F - Owens Motion for Relief) (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/13/2023) |
| 06/13/2023 | 33 | Certificate of Service filed by The Cincinnati Insurance Company regarding 32 Memorandum in Opposition, . (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/13/2023) |
| 06/27/2023 | 34 | REPLY to Response to Motion regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by Levi Owens. (Luck, Jason) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/27/2023) |
| 06/28/2023 | | Motion Submitted to Chief U.S. District Judge Richard E. Myers II regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction*. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 06/28/2023) |
| | | |

| | | |
|---|---|---|
| 10/10/2023 | 35 | Notice filed by The Cincinnati Insurance Company *Request for Protection (4-24 to 4-26, 2024)*. (Atkinson, Charles) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 10/10/2023) |
| 02/23/2024 | 36 | **ORDER granting in part and denying in part 24 Motion to Dismiss. The motion to dismiss 24 is GRANTED IN PART, the default judgments entered against WSC and Hunt [DE 20; DE 21] are VACATED, and this action is TRANSFERRED to the District of South Carolina. Signed by Chief U.S. District Judge Richard E. Myer, II on 2/23/2024.** (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 02/23/2024) |
| 02/23/2024 | | Case transferred to District of District of South Carolina. File transmitted electronically. (McNally, Kimberly) [Transferred from North Carolina Eastern on 2/26/2024.] (Entered: 02/23/2024) |
| 02/23/2024 | 37 | Case transferred in from District of North Carolina Eastern; Case Number 7:22-cv-00189. Original file certified copy of transfer order and docket sheet received. (Entered: 02/26/2024) |
| 02/26/2024 | 38 | NOTICE of Appearance by John Elliott Parker, Jr on behalf of Levi Owens (Parker, John) (Entered: 02/26/2024) |
| 02/28/2024 | 39 | MOTION to Stay by Levi Owens. Response to Motion due by 3/13/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit S.C. Traffic Collision Report, # 2 Exhibit Motion to Vacate Def. Judgement, # 3 Exhibit Affidavit of Mailing)No proposed order. (Parker, John) (Entered: 02/28/2024) |
| 03/04/2024 | 40 | NOTICE of Appearance by Brian Michael Peters, Jr on behalf of The Cincinnati Insurance Company (Peters, Brian) (Entered: 03/04/2024) |
| 03/04/2024 | 41 | RESPONSE in Opposition re 39 MOTION to Stay Response filed by The Cincinnati Insurance Company.Reply to Response to Motion due by 3/11/2024 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit A - Motions for Relief from Default Judgment, # 2 Exhibit B - Demand for Insurance Policy Payment)(Atkinson, Charles) (Entered: 03/04/2024) |
| 03/04/2024 | 42 | CERTIFICATE OF SERVICE by The Cincinnati Insurance Company re 41 Response in Opposition to Motion, (Atkinson, Charles) (Entered: 03/04/2024) |
| 03/08/2024 | 43 | DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STAY. Re: 39 MOTION to Stay. Response filed by Levi Owens. (Parker, John) Modified on 3/12/2024 to edit docket text (lgib, ). (Entered: 03/08/2024) |
| 03/13/2024 | 45 | **TEXT ORDER denying 39 Defendant Owens's motion to stay. As Plaintiff argues, the instant action is not based upon the contention that Defendant Hunt was not properly served in the underlying state court case. Accordingly, even assuming that Owens is correct regarding what factors the Court should weigh in considering the motion to stay, those factors do not justify a stay here. Signed by the Honorable Jacquelyn D Austin on 3/13/2024. (lgib, )** (Entered: 03/13/2024) |

| 03/13/2024 | [46](#) | Local Rule 26.01 Answers to Interrogatories by Levi Owens.(Luck, Jason) (Entered: 03/13/2024) |
|---|---|---|
| 03/14/2024 | [47](#) | **CONFERENCE AND SCHEDULING ORDER: Rule 26(f) Conference Deadline 4/4/2024, 26(a) Initial Disclosures due by 4/18/2024, Rule 26 Report due by 4/18/2024, Motions to Amend Pleadings due by 5/9/2024, Plaintiffs ID of Expert Witness due by 6/10/2024, Defendants ID of Expert Witnesses Due by 7/10/2024, Records Custodian Affidavit due by 7/10/2024, Discovery due by 9/9/2024, Motions due by 11/8/2024, ADR Statement due by 9/9/2024, Mediation Due by 10/9/2024, Rule 56 Conference Deadline 10/18/2024, Jury Selection Deadline 1/7/2025. Signed by the Honorable Jacquelyn D Austin on 3/14/2024. (hcic, )** (Entered: 03/14/2024) |
| 03/14/2024 | [48](#) | Local Rule 26.01 Answers to Interrogatories by The Cincinnati Insurance Company. (Atkinson, Charles) (Entered: 03/14/2024) |
| 03/18/2024 | [49](#) | *Amended* Local Rule 26.01 Answers to Interrogatories by Levi Owens.(Luck, Jason) (Entered: 03/18/2024) |
| 03/18/2024 | [50](#) | NOTICE of Appearance by Ashley Bruce Nance on behalf of Levi Owens (Nance, Ashley) (Main Document 50 replaced on 3/18/2024) (lgib, ). (Entered: 03/18/2024) |
| 03/27/2024 | [51](#) | STIPULATION of Dismissal with prejudice *as to Maisha Jacobs only* by Maisha Jacobs. (Parker, John) (Entered: 03/27/2024) |
| 04/18/2024 | [53](#) | CERTIFICATE OF SERVICE by The Cincinnati Insurance Company (Peters, Brian) (Entered: 04/18/2024) |
| 04/18/2024 | [54](#) | Rule 26(f) Report by The Cincinnati Insurance Company.(Atkinson, Charles) (Entered: 04/18/2024) |
| 04/18/2024 | [55](#) | Rule 26 Outline of Discovery Plan by The Cincinnati Insurance Company.(Atkinson, Charles) (Entered: 04/18/2024) |
| 04/18/2024 | [56](#) | CERTIFICATE OF SERVICE by Levi Owens (Parker, John) (Entered: 04/18/2024) |
| 04/19/2024 | [57](#) | **CONSENT AMENDED SCHEDULING ORDER. Motions to Amend Pleadings due by 6/7/2024, Plaintiffs ID of Expert Witness due by 7/10/2024, Defendants ID of Expert Witnesses Due by 8/9/2024, Records Custodian Affidavit due by 8/9/2024, Discovery due by 10/9/2024, Motions due by 12/13/2024, Bench Trial Deadline 2/11/2025, Mediation Due by 11/8/2024, Rule 56 Conference Deadline 11/15/2024. Signed by the Honorable Jacquelyn D Austin on 4/19/2024. (lgib, )** (Entered: 04/19/2024) |
| 06/06/2024 | [58](#) | Consent MOTION to Amend/Correct *Scheduling Order* by Levi Owens. Response to Motion due by 6/20/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # [1](#) Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel. (Nance, Ashley) (Entered: 06/06/2024) |
| 06/07/2024 | 59 | **TEXT ORDER granting [58](#) Motion to Amend/Correct. Signed by the Honorable Jacquelyn D Austin on 6/7/2024. (lgib, )** (Entered: 06/07/2024) |

| | | |
|---|---|---|
| 06/07/2024 | <u>60</u> | **SECOND CONSENT AMENDED SCHEDULING ORDER. Motions to Amend Pleadings due by 9/5/2024, Plaintiffs ID of Expert Witness due by 10/8/2024, Defendants ID of Expert Witnesses Due by 11/7/2024, Records Custodian Affidavit due by 11/7/2024, Discovery due by 1/7/2025, Motions due by 3/13/2025, Bench Trial Deadline 5/12/2025, Mediation Due by 2/6/2025, Rule 56 Conference Deadline 2/13/2025. Signed by the Honorable Jacquelyn D Austin on 6/7/2024. (lgib, )** (Entered: 06/07/2024) |
| 09/04/2024 | <u>61</u> | MOTION for Extension of Time *or in the alternative to Stay Deadline to Amend Pleadings* by Levi Owens. Response to Motion due by 9/18/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # <u>1</u> Exhibit A - execution / nulla bona return, # <u>2</u> Exhibit B - brief of jurisdiction, # <u>3</u> Exhibit C - order on jurisdiction, # <u>4</u> Exhibit D - scheduling emails, # <u>5</u> Exhibit E - consent emails)No proposed order.(Luck, Jason) (Entered: 09/04/2024) |
| 09/05/2024 | 62 | **TEXT ORDER granting <u>61</u> motion for extension or, in the alternative, for a stay of the deadline. The deadline to amend pleadings in this matter is now November 4, 2024. Signed by the Honorable Jacquelyn D Austin on 09/05/2024. (lgib, )** (Entered: 09/05/2024) |
| 11/04/2024 | <u>63</u> | MOTION to Amend/Correct *Answer and Motion for Extension of Deadline to Amend Pleadings* by Levi Owens. Response to Motion due by 11/18/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # <u>1</u> Exhibit A - Proposed Amended Answer, # <u>2</u> Exhibit B - Hearing Emails, # <u>3</u> Exhibit C - Proof of ADR)No proposed order.(Nance, Ashley) (Entered: 11/04/2024) |
| 11/18/2024 | <u>64</u> | RESPONSE in Opposition re <u>63</u> MOTION to Amend/Correct *Answer and Motion for Extension of Deadline to Amend Pleadings* Response filed by The Cincinnati Insurance Company.Reply to Response to Motion due by 11/25/2024 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # <u>1</u> Exhibit A - Guidance from FMCSA)(Atkinson, Charles) (Entered: 11/18/2024) |
| 11/18/2024 | <u>65</u> | MOTION for Default Judgment as to Wayne Hunt and Wilmington Shipping Company by The Cincinnati Insurance Company. Response to Motion due by 12/2/2024. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # <u>1</u> Memo in Support Brief in Support of MSJ)No proposed order.(Atkinson, Charles) (Entered: 11/18/2024) |
| 11/18/2024 | <u>66</u> | CERTIFICATE OF SERVICE by The Cincinnati Insurance Company re <u>64</u> Response in Opposition to Motion, <u>65</u> MOTION for Default Judgment as to Wayne Hunt and Wilmington Shipping Company (Atkinson, Charles) (Entered: 11/18/2024) |
| 11/22/2024 | 68 | DELETION OF DOCKET ENTRY NUMBER 67 Reason: filed in error by filer. (lgib, ) (Entered: 11/22/2024) |
| 11/25/2024 | <u>69</u> | RESPONSE in Support re <u>58</u> Consent MOTION to Amend/Correct *Scheduling Order and* <u>65</u> *Objection to Pl's Request for Entry of Default and Motion for Default Judgement* Response filed by Levi Owens. (Attachments: # <u>1</u> Exhibit 1-SAFER WSC |

| | | |
|---|---|---|
| | | Search, # 2 Exhibit 2-FMCSA Licensing and Insurance WSC Search)(Parker, John) (Entered: 11/25/2024) |
| 01/07/2025 | 70 | ADR STATEMENT/CERTIFICATION by The Cincinnati Insurance Company(Atkinson, Charles) (Entered: 01/07/2025) |
| 01/24/2025 | 73 | NOTICE of Request for Protection from Court Appearance by Charles Daniel Atkinson for June 30-July 4, 2025 (Atkinson, Charles) (Entered: 01/24/2025) |
| 03/13/2025 | 74 | MOTION to Stay *Deadlines* by Levi Owens. Response to Motion due by 3/27/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Parker, John) Modified on 3/14/2025; see additional attachments 78 . (lgib, ) (Entered: 03/13/2025) |
| 03/13/2025 | 75 | JOINT STATEMENT OF MATERIAL FACTS by The Cincinnati Insurance Company. (Attachments: # 1 Appendix Table of Contents for Appendix, # 2 Appendix)(Atkinson, Charles) (Entered: 03/13/2025) |
| 03/13/2025 | 76 | MOVANTS STATEMENT OF MATERIAL FACTS by The Cincinnati Insurance Company. (Attachments: # 1 Appendix Table of Contents for Movant's Appendix, # 2 Appendix)(Atkinson, Charles) (Entered: 03/13/2025) |
| 03/13/2025 | 77 | MOTION for Summary Judgment by The Cincinnati Insurance Company. Response to Motion due by 3/27/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.(Atkinson, Charles) (Entered: 03/13/2025) |
| 03/14/2025 | 78 | Additional Attachments to Main Document 74 MOTION to Stay *Deadlines*. First attachment description: S.C. Sup. Ct. Order . (Attachments: # 1 Main Document - S.C. Supreme Court protection order)(Luck, Jason) (Entered: 03/14/2025) |
| 03/14/2025 | 79 | NOTICE of Appearance by Morgan Taylor Petty on behalf of The Cincinnati Insurance Company (Petty, Morgan) (Entered: 03/14/2025) |
| 03/18/2025 | 80 | **TEXT ORDER granting 74 Motion to stay deadlines. The unexpired deadlines in the scheduling order are stayed pending the Court's resolution of the pending motion to amend, motion for default judgment, and motion for summary judgment. Signed by the Honorable Jacquelyn D Austin on 3/18/2025. (lgib, )** (Entered: 03/18/2025) |
| 03/27/2025 | 81 | MOTION to Stay by Levi Owens. Response to Motion due by 4/10/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Parker, John) (Entered: 03/27/2025) |
| 04/04/2025 | 82 | RESPONSE in Opposition re 81 MOTION to Stay Response filed by The Cincinnati Insurance Company.Reply to Response to Motion due by 4/11/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Atkinson, Charles) (Entered: 04/04/2025) |
| 04/10/2025 | 83 | RESPONSE in Support re 81 MOTION to Stay *Deadlines* Response filed by Levi Owens. (Attachments: # 1 Exhibit FMCSA Ins. History)(Parker, John) (Entered: |

| | | 04/10/2025) |
|---|---|---|
| 04/14/2025 | 84 | **TEXT ORDER denying 63 Motion to Amend. Although a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied if the opposing party would be prejudiced by the amendment, the moving party has acted in bad faith, or the amendment would be futile, Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). In this case, Defendant seeks to add a counterclaim asking for a declaration that the subject insurance policies' MCS-90 endorsement requires Plaintiff to satisfy its surety obligations if it successfully disclaims coverage on the ground that it was not provided with prompt notice of the loss as required by its policies' cooperation provisions. As Plaintiff argues, however, even if an MCS-90 were included in the policies, the surety-type obligations of the policies involving MCS-90 apply only to the named insured, which, in this case is [Wilmington Shipping Co.], not Hunt. [Doc. 64 at 34]; see Forkwar v. Progressive N. Ins., 910 F. Supp. 2d 815, 826, (D. Md. 2012) ("[T]he MCS-90 endorsement provides coverage only to the named insured."). Signed by Honorable Jacquelyn D Austin on 4/14/25.(swel, )** (Entered: 04/14/2025) |
| 04/14/2025 | 85 | **TEXT ORDER denying 81 Motion to Stay. The Court will, however, extend Defendant's response deadline to 77 Plaintiff's motion for summary judgment to April 24, 2025. Signed by Honorable Jacquelyn D Austin on 4/14/25.(swel, )** (Entered: 04/14/2025) |
| 06/25/2025 | 88 | **OPINION AND ORDER Plaintiff's motions for default judgment and summary judgment [Docs. 65 ; 77 ] are both GRANTED.**<br><br>**IT IS SO ORDERED.**<br><br>**Signed by the Honorable Jacquelyn D Austin on 6/25/2025. (lgib, )** (Entered: 06/25/2025) |
| 06/25/2025 | 89 | SUMMARY JUDGMENT is entered in favor of plaintiff, The Cincinnati Insurance Company, against Levi Owens, personal representative for the Estate of Christopher McLean. Default Judgment is entered as to defendants' Wayne Hunt and Wilmington Shipping Company. (lgib, ) (Entered: 06/25/2025) |
| 07/24/2025 | 90 | NOTICE OF APPEAL as to 89 Summary Judgment, 88 Order on Motion for Default Judgment, Order on Motion for Summary Judgment, 85 Order on Motion to Stay, 45 Order on Motion to Stay, 84 Order on Motion to Amend/Correct,,,,, by Levi Owens. - Filing fee $ 605, receipt number ASCDC-12613703. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Attachments: # 1 Exhibit - orders appealed)(Luck, Jason) (Entered: 07/24/2025) |
| 07/25/2025 | 91 | Transmittal Sheet for Notice of Appeal to USCA re 90 Notice of Appeal,, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (lgib, ) (Entered: 07/25/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/25/2025 21:34:38 | | | |
| **PACER Login:** | JasonLuck | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:24-cv-00951-JDA |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |
| **Exempt flag:** | Not Exempt | **Exempt reason:** | Not Exempt |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-00189

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Wayne Hunt; Levi Owens, as Personal | ) | **(Declaratory Judgment)** |
| Representative for the Estate of Christopher | ) | |
| McLean; Maisha Jacobs; and Wilmington | ) | **Non-Jury Trial Demanded** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Plaintiff, complaining of the Defendants above-named, would respectfully allege and show unto this Honorable Court as follows:

**PRELIMINARY STATEMENT**

1.     This action is brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et. seq.*

2.     The Cincinnati Insurance Company ("CIC") respectfully requests a declaratory judgment that CIC does not owe a duty to defend or indemnify Wayne Hunt ("Hunt"), under a primary policy of insurance, bearing Policy Number EBA0104045, and an excess coverage liability policy of insurance, bearing Policy Number ENP0104045, both issued by CIC to Wilmington Shipping Company ("WSC"), related to a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00265, entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant,* pending in the Court of Common Pleas of the State of South Carolina, County of Marlboro (the "Wrongful Death Action"),

1

or a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00264, entitled *Maisha Jacobs, Plaintiff v. Wayne Hunt, Defendant*, pending in the Court of Common Pleas for the State of South Carolina, County of Marlboro (the "Personal Injury Action").

### PARTIES AND JURISDICTION

3.      Plaintiff CIC is an Ohio corporation, with its principal place of business located at 6200 S. Gilmore Road, Fairfield, OH 45014-5141. CIC is an insurance company.

4.      Upon information and belief, Defendant Hunt is currently a citizen and resident of Orangeburg County, South Carolina; however, at the time of the incident which gave rise to the Wrongful Death Action, Hunt was a citizen and resident of Pender County, North Carolina.

5.      Upon information and belief, Levi Owens ("Owens"), is a citizen and resident of Marlboro County, South Carolina, with a residence in Bennettsville, South Carolina.

6.      Owens has been appointed by the Marlboro County Probate Court to act as Personal Representative for the Estate of Christopher McLean.

7.      At all times relevant hereto, Christopher McLean was a citizen and resident of the State of South Carolina.

8.      Upon information and belief, Maisha Jacobs ("Jacobs") is a citizen and resident of Marlboro County, South Carolina.

9.      Defendant Wilmington Shipping Company ("WSC") is a North Carolina corporation, with a principal place of business at 330 Shipyard Blvd., Wilmington, New Hannover County, North Carolina 28412.

10.      At all times relevant hereto, WSC was doing business in North Carolina.

11.      Owens has obtained a default judgment against Hunt in the amount of $5,100,000 in the Wrongful Death Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

2

12.     Jacobs has obtained a default judgment against Hunt in the amount of $110,000 in the Personal Injury Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

13.     There is complete diversity between CIC and the Defendants in this action.

14.     The amount in controversy exceeds $75,000, exclusive of interest and costs, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

15.     Venue is appropriate in the Eastern District of North Carolina, and the Southern Division, pursuant to 28 U.S.C. § 1391, because WSC's principal place of business is in New Hanover County, and the insurance policies at issue were issued in New Hanover County to WSC, both of which are in the Southern Division of the Eastern District of North Carolina.  Further, all efforts at service upon Hunt, which are the central issue in this case, occurred in North Carolina. The issuance of the insurance policies to a North Carolina entity in North Carolina, combined with the purported service upon the party in default in North Carolina, means that both a substantial part of the events giving rise to this action and a substantial part of the property that is the subject of the action is situated in North Carolina.

16.     CIC issued two policies of insurance, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy"), to Wilmington Shipping Company (the Business Auto Policy and Excess Coverage Liability Policy are from time to time hereafter reference collectively as "the Policies") on or around October 1, 2013.  A copy of the Business Auto Policy is attached hereto as Exhibit A and a copy of the Excess Coverage Liability Policy is attached hereto as Exhibit B, and both of the Policies incorporated herein as if set forth fully.

17.     This Court has jurisdiction over the parties and subject matter of the action, and this District Court is the proper venue for this action.

3

## FACTUAL ALLEGATIONS

18.    CIC issued the Policies to WSC on or around October 1, 2013.

19.    The Policies provided certain insurance coverages related to motor vehicles owned, leased and/or operated by or on behalf of WSC, under a Business Auto Coverage Form.

20.    The Business Auto Policy stated that the class of persons and entities defined as "insureds" under the Business Auto Policy includes WSC and "[a]nyone else [other than WSC] while using with [WSC's] permission a covered "auto" [WSC] own[s], hire[s] or borrow[s]." (Exhibit A, Section II(A)(1)(b).)

21.    The Business Auto Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

**2.  Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.**  In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or loss occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.**  Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)**  Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

4

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

(Exhibit A, Section IV(A)(2).)

22.    The Excess Coverage Liability Policy incorporates the "terms, definitions, conditions, limitations and exclusions of the [Business Auto Policy] . . ., except for terms and conditions related to duties to investigate or defend, the limits of insurance, the payment of expenses, the premium, cancellation or non-renewal, the policy period, or other provisions inconsistent with the Excess Coverage Liability Policy. (Exhibit B, Section I(5).)

23.    The Excess Coverage Liability Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

**4. Duties in the Event of Occurrence, Claim or Suit**

 **a.** You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

  **(1)** How, when and where the occurrence took place;

  **(2)** The names and addresses of injured persons and witnesses;

  **(3)** The nature and location of any injury or damage arising out of the occurrence.

 **b.** If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

 **c.** You must see to it that we and your underlying insurers:

  **(1)** Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

  **(2)** Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

5

**d.** No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

(Exhibit B, Section III(4).)

24.     On or around December 10, 2013, Hunt was involved in a motor vehicle accident (the "Accident") at the intersection of US Highway 15 and SEC-438 in Marlboro County, South Carolina, with a vehicle driven by Jacobs in which Christopher McLean rode as a passenger.

25.     Upon information and belief, McLean died as a result of injuries that he suffered in the Accident.

26.     At the time of the Accident, Hunt was working as an employee of WSC, driving a truck which WSC leased from Penske Truck Leasing Co., Ltd., under a written lease agreement with Penske Truck Leasing Co., Ltd.

27.     Upon information and belief, Owens will seek coverage under the Policies for damages recovered in the Wrongful Death Action.

28.     Jacobs has demanded coverage under the Policies for damages recovered in the Personal Injury Action.

29.     On or around December 8, 2016, Owens filed a Summons and Complaint the Wrongful Death Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Owens for damages as a result of the bodily injury and death suffered by Christopher McLean in the Accident.  A copy of the filed Summons and Complaint in the Owens Action is filed as Exhibit C hereto, and it is incorporated herein by reference.

30.     According to an Affidavit filed with the Marlboro County Clerk of Court, Plaintiff effected service of the Wrongful Death Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the affidavit of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit D hereto, and it is incorporated herein by reference.

6

31.     In her Affidavit, Wanda Ealy states that SCDMV first attempted service of the Owens Action Summons and Complaint via Certified Mail, which was returned to sender.  Early further avers that SCDMV then mailed the Wrongful Death Action Summons and Complaint by open mail.  (Exhibit D.)

32.     Although CIC presently has no evidence that Hunt received actual notice of the Summons and Complaint, CIC never received notice of the Wrongful Death Action Summons and Complaint.

33.     On November 16, 2017, Owens filed an Affidavit of Default in the Wrongful Death Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Wrongful Death Action is filed herewith as Exhibit E, and it is incorporated herein by reference.

34.     Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Wrongful Death Action, CIC never received notice of the Affidavit of Default in the Wrongful Death Action.

35.     Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Wrongful Death Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit F, and it is incorporated herein by reference.

36.     Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Wrongful Death Action, CIC never received notice of the Entry of Default in the Wrongful Death Action.

37.     The Entry of Default in the Wrongful Death Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant."  (Exhibit F.)

7

**JA020**

38.     On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Wrongful Death Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee.  A copy of the Order of Reference for the Wrongful Death Action is filed herewith as Exhibit G, and it is incorporated herein by reference.

39.     Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Wrongful Death Action, CIC never received notice of the Order of Reference for the Wrongful Death Action.

40.     On November 4, 2021, Owens' counsel filed a Notice of Hearing in the Wrongful Death Action, which is attached hereto as Exhibit H.

41.     The Notice of Hearing included an Affidavit of Service which stated that the Notice of Hearing for the Wrongful Death Action was mailed to Hunt's last known address.  (Exhibit H.)

42.     Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Wrongful Death Action, CIC never received Notice of Hearing, nor was CIC ever notified that a damages hearing was scheduled to occur.

43.     On November 17, 2021, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Wrongful Death Action.

44.     On November 18, 2021, the Special Referee filed an Order Awarding Default Judgment in the Wrongful Death Action, which is attached hereto as Exhibit I, and which is incorporated herein by reference.

45.     Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Wrongful Death Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

8

46.    Recently, CIC learned of the Default Judgment in the Wrongful Death Action against Hunt, from someone other than Hunt.

47.    In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

48.    To-date, Hunt remains subject to the Default Judgment entered in the Wrongful Death Action.

49.    On or around December 8, 2016, Jacobs filed a Summons and Complaint in the Personal Injury Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Jacobs for damages as a result of the bodily injury and death suffered by Jacobs in the Accident.  A copy of the filed Summons and Complaint in the Personal Injury Action is filed as Exhibit J hereto, and it is incorporated herein by reference.

50.    According to a letter filed with the Marlboro County Clerk of Court, Jacobs effected service of the Personal Injury Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the letter of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit K hereto, and it is incorporated herein by reference.

51.    Although CIC presently has no evidence that Hunt received actual notice of the Personal Injury Action Summons and Complaint, CIC never received notice of the Personal Injury Action Summons and Complaint.

52.    On November 16, 2017, Jacobs filed an Affidavit of Default in the Personal Injury Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Personal Injury Action is filed herewith as Exhibit L, and it is incorporated herein by reference.

53.    Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Personal Injury Action, CIC never received notice of the Affidavit of Default in the Personal Injury Action.

54.    Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Personal Injury Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit M, and it is incorporated herein by reference.

55.    Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Personal Injury Action, CIC never received notice of the Entry of Default in the Personal Injury Action.

56.    The Entry of Default in the Personal Injury Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant." (Exhibit M.)

57.    On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Personal Injury Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee. A copy of the Order of Reference for the Personal Injury Action is filed herewith as Exhibit N, and it is incorporated herein by reference.

58.    Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Personal Injury Action, CIC never received notice of the Order of Reference for the Personal Injury Action.

59.    The Marlboro Clerk of Court's file does not indicate that Jacobs filed a Notice of Hearing for the Personal Injury Action.

10

60.    Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Personal Injury Action, CIC never received Notice of Hearing for the Personal Injury Action, nor was CIC ever notified that a damages hearing was scheduled to occur.

61.    On February 21, 2022, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Personal Injury Action.

62.    On March 23, 2022, the Special Referee filed an Order Awarding Default Judgment in the Personal Injury Action, which is attached hereto as Exhibit O, and which is incorporated herein by reference.

63.    Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Personal Injury Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

64.    Recently, CIC learned of the Default Judgment in the Personal Injury Action against Hunt, from someone other than Hunt.

65.    In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

66.    To-date, Hunt remains subject to the Default Judgment entered in the Personal Injury Action.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

67.    CIC incorporates its allegations of Paragraphs 1 through 66, to the extent consistent herewith.

68.    In the Wrongful Death Action Complaint, Owens alleges that Hunt acted negligently, causing McLean's death.  (Exhibit C.)

11

69.     In the Order Awarding Default Judgment in the Wrongful Death Action, the Special Referee found that Hunt acted negligently and caused damages to Owens, and the Special Referee awarded $5,000,000 in wrongful death damages and $100,000 in survival damages.  (Exhibit I.)

70.     The Special Referee entered a Default Judgment against Hunt in the Wrongful Death Action before CIC ever received notice of the Wrongful Death Action.

71.     In the Personal Injury Action Complaint, Jacobs alleges that Hunt acted negligently or recklessly causing Jacobs' injuries.  (Exhibit J.)

72.     The Special Referee entered a Default Judgment against Hunt in the Personal Injury Action before CIC ever received notice of the Personal Injury Action.

73.     Both of the Policies required Hunt to immediately send CIC copies of any summons or legal paper received regarding any "suit," as defined under the Policy.  (*See* Exhibit A, Section IV(A)(2)(b); *see also* Exhibit B, Excess Liability Coverage Policy, Section III(4).)

74.     Over five years ran from service of the Wrongful Death Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Wrongful Death Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

75.     Over five years ran from service of the Personal Injury Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Personal Injury Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

76.     Based on present information, CIC is unaware of whether Hunt has a good faith reason for failing to provide timely notice to CIC of the Wrongful Death Action, the Personal Injury Action, or related claims.

12

77.     Regardless of whether Hunt had a good faith reason for failing to timely provide CIC with notice of the Wrongful Death Action and/or the Personal Injury Action, CIC has suffered material prejudice to its ability to investigate and defend the Wrongful Death Action and the Personal Injury Action, in the form of two Default Judgments entered against Hunt.

78.     Based upon the material prejudice to CIC's abilities to investigate or defend Hunt under the Policies, as well as Hunt's failure to comply with a material condition of the Policies, regardless of whether he received actual notice of the Wrongful Death Action or the Personal Injury Action, CIC has no duty to defend or indemnify Hunt under the Policies for the Wrongful Death Action or the Personal Injury Action.

79.     Even if CIC obtains relief from the Default Judgments entered against Hunt in the Wrongful Death Action and the Personal Injury Action, CIC has no obligation to defend or indemnify Hunt, because the delay in provision of notice has materially impaired CIC's ability to investigate and defend the claims.

80.     Defendant Hunt is seeking or likely will seek defense and indemnification for the Wrongful Death Action and the Personal Injury Action.

81.     Upon information and belief, Owens will seek satisfaction from CIC under the Policies for the Default Judgment obtained in the Wrongful Death Action.

82.     Jacobs has sought satisfaction from CIC under the Policies for the Default Judgment obtained in the Personal Injury Action, and CIC files this Action to seek a Declaration as to coverage obligations.

83.     WSC has an interest in this action and must be included as a party, because WSC is the named insured under the Policies, which received delivery of same. Further, the outcome of this declaration is likely to impact WSC in the form of future premiums and insurability.

84.    This is an action for declaratory judgment brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, et seq.  A justiciable controversy exists between the parties in which the parties have a legal and actual interest, and which is ripe for resolution.

85.    CIC's failure to receive timely notice of the Wrongful Death Action and the Personal Injury Action bars CIC from having any duty of defense or indemnity under the Policies, and CIC has no duty to pay the Default Judgments entered in the Wrongful Death Action or the Personal Injury Action.

86.    The amount of the Default Judgment in the Wrongful Death Action is $5,100,000, and the amount of the Default Judgment in the Personal Injury Action is $110,000; therefore, the amount in controversy in this case exceeds $75,000.

WHEREFORE, CIC respectfully prays for the following:

a)    That the Court determine the rights and obligations of CIC, Hunt, WSC, Owens, and Jacobs under the Policies and determine that CIC has no obligation to defend or indemnify Hunt with respect to the claims presented and the Default Judgment entered in the Wrongful Death Action and the Personal Injury Action;

b)    For a non-jury trial; and

b)    For such other and further relief as this Court deems fair and appropriate.

Respectfully submitted this 8th day of November, 2022,

*Signature Page to Follow*

14

**JA027**

WILKES ATKINSON & JOYNER, LLC

s/ C. Daniel Atkinson
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767

ATTORNEY FOR PLAINTIFF THE
CINCINNATI INSURANCE COMPANY

15

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| The Cincinnati Insurance Company, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  7:22-CV-00189 |
| Wayne Hunt, Levi Owens as Personal | ) |
| Representative for the Estate of Christopher McLean, | ) |
| Maisha Jacobs, and Wilmington Shipping Company, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Wayne Hunt
945B Woods Street
Orangeburg, SC 29115

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

C. Daniel Atkinson  datkinson@wajlawfirm.com
Wilkes, Atkinson & Joyner, LLC
127 Dunbar St., Suite 200
Spartanburg, SC  29306
(864) 591-1113

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____         _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  7:22-CV-00189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                                        *Server's signature*

                                                                        _____
                                                                        *Printed name and title*


                                                                        _____
                                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| The Cincinnati Insurance Company, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )    Civil Action No.   7:22-CV-00189 |
| Wayne Hunt, Levi Owens as Personal | ) |
| Representative for the Estate of Christopher McLean, | ) |
| Maisha Jacobs, and Wilmington Shipping Company, | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Levi Owens, as Personal Representative for the Estate of Christopher McLean
1816 Peterkin Rd.
Bennettsville, SC  29512

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

C. Daniel Atkinson   datkinson@wajlawfirm.com
Wilkes, Atkinson & Joyner, LLC
127 Dunbar St., Suite 200
Spartanburg, SC  29306
(864) 591-1113

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  7:22-CV-00189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| The Cincinnati Insurance Company, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  7:22-CV-00189 |
| | ) |
| Wayne Hunt, Levi Owens as Personal | ) |
| Representative for the Estate of Christopher McLean, | ) |
| Maisha Jacobs, and Wilmington Shipping Company, | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Maisha Jacobs
504 Society St.
Clio, SC  29525

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

C. Daniel Atkinson  datkinson@wajlawfirm.com
Wilkes, Atkinson & Joyner, LLC
127 Dunbar St., Suite 200
Spartanburg, SC  29306
(864) 591-1113

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  7:22-CV-00189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____      _____
                                                              *Server's signature*

                                                _____
                                                              *Printed name and title*


                                                _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| The Cincinnati Insurance Company, <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Wayne Hunt, Levi Owens as Personal Representative for the Estate of Christopher McLean, Maisha Jacobs, and Wilmington Shipping Company, <br> _____ <br> *Defendant(s)* | Civil Action No.  7:22-CV-00189 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Wilmington Shipping Company
330 Shipyard Blvd.
Wilmington, NC  28412

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

C. Daniel Atkinson  datkinson@ wajlawfirm.com
Wilkes, Atkinson & Joyner, LLC
127 Dunbar St., Suite 200
Spartanburg, SC  29306
(864) 591-1113

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  7:22-CV-00189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____            _____
                                                                 *Server's signature*

                                         _____
                                                                 *Printed name and title*


                                         _____
                                                                 *Server's address*

Additional information regarding attempted service, etc:

# e-CLAS  Banner Page

## Environment: PRODUCTION

32-033

WOODBURY & CO.
1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

**Policy Number:**     ENP 010 40 45 / EBA 010 40 45

**Effective Date:**     11-20-2013

**Named Insured:**     WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

**Agency:**     WOODBURY & CO. 32-033

# e-CLAS  Banner Page

## Environment: PRODUCTION

```
32-033

WOODBURY & CO.
1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686
```

**Policy Number:**   ENP 010 40 45 / EBA 010 40 45

**Effective Date:**   10-01-2013

**Named Insured:**   WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

**Agency:**   WOODBURY & CO. 32-033

# e-CLAS  Banner Page

## Environment: PRODUCTION

```
32-033

WOODBURY & CO.
1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686
```

**Policy Number:**   `ENP 010 40 45 / EBA 010 40 45`

**Effective Date:**   `10-01-2013`

**Named Insured:**   `WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE`

**Agency:**   `WOODBURY & CO. 32-033`

# e-CLAS  Banner Page

## Environment: PRODUCTION

32-033

WOODBURY & CO.
1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

**Policy Number:**   ENP 010 40 45 / EBA 010 40 45

**Effective Date:**   10-01-2013

**Named Insured:**   WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

**Agency:**   WOODBURY & CO. 32-033

**Thank you for placing this coverage with The Cincinnati Insurance Companies!**

| Premium | Commission |
|---|---|
| ALL OTHER 32,183 ANNUAL/INST | 15% |
| EXCESS LIABILITY 8,061 ANNUAL | 15% |

| | |
|---|---|
| __x__ THE CINCINNATI INSURANCE COMPANY 0244-10677 | **KEEP THIS CARD** |
| _____ THE CINCINNATI CASUALTY COMPANY 0244-28665 | **IN YOUR MOTOR VEHICLE** |
| _____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State                        Date Processed
NC                          01-10-2014

Policy No.              Effective Date       Expiration Date
EBA 010 40 45         11-20-2013          10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
2011        FREIGHTLINER CASCADIA
Vehicle Identification No.
1FUJGLDR4BSAY1128
**Signature** _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122  09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

**JA041**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

**AUTOMOBILE LIABILITY I.D. CARD**

State                    Date Processed
NC                       12-05-2013

Policy No.          Effective Date     Expiration Date
EBA 010 40 45      10-01-2013         10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

**MOTOR VEHICLE INSURED**

Year      Make
1967      FRUEHAUF 40 CHASSIS
Vehicle Identification No.
FWH801108
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122  09/01

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA042

| | |
|---|---|
| __x__   **THE CINCINNATI INSURANCE COMPANY 0244-10677**<br>_____   THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____   THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **KEEP THIS CARD**<br>**IN YOUR MOTOR VEHICLE**<br>**WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State           Date Processed
NC               10-22-2013

Policy No.      Effective Date     Expiration Date
EBA 010 40 45     10-01-2013      10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year     Make
2013     VOLKSWAGEN   TIGUAN
Vehicle Identification No.
WVGAV3AX3DW587098
**Signature** _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000            AA 4122 09/01

---

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

| | |
|---|---|
| **_x_ THE CINCINNATI INSURANCE COMPANY 0244-10677**<br>_____ **THE CINCINNATI CASUALTY COMPANY 0244-28665**<br>_____ **THE CINCINNATI INDEMNITY COMPANY 0244-23280** | **KEEP THIS CARD**<br>**IN YOUR MOTOR VEHICLE**<br>**WHILE IN OPERATION** |

**AUTOMOBILE LIABILITY I.D. CARD**

State                          Date Processed
NC                              10-22-2013

Policy No.              Effective Date          Expiration Date
EBA 010 40 45            10-01-2013              10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
2013        VOLKSWAGEN GLI
Vehicle Identification No.
3VW4A7AJ5DM248677
Signature _____

We can serve you better if you...

1. Report all claims immediately to the police and to your
agent.

2. Get the names, addresses, and telephone numbers of
all drivers, owners, and occupants of the other cars in-
volved.

3. Get the names, addresses, and telephone numbers of
any witnesses.

4. Do not accept responsibility or discuss the accident with
anyone except a police officer or a representative of this
Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or oth-
erwise, to pay premiums or costs on bonds to release at-
tachments, also, the premium on or cost of bail bonds not
to exceed the limit per bail bond listed in "supplementary
payments" in the policy. The Company has no obligation
to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN
FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000                    AA 4122  09/01

**SERVICE TO YOU IS OUR MAIN CONCERN**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
NC                       10-22-2013

Policy No.          Effective Date      Expiration Date
EBA 010 40 45       10-01-2013          10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year     Make
2013     VOKSWAGEN GLI
Vehicle Identification No.
3VW467AJ3DM232933
**Signature** _____

**IN CASE YOU HAVE AN ACCIDENT. . .
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496

(513) 870-2000                              AA 4122  09/01

**KEEP THIS CARD
IN YOUR MOTOR VEHICLE
WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA045

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| _____ | THE CINCINNATI CASUALTY COMPANY  0244-28665 |
| _____ | THE CINCINNATI INDEMNITY COMPANY  0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

| State | Date Processed |
|---|---|
| NC | 10-22-2013 |

| Policy No. | Effective Date | Expiration Date |
|---|---|---|
| EBA 010 40 45 | 10-01-2013 | 10-01-2014 |

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

| Year | Make |
|---|---|
| 1968 | TRAILMOBILE 40' CHASSIS |

Vehicle Identification No.
D38401
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122  09/01

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA046

| | |
|---|---|
| __x__ THE CINCINNATI INSURANCE COMPANY 0244-10677 | **KEEP THIS CARD** |

<table>
<tr><td>

_x_   THE CINCINNATI INSURANCE COMPANY 0244-10677<br>
_____   THE CINCINNATI CASUALTY COMPANY  0244-28665<br>
_____   THE CINCINNATI INDEMNITY COMPANY 0244-23280

AUTOMOBILE LIABILITY I.D. CARD

State               Date Processed<br>
NC           10-22-2013

Policy No.       Effective Date    Expiration Date<br>
EBA 010 40 45    10-01-2013     10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT<br>
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,<br>
EAST CAROLINA BONDED WAREHOUSE<br>
330 SHIPYARD BLVD<br>
WILMINGTON, NC 28412-1837

<br><br>

MOTOR VEHICLE INSURED

Year      Make<br>
1971      THEURER 20' CHASSIS<br>
Vehicle Identification No.<br>
N27776<br>
**Signature** _____

</td>
<td valign="top">

**KEEP THIS CARD<br>
IN YOUR MOTOR VEHICLE<br>
WHILE IN OPERATION**

We can serve you better if you...

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

</td></tr>
<tr><td>

**IN CASE YOU HAVE AN ACCIDENT. . .<br>
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221<br>
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company<br>
The Cincinnati Casualty Company<br>
The Cincinnati Indemnity Company**

<br>

**P.O. Box 145496, Cincinnati, OH, 45250-5496**<br>
(513) 870-2000           AA 4122  09/01

</td>
<td valign="bottom">

<br><br><br><br><br>

**SERVICE TO YOU IS OUR MAIN CONCERN**

</td></tr>
</table>

**JA047**

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677 | **KEEP THIS CARD** |
| _____ THE CINCINNATI CASUALTY COMPANY 0244-28665 | **IN YOUR MOTOR VEHICLE** |
| _____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

| State | Date Processed |
|---|---|
| NC | 10-22-2013 |

| Policy No. | Effective Date | Expiration Date |
|---|---|---|
| EBA 010 40 45 | 10-01-2013 | 10-01-2014 |

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

| Year | Make |
|---|---|
| 1978 | THERUER 40' CHASSIS |

Vehicle Identification No.
801106
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                AA 4122  09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA048

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

| State | Date Processed |
|---|---|
| NC | 10-22-2013 |

| Policy No. | Effective Date | Expiration Date |
|---|---|---|
| EBA 010 40 45 | 10-01-2013 | 10-01-2014 |

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

#### MOTOR VEHICLE INSURED

| Year | Make |
|---|---|
| 1977 | TRIM 40' CHASSIS |

Vehicle Identification No.
832961
**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000                    AA 4122  09/01

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

### SERVICE TO YOU IS OUR MAIN CONCERN

---

**JA049**

| | |
|---|---|
| __x__  THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____  THE CINCINNATI CASUALTY COMPANY  0244-28665<br>_____  THE CINCINNATI INDEMNITY COMPANY  0244-23280 | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

**AUTOMOBILE LIABILITY I.D. CARD**

State                    Date Processed
NC                       10-22-2013

Policy No.          Effective Date       Expiration Date
EBA 010 40 45      10-01-2013            10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
1977        TRIM 40' TRAILER
Vehicle Identification No.
S33112
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000                              AA 4122  09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| _____ | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| _____ | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State                     Date Processed
NC                        10-22-2013

Policy No.          Effective Date      Expiration Date
EBA 010 40 45       10-01-2013          10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
1996        MOSS STEAM JIMMY 14'
Vehicle Identification No.
1PWUS0917TR000572
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                          AA 4122  09/01

---

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA051

| __x__ THE CINCINNATI INSURANCE COMPANY 0244-10677 | KEEP THIS CARD |
|---|---|
| _____ THE CINCINNATI CASUALTY COMPANY  0244-28665 | IN YOUR MOTOR VEHICLE |
| _____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | WHILE IN OPERATION |

**AUTOMOBILE LIABILITY I.D. CARD**

State · · · · · · · · · · Date Processed
NC · · · · · · · · · · · · 10-22-2013

Policy No. · · · · · Effective Date · · · Expiration Date
EBA 010 40 45 · · · 10-01-2013 · · · · 10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

**MOTOR VEHICLE INSURED**

Year · · · · · Make
1990 · · · · · CHEVROLET FLAT BED ROLL
Vehicle Identification No.
1GBL7H1JXLJ200790
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000 · · · · · · · · · · · AA 4122 09/01

---

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA052

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

**AUTOMOBILE LIABILITY I.D. CARD**

State          Date Processed
NC                  10-22-2013

Policy No.       Effective Date     Expiration Date
EBA 010 40 45     10-01-2013      10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

**MOTOR VEHICLE INSURED**

Year     Make
1993     FORD RANGER PICKUP
Vehicle Identification No.
1FTCR10A5PUB59259
Signature _____

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT...**

**CALL YOUR AGENT...**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

**SERVICE TO YOU IS OUR MAIN CONCERN**

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000           AA 4122 09/01

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677 | **KEEP THIS CARD** |
| _____ THE CINCINNATI CASUALTY COMPANY 0244-28665 | **IN YOUR MOTOR VEHICLE** |
| _____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **WHILE IN OPERATION** |

**AUTOMOBILE LIABILITY I.D. CARD**

State                    Date Processed
NC                       10-22-2013

Policy No.          Effective Date        Expiration Date
EBA 010 40 45       10-01-2013            10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

**MOTOR VEHICLE INSURED**

Year       Make
1978       THEURER 20' CHASSIS
Vehicle Identification No.
N57422
Signature _____

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122 09/01

**SERVICE TO YOU IS OUR MAIN CONCERN**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

State
NC

Date Processed
10-22-2013

| Policy No. | Effective Date | Expiration Date |
| EBA 010 40 45 | 10-01-2013 | 10-01-2014 |

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

### MOTOR VEHICLE INSURED

Year        Make
1978        THEURER 20' CHASSIS
Vehicle Identification No.
N57381
**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000                          AA 4122  09/01

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

### SERVICE TO YOU IS OUR MAIN CONCERN

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| ____ | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| ____ | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
NC                       10-22-2013

Policy No.          Effective Date      Expiration Date
EBA 010 40 45       10-01-2013          10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
1994        CHEVROLET C1500 1/2 TON
Vehicle Identification No.
1GCEC14H0RZ277176
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122  09/01

**KEEP THIS CARD
IN YOUR MOTOR VEHICLE
WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA056

| | |
|---|---|
| **x**   THE CINCINNATI INSURANCE COMPANY 0244-10677 | **KEEP THIS CARD** |
|      THE CINCINNATI CASUALTY COMPANY 0244-28665 | **IN YOUR MOTOR VEHICLE** |
|      THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State      Date Processed
NC          10-22-2013
Policy No.      Effective Date     Expiration Date
EBA 010 40 45     10-01-2013      10-01-2014
Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year    Make
1998     CHEVROLET C1500 PICKUP
Vehicle Identification No.
1GCEC14W1WZ156702
Signature _____

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

**SERVICE TO YOU IS OUR MAIN CONCERN**

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000           AA 4122 09/01

| __x__ | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
| _____ | THE CINCINNATI CASUALTY COMPANY  0244-28665 |
| _____ | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

| State | Date Processed |
| NC | 10-22-2013 |

| Policy No. | Effective Date | Expiration Date |
| EBA 010 40 45 | 10-01-2013 | 10-01-2014 |

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

### MOTOR VEHICLE INSURED

| Year | Make |
| 2002 | CHEV SILVERADO PICKUP |

Vehicle Identification No.
1GCEC14W62Z234398

Signature _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**

**(513) 870-2000**                    AA 4122  09/01

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

### SERVICE TO YOU IS OUR MAIN CONCERN

**JA058**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State           Date Processed
NC            10-22-2013

Policy No.       Effective Date     Expiration Date
EBA 010 40 45    10-01-2013      10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year      Make
1998      CASH CONTAINER TRAILR
Vehicle Identification No.
1C9US4821WE698018
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000           AA 4122 09/01

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA059

| | |
|---|---|
| __x__ **THE CINCINNATI INSURANCE COMPANY 0244-10677**<br>_____ **THE CINCINNATI CASUALTY COMPANY 0244-28665**<br>_____ **THE CINCINNATI INDEMNITY COMPANY 0244-23280** | **KEEP THIS CARD**<br>**IN YOUR MOTOR VEHICLE**<br>**WHILE IN OPERATION** |

**KEEP THIS CARD**
**IN YOUR MOTOR VEHICLE**
**WHILE IN OPERATION**

__x__ **THE CINCINNATI INSURANCE COMPANY 0244-10677**
_____ **THE CINCINNATI CASUALTY COMPANY 0244-28665**
_____ **THE CINCINNATI INDEMNITY COMPANY 0244-23280**

AUTOMOBILE LIABILITY I.D. CARD

State            Date Processed
NC            10-22-2013

Policy No.       Effective Date     Expiration Date
EBA 010 40 45      10-01-2013      10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year      Make
1995      STGH VAN 48' SLIDING
Vehicle Identification No.
1DW1A4822SS977303
Signature _____

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
**(513) 870-2000**          AA 4122 09/01

**SERVICE TO YOU IS OUR MAIN CONCERN**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
NC                       10-22-2013

Policy No.          Effective Date        Expiration Date
EBA 010 40 45       10-01-2013            10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year        Make
2000        STERLING TRUCK-TRACTOR
Vehicle Identification No.
2FWYHWEB2YAG96033
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496

(513) 870-2000                    AA 4122  09/01

---

**KEEP THIS CARD
IN YOUR MOTOR VEHICLE
WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA061

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280<br>AUTOMOBILE LIABILITY I.D. CARD | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

State             Date Processed
NC             10-22-2013

Policy No.      Effective Date    Expiration Date
EBA 010 40 45     10-01-2013     10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year      Make
1999      FREIGHTLINER TRACTOR
Vehicle Identification No.
1FUYNMDB5XLA78138
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .<br>CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000          AA 4122 09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

| | |
|---|---|
| __x__ THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

**AUTOMOBILE LIABILITY I.D. CARD**

State             Date Processed
NC            10-22-2013

Policy No.        Effective Date    Expiration Date
EBA 010 40 45    10-01-2013     10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

       MOTOR VEHICLE INSURED
Year     Make
2000    STERLING TRUCK-TRACTOR
Vehicle Identification No.
2FWYHWDB6YAF71876
**Signature** _____

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company**

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000           AA 4122  09/01

**SERVICE TO YOU IS OUR MAIN CONCERN**

| | |
|---|---|
| **x**  THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY  0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280<br><br>AUTOMOBILE LIABILITY I.D. CARD | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

State                              Date Processed
NC                          10-22-2013

Policy No.              Effective Date        Expiration Date
EBA 010 40 45          10-01-2013        10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837


MOTOR VEHICLE INSURED
Year        Make
2004     FREIGHTLINER TRACTOR
Vehicle Identification No.
1FUJA6CKX4LM80496
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686


910-763-3431


**The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company**


**P.O. Box 145496, Cincinnati, OH, 45250-5496**
(513) 870-2000                              AA 4122  09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.


**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.


**SERVICE TO YOU IS OUR MAIN CONCERN**

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
NC                       10-22-2013

Policy No.           Effective Date      Expiration Date
EBA 010 40 45        10-01-2013          10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year       Make
2009       FREIGHTLINER COLUMBIA
Vehicle Identification No.
1FUJA6CK59LAG5818
**Signature** _____

**IN CASE YOU HAVE AN ACCIDENT. . .**
**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                          AA 4122  09/01

---

**KEEP THIS CARD
IN YOUR MOTOR VEHICLE
WHILE IN OPERATION**

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

JA065

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **KEEP THIS CARD<br>IN YOUR MOTOR VEHICLE<br>WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
NC                          10-22-2013
Policy No.          Effective Date      Expiration Date
EBA 010 40 45      10-01-2013        10-01-2014
Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED
Year        Make
2010      FREIGHTLINER CASCADIA
Vehicle Identification No.
1FUJGLDR7ALAR0415
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .
CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company

P.O. Box 145496, Cincinnati, OH, 45250-5496
(513) 870-2000                    AA 4122 09/01

We can serve you better if you...

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

| | |
|---|---|
| **__x__ THE CINCINNATI INSURANCE COMPANY 0244-10677**<br>**_____ THE CINCINNATI CASUALTY COMPANY 0244-28665**<br>**_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280** | **KEEP THIS CARD**<br>**IN YOUR MOTOR VEHICLE**<br>**WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State             Date Processed
NC                10-22-2013

Policy No.       Effective Date     Expiration Date
EBA 010 40 45     10-01-2013      10-01-2014

Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT
ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING,
EAST CAROLINA BONDED WAREHOUSE
330 SHIPYARD BLVD
WILMINGTON, NC 28412-1837

MOTOR VEHICLE INSURED

Year      Make
2011     FREIGHTLINER CASCADIA
Vehicle Identification No.
1FUJGLDR3ASAY1136
Signature _____

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

WOODBURY & CO. 32-033

1111 MILITARY CUTOFF RD STE 221
WILMINGTON, NC 28405-3686

910-763-3431

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**

(513) 870-2000            AA 4122  09/01

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage | All Other | Effective Date |
| Policy Number EBA 010 40 45 | Policy Number ENP 010 40 45 | of Endorsement  11-20-2013 |

WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
Issued to  ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

Agent WOODBURY & CO. 32-033
      WILMINGTON, NC                                                    Endorsement #  3

---

## PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date 18 _____

| | | |
|---|---|---|
| Subsequent Quarterly Installments Increased by | $ | 40 |
| Revised Quarterly Installment Payment(s) | $ | 10,127 |

---

It is agreed that the policy is amended as indicated by    ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

```
AMENDING PER REVISED AA4183 AS FOLLOWS:
  ADDING 2011 FREIGHTLINER CASCADIA VIN# 1FUJGLDR4BSAY1128
  DELETING 2009 FREIGHTLINER COLUMBIA VIN# 1FUJA6CK59LAG5818

AMENDING AA4177 WITH REPECTS TO 2011 FREIGHTLINER CASCADIA
VIN# 1FUJGLDR4BSAY1128 TO INCLUDE:
  PENSKE TRUCK LEASING CO
  PO BOX 563
  READING, PA 19603
```

---

01-10-2014 15:22

IA 4329 12 09                                                    Page  1 of  1

**JA068**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| Auto / Garage | All Other | Effective Date |
|---|---|---|
| Policy Number  EBA 010 40 45 | Policy Number  ENP 010 40 45 | of Endorsement  10-01-2013 |

WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
Issued to  ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

Agent  WOODBURY & CO. 32-033
WILMINGTON, NC                                           Endorsement #  2

---

### PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date 10

Subsequent Quarterly Installments Increased by          $          10

Revised Quarterly Installment Payment(s)               $        10,087

---

**It is agreed that the policy is amended as indicated by    ☒**

☐ **Policy Installment Premium Amended to:**
   ☐ Annual    ☐ Semi-Annual    ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

AMENDING AA4231 COMPREHENSIVE AND COLLISION LIMIT TO 120,000

AMENDING PREMIUM PER REVISED AA4183

---

12-18-2013 10:39

IA 4329 12 09                                           Page  1 of  1

**JA069**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage | All Other | Effective Date |
| Policy Number `EBA 010 40 45` | Policy Number `ENP 010 40 45` | of Endorsement `10-01-2013` |

`WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT`
Issued to `ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE`
Agent `WOODBURY & CO. 32-033`
`WILMINGTON, NC`                                              Endorsement # `1`

---

### PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date `16`

| | | |
|---|---|---|
| Subsequent Quarterly Installments Increased by | $ | `16` |
| Revised Quarterly Installment Payment(s) | $ | `10,077` |

It is agreed that the policy is amended as indicated by    ☒

☐ **Policy Installment Premium Amended to:**
   ☐ Annual    ☐ Semi-Annual    ☐ Quarterly
☐ **Named Insured**



☐ **Mailing Address**



☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

### All Other Reason for Change

---

### Auto / Garage Reason for Change

```
ADDING 1967 FRUEHAUF 40 CHASSIS VIN# FWH801108 PER REVISED AA4183

AMENDING CA9944 WITH RESPECT TO THE 2013 VOLKSWAGEN TIGUAN
VIN# WVGAV3AX3DW587098 TO READ:
  VOLKSWAGEN CREDIT LEASING LTD
  PO BOX 47377
  ATLANTA, GA 60048

AMENDING CA9944 WITH RESPECT TO THE VOLKSWAGEN GLI
VIN# 3VW4A7AJ5DM248677 TO READ:
  VOLKSWAGEN CREDIT LEASING LTD
  PO BOX 47377
  ATLANTA, GA 60048

AMENDING CA9944 WITH RESPECT TO THE VOLKSWAGEN GLI
VIN# 3VW467AJ3DM232933 TO READ:
```

---

`12-05-2013 12:45`

IA 4329 12 09                                              Page  1 of  2

**Auto / Garage Reason for Change**

```
VOLKSWAGEN CREDIT LEASING LTD
PO BOX 47377
ATLANTA, GA 60048
```



# The Cincinnati Insurance Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

## COMMON POLICY DECLARATIONS

Billing Method: **AGENCY BILL**

POLICY NUMBER  **ENP 010 40 45 / EBA 010 40 45**

**NAMED INSURED**  WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

**ADDRESS**  REFER TO IA905
(Number & Street,  330 SHIPYARD BLVD
Town, County,  WILMINGTON, NC 28412-1837
State & Zip Code)

**Previous Policy Number:**
ENP0104045

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number:  ENP 010 40 45        FROM: 10-01-2013   TO: 10-01-2014

**Automobile and / or Garage**
Policy number:  EBA 010 40 45        FROM: 10-01-2013   TO: 10-01-2014

Agency  WOODBURY & CO. 32-033
City   WILMINGTON, NC

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| Form | Date | Description |
|------|------|-------------|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA905 | 02/98 | NAMED INSURED SCHEDULE |
| IA4236 | 01/08 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4086 | 05/09 | EARLIER NOTICE OF CANCELLATION PROVIDED BY US |
| IA4117NC | 09/10 | NORTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| AA505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| XSC504 | 05/10 | EXCESS LIABILITY COVERAGE PART DECLARATIONS |

10-22-2013 08:38

Countersigned _____   By _____
                        (Date)                        (Authorized Representative)

IA 509 01 12                                       **Page  1 of  1**

ENP 010 40 45 / EBA 010 40 45

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98**          Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: ENP 010 40 45 / EBA 010 40 45          Effective Date: 10-01-2013

          WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT
Named Insured: ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial General Liability Coverage Part | $ |
| Commercial Auto Coverage Part | $ 32,039 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 8,061 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 124 |
| Installment Charge | $ 20 |
| ANNUAL TOTAL | $ 40,244 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | 10,056 | 10,061 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

**SCHEDULE**

Named Insured:

MOREHEAD CITY SHIPPING COMPANY

**IA 905 02 98**

**JA075**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap on Insurer Participation:**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY <u>AND</u> (2) AT THE TIME THE RENEWAL IS COMPLETED.**

IA 4236 01 08

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI  CASUALTY  COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**JA077**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**EXCESS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART CLAIMS-MADE**

**SCHEDULE**

Number of Days' Notice 　 45

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in Paragraph **2.** of either the **Cancellation** Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**IA 4086 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME AND FIDELITY COVERAGE PART***
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTORS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE FORM**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY**
**FARM COVERAGE PART**
**GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE FORM**
**INTERNET LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form **A**), forgery or alteration (Coverage Form **B**), or public employee dishonesty (Coverage Forms **O** and **P**).

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **2. a. Cancellation of Policies in Effect Less than 60 Days**

        If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **b. Cancellation of Policies in Effect for 60 Days or More**

        If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

        **(1)** Expiration of the policy term; or

        **(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

    **(a)** Nonpayment of premium;

    **(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

    **(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

    **(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

    **(e)** A fraudulent act against us by the insured or his or her

Includes copyrighted material of ISO
Properties, Inc., with its permission.

representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

**(h)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 45 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary.

    **1.** Nonrenewal

      **a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

        **(1)** Expiration of the policy if this policy has been written for one year or less; or

        **(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

      **b.** We need not mail or deliver the notice of nonrenewal if you have:

        **(1)** Insured property covered under this policy, under any other insurance policy;

        **(2)** Accepted replacement coverage; or

        **(3)** Requested or agreed to nonrenewal of this policy.

    **2.** The written notice of cancellation or nonrenewal will:

      **a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

      **b.** State the reason or reasons for cancellation or nonrenewal.

      **c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

IA 4117 NC 09 10       Includes copyrighted material of ISO Properties, Inc., with its permission.       Page 2 of 2

JA080

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 bil-

lion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

IA 4238 01 08

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                    President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

# THE CINCINNATI INSURANCE COMPANY
### CINCINNATI, OHIO

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**

Attached to and forming part of POLICY NUMBER:   <u>EBA 010 40 45</u>

Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**          **SCHEDULE OF COVERAGES AND COVERED AUTOS**

This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT<br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $      Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $     Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 3, 10 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2, 10 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2, 10 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8, 10 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $      Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8, 10 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $      for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

AA 505 03 06        Includes copyrighted material of Insurance Services Office, Inc., with its permission.   EBA 010 40 45      Page 1 of 3

**JA083**

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:
```
AA4183     02/06  AUTOMOBILE SCHEDULE
AA101      03/06  BUSINESS AUTO COVERAGE FORM
AA296      07/12  CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE
AA4171     11/05  ADDITIONAL INSURED BY CONTRACT
AA4172     09/09  BLANKET WAIVER OF SUBROGATION - AUTO
AA4177     03/06  LESSOR - ADDITIONAL INSURED AND LOSS PAYEE
AA4178     04/06  TRUCKERS - UNIFORM INTERMODAL INTERCHANGE ENDORSEMENT FORM UIIE-1
AA4214     08/07  COVERED AUTO DESIGNATION SYMBOL
AA4231     08/08  SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND
                  SIX
AA4243NC   02/10  NORTH CAROLINA UNINSURED / UNDERINSURED MOTORISTS COVERAGE NOTICE
AA4263     04/10  OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AP415NC    01/09  NORTH CAROLINA SELECTION OF HIGHER UNINSURED/UNDERINSURED
                  MOTORISTS COVERAGE LIMITS
CA0126     07/10  NORTH CAROLINA CHANGES
CA2116     04/10  NORTH CAROLINA UNINSURED MOTORISTS COVERAGE
CA9944     12/93  LOSS PAYABLE CLAUSE
AA261      03/06  AUTO MEDICAL PAYMENTS COVERAGE
AA265      04/09  CINCIPLUS BUSINESS AUTO EXPANDED COVERAGE (XC®) ENDORSEMENT
AA273      03/06  TRUCKERS ENDORSEMENT
```

\* This policy may be subject to final audit

AA 505 03 06          Includes copyrighted material of Insurance
                       Services Office, Inc., with its permission.   EBA 010 40 45          Page 2 of 3

JA084

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                   Beginning on Page

Description of Covered Auto Designation Symbols..........................................................................1
Owned Autos You Acquire After the Policy Begins .......................................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos..................................................................................................... 2

## SECTION II - LIABILITY COVERAGE

Coverage........................................................................................................................................ 2
Who is an Insured ......................................................................................................................... 2
Coverage Extensions
    Supplementary Payments ....................................................................................................... 2
    Out of State .............................................................................................................................. 3
Exclusions ..................................................................................................................................... 3
Limit of Insurance .......................................................................................................................... 5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage........................................................................................................................................ 7
Exclusions ..................................................................................................................................... 7
Limit of Insurance .......................................................................................................................... 8
Deductible....................................................................................................................................... 8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss ..................................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss ............................................................. 9
    Legal Action Against Us .......................................................................................................... 9
    Loss Payment - Physical Damage Coverages........................................................................ 9
    Transfer of Rights of Recovery Against Others to Us........................................................... 10
General Conditions
    Bankruptcy.............................................................................................................................. 10
    Concealment, Misrepresentation or Fraud............................................................................ 10
    Liberalization .......................................................................................................................... 10
    No Benefit to Bailee - Physical Damage Coverages............................................................. 10
    Other Insurance ..................................................................................................................... 10
    Premium Audit......................................................................................................................... 10
    Policy Period, Coverage Territory ......................................................................................... 10
    Two or More Coverage Forms or Policies Issued by Us....................................................... 11

## SECTION V - DEFINITIONS ........................................................................................... 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number  EBA 010 40 45  , effective  10-01-2013
The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: NC

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | UMPD | INCLUDED |
| UMPD DED: | 100 | | |
| Med Pay | 5,000 | | |

(*UMPD APPLIES)

| Veh. No. | Vehicle Information | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 2013 VOLKSWAGEN  TIGUAN S/N WVGAV3AX3DW587098 | | | | | Class: 7398 | Territory 017 |
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 30,700 | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | | 1,207 |

| 2 | 2013 VOLKSWAGEN GLI  S/N 3VW4A7AJ5DM248677 | | | | | Class: 7398 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 27,800 | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | | 1,207 |

| 3 | 2013 VOKSWAGEN GLI S/N 3VW467AJ3DM232933 | | | | | Class: 7398 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 27,300 | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | | 1,207 |

| 4 | 1968 TRAILMOBILE 40' CHASSIS S/N D38401 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 5 | 1971 THEURER 20' CHASSIS S/N N27776 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 6 | 1978 THERUER 40' CHASSIS S/N 801106 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

AA 4183 02 06

Page  1 of 5

JA086

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 7 | 1977 TRIM 40' CHASSIS S/N S32961 | | | | | | Class: 68499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 8 | 1977 TRIM 40' TRAILER S/N S33112 | | | | | | Class: 68499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 9 | 1996 MOSS STEAM JIMMY 14'   S/N 1PWUS0917TR000572 | | | | | | Class: 69499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | INCL | INCL | N/A | N/A | N/A | INCL | INCL |

| 10 | 1990 CHEVROLET FLAT BED ROLL   S/N 1GBL7H1JXLJ200790 | | | | | | Class: 33599   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 COST NEW: 25,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 1,337 | INCL | N/A | 24 | 62 | 115 | 1,538 |

| 11 | 1993 FORD RANGER PICKUP   S/N 1FTCR10A5PUB59259 | | | | | | Class: 01499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A COST NEW: 14,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 643 | INCL | N/A | N/A | N/A | 115 | 758 |

| 12 | 1978 THEURER 20' CHASSIS S/N N57422 | | | | | | Class: 68499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 13 | 1978 THEURER 20' CHASSIS S/N N57381 | | | | | | Class: 68499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 14 | 1994 CHEVROLET C1500 1/2 TON   S/N 1GCEC14H0RZ277176 | | | | | | Class: 01499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 COST NEW: 15,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 643 | INCL | 46 | 26 | 70 | 115 | 900 |

| 15 | 1998 CHEVROLET C1500 PICKUP   S/N 1GCEC14W1WZ156702 | | | | | | Class: 01499   Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 COST NEW: 17,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 643 | INCL | N/A | 28 | 80 | 115 | 866 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 16 | 2002 CHEV SILVERADO PICKUP S/N 1GCEC14W62Z234398 | | | | | Class: 01499 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 21,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 643 | INCL | 46 | 30 | 84 | 115 | 918 |

| 17 | 1998 CASH CONTAINER TRAILR S/N 1C9US4821WE698018 | | | | | Class: 68499 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |
| | | | | | COST NEW: 18,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 18 | 1995 STGH VAN 48' SLIDING S/N 1DW1A4822SS977303 | | | | | Class: 67499 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |
| | | | | | COST NEW: 22,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 19 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWEB2YAG96033 | | | | | Class: 50599 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 45,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,548 | INCL | N/A | 46 | 199 | 115 | 2,908 |

| 20 | 1999 FREIGHTLINER TRACTOR S/N 1FUYNMDB5XLA78138 | | | | | Class: 50499 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 45,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 1,865 | INCL | N/A | 37 | 158 | 115 | 2,175 |

| 21 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWDB6YAF71876 | | | | | Class: 50599 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 38,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,548 | INCL | N/A | 37 | 129 | 115 | 2,829 |

| 22 | 2004 FREIGHTLINER TRACTOR S/N 1FUJA6CKX4LM80496 | | | | | Class: 50599 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,548 | INCL | N/A | 67 | 358 | 115 | 3,088 |

| 23 | 2009 FREIGHTLINER COLUMBIA S/N 1FUJA6CK59LAG5818 | | | | | Class: 50599 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,650 | INCL | N/A | 83 | 574 | 115 | 3,422 |

| 24 | 2010 FREIGHTLINER CASCADIA S/N 1FUJGLDR7ALAR0415 | | | | | Class: 50599 | Territory 017 |
|----|------|------|------|------|------|------|------|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,650 | INCL | N/A | 93 | 644 | 115 | 3,502 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE  (CONTINUED)

| 25 | 2011 FREIGHTLINER  CASCADIA S/N 1FUJGLDR3ASAY1136 | | | | Class: 50599 | Territory 017 |

OTC-COMP DED: 2,000                                   Coll Ded: 2,000
                                                      COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 2,650 | INCL | N/A | 98 | 680 | 115 | 3,543 |

ADDITIONAL INTEREST - ADDITIONAL INSURED BY CONTRACT        Class:        Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| 342 | INCL | | | | | 342 |

BLANKET WAIVER OF SUBROGATION                               Class:        Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| 242 | INCL | | | | | 242 |

BUSINESS AUTO EXPANDED ENDORSEMENT                          Class:        Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| | | | 470 | | | 470 |

HIRED AND NON-OWNED                                         Class:        Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| 108 | INCL | | | | | 108 |

HIRED AUTO PHYSICAL DAMAGE        LIMIT: 60,000             Class:        Territory
OTC-COMP DED: 500                                   Coll Ded: 500

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| | | | 79 | 119 | | 198 |

TRAILER INTERCHANGE AGREEMENTS                              Class:        Territory
OTC-COMP DED: FULL                                  Coll Ded: 1,000

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|-----|------|-----|-------|
| | | | 4 | 4 | | 8 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies | UIM | -- Underinsured Motorists |
| | unless Stated Amount Value is indicated) | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

UMPD  -- Uninsured Motorists PD

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols designate the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| SYMBOL | DESCRIPTION |

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

USCA4 Appeal: 25-1848       Doc: 18       Filed: 09/30/2025       Pg: 98 of 526

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

## SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

AA 101 03 06     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 3 of 14

JA093

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    a. **Comprehensive Coverage**

       From any cause except:

       (1) The covered "auto's" collision with another object; or

       (2) The covered "auto's" overturn.

    b. **Specified Causes of Loss Coverage**

       Caused by:

       (1) Fire, lightning or explosion;

       (2) Theft;

       (3) Windstorm, hail or earthquake;

       (4) Flood;

       (5) Mischief or vandalism; or

       (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    c. **Collision Coverage**

       Caused by:

       (1) The covered "auto's" collision with another object; or

       (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    a. Glass breakage;

    b. "Loss" caused by hitting a bird or animal; and

    c. "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    a. **Transportation Expenses**

       We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority

in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5. **Other Insurance**

   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      (1) Excess while it is connected to a motor vehicle you do not own.

      (2) Primary while it is connected to a covered "auto" you own.

   b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   c. Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

   a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the Policy Period shown in the Declarations; and

   b. Within the coverage territory.

   The coverage territory is:

   a. The United States of America;

   b. The territories and possessions of the United States of America;

   c. Puerto Rico;

   d. Canada; and

   e. Anywhere in the world if:

      (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

   We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two or More Coverage Forms or Policies Issued by Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**JA100**

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 12 of 14

JA102

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number   EBA 010 40 45   , effective   11-20-2013

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

POLICY LIMITS

State: NC

| | | |
|---|---|---|
| Bodily Injury: | 1,000,000 CSL | |
| UM/UIM: | 1,000,000 | Property Damage: INCLUDED |
| UMPD DED: | 100 | UMPD         INCLUDED |
| Med Pay | 5,000 | |

(*UMPD APPLIES)

| Veh. No. | Vehicle Information |
|---|---|

**1**   2013 VOLKSWAGEN  TIGUAN S/N WVGAV3AX3DW587098            Class: 7398   Territory 017
OTC-COMP DED: 500                              Coll Ded: 500
                                             COST NEW: 30,700

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**2**   2013 VOLKSWAGEN GLI  S/N 3VW4A7AJ5DM248677            Class: 7398   Territory 017
OTC-COMP DED: 500                              Coll Ded: 500
                                             COST NEW: 27,800

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**3**   2013 VOKSWAGEN GLI S/N 3VW467AJ3DM232933            Class: 7398   Territory 017
OTC-COMP DED: 500                              Coll Ded: 500
                                             COST NEW: 27,300

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**4**   1968 TRAILMOBILE 40' CHASSIS S/N D38401            Class: 68499   Territory 017
OTC-COMP DED: N/A                              Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**5**   1971 THEURER 20' CHASSIS S/N N27776            Class: 68499   Territory 017
OTC-COMP DED: N/A                              Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**6**   1978 THERUER 40' CHASSIS S/N 801106            Class: 68499   Territory 017
OTC-COMP DED: N/A                              Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

AA 4183 02 06                                                      Page  1 of 5

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

**7**  1977 TRIM 40' CHASSIS S/N S32961                    Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**8**  1977 TRIM 40' TRAILER S/N S33112                    Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**9**  1996 MOSS STEAM JIMMY 14'  S/N 1PWUS0917TR000572     Class: 69499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| INCL | INCL | N/A | N/A | N/A | INCL | INCL |

**10** 1990 CHEVROLET FLAT BED ROLL  S/N 1GBL7H1JXLJ200790  Class: 33599  Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                          COST NEW: 25,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 1,337 | INCL | N/A | 24 | 62 | 115 | 1,538 |

**11** 1993 FORD RANGER PICKUP  S/N 1FTCR10A5PUB59259        Class: 01499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A
                                          COST NEW: 14,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 643 | INCL | N/A | N/A | N/A | 115 | 758 |

**12** 1978 THEURER 20' CHASSIS S/N N57422                  Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**13** 1978 THEURER 20' CHASSIS S/N N57381                  Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**14** 1994 CHEVROLET C1500 1/2 TON  S/N 1GCEC14H0RZ277176  Class: 01499  Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                          COST NEW: 15,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 643 | INCL | 46 | 26 | 70 | 115 | 900 |

**15** 1998 CHEVROLET C1500 PICKUP  S/N 1GCEC14W1WZ156702    Class: 01499  Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                          COST NEW: 17,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|-----|------|-----|-------|
| 643 | INCL | N/A | 28 | 80 | 115 | 866 |

JA106

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 16 | 2002 CHEV SILVERADO PICKUP S/N 1GCEC14W62Z234398 | | | | Class: 01499 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | Coll Ded: 500 | | |
| | | | | COST NEW: 21,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 643 | INCL | 46 | 30 | 84 | 115 | 918 |

| 17 | 1998 CASH CONTAINER TRAILR S/N 1C9US4821WE698018 | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | Coll Ded: N/A | | |
| | | | | COST NEW: 18,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 18 | 1995 STGH VAN 48' SLIDING S/N 1DW1A4822SS977303 | | | | Class: 67499 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | Coll Ded: N/A | | |
| | | | | COST NEW: 22,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 19 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWEB2YAG96033 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 45,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 46 | 199 | 115 | 2,908 |

| 20 | 1999 FREIGHTLINER TRACTOR S/N 1FUYNMDB5XLA78138 | | | | Class: 50499 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 45,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 1,865 | INCL | N/A | 37 | 158 | 115 | 2,175 |

| 21 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWDB6YAF71876 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 38,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 37 | 129 | 115 | 2,829 |

| 22 | 2004 FREIGHTLINER TRACTOR S/N 1FUJA6CKX4LM80496 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 67 | 358 | 115 | 3,088 |

| 24 | 2010 FREIGHTLINER CASCADIA S/N 1FUJGLDR7ALAR0415 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 93 | 644 | 115 | 3,502 |

| 25 | 2011 FREIGHTLINER  CASCADIA S/N 1FUJGLDR3ASAY1136 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 98 | 680 | 115 | 3,543 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 26 | 1967 FRUEHAUF 40 CHASSIS S/N FWH801108 | | | | | Class: 68499 | Territory 017 |
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27 | 2011 FREIGHTLINER CASCADIA S/N 1FUJGLDR4BSAY1128 | | | | | Class: 50599 | Territory 017 |
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 95,000 | | |

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 100 | 718 | 115 | | 3,583 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ADDITIONAL INTEREST - ADDITIONAL INSURED BY CONTRACT | | | | | Class: | Territory |
| OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 342 | INCL | | | | | 342 |

| | | | | | | |
|---|---|---|---|---|---|---|
| BLANKET WAIVER OF SUBROGATION | | | | | Class: | Territory |
| OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 242 | INCL | | | | | 242 |

| | | | | | | |
|---|---|---|---|---|---|---|
| BUSINESS AUTO EXPANDED ENDORSEMENT | | | | | Class: | Territory |
| OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 470 | | | 470 |

| | | | | | | |
|---|---|---|---|---|---|---|
| HIRED AND NON-OWNED | | | | | Class: | Territory |
| OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 108 | INCL | | | | | 108 |

| | | | | | | |
|---|---|---|---|---|---|---|
| HIRED AUTO PHYSICAL DAMAGE     LIMIT: 120,000 | | | | | Class: | Territory |
| OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | 135 | | 235 |

| | | | | | | |
|---|---|---|---|---|---|---|
| TRAILER INTERCHANGE AGREEMENTS | | | | | Class: | Territory |
| OTC-COMP DED: FULL | | | | Coll Ded: 1,000 | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 4 | 4 | | 8 |

JA108

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

UMPD  -- Uninsured Motorists PD

# AUTOMOBILE SCHEDULE

## ITEM    THREE

Attached to and forming a part of Policy Number    EBA 010 40 45    , effective    10-01-2013

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: NC

| | | |
|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage:    INCLUDED |
| UM/UIM: | 1,000,000 | UMPD    INCLUDED |
| UMPD DED: | 100 | |
| Med Pay | 5,000 | |

(*UMPD APPLIES)

**Veh. No.    Vehicle Information**

**1**  2013 VOLKSWAGEN  TIGUAN S/N WVGAV3AX3DW587098      Class: 7398   Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                           COST NEW: 30,700

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**2**  2013 VOLKSWAGEN GLI   S/N 3VW4A7AJ5DM248677      Class: 7398   Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                           COST NEW: 27,800

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**3**  2013 VOKSWAGEN GLI S/N 3VW467AJ3DM232933      Class: 7398   Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                           COST NEW: 27,300

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**4**  1968 TRAILMOBILE 40' CHASSIS S/N D38401      Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**5**  1971 THEURER 20' CHASSIS S/N N27776      Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**6**  1978 THERUER 40' CHASSIS S/N 801106      Class: 68499  Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**JA110**

# AUTOMOBILE SCHEDULE

## ITEM  THREE  (CONTINUED)

| 7 | 1977 TRIM 40' CHASSIS S/N S32961 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 8 | 1977 TRIM 40' TRAILER S/N S33112 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 9 | 1996 MOSS STEAM JIMMY 14'   S/N 1PWUS0917TR000572 | | | | | Class: 69499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | INCL | INCL | N/A | N/A | N/A | INCL | | INCL |

| 10 | 1990 CHEVROLET FLAT BED ROLL   S/N 1GBL7H1JXLJ200790 | | | | | Class: 33599 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | | Coll Ded: 2,000 | | |
| | | | | | COST NEW: 25,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 1,337 | INCL | N/A | 24 | 62 | 115 | | 1,538 |

| 11 | 1993 FORD RANGER PICKUP   S/N 1FTCR10A5PUB59259 | | | | | Class: 01499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |
| | | | | | COST NEW: 14,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 643 | INCL | N/A | N/A | N/A | 115 | | 758 |

| 12 | 1978 THEURER 20' CHASSIS S/N N57422 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 13 | 1978 THEURER 20' CHASSIS S/N N57381 | | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

| 14 | 1994 CHEVROLET C1500 1/2 TON   S/N 1GCEC14H0RZ277176 | | | | | Class: 01499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 15,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 643 | INCL | 46 | 26 | 70 | 115 | | 900 |

| 15 | 1998 CHEVROLET C1500 PICKUP   S/N 1GCEC14W1WZ156702 | | | | | Class: 01499 | Territory 017 |
|---|---|---|---|---|---|---|---|
| | OTC-COMP DED: 500 | | | | Coll Ded: 500 | | |
| | | | | | COST NEW: 17,000 | | |

| | BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | 643 | INCL | N/A | 28 | 80 | 115 | | 866 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE  (CONTINUED)

**16**   2002 CHEV SILVERADO PICKUP S/N 1GCEC14W62Z234398        Class: 01499   Territory 017
OTC-COMP DED: 500                          Coll Ded: 500
                                              COST NEW: 21,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-----|------|-----|-----|------|-----|---|-------|
| 643 | INCL | 46 | 30 | 84 | 115 | | 918 |

**17**   1998 CASH CONTAINER TRAILR S/N 1C9US4821WE698018        Class: 68499   Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A
                                              COST NEW: 18,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-----|------|-----|-----|------|------|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**18**   1995 STGH VAN 48' SLIDING S/N 1DW1A4822SS977303        Class: 67499   Territory 017
OTC-COMP DED: N/A                          Coll Ded: N/A
                                              COST NEW: 22,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-----|------|-----|-----|------|------|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**19**   2000 STERLING TRUCK-TRACTOR S/N 2FWYHWEB2YAG96033      Class: 50599   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 45,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 2,548 | INCL | N/A | 46 | 199 | 115 | | 2,908 |

**20**   1999 FREIGHTLINER TRACTOR S/N 1FUYNMDB5XLA78138        Class: 50499   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 45,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 1,865 | INCL | N/A | 37 | 158 | 115 | | 2,175 |

**21**   2000 STERLING TRUCK-TRACTOR S/N 2FWYHWDB6YAF71876      Class: 50599   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 38,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 2,548 | INCL | N/A | 37 | 129 | 115 | | 2,829 |

**22**   2004 FREIGHTLINER TRACTOR S/N 1FUJA6CKX4LM80496        Class: 50599   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 2,548 | INCL | N/A | 67 | 358 | 115 | | 3,088 |

**23**   2009 FREIGHTLINER COLUMBIA S/N 1FUJA6CK59LAG5818      Class: 50599   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 2,650 | INCL | N/A | 83 | 574 | 115 | | 3,422 |

**24**   2010 FREIGHTLINER CASCADIA S/N 1FUJGLDR7ALAR0415      Class: 50599   Territory 017
OTC-COMP DED: 2,000                        Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|-------|------|-----|-----|------|-----|---|-------|
| 2,650 | INCL | N/A | 93 | 644 | 115 | | 3,502 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 25 | 2011 FREIGHTLINER  CASCADIA S/N 1FUJGLDR3ASAY1136 | | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: 2,000 | | | Coll Ded: 2,000 | | |
| | | | | COST NEW: 75,000 | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 98 | 680 | 115 | 3,543 |

| 26 | 1967 FRUEHAUF 40 CHASSIS S/N FWH801108 | | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|---|
| | OTC-COMP DED: N/A | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| ADDITIONAL INTEREST - ADDITIONAL INSURED BY CONTRACT | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: N/A | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 342 | INCL | | | | | 342 |

| BLANKET WAIVER OF SUBROGATION | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: N/A | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 242 | INCL | | | | | 242 |

| BUSINESS AUTO EXPANDED ENDORSEMENT | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: N/A | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 470 | | | 470 |

| HIRED AND NON-OWNED | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: N/A | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 108 | INCL | | | | | 108 |

| HIRED AUTO PHYSICAL DAMAGE    LIMIT: 120,000 | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: 500 | | | Coll Ded: 500 | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | 135 | | 235 |

| TRAILER INTERCHANGE AGREEMENTS | | | | Class: | Territory |
|---|---|---|---|---|---|
| OTC-COMP DED: FULL | | | Coll Ded: 1,000 | | |

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 4 | 4 | | 8 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| CAC | -- Combined Additional Coverage | PIP | -- Personal Injury Protection |
| FT&S | -- Fire, Theft, and Supplemental | T&L | -- Towing and Labor Costs |
| | | RR | -- Rental Reimbursement |

UMPD   -- Uninsured Motorists PD

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number   EBA 010 40 45   , effective  10-01-2013

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

POLICY LIMITS
State: NC

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | UMPD | INCLUDED |
| UMPD DED: | 100 | | |
| Med Pay | 5,000 | | |

(*UMPD APPLIES)

---

**Veh. No.   Vehicle Information**

**1**   2013 VOLKSWAGEN  TIGUAN S/N WVGAV3AX3DW587098        Class: 7398   Territory 017
OTC-COMP DED: 500                                         Coll Ded: 500
                                                          COST NEW: 30,700

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**2**   2013 VOLKSWAGEN GLI   S/N 3VW4A7AJ5DM248677        Class: 7398   Territory 017
OTC-COMP DED: 500                                         Coll Ded: 500
                                                          COST NEW: 27,800

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**3**   2013 VOKSWAGEN GLI S/N 3VW467AJ3DM232933          Class: 7398   Territory 017
OTC-COMP DED: 500                                         Coll Ded: 500
                                                          COST NEW: 27,300

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 588 | INCL | 25 | 81 | 343 | 170 | 1,207 |

**4**   1968 TRAILMOBILE 40' CHASSIS S/N D38401            Class: 68499  Territory 017
OTC-COMP DED: N/A                                         Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**5**   1971 THEURER 20' CHASSIS S/N N27776               Class: 68499  Territory 017
OTC-COMP DED: N/A                                         Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

**6**   1978 THERUER 40' CHASSIS S/N 801106               Class: 68499  Territory 017
OTC-COMP DED: N/A                                         Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

---

JA115

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

**7**  1977 TRIM 40' CHASSIS S/N S32961                                              Class: 68499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**8**  1977 TRIM 40' TRAILER S/N S33112                                             Class: 68499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**9**  1996 MOSS STEAM JIMMY 14'   S/N 1PWUS0917TR000572                            Class: 69499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| INCL | INCL | N/A | N/A | N/A | INCL | | INCL |

**10**  1990 CHEVROLET FLAT BED ROLL   S/N 1GBL7H1JXLJ200790                       Class: 33599  Territory 017
OTC-COMP DED: 2,000                                        Coll Ded: 2,000
                                                          COST NEW: 25,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 1,337 | INCL | N/A | 24 | 62 | 115 | | 1,538 |

**11**  1993 FORD RANGER PICKUP   S/N 1FTCR10A5PUB59259                            Class: 01499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A
                                                          COST NEW: 14,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 643 | INCL | N/A | N/A | N/A | 115 | | 758 |

**12**  1978 THEURER 20' CHASSIS S/N N57422                                        Class: 68499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**13**  1978 THEURER 20' CHASSIS S/N N57381                                        Class: 68499  Territory 017
OTC-COMP DED: N/A                                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 67 | INCL | N/A | N/A | N/A | INCL | | 67 |

**14**  1994 CHEVROLET C1500 1/2 TON   S/N 1GCEC14H0RZ277176                       Class: 01499  Territory 017
OTC-COMP DED: 500                                          Coll Ded: 500
                                                          COST NEW: 15,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 643 | INCL | 46 | 26 | 70 | 115 | | 900 |

**15**  1998 CHEVROLET C1500 PICKUP   S/N 1GCEC14W1WZ156702                        Class: 01499  Territory 017
OTC-COMP DED: 500                                          Coll Ded: 500
                                                          COST NEW: 17,000

| BI | PD | MP | OTC | COLL | UM* | | TOTAL |
|----|----|----|-----|------|-----|---|-------|
| 643 | INCL | N/A | 28 | 80 | 115 | | 866 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 16 | 2002 CHEV SILVERADO PICKUP S/N 1GCEC14W62Z234398 | | | Class: 01499 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 500                           Coll Ded: 500
                                            COST NEW: 21,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 643 | INCL | 46 | 30 | 84 | 115 | 918 |

| 17 | 1998 CASH CONTAINER TRAILR S/N 1C9US4821WE698018 | | | Class: 68499 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: N/A                           Coll Ded: N/A
                                            COST NEW: 18,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 18 | 1995 STGH VAN 48' SLIDING S/N 1DW1A4822SS977303 | | | Class: 67499 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: N/A                           Coll Ded: N/A
                                            COST NEW: 22,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

| 19 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWEB2YAG96033 | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 45,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 46 | 199 | 115 | 2,908 |

| 20 | 1999 FREIGHTLINER TRACTOR S/N 1FUYNMDB5XLA78138 | | | Class: 50499 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 45,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 1,865 | INCL | N/A | 37 | 158 | 115 | 2,175 |

| 21 | 2000 STERLING TRUCK-TRACTOR S/N 2FWYHWDB6YAF71876 | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 38,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 37 | 129 | 115 | 2,829 |

| 22 | 2004 FREIGHTLINER TRACTOR S/N 1FUJA6CKX4LM80496 | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,548 | INCL | N/A | 67 | 358 | 115 | 3,088 |

| 23 | 2009 FREIGHTLINER COLUMBIA S/N 1FUJA6CK59LAG5818 | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 83 | 574 | 115 | 3,422 |

| 24 | 2010 FREIGHTLINER CASCADIA S/N 1FUJGLDR7ALAR0415 | | | Class: 50599 | Territory 017 |
|---|---|---|---|---|---|

OTC-COMP DED: 2,000                         Coll Ded: 2,000
                                            COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 2,650 | INCL | N/A | 93 | 644 | 115 | 3,502 |

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| 25 | 2011 FREIGHTLINER  CASCADIA S/N 1FUJGLDR3ASAY1136 | | | | Class: 50599 | Territory 017 |

OTC-COMP DED: 2,000    Coll Ded: 2,000
COST NEW: 75,000

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|----|----|----|----|
| 2,650 | INCL | N/A | 98 | 680 | 115 | 3,543 |

| 26 | 1967 FRUEHAUF 40 CHASSIS S/N FWH801108 | | | | Class: 68499 | Territory 017 |

OTC-COMP DED: N/A    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|----|----|----|----|----|----|----|
| 67 | INCL | N/A | N/A | N/A | INCL | 67 |

ADDITIONAL INTEREST - ADDITIONAL INSURED BY CONTRACT    Class:    Territory
OTC-COMP DED: N/A    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| 342 | INCL | | | | | 342 |

BLANKET WAIVER OF SUBROGATION    Class:    Territory
OTC-COMP DED: N/A    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| 242 | INCL | | | | | 242 |

BUSINESS AUTO EXPANDED ENDORSEMENT    Class:    Territory
OTC-COMP DED: N/A    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| | | | 470 | | | 470 |

HIRED AND NON-OWNED    Class:    Territory
OTC-COMP DED: N/A    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| 108 | INCL | | | | | 108 |

HIRED AUTO PHYSICAL DAMAGE    LIMIT: 60,000    Class:    Territory
OTC-COMP DED: 500    Coll Ded: 500

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| | | | 79 | 119 | | 198 |

TRAILER INTERCHANGE AGREEMENTS    Class:    Territory
OTC-COMP DED: FULL    Coll Ded: 1,000

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|----|----|----|----|----|----|----|
| | | | 4 | 4 | | 8 |

AA 4183 02 06    Page  4 of 5

JA118

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

SYMBOLS:

| | |
|---|---|
| BI | -- Bodily Injury |
| PD | -- Property Damage |
| MP | -- Medical Payments |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) |
| CAC | -- Combined Additional Coverage |
| FT&S | -- Fire, Theft, and Supplemental |

| | |
|---|---|
| SPEC | -- Specified Perils |
| COLL | -- Collision |
| UM | -- Uninsured Motorists |
| UIM | -- Underinsured Motorists |
| PIP | -- Personal Injury Protection |
| T&L | -- Towing and Labor Costs |
| RR | -- Rental Reimbursement |

UMPD  -- Uninsured Motorists PD

AA 4183 02 06

Page  5  of  5

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**1. SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

 **4.** We will not pay for "loss" to any of the following:

  **a.** Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

  **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

  **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

  **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

 Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

  **a.** Permanently installed in or upon the covered "auto";

  **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

  **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

  **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**2. SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

 **1.** The most we will pay for:

  **a.** "Loss" to any covered "auto" is the lesser of;

   **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

  **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

   **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

   **(2)** Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

   **(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**3. AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

 The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED BY CONTRACT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |
| **Named Insured:** WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION II - LIABILITY COVERAGE, A. Coverage, I. Who is an Insured** is amended to include as an insured any person or organization with which you have agreed in a valid written contract to provide insurance as is afforded by this policy.

This provision is limited to the scope of the valid written contract.

This provision does not apply unless the valid written contract has been executed prior to the "bodily injury" or "property damage".

**AA 4171 11 05**

**JA121**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET WAIVER OF SUBROGATION - AUTO

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective:<br>10-01-2013 | Policy Number:<br>EBA 010 40 45 |
|---|---|
| Named Insured:<br>WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. **Blanket Waiver of Subrogation**

   **SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 5. Transfer of Rights of Recovery Against Others to Us** is amended by the addition of the following:

   We waive any right of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" arising out of the operation of a covered "auto" when you have assumed liability for such "bodily injury" or "property damage" under an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

AA 4172 09 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

    **BUSINESS AUTO COVERAGE FORM**
    **BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
    **GARAGE COVERAGE FORM**
    **MOTOR CARRIER COVERAGE FORM**
    **TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |

| Named Insured: |
|---|
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE |

| Countersigned by: |
|---|
| |

(Authorized Representative)

## SCHEDULE

| Insurance Company   THE CINCINNATI INSURANCE COMPANY<br>Policy Number   EBA 010 40 45<br>Effective Date   10-01-2013 |
|---|
| Expiration Date   10-01-2014 |
| Named Insured<br><br>Address |
| Additional Insured (Lessor)<br>Address<br>PENSKE TRUCK LEASING AND RENTAL CO<br>PO BOX 563<br>READING , PA 19603 |
| Designation or Description of "Leased Autos"<br>2009   FREIGHTLINER COLUMBIA         1FUJA6CK59LAG5818 |

| Coverages | Limit of Insurance |
|---|---|
| Liability | $REFER TO AA4183          Each "Accident" |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $          For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   **a.** You;

   **b.** Any of your "employees" or agents; or

   **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

AA 4177 03 06          Includes copyrighted material of ISO Properties, Inc., with its permission.          Page 2 of 2

JA124

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |

| Named Insured: |
|---|
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE |

| Countersigned by: |
|---|

(Authorized Representative)

**SCHEDULE**

| Insurance Company   THE CINCINNATI INSURANCE COMPANY<br>Policy Number   EBA 010 40 45<br>Effective Date   10-01-2013 |
|---|
| Expiration Date  10-01-2014 |
| Named Insured<br><br>Address<br><br><br> |
| Additional Insured (Lessor)<br>Address<br>PENSKE LEASING AND RENTAL CO<br>PO BOX 563<br>READING , PA 19603<br><br><br> |
| Designation or Description of "Leased Autos"<br>2010  FREIGHTLINER CASCADIA          1FUJGLDR7ALAR0415 |

AA 4177 03 06          Includes copyrighted material of ISO          Page 1 of 2
                        Properties, Inc., with its permission.

JA125

USCA4 Appeal: 25-1848      Doc: 18      Filed: 09/30/2025      Pg: 132 of 526

| Coverages | Limit of Insurance |
|---|---|
| Liability | $REFER TO AA4183          Each "Accident" |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $          For Each Covered "Leased Auto" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

    **a.** You;

    **b.** Any of your "employees" or agents; or

    **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |
| Named Insured: | |
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

## SCHEDULE

| |
|---|
| Insurance Company   THE CINCINNATI INSURANCE COMPANY<br>Policy Number   EBA 010 40 45<br>Effective Date   10-01-2013 |
| Expiration Date   10-01-2014 |
| Named Insured<br><br>Address<br><br><br> |
| Additional Insured (Lessor)<br>Address<br>PENSKE LEASING AND RENTAL CO<br>PO BOX 563<br>READING , PA 19603<br><br><br> |
| Designation or Description of "Leased Autos"<br>2011 FREIGHTLINER CASCADIA         1FUJGLDR3ASAY1136 |

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 4177 03 06                               Page 1 of 2

| Coverages | Limit of Insurance |
|---|---|
| Liability | $REFER TO AA4183          Each "Accident" |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $          For Each Covered "Leased Auto" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

    **a.** You;

    **b.** Any of your "employees" or agents; or

    **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 11-20-2013 | EBA 010 40 45 |
| Named Insured: | |
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

### SCHEDULE

| |
|---|
| Insurance Company   THE CINCINNATI INSURANCE COMPANY |
| Policy Number   EBA 010 40 45 |
| Effective Date   11-20-2013 |
| Expiration Date   10-01-2014 |
| Named Insured |
| Address |
| Additional Insured (Lessor) |
| Address |
| PENSKE TRUCK LEASING CO |
| PO BOX 563 |
| READING , PA 19603 |
| Designation or Description of "Leased Autos" |
| 2011  FREIGHTLINER CASCADIA          1FUJGLDR4BSAY1128 |

Includes copyrighted material of ISO
Properties, Inc., with its permission.

| Coverages | Limit of Insurance |
|---|---|
| Liability | $REFER TO AA4183          Each "Accident" |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS: $REFER TO AA4183          For Each Covered "Leased Auto" |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS;<br>MINUS: $          For Each Covered "Leased Auto" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   **a.** You;

   **b.** Any of your "employees" or agents; or

   **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRUCKERS - UNIFORM INTERMODAL INTERCHANGE ENDORSEMENT FORM UIIE - 1

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |
| Named Insured: | |
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

It is agreed that such insurance as is afforded by the policy for Auto Bodily Injury and Property Damage Liability applies to liability assumed by the named insured, as "Motor Carrier Participant", under Section **F.4.** of the Uniform Intermodal Interchange and Facilities Access Agreement, and any subsequent amendments thereto:

**F.4. Indemnity**

    **a.** Subject to the exceptions set forth in Subsection **(b)** below, Motor Carrier agrees to defend, hold harmless, and fully indemnify the Indemnitees (without regard to whether the Indemnitees' liability is vicarious, implied by law, or as a result of the fault or negligence of the Indemnitees), against any and all claims, "suits", loss, damage or liability, for "bodily injury", death and / or "property damage", including reasonable attorney fees and costs incurred in the defense against a claim or "suit", or incurred because of the wrongful failure to defend against a claim or "suit", or in enforcing Section **F.4.** (collectively the "Damages"), caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period; and / or presence on the Facility Operator's premises.

    **b.** **Exceptions**

        The foregoing indemnity provision shall not apply to the extent Damages: **(i)** occur during the presence of the Motor Carrier on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the Indemnitees, their agents, "employees", vendors or third party invitees (excluding Indemnitor); or **(ii)** are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit **A,** unless such defects were caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, its agents, "employees", vendors, or subcontractors during the Interchange Period.

Subject to the following provisions:

    **1.** The limit of the company's liability under this policy for damages because of "bodily injury" and "property damage" arising out of the use, operation, maintenance or possession of interchange equipment shall be the applicable amount stated below and designated by an "x" unless a greater amount is otherwise stated in

**AA 4178 04 06**
Includes copyrighted material of ISO
Properties, Inc., with its permission.

Page 1 of 2

**JA131**

the policy as applicable to such "bodily injury" or "property damage".

---
☐  Single Limit "Bodily Injury" and "Property Damage" (or the Equivalent)

$ _____

Each "Accident"
---

2. The company shall:

    **a.**  Upon issuance of this endorsement, furnish to the President, The Intermodal Association of North America, 11785 Beltsville Drive, 11th Flr., Beltsville, MD 20705, a properly executed Certificate of Insurance which carries the notation that the company has issued to the named insured Motor Carrier a policy of liability insurance; and

    **b.**  Upon cancellation or termination of the policy of which this endorsement forms a part, furnish a notice of such cancellation or termination NOT LESS THAN 30 DAYS prior to the effective date of such cancellation or termination, such notice to be mailed to said President at the above address.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

| Endorsement Effective: | Policy No. |
|---|---|
| 10-01-2013 | EBA 010 40 45 |
| Named Insured: | |
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by | |

(Authorized Representative)

**Section I - Covered Autos** is amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description of Covered Auto Designation Symbols |
|---|---|---|
| | | FOR USE WITH THE BUSINESS AUTO COVERAGE FORM |
| 10 | = | ANY NON-OWNED CHASIS, TRAILER, OR CONTAINER IN THE INSURED'S CARE, CUSTODY OR CONTROL UNDER AN INTERCHANGE AGREEMENT OR US GOVT CONTRACT |

**AA 4214 08 07**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO - ITEMS FOUR, FIVE, AND SIX**

Attached to and forming a part of:
Form AA 505 (Business Auto Coverage Part)

EBA 010 40 45

**NUMBER**

**ITEM FOUR SCHEDULE OF HIRED OR**

**BORROWED COVERED AUTO COVERAGE AND PREMIUMS.**

**LIABILITY COVERAGE--RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| | | | |
| | | | TOTAL PREMIUM |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $60,000 WHICHEVER IS LESS MINUS $500 DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | | | | INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $ WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $60,000 WHICHEVER IS LESS MINUS $500 DED. FOR EACH COVERED AUTO | | | | INCL |
| | | | TOTAL PREMIUM | | INCL |

**ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | TOTAL PREMIUM | | |

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

AA 4231 08 08                                                                    Page 1 of 2

**JA134**

**ITEM SIX SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS--LIABILITY COVERAGE--PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | PREMIUMS | |
|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts ☐ Per Mile | | | |
| ☐ Gross Receipts ☐ Mileage | LIABILITY | AUTO MEDICAL COVERAGE | LIABILITY PAYMENTS | AUTO MEDICAL COVERAGE PAYMENTS |
| | | | | |
| | | TOTAL PREMIUMS | | |
| | | MINIMUM PREMIUMS | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

**A.** Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

**B.** Advertising Revenue.

**C.** Taxes which you collect as a separate item and remit directly to a governmental division.

**D.** C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, 1985

AA 4231 08 08                                             Page 2 of 2

**JA135**

# NORTH CAROLINA UNINSURED / UNDERINSURED MOTORISTS COVERAGE NOTICE

The Laws of the State of North Carolina require that we provide you with notice containing the following information:

NOTICE: You are required to purchase Uninsured Motorist Bodily Injury Coverage, Uninsured Motorist Property Damage Coverage and, in some cases, Underinsured Motorist Bodily Injury Coverage. This insurance protects you and your family against injuries and property damage caused by the negligence of other drivers who may have limited or only minimum coverage or even no liability insurance. You may purchase Uninsured Motorist Bodily Injury Coverage and, if applicable, Underinsured Motorist Coverage with limits up to one million dollars ($1,000,000) per person and one million dollars ($1,000,000) per accident or at such lesser limits you choose. You cannot purchase coverage for less than the minimum limits for the bodily injury and property damage coverage that are required for your own vehicle. If you do not choose a greater or lesser limit for Uninsured Motorist Bodily Injury Coverage, a lesser limit for Uninsured Motorist Property Damage Coverage, and / or a greater or lesser limit for Underinsured Motorist Bodily Injury Coverage, then the limits for the Uninsured Motorist Bodily Injury Coverage and, if applicable, the Underinsured Motorist Bodily Injury Coverage will be the same as the highest limits for Bodily Injury Liability Coverage for any one of your vehicles insured under the policy and the limits for the Uninsured Motorist Property Damage Coverage will be the same as the highest limits for Property Damage Liability Coverage for any one of your own vehicles insured under the policy. If you wish to purchase Uninsured Motorist and, if applicable, Underinsured Motorist Coverage at different limits than the limits for your own vehicle insured under the policy, then you should contact your insurance agent to discuss your options for obtaining different coverage limits. You should also read your entire policy to understand what is covered under Uninsured and Underinsured Motorist Coverages.

The purpose of this notice is informational. This notice does not change or replace the wording in your policy.

**AA 4243 NC 02 10**
Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

AA 4263 04 10

POLICY NUMBER: **EBA 010 40 45**

COMMERCIAL AUTO
AP 415 NC 01 09

# NORTH CAROLINA SELECTION OF HIGHER UNINSURED/UNDERINSURED MOTORISTS COVERAGE LIMITS

| Policy Number: **EBA 010 40 45** | Policy Effective Date: **10-01-2013** |
|---|---|
| **Company:**<br>THE CINCINNATI INSURANCE COMPANY | **Producer:**<br>WOODBURY & CO. 32-033 |
| **Named Insured:**<br>WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT<br>ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |

North Carolina law permits you to make certain decisions regarding Uninsured Motorists Coverage (UM) and Underinsured Motorists Coverage (UIM). This document describes this coverage and the options available.

You should read this document carefully and contact your agent if you have any questions regarding Uninsured Motorists Coverage and Underinsured Motorists Coverage and your options with respect to these coverages.

This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations Page(s) and/or Schedule(s) for complete information on the coverages you are provided.

**OPTIONAL SELECTION OF HIGHER UNINSURED/UNDERINSURED MOTORISTS COVERAGE LIMITS**

Uninsured Motorists Coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage caused by an automobile accident. Also included are damages due to bodily injury that result from an automobile accident with a hit-and-run vehicle whose owner or operator cannot be identified.

Underinsured Motorists Coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an automobile accident.

Your policy must include UM coverage with limits at least equal to the following limits applicable to any one vehicle insured under your policy that is not a "commercial motor vehicle", as defined in G.S. 20-4.01(3d): (1) the highest bodily injury liability coverage limit with respect to Bodily Injury Uninsured Motorists Coverage; and (2) the highest property damage liability coverage limit with respect to Property Damage Uninsured Motorists Coverage.

If the liability coverage limits in your policy exceed the following minimum limits: (1) $30,000 bodily injury per person; (2) $60,000 bodily injury per accident; (3) $25,000 property damage, your policy must include UIM Coverage with limits equal to the highest limits of bodily injury coverage for any one vehicle insured under your policy that is not a "commercial motor vehicle", as defined in G.S. 20-4.01(3d).

If the liability coverage limits in your policy do not exceed the minimum limits required by law as cited above, your policy will not include UIM Coverage.

You may select optional higher limits for UM Bodily Injury Coverage, or UM Bodily Injury and UIM Coverage if UIM Coverage is included in your policy, up to and including $1,000,000 per person and $1,000,000 per accident.

"Commercial motor vehicles" as defined in G.S. 20-4.01(3d) includes:

a. A combination of motor vehicles that has a gross combination weight of at least 26,001 pounds and includes as part of the combination a trailer or semitrailer that has a gross vehicle weight of at least 10,001 pounds;

**AP 415 NC 01 09**       © Insurance Services Office, Inc., 2009       **Page 1 of 3** ☐

**b.** A single motor vehicle that has a gross weight of at least 26,001 pounds;

**c.** A combination of motor vehicles that includes a part of the combination a towing unit that has a gross vehicle weight of at least 26,001 pounds and a trailer, semitrailer, service or utility trailer that has a gross vehicle weight of less than 10,001 pounds;

**d.** Any motor vehicle that is designed to transport 16 or more passengers, including the driver; or

**e.** A motor vehicle transporting hazardous materials and is required to be placarded in accordance with 49 C.F.R. Part 172, Subpart F.

(CHOOSE ONLY ONE OF THE FOLLOWING)

We make available the following limits for UM/UIM coverage. Please indicate your choice by initialing next to the appropriate items and signing below.

(Initials) a.  **SPLIT LIMIT POLICIES:**

I select the higher Split Limits Bodily Injury Uninsured Motorists Coverage and Under-

_____ insured Motorists Coverage, if Underinsured Motorists Coverage is included in my policy, indicated below. I understand that my policy will also include a Split Limit for Property Damage Uninsured Motorists Coverage equal to the highest property damage liability coverage limit applicable to any one vehicle insured under my policy that is not a "commercial motor vehicle", as defined in G.S. 20-4.01(3d).

OR

(Initials) b.  **COMBINED SINGLE LIMIT POLICIES:**

I select the higher Combined Single Limit for Bodily Injury Uninsured Motorists Cover-

_____ age, Property Damage Uninsured Motorists Coverage and Underinsured Motorists Coverage, if Underinsured Motorists Coverage is included in my policy, indicated below.

(Choose one Split Limits Bodily Injury option OR one Combined Single Limit option from the following:)

| (Initials) | Split Limits - Bodily Injury | OR | (Initials) | Combined Single Limit |
|---|---|---|---|---|
| _____ | $ 50,000/100,000 | | _____ | $ 100,000 |
| _____ | 100,000/100,000 | | _____ | 250,000 |
| _____ | 100,000/300,000 | | _____ | 350,000 |
| _____ | 250,000/500,000 | | _____ | 500,000 |
| _____ | 500,000/500,000 | | _____ | 1,000,000 |
| _____ | 500,000/1,000,000 | | | |
| _____ | 1,000,000/1,000,000 | | | |
| _____ | (Other) | | _____ | (Other) |

| | |
|---|---|
| Signature Of Applicant/Named Insured | Date |

---

**The selection of UM/UIM coverage will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy with this company or any affiliated company unless the named insured makes a written request to the company to exercise a different option.**

EBA 010 40 45

**JA140**

COMMERCIAL AUTO
CA 01 26 07 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, North Carolina, the policy is changed as follows:

**A. Changes In Liability Coverage**

1. The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law as follows:

   **a.** $30,000 for "bodily injury" to any one person caused by any one "accident";

   **b.** $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   **c.** $25,000 for "property damage" caused by any one "accident".

   This provision will not change the Limit of Insurance.

2. If the policy provides Liability Coverage only for owned "autos", a temporary substitute for one of these will also be considered a covered "auto", subject to the following provisions:

   **a.** The owned "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

   **b.** The temporary substitute must be owned by someone other than you or a member of your household.

   **c.** The temporary substitute must be with the permission of the owner.

   **d.** The Liability Coverage for the temporary substitute is excess over any other collectible insurance.

**B. Changes In Physical Damage Coverage**

Paragraph **A.3. Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles** is replaced by the following:

**Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by covered "auto's" collision or overturn and "loss" caused by hitting a bird or animal considered a "loss" under Collision Coverage.

**C. Changes In Uninsured Motorists Coverage**

The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina Law as follows:

1. $30,000 for "bodily injury" to any one person caused by any one "accident";

2. $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

3. $25,000 for "property damage" caused by any one "accident".

This provision will not change the total Limit of Insurance.

CA 01 26 07 10　　　　© Insurance Services Office, Inc., 2010　　　　Page 1 of 4　☐

**D. Auto Medical Payments Coverage**

Exclusion **C.5.** of Auto Medical Payments Coverage, relating to "bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos", applies only if workers' compensation benefits are available.

**E. Changes In Garagekeepers Coverage**

If the policy provides Garagekeepers Coverage, any deductible will apply only to the amount of "loss" and will not reduce the Limit of Insurance.

**F. Changes In Conditions**

1. Paragraph **2.** of the **Cancellation Common Policy** Condition is replaced by the following:

   We may cancel any type or limit of coverage provided by this policy to the extent that it cannot be ceded to the North Carolina Reinsurance Facility as follows:

   **a.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **b.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

   **(1)** Expiration of the policy term; or

   **(2)** Anniversary date;

   stated in the policy only for one or more of the following reasons:

   **(a)** Nonpayment of premium. Cancellation for nonpayment of premium is not effective if the amount due is paid before the effective date set forth in the notice of cancellation.

   **(b)** An act or omission by the "insured" or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy, or

   presenting a claim under this policy.

   **(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk.

   **(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk.

   **(e)** A fraudulent act against us by the "insured" or his or her representative that materially affects the insurability of the risk.

   **(f)** Willful failure by the "insured" or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us.

   **(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30.

   **(h)** Conviction of the "insured" of a crime arising out of acts that materially affect the insurability of the risk.

   **(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina.

   **(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

   We may cancel any type or limit of coverage provided by the policy to the extent that it can be ceded to the North Carolina Reinsurance Facility only for one or more of the following reasons by mailing to the first Named Insured at least 15 days' notice at the last address known to us:

CA 01 26 07 10    © Insurance Services Office, Inc., 2010    Page 2 of 4    ☐

**JA142**

(1) Nonpayment of premium.

(2) You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility.

(3) Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

(4) This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

To the extent that any type or limit of coverage provided by this policy cannot be ceded to the North Carolina Reinsurance facility, the following provisions are added and supersede any other provisions to the contrary:

**G.  Nonrenewal**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

   **a.** Expiration of the policy if it has been written for one year or less; or

   **b.** Anniversary date if it is a continuous policy or has been written for more than one year or for an indefinite term.

2. We need not mail or deliver the notice of nonrenewal if you have:

   **a.** Insured property covered under this policy under any other insurance policy;

   **b.** Accepted replacement coverage; or

   **c.** Requested or agreed to nonrenewal of this policy.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. The written notice of cancellation or nonrenewal will:

   **a.** Be mailed or delivered to the first Named Insured and any designated loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

   **b.** State the reason or reasons for cancellation or nonrenewal.

To the extent that any type or limit of coverage provided by this policy can be ceded to the North Carolina Reinsurance Facility, the following

provision is added and supersedes any other provision to the contrary:

**H.  Nonrenewal**

We may nonrenew this policy only for one or more of the following reasons:

1. Nonpayment of premium.

2. You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility.

3. Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

4. This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

5. You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

**I.  Common Policy** Condition **B. Changes** is changed to read as follows:

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium for that change as of the effective date of change. If we revise this policy form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**J.  Loss Condition 1. Appraisal For Physical Damage Loss** is replaced by the following:

**Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision, in writing, agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

CA 01 26 07 10            © Insurance Services Office, Inc., 2010            Page 3 of 4    ☐

If we submit to an appraisal, we will still retain our right to deny the claim.

**K.    Appraisal For Property Damage**

In the event of an "accident":

1.  If the claimant and we fail to agree as to the difference in fair market value of the motor vehicle immediately before and immediately after the "accident" and the difference in the claimant's and our estimate of the diminution in fair market value of the vehicle is greater than two thousand dollars ($2,000) or twenty-five percent (25%) of the fair market retail value of the vehicle prior to the "accident" as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; and

2.  Coverage for the liability claim is not in dispute;

then on the written demand of either the claimant or us, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days after the demand.

Should the appraisers fail to agree, they shall then select a competent and disinterested appraiser to serve as an umpire. If the appraisers cannot agree upon an umpire within 15 days, either the claimant or we may request that a magistrate resident in the county where the insured motor vehicle is registered or the county where the "accident" occurred select the umpire.

The umpire then shall prepare a report determining the amount of "property damage" and shall file the report with us and the claimant.

The claimant or we shall have 15 days from the filing of the report to reject the report and notify the other party of such rejection. If the report is not rejected within 15 days from the filing of the report, the report shall be binding upon both the claimant and us.

Each appraiser shall be paid by the party selecting the appraiser, and the expenses of appraisal and umpire shall be paid by the parties equally.

If either party elects to have an appraisal to determine the amount of "property damage", then the amount of "property damage" cannot be decided through arbitration.

**L.    Changes In General Conditions**

Paragraph **2.** of the **Concealment, Misrepresentation Or Fraud** General Condition is amended by the addition of the following:

This condition does not apply for coverage up to the minimum limits of liability required by the North Carolina Financial Responsibility Act of 1957.

POLICY NUMBER: EBA 010 40 45

COMMERCIAL AUTO
CA 21 16 04 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or garaged in, or "garage operations" conducted in, North Carolina, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE |
|---|
| Endorsement Effective Date: 10-01-2013                    EBA 010 40 45 |

**SCHEDULE**

| Limit Of Insurance: $SEE AA4183          Each "Accident" |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

| The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below: |
|---|
| ☐ If an "X" is entered in this box, Paragraph **b.** of the definition of "uninsured motor vehicle" does not apply. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of:

    a. An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident"; and

    b. An "uninsured motor vehicle" as defined in Paragraphs **a.** and **c.** of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".

    The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

    a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

    b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

CA 21 16 04 10

© Insurance Services Office, Inc., 2008

Page 1 of 5   ☐

**JA145**

**(1)** Have been given prompt written notice of such tentative settlement; and

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**3.** Any judgment for damages arising out of a "suit" brought without sending us a copy of the summons, complaint or other process against an uninsured motorist is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

  **a.** The Named Insured and any "family members".

  **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

  **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

  **c.** The Named Insured for "property damage" only.

## C. Exclusions

This coverage does not apply to:

**1.** Any claim settled by the "insured" or any legal representative of the "insured" without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** An "auto" or property contained in the "auto" other than a covered "auto".

**5.** The first $100 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

**6.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**7.** Punitive or exemplary damages.

**8.** "Bodily injury" or "property damage" arising directly or indirectly out of:

  **a.** War, including undeclared or civil war;

  **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law exclusive of non-occupational disability benefits.

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle:

      (1) The Named Insured does not own; or

      (2) Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

      shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this coverage form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved.

   b. Promptly send us copies of the legal papers if a "suit" is brought. A "suit" may not be brought against anyone legally responsible for the use of any "auto" involved in the "accident" until 60 days after an "insured" notifies us or our agent of his or her belief that the prospective defendant is an uninsured motorist.

   c. Any person who intends to pursue recovery against the owner or operator of an "uninsured motor vehicle", as described in Paragraph **b.** of the definition of "uninsured motor vehicle", for damages beyond those paid or payable under this policy shall give us:

      (1) Notice of such intent; and

      (2) The opportunity to participate, at our expense, in the prosecution of such claim.

   d. A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed as follows:

   a. If we make any payment on the Named Insured's behalf, we are entitled to recover what we paid from other parties. The Named Insured must transfer rights of recovery against others to us. The Named Insured must do everything necessary to secure these rights and do nothing to jeopardize them.

      However, our rights under this paragraph do not apply with respect to vehicles described in Paragraphs **F.4.a., c.** and **d.** of the definition of "uninsured motor vehicle". For these vehicles, if we make any payment and the Named Insured recovers from another party, that Named Insured must hold the proceeds in trust for us and pay us back the amounts we have paid.

    © Insurance Services Office, Inc., 2008

**b.** Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

    **(1)** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle"; and

    **(2)** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

    **(1)** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motor Vehicle Coverage; and

    **(2)** We also have a right to recover the advanced payment.

**4.** The following Condition is added:

**Arbitration**

    **a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. The "insured" may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    **b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

    **c.** If the "insured" elects not to arbitrate, our liability will be determined only in an action against us. In any action against us, except an action to determine whether a vehicle is an "uninsured motor vehicle", we may require the "insured" to join the owner or driver of the vehicle as a party defendant.

If the "insured" elects arbitration to determine the amount of "property damage", then the **Appraisal for Property Damage** Condition does not apply.

**F.** **Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage, or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Property damage" means injury to or destruction of the property of an "insured".

**4.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

    **a.** For which neither a bond or policy nor cash or securities on file with the North Carolina Commissioner of Motor Vehicles provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act.

    **b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act but their limits are either:

    **(1)** Less than the limits of underinsured motorists coverage applicable to a covered "auto" that the Named Insured owns involved in the "accident";

    **(2)** Less than the limits of this coverage, if a covered "auto" that the Named Insured owns is not involved in the "accident"; or

    **(3)** Reduced by payments to others injured in the "accident" to an amount which is less than the

Limit of Insurance for this coverage.

However, an underinsured motor vehicle does not include a "covered auto" unless the limit of Uninsured Motorists Coverage shown in the Declarations or Schedule is greater than the Limit of Insurance for Liability Coverage shown in the Declarations of this policy.

**c.** For which the insuring or bonding company denies coverage or is or becomes insolvent.

**d.** That is a hit-and-run vehicle causing "bodily injury" to an "insured" and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by:

**(1)** The United States of America;

**(2)** Canada;

**(3)** A state; or

**(4)** An agency, except vehicles owned by political subdivisions of **(1), (2)** or **(3)** above.

**c.** Designed for use mainly off public roads while not on public roads.

**JA149**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

```
 2013   VOLKSWAGEN  TIGUAN
VOLKSWAGEN CREDIT LEASING
1401 FRANKLIN BLVD
LIBERTY BELL, IL 60048
```

WVGAV3AX3DW587098

```
 2013   VOLKSWAGEN GLI
VOLKSWAGEN CREDIT LEASING
1401 FRANKLIN BLVD
LIBERTY BELL, IL 60048
```

3VW4A7AJ5DM248677

```
 2013   VOKSWAGEN GLI
VOLKSWAGEN CREDIT LEASING
1401 FRANKLIN BLVD
LIBERTY BELL, IL 60048
```

3VW467AJ3DM232933

**CA 99 44 12 93**        Copyright, Insurance Services Office, Inc., 1993

**JA150**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

> **BUSINESS AUTO COVERAGE FORM**
> **GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who is an Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

the "auto" is being prepared for such a contest or activity.

**D. Limit of Insurance**  SEE AA4183

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes in Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

**1.** The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

**2.** The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

AA 261 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

JA152

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus
# BUSINESS AUTO EXPANDED COVERAGE (XC®) ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured - Amended**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

   However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

   The insurance provided by this provision:

   a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

   b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

   c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

   d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in **(2)**; and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in **(4)**.

**C. Amended Fellow Employee Exclusion**

**SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is amended by adding the following:

But this exclusion does not apply if the "bodily injury" results from the use of a covered "auto" you own or hire. Coverage is excess over any other collectible insurance.

**D. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III - PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire of the private passenger type or light truck (10,000 pounds or less gross vehicle weight) type, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto" of the private passenger type or light truck type for that coverage, or $1,000, whichever is less.

Includes copyrighted material of ISO Properties, Inc., with its permission.

3. Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

4. Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you own of the private passenger type or light truck type insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above.

E. Rental Reimbursement

**SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

1. We will pay for rental reimbursement expenses incurred by you for the rental of a private passenger type "auto" because of a "loss" to a covered private passenger type "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered private passenger type "auto". No deductible applies to this coverage.

2. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

   a. The number of days reasonably required to repair the covered private passenger type "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered private passenger type "auto" and return it to you; or

   b. 30 days.

3. Our payment is limited to the lesser of the following amounts:

   a. Necessary and actual expenses incurred; or

   b. $40 per day.

4. This coverage does not apply while there are spare or reserve private passenger

type "autos" available to you for your operations.

5. We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

F. Transportation Expense - Higher Limits

**SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in **Extension a. Transportation Expenses.**

G. Airbag Coverage

**SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

H. Loan or Lease Gap Coverage

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

   a. The most we will pay for "loss" in any one "accident" is the greater of:

      (1) The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

         (a) Overdue lease or loan payments;

         (b) Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

         (c) Security deposits not refunded by the lessor;

         (d) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

Includes copyrighted material of ISO Properties, Inc., with its permission.

      (e)  Carry-over balances from previous loans or leases, or

    (2)  Actual cash value of the stolen or damaged property.

  **b.**  An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of "loss".

  **2.**  **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage**:

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.**   **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.**   **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

  **1.**  You, if you are an individual;

  **2.**  A partner, if you are a partnership;

  **3.**  An executive officer or insurance manager, if you are a corporation; or

  **4.**  A member or manager, if you are a limited liability company.

**K.**   **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.**   **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 265 04 09                                                       Page 3 of 3

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRUCKERS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 10-01-2013 | EBA 010 40 45 |
| Named Insured: | |
| WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE | |
| Countersigned by: | |

(Authorized Representative)

**SCHEDULE**

For those covered "autos" used in your operations as a "trucker" the liability "cost of hire" provisions in the Declarations are replaced by the following:

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS - LIABILITY COVERAGE**

**LIABILITY COVERAGE - RATING BASIS, COST OF HIRE - AUTOS USED IN YOUR TRUCKING OPERATIONS**

| ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | TOTAL ESTIMATED PREMIUM |
|---|---|---|
| | | |

"Cost of hire" means the total cost you incur for the hire of "autos" you don't own (not including "private passenger type autos" you borrow or rent from members of your household, your partners, "employees" or agents or members of their households).

The following provisions apply to those covered "autos" used in your operations as a "trucker" if gross receipts is used as a premium basis:

**SCHEDULE FOR GROSS RECEIPTS RATING BASIS - LIABILITY COVERAGE**

| Estimated Yearly Gross Receipts | RATES Per $100 of Gross Receipts | | PREMIUMS | |
|---|---|---|---|---|
| | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL PREMIUMS | | | | |
| MINIMUM PREMIUMS | | | | |

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 273 03 06

When used as a premium basis:

Gross Receipts means the total amount to which you are entitled for shipping or transporting property during the policy period regardless of whether you or any other carrier originate the shipment or transportation. Gross Receipts includes the total amount received from renting equipment, with or without drivers, to anyone who is not a "trucker" and 15% of the total amount received from renting any equipment to any "trucker". Gross Receipts does not include:

1. Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

2. Advertising Revenue.

3. Taxes which you collect as a separate item and remit directly to a governmental division.

4. C.O.D. collections for cost of mail or merchandise including collection fees.

5. Warehouse storage fees.

**SCHEDULE OF TRAILER INTERCHANGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE | DAILY RATE | ESTIMATED PREMIUM |
|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIR OR $ 50,000 WHICHEVER IS LESS | $INCL | $INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIR OR $ WHICHEVER IS LESS, MINUS $ Ded. FOR EACH TRAILER FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ | $ |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIR OR $ 50,000 WHICHEVER IS LESS, MINUS $ 1,000 Ded. FOR EACH TRAILER | $INCL | $INCL |
| | | TOTAL PREMIUM | INCL |

**PHYSICAL DAMAGE COVERAGE**

The **Physical Damage Coverage** exclusion in Paragraph **C.** of this endorsement is removed for each of the following coverages indicated by an " x " in the " ☐ "

☒  COMPREHENSIVE

☐  SPECIFIED CAUSES OF LOSS

☒  COLLISION

For any operations you engage in as a "trucker" the policy is changed as follows:

**A.  Who is an Insured** under Liability Coverage is replaced by the following:

    **1.  Who is an Insured**

        **a.**  You for any covered "auto".

        **b.**  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

            **(1)**  The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

            **(2)**  Your "employee" or agent if the covered "auto" is a "private pas-

senger type auto" and is owned by that "employee" or agent or a member of his or her household.

            **(3)**  Someone using a covered "auto" while they are working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

            **(4)**  Anyone other than your "employees", partners (if you are a partnership), or members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(5)** A partner (if you are a partnership), or member (if you are a limited liability company) for a covered "private passenger type auto" owned by him or her or a member of his or her household.

**c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

**(1)** Is being used exclusively in your business as a "trucker"; and

**(2)** Is being used pursuant to operating rights granted to you by a public authority.

**d.** The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

**(1)** Is being used exclusively in your business as a "trucker"; and

**(2)** Is being used pursuant to operating rights granted to you by a public authority.

**e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**a.** Any "trucker", or his or her agents or "employees", other than you and your "employees":

**(1)** If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

**(2)** If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are being used exclusively in the "trucker's" business and pursuant to operating rights granted to the "trucker" by a public authority.

**b.** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is

detached from a covered "auto" you are using and:

**(1)** Is being transported by the carrier; or

**(2)** Is being loaded on or unloaded from any unit of transportation by the carrier.

**B.** The following **Trailer Interchange Coverage** Provisions are added:

**1.** **Coverage**

**a.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment. The "trailer" must be in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailer" while in your possession.

**b.** We will pay for "loss" to the "trailer" under:

**(1)** **Comprehensive Coverage**

From any cause except:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**(2)** **Specified Causes of Loss Coverage**

Caused by:

**(a)** Fire, lightning or explosion;

**(b)** Theft;

**(c)** Windstorm, hail or earthquake;

**(d)** Flood;

**(e)** Mischief or vandalism; or

**(f)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

**(3)** **Collision Coverage**

Caused by:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**c.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for

AA 273 03 06     Includes copyrighted material of ISO Properties, Inc., with its permission.     Page 3 of 5

**JA158**

any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**d. Coverage Extensions**

The following applies as Supplementary Payments. We will pay for you:

**(1)** All expenses we incur.

**(2)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**(3)** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(4)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(5)** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**2. Exclusions**

**a.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(1) Nuclear Hazard**

**(a)** The explosion of any weapon employing atomic fission or fusion; or

**(b)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**(2) War or Military Action**

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**b.** We will not pay for loss of use.

**c. Other Exclusions**

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance.

**(1)** Wear and tear, freezing, mechanical or electrical breakdown.

**(2)** Blowouts, punctures or other road damage to tires.

**3. Limit of Insurance and Deductible**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Schedule:

**a.** The actual cash value of the damaged or stolen property at the time of the "loss".

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**c.** The Limit of Insurance shown in the Schedule.

**C. Physical Damage Coverage** is changed by adding the following exclusion:

We will not pay for "loss" to:

Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

**D.** The **Other Insurance** Condition is replaced by the following:

Includes copyrighted material of ISO Properties, Inc., with its permission.

5.  **Other Insurance - Primary and Excess Insurance Provisions**

   a.  This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

      (1)  On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

      (2)  Excess if the power unit is not a covered "auto".

   b.  Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

   c.  Except as provided in Paragraphs **a.** and **b.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

   d.  For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   e.  Regardless of the provisions of Paragraphs **a., b.** and **c.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   f.  When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

E.  **Additional Definitions**

   As used in this endorsement:

   1.  "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

   2.  "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pick-up or van type if not used for business purposes.

   3.  "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY

## EXCESS LIABILITY COVERAGE PART DECLARATIONS

Previous Policy Number
ENP0104045

Attached to and forming part of POLICY NUMBER: ENP 010 40 45     Effective Date: 10-01-2013

NAMED INSURED is the same as it appears in the Common Policy Declarations unless another entry is made here.

### LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $4,000,000 |
| Aggregate Limit | $4,000,000 |

ADVANCE PREMIUM $ 8,061
Applicable to Premium, if box is checked:

☐ Subject to Annual Adjustment
☐ Subject to Audit as follows:

| Premium Basis | Estimated Exposure | Each Unit of Exposure Rate Per: | Minimum Premium |
|---|---|---|---|
| | | | |

### SCHEDULE OF UNDERLYING INSURANCE

| Underlying Insurance, Carrier, Policy Number & Term: | | Underlying Limits: |
|---|---|---|
| a) COMMERCE & INDUSTRY INS<br>WC051754685<br>10-01-2012 TO 10-01-2013 | Employer's Liability | Bodily Injury by Accident:<br>$   1,000,000  Each Accident<br>Bodily Injury by Disease:<br>$   1,000,000  Each Employee<br>Bodily Injury by Disease:<br>$   1,000,000  Policy Limit |
| b) CINCINNATI INS. CO.<br>EBA 010 40 45<br>10-01-2013 TO 10-01-2014 | Automobile Liability<br>Including:<br>☐ Owned Autos<br>☐ Non-Owned Autos<br>☐ Hired Autos<br>☒ Any Auto | Bodily Injury Liability Limit:<br>$         Each Person<br>$         Each Accident<br>Property Damage Liability Limit:<br>$         Each Accident<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$   1,000,000   Each Accident |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| XS101UM | 12/04 | EXCESS LIABILITY - TABLE OF CONTENTS |
| XS304 | 12/04 | POLLUTANT EXCLUSION |
| XS306 | 09/02 | EMPLOYMENT - RELATED PRACTICES EXCLUSION |
| XS409NC | 09/02 | NORTH CAROLINA CHANGES |

# EXCESS LIABILITY - TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|

Preamble ........................................................................................................................... 2

**SECTION I - COVERAGE** ............................................................................................... 2

    **A. Insuring Agreement** ............................................................................................... 2

    **B. Exclusions:** ............................................................................................................ 2

        **1.** Asbestos ..................................................................................................... 2
        **2.** Distribution of Material in Violation of Statutes ........................................ 3
        **3.** Electronic Data ........................................................................................... 3
        **4.** Pollutant - Auto ........................................................................................... 3
        **5.** Pollutant - Other Than Auto ....................................................................... 4
        **6.** Underlying Insurance .................................................................................. 5
        **7.** Uninsured or Underinsured Motorists ........................................................ 5
        **8.** War ............................................................................................................. 5

    **C. Defense and Supplementary Payments** ............................................................... 5

**SECTION II - LIMITS OF INSURANCE** ........................................................................ 6

**SECTION III - CONDITIONS:** ....................................................................................... 7

        **1.** Appeals ...................................................................................................... 7
        **2.** Audit ........................................................................................................... 7
        **3.** Bankruptcy ................................................................................................. 7
        **4.** Duties in the Event of Occurrence, Claim or Suit ...................................... 7
        **5.** First Named Insured ................................................................................... 7
        **6.** Liberalization ............................................................................................. 7
        **7.** Loss Payments ........................................................................................... 8
        **8.** Maintenance of Underlying Insurance ....................................................... 8
        **9.** Other Insurance .......................................................................................... 8
        **10.** Premium .................................................................................................... 8
        **11.** Representations ......................................................................................... 8
        **12.** Transfer of Rights of Recovery Against Others to Us .............................. 8
        **13.** When We Do Not Renew .......................................................................... 9

**SECTION IV - DEFINITIONS:** ...................................................................................... 9

        **1.** "Authorized representative" ....................................................................... 9
        **2.** "Coverage term" ........................................................................................ 9
        **3.** "Electronic data" ........................................................................................ 9
        **4.** "Hostile fire" ............................................................................................... 9
        **5.** "Insured" ..................................................................................................... 9
        **6.** "Loss" ......................................................................................................... 10
        **7.** "Pollutants" ................................................................................................ 10
        **8.** "Underlying insurance" .............................................................................. 10

    **NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ................................... 11

**XS 101 UM 12 04**      Includes copyrighted material of Insurance      Page 1 of 12
Services Office, Inc. with its permission.

**JA162**

# EXCESS LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IV - DEFINITIONS**.

## SECTION I - COVERAGE

**A. Insuring Agreement**

1. We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies in excess of "underlying insurance".

2. This insurance applies to injury or offense only if:

    **a.** The injury or offense takes place during the policy period shown in the Declarations; and

    **b.** Prior to the "coverage term" in which the injury or offense takes place, you did not know, per Paragraph **4.** below, that the injury or offense had taken place or begun to take place, in whole or in part.

3. Injury or offense which:

    **a.** Takes place during the "coverage term"; and

    **b.** Was not, prior to the "coverage term", known by you, per Paragraph **4.** below, to have taken place;

    includes any continuation, change or resumption of that injury or offense after the end of the "coverage term" in which it first became known by you.

4. You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

    **a.** Reports all, or any part of the injury or offense to us or any other insurer;

    **b.** Receives a written or verbal demand or claim for damages because of the injury or offense;

    **c.** First observes, or reasonably should have first observed, the injury or offense;

    **d.** Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that injury or offense has taken place or begun to take place; or

    **e.** Becomes aware, or reasonably should have become aware, of a condition from which injury or offense is substantially certain to take place.

5. The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

    **a.** Any term or condition relating to:

        **(1)** Any duty to investigate or defend;

        **(2)** The limits of insurance;

        **(3)** The payment of expenses;

        **(4)** The premium;

        **(5)** Cancellation or non-renewal;

        **(6)** Any renewal agreement;

        **(7)** The policy period; or

    **b.** Any other provision that is not consistent with this Coverage Part;

    in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

6. The amount we will pay is limited as described in **SECTION II - LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments**.

**B. Exclusions**

This insurance does not apply to:

1. **Asbestos**

    Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. **Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

3. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

4. **Pollutant - Auto**

Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to bodily injury or property damage arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The bodily injury or property damage does not arise out of the operation of:

(a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

(b) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

However, this exception to Paragraph **(a)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **b.** and **c.** above do not apply to an occurrence that occurs away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**5. Pollutant - Other Than Auto**

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

(1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured".

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

(a) Bodily injury, if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

(b) Bodily injury or property damage for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional "insured" with respect to your ongoing operations performed for that additional "insured" at that premises, site or location and such

premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional "insured"; or

(c) Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire";

(2) At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible;

(4) At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

(a) Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the bodily injury or property damage arises out

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 4 of 12

of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor;

**(b)** Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **b.** does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

**6. Underlying Insurance**

Any liability not covered by "underlying insurance" for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

**7. Uninsured or Underinsured Motorists**

Any liability or obligation to any "insured" or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**8. War**

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**C. Defense and Supplementary Payments**

**1.** We will have the right and duty to defend the "insured" against any suit seeking damages because of injury or damage to which this insurance applies when the applicable limits of "underlying insurance" and any other insurance have been exhausted by payment of claims. We will have no duty to defend the "insured" against any suit seeking damages for injury or damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**2.** We have no duty to investigate, settle or defend any claim or suit other than those

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or suit to which this insurance applies. If we exercise this right, we will do so at our expense.

3. If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

   a. All expenses we incur.

   b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

   c. The cost of bonds to appeal a judgment or award in any claim or suit we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

   d. Reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or suit, including the actual loss of earnings.

   e. All costs taxed against the "insured" in the suit.

4. If there is no underlying insurer obligated to do so, we will pay the following expenses for a "loss" to which this insurance applies:

   a. Prejudgment interest awarded against the "insured" on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   b. All interest awarded against the "insured" on the full amount of any judgment that accrues:

      (1) After entry of the judgment; and

      (2) Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

5. If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

These payments will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**SECTION II - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. "Insureds";

   b. Claims made or suits brought;

   c. Persons or organizations making claims or bringing suits; or

   d. Coverages provided under this Coverage Part.

2. The Limits of Insurance of this Coverage Part apply in excess of the "underlying insurance" limits specified in the Schedule of Underlying Insurance.

3. The Aggregate Limit specified in the Declarations is the most we will pay for "loss" to which this insurance applies. The Aggregate Limit of this Coverage Part applies to "loss" in the same manner as the aggregate limit in the "underlying insurance" applies to "loss". When the "underlying insurance" does not apply an aggregate limit of "loss", the Aggregate Limit of this Coverage Part will not apply to "loss". When the "underlying insurance" does apply an aggregate limit to "loss", the Aggregate Limit of this Coverage Part will apply to "loss".

4. Subject to **3.** above, the Each Occurrence Limit specified in the Declarations is the most we will pay for "loss" arising out of any one occurrence.

   We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for Each Occurrence because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5. The following provision applies only if this Coverage Part contains an Aggregate Limit of Insurance which applies to the "loss".

   If the Each Occurrence Limit of Insurance of the "underlying insurance" is less than as stated in the Schedule of Underlying Insurance because the aggregate limits of the "underlying insurance" have been reduced, this Coverage Part becomes excess of such re-

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 6 of 12

**JA167**

duced limit of insurance if such reduction is solely the result of injury or damage occurring after the inception date of this Coverage Part and not before. This provision does not increase the Limits of Insurance of this Coverage Part.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION III - CONDITIONS

1. **Appeals**

   We may elect to appeal a judgment against any "insured" if the judgment exceeds the underlying limits of insurance. If we appeal, we will do so at our own expense, but in no event shall this provision increase our liability beyond:

   a. Our applicable Limits of Insurance as shown in the Declarations;

   b. Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments**; and

   c. The expense of such appeal.

2. **Audit**

   If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

   a. The premium shown in the Declarations as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

      (1) The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

      (2) The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

      However, in no event will the earned premium be less than the Minimum Premium stated in the Declarations.

   b. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

3. **Bankruptcy**

   Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve us of any obligations under this Coverage Part.

4. **Duties in the Event of Occurrence, Claim or Suit**

   a. You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

      (1) How, when and where the occurrence took place;

      (2) The names and addresses of injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the occurrence.

   b. If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

   c. You must see to it that we and your underlying insurers:

      (1) Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

      (2) Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

   d. No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

5. **First Named Insured**

   The person or organization first named in the Declarations will act on behalf of all other "insureds" where indicated in this Coverage Part.

6. **Liberalization**

   If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this

Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**7. Loss Payments**

Coverage under this Coverage Part will only apply after you and your underlying insurers are obligated to pay the full amount of the "underlying insurance" limits of insurance. When the amount of the "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under the terms and conditions of this Coverage Part after the full amount of "underlying insurance" has been paid.

**8. Maintenance of Underlying Insurance**

While this Coverage Part is in effect, you shall maintain in full force "underlying insurance". This means:

**a.** The terms, conditions and endorsements of "underlying insurance" will not materially change;

**b.** Renewals or replacements of "underlying insurance" will not be more restrictive in coverage;

**c.** "Underlying insurance" may not be canceled or nonrenewed without notifying us; and

**d.** Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits due to payment of "loss" for injury or offense that takes place during the corresponding "coverage term" of this Coverage Part.

The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the "insured's" failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

Failure to comply with this condition will not invalidate this Coverage Part, but in the event of such failure, we will only be liable to the same extent as if there had been compliance with this condition.

You must see to it that we are notified promptly if any "underlying insurance" is canceled or not renewed.

**9. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

**10. Premium**

The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

Any change in the premium for "underlying insurance" shall be promptly reported to us. We may adjust the premium in accordance with our rules and rates.

**11. Representations**

**a.** By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

**b.** However, to the extent that the following applies in the "underlying insurance", it will also apply to this Coverage Part:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

**12. Transfer of Rights of Recovery Against Others to Us**

**a.** If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring suit or

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the "insured", the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to injury or damage taking place to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION IV - DEFINITIONS**

**1.** "Authorized representative" means:

**a.** If you are:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your executive officers and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your employees assigned to manage your insurance program, or assigned to give or receive notice of an occurrence, offense, claim or suit are also "authorized representatives".

**2.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**3.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**4.** "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

**5.** "Insured" means the Named Insured shown in the Declarations and any person or organization qualifying as such in the "underlying insurance".

6. "Loss" means those sums paid as damages in the settlement or satisfaction of a claim to which this insurance applies for which the "insured" is legally liable, after making deductions for all recoveries, salvages and other insurance, whether collectible or not, other than the "underlying insurance" and excess insurance written specifically to be excess over this insurance. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses, even though "underlying insurance" may provide insurance for such costs and expenses.

7. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

   b. The insured uses, generates or produces the "pollutant".

8. "Underlying insurance" means the policy(ies) and limits of insurance shown in the Schedule of Underlying Insurance, including any renewal or replacement of such policy(ies), which provide the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

    **a.** With respect to which an "insured" under the Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the "insured" is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

    **a.** The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(2)** has been discharged or dispersed therefrom;

    **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    **c.** The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to property damage to such "nuclear facility" and any property thereat.

**B.** **SECTION IV - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. **"Nuclear facility"** means:

    **a.** Any "nuclear reactor";

    **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

    **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233

XS 101 UM 12 04    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 11 of 12

**JA172**

or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations con-ducted on such site and all premises used for such operations;

7. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fis-sion in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8. "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified as follows:

Exclusion **5. Pollutant - Other Than Auto** is hereby deleted and replaced by the following:

**5.    Pollutant - Other Than Auto**

This insurance does not apply to:

**a.**    Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)**    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured".

**(2)**    At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

**(3)**    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible; or

**(4)**    At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured contractor or subcontractor.

Subparagraphs **a.(1)** and **a.(4)** do not apply:

**(a)**    To bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

**(b)**    If insurance is provided to the "insured" by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the underlying limit scheduled, but only to the extent bodily injury or property damage coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

**(5)**    At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.**    Any "loss", cost or expense arising out of any:

**(1)**    Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

XS 304 12 04

**JA174**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following

**EXCESS LIABILITY COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to any liability to:

**a.** A person arising out of any:

   **(1)** Refusal to employ that person;

   **(2)** Termination of that person's employment; or

   **(3)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above directed at that person.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

XS 306 09 02

**THE ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES

This endorsement modifies insurance provided under the following:

**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**

**I.    DEFENSE AND SUPPLEMENTARY PAYMENTS**

When defense and supplementary payments provided by the "underlying insurance" reduces your Limits of Insurance then such payment paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**II.    SECTION III - CONDITIONS** is amended as follows:

Condition **11. Representations** is amended to include the following:

Knowledge by an agent of the Company of any fact which breaches a condition of the Coverage Part shall be knowledge of the Company if such fact is known to the agent at the time the Coverage Part is issued or an application made or thereafter becomes known to the agent in the course of his dealings as an agent with the Named Insured.  Any fact which breaches a condition of the Coverage Part and is known to the agent prior to an injury, offense or incident, to which this insurance applies, taking place shall not void the Coverage Part or defeat a recovery thereon in the event of "loss".

XS 409 NC 09 02

JA176

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF MARLBORO | ) C/A NO.: 2016-CP-34-00265 |
| | ) |
| LEVI OWENS AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER MCLEAN, | ) ) ) |
| | ) |
| Plaintiff, | ) **SUMMONS** |
| | ) **(Jury Trial requested)** |
| -vs- | ) |
| | ) |
| WAYNE HUNT. | ) |
| | ) |
| Defendant. | ) |

**TO:    THE DEFENDANTS ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in this Complaint.

PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A.

BY: _____
R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

✓Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 8, 2016

**JA177**

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34- 00265 |

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF MARLBORO               )     C/A NO.: 2016-CP-34- 00265
                                 )
LEVI OWENS AS PERSONAL           )
REPRESENTATIVE FOR THE           )
ESTATE OF CHRISTOPHER            )          **COMPLAINT**
MCLEAN,                          )       **(Jury Trial requested)**
                                 )         **(Wrongful Death)**
               Plaintiff,        )          **(Survival)**
                                 )
vs.                              )
                                 )
WAYNE HUNT.                      )
                                 )
               Defendant.        )

**The plaintiff, complaining of the defendant, alleges:**

1.    The Plaintiff has been duly appointed Personal Representative of the Estate of Christopher McLean by the Marlboro County Probate Court, and he brings this action for the wrongful death and conscious pain and suffering of Christopher McLean on behalf of the statutory beneficiaries.

2.    The defendant is a citizen and resident of a State other than South Carolina.

3.    That on December 10, 2013, the deceased was a passenger in a vehicle traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, crossed the center line and struck the vehicle the plaintiff was a passenger in; as a result of the collision Christopher McLean was seriously injured and did thereafter die. Prior to his death Christopher McLean endured serious conscious pain and suffering.

4.    That the direct and proximate cause of the plaintiff's personal injuries and death was the negligent and reckless conduct of the defendant in the following particulars:

       a.    In failing to keep a proper lookout;

       b.    In failing to keep his vehicle within his lane of travel;

**JA178**

    c.    In traveling too fast for conditions then and there existing;

    d.    In failing to keep his vehicle under proper control;

    e.    In failing to stop, slow or turn his vehicle to avoid colliding with the plaintiff;

    f.    In operating an automobile in utter disregard for the safety of others on the highway;

    g.    In failing to yield the right of way;

    h.    In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;

    i.    In failing to apply his brakes, if he had any;

    j.    In failing to take evasive action to avoid the collision;

    k.    In operating his vehicle in utter disregard for the safety of others on the highway.

5.    As a result of the above conduct of the defendant, Christopher McLean sustained serious and severe injuries which caused conscious pain and suffering and resulted in his wrongful death, resulting in damages to him. That the beneficiaries of Christopher McLean have endured grief, sorrow, shock, wounded feelings and loss of love and companionship.

WHEREFORE, the Plaintiff prays for judgment against the defendants for actual damages and for whatever additional and further relief this court deems just and proper all in an amount determined fair and reasonable by a jury.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.

BY: _____

R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 6, 2016



# S. C. DEPARTMENT OF
# MOTOR VEHICLES

OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax : ( 803) 896-9901*

February 10, 2017

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

**Re:** *Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt:* **Case No.: 2016-CP-34-00265, DMV 17-73**

Dear Mr. Hunt:

In accordance with the provisions of Section 15-9-350 of the Code of Laws of South Carolina (1976), this office has received the enclosed Summons and Complaint in the above-entitled action. Under South Carolina law, this has the same legal effect as if you had been served with these documents personally.

Section 15-9-350 of the 1976 Code of Laws of South Carolina, as amended, provides that:

> "The acceptance by a nonresident of the rights and privileges conferred by the laws in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways, the streets of any incorporated municipality of the public roads of this State or anywhere within this State, or the operation by such nonresident of a motor vehicle on any such public highways, streets, or public roads or anywhere within this State other than as so permitted or regulated shall be deemed equivalent to the appointment by such nonresident of the Director of the Department of Motor Vehicles or of his successor in office to be his true and lawful attorney upon whom may be served all summons or other lawful process in any action or proceeding against him growing out of any accident or collision in which such nonresident may be involved by reason of the operation by him, for him or under his control or direction, express or implied, of a motor vehicle on such public highways, Streets, or public roads or anywhere within this State.  Such acceptance or operation shall be a signification of his agreement that any such process against him shall be of the same legal force and validity as if served on him personally."

Sincerely,

*Wanda R. Ealy*

Wanda R. Ealy, Paralegal Assistant
Office of General Counsel
For: Director, South Carolina Department of Motor Vehicles

Enclosure

cc:    R. Alexander Murdaugh, Esquire
       P. O. Box 457
       Hampton, SC 29924



RECEIVED
FEB 1 3 2017

| | |
|---|---|
| STATE OF SOUTH CAROLINA     ) | IN THE COURT OF COMMON PLEAS |
|                      ) | |
| COUNTY OF MARLBORO       ) | C/A NO.: 2016-CP-34-00265 |

PERSONALLY appeared before me, **R. Alexander Murdaugh**, who upon being duly sworn, deposes and says:

That he is the attorney for the Plaintiff in the above entitled action; that no Answer, Demurrer or Notice of Appearance was timely served on him or on behalf of the Plaintiff, Levi Owens as Personal Representative of the Estate of Christopher McLean, as required by the Summons in this action; that the Summons and Complaint were served upon the Defendant, Wayne Hunt by the South Carolina Department of Motor Vehicles on February 10, 2017, as shown by the Acceptance of Service in this case; that more than thirty (30) days have elapsed since the service aforesaid, exclusive of the day of such service.

LEVI OWENS AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER MCLEAN,

         Plaintiff,

     -vs-

WAYNE HUNT.

         Defendant.

**AFFIDAVIT OF DEFAULT**

_____

R. Alexander Murdaugh

SWORN to before me this
2O day of September, 2017

_____
Notary Public for South Carolina
My Commission Expires: 4/4/2023

2017 NOV 16 PM 3 41
ANITA M. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
FILED

**JA182**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34-00265 |
| | ) | |
| LEVI OWENS AS PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF CHRISTOPHER MCLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ENTRY OF DEFAULT** |
| -vs- | ) | |
| | ) | |
| WAYNE HUNT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

It appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed and no timely answer has been made by the defendant. Plaintiff is therefore entitled to an Entry of Default.

It is hereby **ORDERED** that the Clerk of Court for Marlboro County make an entry of default on the roster of case by the name of defendant, Wayne Hunt.

**IT IS SO ORDERED.**

_____
The Honorable Paul M. Burch
Judge, Fourth Judicial Circuit

_____, South Carolina
September 10th, 2017

ANITA M. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
2017 NOV 16 PM 3 41
FILED

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34-00265 |
| | ) | |
| LEVI OWENS AS PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF CHRISTOPHER MCLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER OF REFERENCE** |
| | ) | |
| -vs- | ) | |
| | ) | |
| WAYNE HUNT. | ) | |
| | ) | |
| Defendant(s). | ) | |

This matter comes before me on motion of Alex Murdaugh to refer the matter to a Special

Referee in order to determine the amount of damages.

It is, therefore, ORDERED that this matter be referred to Douglas Jennings, Jr. with finality

to take testimony and determine the amount of damages. Any motions filed after this order shall be

heard by the referee.

The Honorable Paul M. Burch
Fourth Judicial Circuit

**WE MOVE**:
PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P. A.

BY: _____

    R. Alexander Murdaugh
    P. O. Box 457
    Hampton, SC 29924
    (803) 943-2111
    ATTORNEYS FOR PLAINTIFF

**I CONSENT TO SERVE AS SPECIAL REFEREE**:

Douglas Jennings, Jr.
Douglas Jennings Law Firm, LLC
P.O. Drawer 995
Bennettsville, SC 29512-0995

ANITA H. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
2018 OCT 22 PM 3 20
FILED

JA184

ELECTRONICALLY FILED - 2021 Nov 04 10:15 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF MARLBORO** | ) | **FOURTH JUDICIAL CIRCUIT** |
| | ) | |
| **Levi Owens as personal representative of** | ) | No. 2016-CP-34-00265 |
| **the Estate of Christopher McLean,** | ) | |
| | ) | **Notice of Hearing** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**To:    Wayne Hunt**

**Please take notice** that a damages hearing in this matter will be held on November 17, 2021, at 10:00 a.m. before Douglas Jennings, Jr., Special Referee, at 151 Broad Street, Bennettsville, SC 29512.

Dated: 11/4/2021

By: Jason Scott Luck

Jay Parker
P.O. Box 457
Hampton, SC 29924
*and*
Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law
**Attorneys for Plaintiff**

1

**JA185**

ELECTRONICALLY FILED - 2021 Nov 04 10:15 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF MARLBORO** | ) | **FOURTH JUDICIAL CIRCUIT** |
| | ) | |
| **Levi Owens as personal representative of the Estate of Christopher McLean,** | ) ) ) | No. 2016-CP-34-00265 |
| | ) | **Affidavit of Service** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |

The undersigned certifies that, pursuant to Rule 55(b)(2), SCRCP, on the date below he deposited a copy of the Notice of Hearing in the U.S. Mail, first class, postage prepaid, addressed as follows, which is the last known address of the Defendant: Wayne Hunt, 16671 NC Highway 210, Rocky Point, NC 28457-8994.

Dated: 11/4/2021

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**SWORN TO AND SUBSCRIBED BEFORE ME**
this 4 Day of Nov. , 2021
Lindsay Williams
(SEAL)
NOTARY PUBLIC FOR SOUTH CAROLINA
My Commission Expires: October 4, 2022

2

**JA186**

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF MARLBORO** | ) | **FOURTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **Levi Owens as Personal Representative of the Estate of Christopher McLean,** | ) | No. 2016-CP-34-00265 |
| | ) | |
| Plaintiff, | ) | **ORDER AWARDING DEFAULT** |
| | ) | **JUDGMENT** |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## INTRODUCTION

This matter was referred to me pursuant to Judge Paul M. Burch's Order of Reference dated October 22, 2018 and Entry of Default dated November 16, 2017. The purpose of the reference was to conduct a hearing to ascertain the amount of the Plaintiff's damages in this default matter and to issue a final order awarding damages against Defendant.

After several delays which were unavoidable, I conducted the damages hearing on November 17, 2021. Plaintiff appeared with his attorneys, John E. Parker, Jr. and Jason Scott Luck. Defendant did not appear, either personally or through counsel, despite notice to him from Plaintiff's counsel. As evidence of notice of this hearing being provided to Defendant, Attorney Jason Luck filed an Affidavit of Service certifying that, pursuant to Rule 55(b)(2), SCRCP, on November 4, 2021, a Notice of Hearing was sent to Defendant Wayne Hunt at his last known address via First Class U.S. Mail. There has been no return of that notice, nor has Defendant responded or appeared. I therefore proceeded with the hearing in Defendant's absence.

1

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

## SUMMARY OF THE EVIDENCE

This case arises out of a motor vehicle collision that occurred on December 10, 2013 on U.S. Highway 15 outside of McColl, South Carolina in Marlboro County. Christopher McLean, the 19-year-old son of Levi Owens(father) and Wanda Breeden (mother), was a passenger in a vehicle which was traveling in a southeasterly direction on US Hwy 15 attempting to make a left turn onto a secondary road when a truck being driven by Defendant Wayne Hunt traveling in a northerly direction on US Hwy 15 at a high rate of speed, crossed the center line of the road and violently struck the vehicle in which Christopher McLean was a passenger. As a result, Christopher McLean was gravely injured and was transported by helicopter to McLeod Regional Medical Center in Florence, SC, where he thereafter died as a result of the multiple trauma from this collision. According to the death certificate, Christopher McLean (hereinafter "decedent") died approximately six(6) hours after the collision as a result of the multiple trauma, including a closed head injury, a ruptured diaphragm, a ruptured bladder, and hypovolemic shock.

Christopher McLean was a 19-year-old unmarried recent graduate of Marlboro County High School with no children. He was intestate and is survived by his parents as his statutory beneficiaries and heirs at law. Plaintiff Levi Owens, father of decedent, was duly appointed as Personal Representative of the Estate by the Marlboro County Probate Judge on September 10, 2014. Plaintiff thereafter filed suit for the Wrongful Death of his deceased son and asserting the survival claim for the conscious pain and suffering of decedent. According to the prior Order of Circuit Judge Paul M. Burch filed November 16, 2017, the Summons and Complaint were properly served upon Defendant Wayne Hunt on February 10, 2017, and no timely response or answer was made by or on behalf of the defendant. Judge Burch thereafter ordered that Plaintiff was entitled

to an Entry of Default, and subsequently referred the matter to the undersigned Special Referee with finality to take testimony and determine the amount of damages to be awarded to Plaintiff in this wrongful death and survival case. *See Order of Reference filed 10/22/2018 by Circuit Judge Paul M. Burch.* By virtue of his default, Defendant has admitted that he was negligent and reckless with respect to the collision and that his negligence and recklessness proximately caused the decedent's injuries and death.

The Plaintiff was the only witness who testified at the hearing and I found his testimony to be very genuine and convincing and to unquestionably establish all the elements of damages in a wrongful death and survival case. In addition, Plaintiff introduced the following exhibits without objection:

1. Death certificate of the decedent.

2. Summary of Plaintiff's medical and funeral expenses totaling $62,323.88.

## FINDINGS OF FACT

Based on the foregoing, I make the following findings of fact:

1. The decedent was 19 years old at the time of his untimely death, was single and without children, and enjoyed a particularly close, wholesome and loving relationship with his parents;

2. The decedent was in excellent health before the subject collision and had frequently engaged in exercise and sports activities with his father.

3. On December 10, 2013, the decedent was a passenger in a car that was negligently and recklessly struck by a truck operated by Defendant.

4. The collision was directly and proximately caused by Defendant's negligence, carelessness and recklessness.

3

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

5. The collision directly caused the decedent to suffer very serious bodily injuries which resulted in conscious pain and suffering, and which ultimately caused his wrongful death.

6. Defendant's negligence and recklessness caused pecuniary loss to the Plaintiff as outlined below, as well as significant mental shock and suffering, wounded feelings, grief, sorrow, and the loss of his son's society and companionship.

7. The decedent's estate incurred bills totaling at least $48,232.00 for medical treatment of the serious bodily injuries sustained in the collision.

8. The Plaintiff incurred funeral and burial expenses totaling $14,091.88.

<u>CONCLUSIONS OF LAW</u>

Based on the foregoing, I reach the following conclusions of law:

1. Defendant was negligent and reckless, which directly and proximately caused the collision, the decedent's injuries, conscious pain and suffering, and his wrongful death, and all damages which Plaintiff is entitled to under South Carolina law.

2. As a result of Defendant's negligence and recklessness, Plaintiff sustained actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars, with $100,000.00 to be apportioned as survival damages to the estate and $5,000,000.00 to be apportioned as wrongful death damages to the statutory beneficiaries, itemized as follows:

    a. Wrongful Death

        i. Pecuniary loss (i.e., funeral expense): $14,091.88

        ii. Mental shock and suffering: $1,000,000.00

        iii. Wounded feelings: $1,000,000.00

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

      iv.  Grief and sorrow:  $1,000,000.00

      v.  Loss of society and companionship: $1,935.908.12

    b.  Survival

      i.  Medical expenses:  $48,232.00

      ii.  Conscious Pain, suffering, mental distress: $51,768.00

3.  I do not find grounds to justify an award of punitive damages against Defendant.

### ORDER

**IT IS HEREBY ORDERED** that Plaintiff is hereby awarded a final judgment against Defendant for actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars.

**AND IT IS SO ORDERED.**

_____
Douglas Jennings, Jr.
Special Referee

November _18_, 2021

Bennettsville, South Carolina

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34-00264 |
| | ) | |
| MAISHA JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | **SUMMONS** |
| | ) | **(Jury Trial requested)** |
| -vs- | ) | |
| | ) | |
| WAYNE HUNT. | ) | |
| | ) | |
| Defendant. | ) | |

**TO:    THE DEFENDANTS ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this

action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said

Complaint on the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina

within thirty (30) days after the service hereof, exclusive of the day of such service; and if you

fail to answer the Complaint within the time aforesaid, judgment by default will be rendered

against you for the relief demanded in this Complaint.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.

BY: _____

R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

Hampton, South Carolina
December 6, 2016

ATTORNEYS FOR PLAINTIFF

**JA192**

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF MARLBORO ) | C/A NO.: 2016-CP-34-_00264_ |
| ) | |
| MAISHA JACOBS, ) | |
| ) | **COMPLAINT** |
| Plaintiff, ) | **(Jury Trial requested)** |
| ) | |
| vs. ) | |
| ) | |
| WAYNE HUNT. ) | |
| ) | |
| Defendant. ) | |

**The plaintiff, complaining of the defendant, alleges:**

1.      The defendant is a citizen and resident of a State other than South Carolina.

2.      That on December 10, 2013, the plaintiff was traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, crossed the center line and struck the plaintiff's vehicle causing the plaintiff to be injured as more particularly hereinafter set forth.

3.      That the direct and proximate cause of the plaintiff's injuries was the negligent and reckless conduct of the defendant in the following particulars:

        a.      In failing to keep a proper lookout;

        b.      In failing to keep his vehicle within his lane of travel;

        c.      In traveling too fast for conditions then and there existing;

        d.      In failing to keep his vehicle under proper control;

        e.      In failing to stop, slow or turn his vehicle to avoid colliding with the plaintiff;

        f.      In operating an automobile in utter disregard for the safety of others on the highway;

        g.      In failing to yield the right of way;

        h.      In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;

**JA193**

    i.        In failing to apply his brakes, if he had any;

    j        In failing to take evasive action to avoid the collision;

    k        In operating his vehicle in utter disregard for the safety of others on the highway.

4.      As a direct and proximate result of the aforementioned negligent and reckless conduct of the defendants the plaintiff has been injured in the following particulars: that she has been forced to suffer serious personal injuries and mental anguish; that she has been caused to lose the enjoyment of life; that she has been caused to incur doctor and medical bills; that she has been caused to lose wages; that her injuries are permanent and pursuant to §19-1-150 of the South Carolina Code of Laws she will continue to incur damages into the future.

WHEREFORE, the Plaintiff prays for judgment against the defendants both actual and punitive damages the costs of the action and for such other relief this court deems fair reasonable all in an amount determined fair and reasonable by a jury.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.

BY: _____
     R. Alexander Murdaugh
     Post Office Box 457
     Hampton, SC 29924
     (803) 943-2111

     ~and~

     Delton W. Powers
     Powers Law Firm
     Post Office Box 47
     Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 6, 2016



## S. C. DEPARTMENT OF
## MOTOR VEHICLES

OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax :( 803) 896-9901*

February 10, 2017

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

**Re:**   *Maisha Jacobs v. Wayne Hunt:* Case No.: 2016-CP-34-00264, DMV 17-72

Dear Mr. Hunt:

In accordance with the provisions of Section 15-9-350 of the Code of Laws of South Carolina (1976), this office has received the enclosed Summons and Complaint in the above-entitled action. Under South Carolina law, this has the same legal effect as if you had been served with these documents personally.

Section 15-9-350 of the 1976 Code of Laws of South Carolina, as amended, provides that:

> "The acceptance by a nonresident of the rights and privileges conferred by the laws in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways, the streets of any incorporated municipality or the public roads of this State or anywhere within this State, or the operation by such nonresident of a motor vehicle on any such public highways, streets, or public roads or anywhere within this State other than as so permitted or regulated shall be deemed equivalent to the appointment by such nonresident of the Director of the Department of Motor Vehicles or of his successor in office to be his true and lawful attorney upon whom may be served all summons or other lawful process in any action or proceeding against him growing out of any accident or collision in which such nonresident may be involved by reason of the operation by him, for him or under his control and direction, express or implied, of a motor vehicle on such public highways, Streets, or public roads or anywhere within this State. Such acceptance or operation shall be a signification of his agreement that any such process against him shall be of the same legal force and validity as if served on him personally."

Sincerely,

*Wanda R. Ealy*

Wanda R. Ealy, Paralegal Assistant
Office of General Counsel
For: Director, South Carolina Department of Motor Vehicles

Enclosure

cc:    R. Alexander Murdaugh, Esquire
      P. O. Box 457
      Hampton, SC 29924



2017 FEB 16 PM 12 02
ANITA M. WILLIAMS
CLERK OF COURT
COUNTY, S.C.
FILED

RECEIVED
FEB 13 2017

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF MARLBORO ) C/A NO.: 2016-CP-34-00264

MAISHA JACOBS,

        Plaintiff,

     -vs-

WAYNE HUNT.

        Defendant.

**AFFIDAVIT OF DEFAULT**

PERSONALLY appeared before me, **R. Alexander Murdaugh**, who upon being duly sworn, deposes and says:

That he is the attorney for the Plaintiff in the above entitled action; that no Answer, Demurrer or Notice of Appearance was timely served on him or on behalf of the Plaintiff, Maisha Jacobs, as required by the Summons in this action; that the Summons and Complaint were served upon the Defendant, Wayne Hunt by the South Carolina Department of Motor Vehicles on February 10, 2017, as shown by the Acceptance of Service in this case; that more than thirty (30) days have elapsed since the service aforesaid, exclusive of the day of such service.

_____
R. Alexander Murdaugh

SWORN to before me this
28 day of September, 2017

_____
Notary Public for South Carolina
My Commission Expires: 4/4/2023

2017 OCT 16 PM 12 08
ANITA H. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
FILED

**JA196**

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF MARLBORO ) | C/A NO.: 2016-CP-34-00264 |
| ) | |
| MAISHA JACOBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ENTRY OF DEFAULT** |
| -vs- ) | |
| ) | |
| WAYNE HUNT. ) | |
| ) | |
| Defendant. ) | |

It appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed and no timely answer has been made by the defendant. Plaintiff is therefore entitled to an Entry of Default.

It is hereby **ORDERED** that the Clerk of Court for Marlboro County make an entry of default on the roster of case by the name of defendant, Wayne Hunt.

**IT IS SO ORDERED.**

_____
The Honorable Paul M. Burch
Judge, Fourth Judicial Circuit

_____, South Carolina
~~September~~ 10/4, 2017

FILED
2017 OCT 16  PM 12 08
ANITA M. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.

**JA197**

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF MARLBORO      ) C/A NO.: 2016-CP-34-00264
                        )
MAISHA JACOBS,          )
                        )
          Plaintiff,    )        **ORDER OF REFERENCE**
                        )
     -vs-               )
                        )
WAYNE HUNT.             )
                        )
          Defendant(s). )
_____ )

This matter comes before me on motion of Alex Murdaugh to refer the matter to a Special

Referee in order to determine the amount of damages.

It is, therefore, ORDERED that this matter be referred to Douglas Jennings, Jr. with finality

to take testimony and determine the amount of damages. Any motions filed after this order shall be

heard by the referee.

                                        _____
                                        The Honorable Paul M. Burch
                                        Fourth Judicial Circuit

**WE MOVE**:
PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P. A.

BY: _____
          R. Alexander Murdaugh
          P. O. Box 457
          Hampton, SC 29924
          (803) 943-2111
          ATTORNEYS FOR PLAINTIFF

**I CONSENT TO SERVE AS SPECIAL REFEREE**:

_____
Douglas Jennings, Jr.
Douglas Jennings Law Firm, LLC
P.O. Drawer 995
Bennettsville, SC 29512-0995

FILED
2018 OCT 22 PM 3 19
ANITA H. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.

JA198

ELECTRONICALLY FILED - 2022 Mar 23 2:43 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400264

USCA4 Appeal: 25-1848    Doc: 18    Filed: 09/30/2025    Pg: 205 of 526

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF MARLBORO | CIVIL ACTION NO.: 2016-CP-34-00264 |
| MAISHA JACOBS, | |
| Plaintiff, | |
| v. | **ORDER OF JUDGMENT** |
| WAYNE HUNT, | |
| Defendant. | |

THIS MATTER CAME before me on the Entry and Order of Default filed on October 16, 2017 and issued by the Honorable Paul M. Burch. It appears from the Affidavit of Default that was filed with the Clerk of Court for Marlboro County, that Plaintiff's Counsel served Defendant Wayne Hunt via the South Carolina Department of Motor Vehicles pursuant to S.C. Code § 15-9-350 on February 10, 2017. Plaintiff filed a Summons and Complaint on December 8, 2016 and no Answer, Demurrer or Notice of Appearance has been served upon her by or on behalf of the Defendant Wayne Hunt at any point in time. The Honorable Paul M. Burch properly entered Default against Defendant on October 16, 2017 and Defendant Wayne Hunt remains in default. On October 22, 2018 an Order was filed in which Judge Paul M. Burch referred this matter to the undersigned as Special Referee to hold a hearing to determine damages and make findings of fact.

After significant delays which were primarily related to Covid and the pandemic, the undersigned as Special Referee finally conducted a hearing on the record. This hearing was properly noticed for February 21, 2022 at 10:00 am at Douglas Jennings Law Firm, LLC located at 151 Broad Street, Bennettsville, South Carolina. Defendant was provided notice by written correspondence dated February 9, 2022 that was sent to his last known address.



No response was ever received from Defendant Wayne Hunt or anyone on his behalf. After ten (10) minutes past the appointed hearing time, the hearing was called to order and testimony was taken on the

record. The Defendant Wayne Hunt did not appear at any point during the duration of the hearing. Present at the hearing was the Plaintiff along with her counsel, Neil E. Alger, and the undersigned as Special Referee. A court reporter also attended and transcribed the hearing.

<u>FINDINGS OF FACTS</u>

Upon being duly sworn the Plaintiff testified to the following:

1.      Plaintiff is Maisha Jacobs, a resident of Marlboro County, South Carolina.

2.      On December 10, 2013, she was traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, entered the intersection, and struck her vehicle causing her to be injured.

3.      Plaintiff was transported by EMS to Scotland Memorial Hospital where she was treated for neck and back pain, headaches, a thigh laceration that required thirteen staples and which resulted in a scar approximately four to five inches long. She also suffered contusions on her scalp, face, arm and hand along stiffness, pain and soreness to her back and knees. Her injuries caused her to lose three weeks of school.

4.      The Plaintiff has presented medical bills and expenses in excess of $7,645.35 along with testimony substantiating her treatment and complaints to the various parts of her body.

5.      Plaintiff testified that she has experienced significant pain and suffering and anticipates that she will experience such pain and suffering in the future. Plaintiff is 26 years of age and according to S.C. Code § 19-1-150, Plaintiff has an additional life expectancy of 55.43 years.

<u>DECISION</u>

2



ELECTRONICALLY FILED - 2022 Mar 23 2:43 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400264

USCA4 Appeal: 25-1848    Doc: 18    Filed: 09/30/2025    Pg: 207 of 526

After listening to all the testimony and reviewing the evidence presented, I find that as a direct result of the collision, the Plaintiff has suffered painful physical injuries to her leg, neck and back as well as other parts of her body. The Plaintiff has incurred medical expenses and out of pocket expenses of more than $7,645.35.

I find the Plaintiff to be credible in her recitation of the facts and description of her damages. It appears the Plaintiff has sustained a monetary loss for medical expenses as well as physical and psychological injuries that have affected her health and welfare. Plaintiff has experienced, and will continue to experience, significant pain and suffering.

**IT IS THE ORDER** of the Court that the Plaintiff is awarded a final default judgment in the amount of One Hundred and Ten Thousand ($110,000.00) Dollars as compensation for her injuries and damages.

**IT IS SO ORDERED.**

Date: _March 22, 2022_

_____
Douglas Jennings, Jr., Esq.
Special Referee, Marlboro County

3

**JA201**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

The Cincinnati Insurance Company,          )
                                           )
                    Plaintiff,             )        **C.A. NO.:  7:22-cv-00189-M-RJ**
                                           )
v.                                         )
                                           )
Wayne Hunt, Levi Owens as Personal         )        **AFFIDAVIT OF SERVICE**
Representative for the Estate of Christopher )
McLean, Maisha Jacobs, and Wilmington      )
Shipping Company,                          )
                                           )
                    Defendants.            )
_____    )

      I certify that on November 15, 2022, I effected service upon Defendant Levi Owens as

Personal Representative for the Estate of Christopher McLean by causing to be delivered a copy

of the Summons and Complaint via United Parcel Service addressed to Levi Owens as Personal

Representative for the Estate of Christopher McLean, 1816 Peterkin Rd., Bennettsville, SC 29512.

A true and accurate copy of the United Parcel Service Proof of Delivery of the Summons and

Complaint is attached hereto as Exhibit A, which were delivered and signed for on November 15,

2022 at 4:45 p.m.   A receipt indicating the shipping directions is attached hereto as Exhibit B.

C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767

SWORN TO BEFORE ME

THIS 15TH DAY OF NOVEMBER 2022



Judith J. Saad

NOTARY PUBLIC FOR SOUTH CAROLINA

MY COMMISSION EXPIRES: 4-21-24

2

**EXHIBIT A**

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1Z46Y87AA895750098

**Weight**

1.20 LBS

**Service**

UPS Ground

**Shipped / Billed On**

11/14/2022

**Additional Information**

Adult Signature Required

**Delivered On**

11/15/2022 4:45 P.M.

**Delivered To**

1816 PETERKIN RD
BENNETTSVILLE, SC, 29512, US

**Received By**

Cassandra

**Left At**

Residential

**Reference Number(s)**

CIC-HUNT

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 11/15/2022 4:59 P.M. EST

**JA204**

**EXHIBIT B**

 Shipment Receipt          November 15, 2022          1Z46Y87AA895750098

## Where

**Ship From**
WILKES ATKINSON & JOYNER, LLC, JUDY SAAD
127 DUNBAR ST., SUITE 200, SPTBG, SC 29306
8645911113

**Ship To**
LEVI OWENS, AS PR FOR EST. CHRISTOPHER MCCLEAN
1816 PETERKIN ROAD, BENNETTSVILLE, SC 29512
Residential

## What

Total Billable Weight: 2 lbs

**Package 1 - 1Z46Y87AA895750098**

| Weight | Dimensions | Reference Numbers | Delivery Confirmation |
|---|---|---|---|
| 1.2 lbs | 14 in x 8 in x 1 in<br>My Packaging | CIC-HUNT | Adult Signature Required |

# Service Details - UPS Ground

## Additional Options

Email Notifications: jsaad@wajlawfirm.com

## Payment

Bill Shipping Charges To: Shipper - 46Y87A

## Shipping Total

**Shipping Fees**

| | |
|---|---|
| UPS Ground | $10.13 |
| Residential Address Surcharge | $4.85 |
| **Package 1** | |
| Delivery Area Surcharge | $6.50 |
| Fuel Surcharge | $4.94 |

**Additional Option Fees**

| Package 1 | |
|---|---|
| Delivery Confirmation | $7.15 |

**Subtotals**

| | |
|---|---|
| Shipping Fees | $26.42 |
| Additional Option Fees | $7.15 |
| **Combined Charges** | **$33.57** |
| **Contract Rate** | **$30.67** |

Rate excludes VAT. Rate includes a fuel Surcharge, but excludes taxes, duties and other charges that may apply to the shipment.
Your invoice may vary from the displayed reference rates

Transportation Charges: for services listed as guaranteed, refunds apply to transportation charges only. See Terms and Conditions in the Service Guide for details. Certain commodities and high value shipments may require additional transit time for customs clearance.

Note: This document is not an invoice.

All shipments are subject to the UPS Tariff/Terms and Conditions of Service ("UPS terms") in effect on the date of shipment, which are available at www.ups.com/terms. Pursuant to the UPS Terms, UPS's maximum liability for loss or damage to each domestic package or international shipment is limited to $100, unless the shipper declares a greater value in the declared value field of the UPS shipping system used and pays the applicable charge (in which case UPS's maximum liability is the declared value). Special terms apply to some services and articles. Please review the UPS Terms for liability limits, exclusions from liability, maximum declared values, prohibited items, and other important terms of service. The shipper agrees that in the absence of a greater declared value, $100 value is a reasonable limitation under the circumstances of the transportation. Claims not timely made (generally noticed within sixty days and filed within nine months, but filed within sixty days for international shipments) are deemed waived and will not be paid. See the UPS Terms for details. Under no circumstances will UPS be liable for any special, incidental, or consequential damages.

**JA205**

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
District of North Carolina

Case Number: 7:22-CV-189-M-RJ

Plaintiff:
**The Cincinnati Insurance Company**
vs.
Defendant:
**Wayne Hunt, et al.**

Received by FALCON EXPRESS SERVICES, LLC to be served on **Wayne Hunt, 945B Woods Street, Orangeburg, SC 29115**. I, *HORACE LEYSATH*, being duly sworn, depose and say that on the *16* day of *NOV*, 20 *22* at *11* : *20* m., executed service by delivering a true copy of the **SUMMONS IN A CIVIL ACTION, COMPLAINT, E-CLAS BANNER PAGES FROM THE CINCINNATI INSURANCE COMPANY (EXHIBITS) and OTHER EXHIBITS** in accordance with state statutes in the manner marked below:

( ✓ ) INDIVIDUAL SERVICE: Served the within-named person.

( ) SUBSTITUTE SERVICE: By serving _____ as _____, who resides therein and is of suitable age and discretion.

( ) NON SERVICE: For the reason detailed in the Comments below.

( ) OTHER SERVICE TYPE: Service details listed in Comments below.

Military Status: ( ) Yes or ( ✓ ) No  If yes, what branch? _____

COMMENTS: _____
_____
_____
_____

Age *40*  Sex *M* F  Race *B*  Height *5'0"*  Weight *150*  Hair *BLK*  Glasses Y/ *N*

Is the place of service the dwelling house or usual place of abode for the party being served? ( ✓ ) Yes  ( ) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the *16th* day of *November 2022* by the affiant who is personally known to me.

NOTARY PUBLIC.
My Commission Expires: *10/24/2024*

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
P.O. Box 874
Charleston, SC 29402-0874
(843) 577-9696

Our Job Serial Number: 2022007128

TARZY LEYSATH
Notary Public, State of South Carolina
My Commission Expires Oct. 24, 2024

Copyright © 1992-2022 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2k

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
### No. 7:22-CV-00189

|  |  |  |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ANSWER OF LEVI OWENS, AS** |
| | ) | **PERSONAL REPRESENTATIVE FOR** |
| Wayne Hunt; Levi Owens, as Personal | ) | **THE ESTATE OF CHRISTOPHER** |
| Representative for the Estate of | ) | **MCLEAN** |
| Christopher McLean; Maisha Jacobs; and | ) | |
| Wilmington Shipping Company; | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean ("Defendant" or "this Defendant"), answers the Complaint of Plaintiff The Cincinnati Insurance Company ("Cincinnati") as follows:

1. Upon information and belief, the allegations in Paragraphs 1-3 of Cincinnati's complaint are admitted.

2. Upon information and belief, Paragraph 4 of Cincinnati's complaint is admitted to the extent that Defendant Wayne Hunt was a citizen and resident of Pender County, North Carolina at the time of the incident which gave rise to the underlying wrongful death action. All remaining allegations, and specifically those regarding Hunt's current residence are denied as Defendant lacks knowledge or information sufficient to form a belief about the truth of any such allegation.

3. Upon information and belief, the allegations in Paragraphs 5-9 of Cincinnati's complaint are admitted.

4.      Defendant lacks knowledge or information sufficient to form a belief about the truth of Paragraph 10 of Cincinnati's complaint and any allegations contained therein are denied and strict proof thereof is demanded.

5.      Upon information and belief, the allegations in Paragraphs 11-14 of Cincinnati's complaint are admitted.

6.      Upon information and belief, Paragraph 15 of Cincinnati's complaint is admitted to the extent that Defendant Wilmington Shipping Company's ("WSC") principal place of business is in New Hanover County, North Carolina. As to the remaining allegations, Defendant either lacks sufficient knowledge or information sufficient to form a belief about the truth of such allegations or denies the allegations and strict proof thereof is demanded.

7.      Upon information and belief, the allegations in Paragraph 16 of Cincinnati's complaint are admitted, with the qualification that Defendant lacks information sufficient to admit Exhibits A and B and true and complete copies of the policies in question.

8.      Upon information and belief, Paragraph 17 of Cincinnati's complaint is admitted to the extent that the Court has subject matter jurisdiction over the action. All remaining allegations, and specifically those regarding personal jurisdiction and venue, are denied and strict proof thereof is demanded.

## FACTUAL ALLEGATIONS

9.      Upon information and belief, the allegations in Paragraphs 18-25 of Cincinnati's complaint are admitted.

10.      Upon information and belief, Paragraph 26 of Cincinnati's complaint is admitted to the extent that the subject truck involved in the underlying incident was leased from Penske Truck Leasing Co., Ltd. under a written lease agreement. All remaining allegations are denied as

2

Defendant lacks knowledge or information sufficient to form a belief about the truth of any such allegation.

11.     Upon information and belief, the allegations in Paragraphs 27-29 of Cincinnati's complaint are admitted.

12.     Upon information and belief, the allegations in Paragraph 30 of Cincinnati's complaint are admitted to the extent that service was effected through the South Carolina Department of Motor Vehicles; however, the date of service was February 9, 2017, not February 10, 2017, as stated by the complaint. All other allegations of Paragraph 30 are admitted.

13.     Upon information and belief, the allegations in Paragraph 31 of Cincinnati's complaint are admitted.

14.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 32 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

15.     Upon information and belief, the allegations in Paragraph 33 of Cincinnati's complaint are admitted.

16.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

17.     Upon information and belief, the allegations in Paragraph 35 of Cincinnati's complaint are admitted.

18.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 36 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

19.     Upon information and belief, the allegations in Paragraphs 37-38 of Cincinnati's complaint are admitted.

20.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 39 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

21.     Upon information and belief, the allegations in Paragraphs 40-41 of Cincinnati's complaint are admitted.

22.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 42 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

23.     Upon information and belief, the allegations in Paragraphs 43-44 of Cincinnati's complaint are admitted.

24.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 45-47 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

25.     Upon information and belief, the allegations in Paragraphs 48-49 of Cincinnati's complaint are admitted.

26.     Upon information and belief, the allegations in Paragraph 50 of Cincinnati's complaint are admitted to the extent that service was effected through the South Carolina Department of Motor Vehicles; however, the date of service was February 9, 2017, not February 10, 2017, as stated by the complaint. All other allegations of Paragraph 50 are admitted.

4

27.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 51 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

28.    Upon information and belief, the allegations in Paragraph 52 of Cincinnati's complaint are admitted to the extent that an affidavit of default was filed with the Marlboro County Clerk of Court; however, the date of filing was October 16, 2017, not November 16, 2017, as stated by the complaint. All other allegations of Paragraph 52 are admitted.

29.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 53 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

30.    Upon information and belief, the allegations in Paragraph 54 of Cincinnati's complaint are admitted to the extent that an entry of default was executed by Judge Paul M. Burch; however, the date of filing was October 16, 2017, not November 16, 2017, as stated by the complaint. All other allegations of Paragraph 54 are admitted.

31.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 55 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

32.    Upon information and belief, the allegations in Paragraphs 56-57 of Cincinnati's complaint are admitted.

33.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 58 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

5

34.     Upon information and belief, the allegations in Paragraph 59 of Cincinnati's complaint are admitted.

35.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 60 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

36.     Upon information and belief, the allegations in Paragraphs 61-62 of Cincinnati's complaint are admitted.

37.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 63-65 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

38.     Upon information and belief, the allegations in Paragraph 66 of Cincinnati's complaint are admitted.

## FOR A DEFENSE TO FIRST DECLARATION

39.     The allegations in Paragraph 67 of Cincinnati's complaint are denied in that they restate denied allegations and strict proof thereof is demanded.

40.     Upon information and belief, the allegations in Paragraphs 68-69 of Cincinnati's complaint are admitted.

41.     Upon information and belief, the allegations in Paragraph 70 of Cincinnati's complaint are admitted to the extent that a default judgment was entered against Hunt; however, Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 70 and as such the allegations are denied and strict proof thereof is demanded.

42.     Upon information and belief, the allegations in Paragraph 71 of Cincinnati's complaint are admitted.

43.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 72 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

44.     The allegations in Paragraphs 73 are denied and strict proof thereof is demanded.

45.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 74-80 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary

46.     Upon information and belief, the allegations in Paragraphs 81-82 of Cincinnati's complaint are admitted.

47.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 83 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary

48.     Upon information and belief, the allegations in Paragraph 84 of Cincinnati's complaint are admitted to the extent that this is a declaratory judgment brought pursuant to federal and North Carolina law and that a justiciable controversy exists between Cincinnati, Hunt, Owens, and Defendant Maisha Jacobs; as to the remaining allegations concerning Defendant WSC Defendant either lacks sufficient knowledge or information to form a belief about the truth of the allegations or such allegations call for or state legal conclusions, and as such the remaining allegations as to WSC are denied and strict proof thereof is demanded, or no response is necessary.

7

49.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 85 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary

50.     Upon information and belief, the allegations in Paragraph 86 of Cincinnati's complaint are admitted.

51.     To the extent that any allegations are contained in the WHEREFORE paragraph of Cincinnati's complaint, such allegations are denied.

52.     ALL ALLEGATIONS IN CINCINNATI'S COMPLAINT NOT EXPRESSLY ADMITTED ARE DENIED, INCLUDING THE PRAYER FOR RELIEF, ANY HEADINGS, EXHIBITS, AND SUBPARTS.

## FOR A SECOND DEFENSE

53.     Cincinnati's complaint fails to state facts sufficient to constitute a cause of action and the complaint should be dismissed pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(6).

## FOR A THIRD DEFENSE

54.     There is a lack of personal jurisdiction over Defendant Levi Owens as Personal Representative of the Estate of Christopher McLean, and this case should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## FOR A FOURTH DEFENSE

55.     The Court should refrain from exercising jurisdiction over this action pursuant to federal abstention doctrine.

**FOR A FIFTH DEFENSE**

56.    Venue in the Southern Division of the Eastern District of North Carolina is improper and this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative, transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404.

**FOR AS SIXTH DEFENSE**

57.    Defendant asserts all defenses and laws as stated in the federal Motor Carrier Act of 1980 (49 U.S.C. § 13906), and specifically asserts that said act preempts state law govern Cincinnati's insurance policies.

**FOR A SEVENTH DEFENSE**

58.    Defendant reserves his right to assert any additional and affirmative defenses as may be revealed or become available to him during the course of the investigation and/or discovery in this case and are consistent with the Federal Rules of Civil Procedure.

WHEREFORE, having fully responded to Plaintiff's complaint, the Defendant prays for Plaintiff's complaint to be dismissed or judgment against Plaintiff, for the costs of this action, attorneys fees, and for such other and further relief as the Court may deem just and proper.

.

/s/ Jason Scott Luck
Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law
S.C. Bar No.: 73676
**Lead Counsel for Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean**

<u>s/ Gregory Richard Simons</u>
Gregory Richard Simons
THE OVERHOLT LAW FIRM, PC
2505 S. College Road
Wilmington, NC 28412
Greg@overholtlaw.com
Telephone: (910) 798-5900
Facsimile:  (910) 799-8496
NC Bar No.:  52531
**Local Civil Rule 83.1(d) Counsel for Defendant, Levi Owens, as Personal Representative of the Estate of Christopher McLean**

10

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on the 6th day of December, 2022, the foregoing document was filed electronically using the Court's Electronic Case Filing System. A Notice of Electronic Filing will be sent by electronic mail to all counsel of record by the operation of the Court's Electronic Filing System.

**C. Daniel Atkinson**
**WILKES ATKINSON & JOYNER, LLC**
**127 Dunbar Street, Suite 200**
**Spartanburg, SC 29306**
**datkinson@wajlawfirm.com**
**Attorney for Plaintiff, The Cincinnati Insurance Company**

This the 6th day of December, 2022.

s/ Gregory Richard Simons
Gregory Richard Simons
THE OVERHOLT LAW FIRM, PC
2505 S. College Road
Wilmington, NC 28412
Greg@overholtlaw.com
Telephone: (910) 798-5900
Facsimile: (910) 799-8496
NC Bar No.: 52531
**Local Civil Rule 83.1(d) Counsel for Defendant, Levi Owens, as Personal Representative of the Estate of Christopher McLean**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **PLAINTIFF'S MOTION FOR ENTRY OF** |
| Representative for the Estate of Christopher | ) | **DEFAULT AS TO DEFENDANTS** |
| McLean, Maisha Jacobs, and Wilmington | ) | **WAYNE HUNT AND** |
| Shipping Company, | ) | **WILMINGTON SHIPPING COMPANY** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Fed. R. Civ. P. 55 and Local Civil Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") moves for an Order of Entry of Default against Defendants Wayne Hunt ("Hunt") and Wilmington Shipping Company ("WSC"). The basis for this Motion is that over twenty-one (21) days have passed since Hunt and WSC were served with the Summons and Complaint, and attachments incorporated into the Complaint, and neither Hunt nor WSC have appeared, filed any Motion to Dismiss, filed any Answer, or otherwise failed to defend this Action. Plaintiffs provide proof of service and the lapse of time in the attached Affidavits of Default of C. Daniel Atkinson, which are filed as Exhibits A and B to this Motion, and which are incorporated by reference herein. Pursuant to Fed. R. Civ. P. 55(a), Plaintiff requests an Order of Entry of Default.

December 8, 2022

/s/ C. Daniel Atkinson
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT OF DEFAULT** |
| Representative for the Estate of Christopher | ) | **AS TO WAYNE HUNT** |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PERSONALLY appeared before me C. Daniel Atkinson, who being duly sworn states the following:

1.      That he is the attorney for Plaintiff The Cincinnati Insurance Company ("Plaintiff") in the above-captioned matter;

2.      That jurisdiction over Defendant Wayne Hunt ("Hunt"), was accomplished on or before November 16, 2022, by hand delivering a filed copy of the Summons and Complaint and exhibits, all of which have been filed with this court as ECF Nos.1 and 4, to Wayne Hunt at 945B Woods Street, Orangeburg, South Carolina 29115, as reflected by ECF No. 9, filed electronically with this court on November 11, 2022, and incorporated herein by reference;

3.      That more than twenty-one (21) days have elapsed since the service of said Summons and Complaint;

4.      That Hunt has served no valid Answer, notice of appearance, or other pleading in this matter and now is and has been in default.

FURTHER AFFIANT SAYETH NAUGHT.

By:    _____
C. Daniel Atkinson (N.C. Bar #34747)
datkinson@wajlawfirm.com
Attorney for Plaintiff
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-2355

SWORN TO BEFORE ME THIS

___ day of December, 2022

_____
Judith J. Saad
Notary Public for South Carolina
My Commission Expires: 04-21-2014

2

**JA220**

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT OF DEFAULT AS TO** |
| Representative for the Estate of Christopher | ) | **WILMINGTON SHIPPING COMPANY** |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PERSONALLY appeared before me C. Daniel Atkinson, who being duly sworn states the following:

1.     That he is the attorney for Plaintiff The Cincinnati Insurance Company ("Plaintiff") in the above-captioned matter;

2.     That jurisdiction over Defendant Wilmington Shipping Company ("Wilmington"), was accomplished on or before November 15, 2022, by delivering a filed copy of the Summons and Complaint and exhibits, all of which have been filed with this court as ECF Nos.1 and 4,  to Elizabeth Ruffin, Registered Agent for Wilmington Shipping Company, at 330 Shipyard Blvd., Wilmington, North Carolina  28412, via United Parcel Service, as reflected by ECF No. 6 filed electronically with this Court on November 15, 2022, and incorporated herein by reference;

3.     That  more  than  twenty-one  (21)  days  have  elapsed  since  the  service  of  said Summons and Complaint;

4.     That  Wilmington  has  served  no  valid  Answer,  notice  of  appearance,  or  other pleading in this matter and now is and has been in default.

FURTHER AFFIANT SAYETH NAUGHT.

By:  

C. Daniel Atkinson (N.C. Bar #34747)
datkinson@wajlawfirm.com
Attorney for Plaintiff

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-1113

SWORN TO BEFORE ME THIS

_____ 8 day of December, 2022

Judith J. Saad
Notary Public for South Carolina
My Commission Expires: 04-21-2014

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **ORDER FOR ENTRY OF DEFAULT AS TO** |
| Representative for the Estate of Christopher | ) | **DEFENDANTS WAYNE HUNT AND** |
| McLean, Maisha Jacobs, and Wilmington | ) | **WILMINGTON SHIPPING COMPANY** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") has moved for an Order of Entry of Default against Defendants Wayne Hunt ("Hunt") and Wilmington Shipping Company ("WSC"). The basis for this Motion is that over twenty-one (21) days have passed since Hunt and WSC were served with the Summons and Complaint, and attachments incorporated into the Complaint, and neither Hunt nor WSC have appeared, filed any Motion to Dismiss, filed any Answer, or otherwise failed to defend this Action. Plaintiff provided proof of service and the lapse of time via Affidavits of Default, which were filed as Exhibits to Plaintiff's Motion. From review of the Affidavits of Default, as well as the docket filings in this case, it appears that Plaintiff is entitled to an Entry of Default as to Defendants Wayne Hunt and Wilmington Shipping Company. It further appears that Plaintiff has effected service upon all parties as required by Local Rule 55.1.

Accordingly, Plaintiff's Motion for Entry of Default as to Defendants Wayne Hunt and Wilmington Shipping Company is GRANTED. The Clerk shall enter default in this case as to Wayne Hunt and Wilmington Company.

IT IS SO ORDERED.

1

This the _____th day of _____, _____.


_____
Clerk of Court

2

**JA224**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **CERTIFICATE OF SERVICE** |
| Representative for the Estate of Christopher | ) | |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     I hereby certify that on December 8, 2022, a copy of Motion for Entry of Default as to Wayne Hunt and Wilmington Shipping Company, Affidavits of Default as to Wayne Hunt and Wilmington Shipping Company, and Proposed Order of Entry of Default, were served upon the following via ECF:

Gregory R. Simons, Esq.
The Overholdt Law Firm, PC
2505 S. College Rd
Wilmington, NC  28412
*Attorney for Levi Owens as Personal Representative*
*for the Estate of Christopher McLean*

and the following via U.S. Mail, postage prepaid:

Neil R. Alger, Esq.
Parker Law Group
PO Box 2530
Ridgeland, SC 29936
*Attorney for Defendant Maisha Jacobs*

Wayne Hunt
945B Woods Street
Orangeburg, South Carolina 29115

Wilmington Shipping Company
330 Shipyard Blvd.
Wilmington, North Carolina  28412

/s/ C. Daniel Atkinson
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT OF NON-MILITARY SERVICE** |
| Representative for the Estate of Christopher | ) | **AS TO WAYNE HUNT** |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I certify that on December 13, 2022, in an effort to comply with Servicemembers Civil

Relief Act, 50 U.S.C. app. §521(b), I conducted a search on the Servicemembers Civil Relief Act

(SCRA) Website of the Department of Defense Manpower Data Center, and found that Defendant

Wayne Hunt has no active duty status as to all branches of the Uniformed Services (see attached

Exhibit A).  Therefore, upon information and belief, Defendant Wayne Hunt is not in the Military

Service of the United States as contemplated by the Servicemembers Civil Relief Act.

C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113

SWORN TO BEFORE ME
THIS 13 DAY OF December 2022

Judith J. Saad
NOTARY PUBLIC FOR SOUTH CAROLINA
MY COMMISSION EXPIRES: 4-21-2024



**EXHIBIT A**

Department of Defense Manpower Data Center

Results as of : Dec-13-2022 10:46:49 AM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:       Jun-XX-1981
Last Name:       HUNT
First Name:      WAYNE
Middle Name:
Status As Of:    Dec-13-2022
Certificate ID:   XVTDN9KT8WDFS2S

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

# EXHIBIT A

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

The Cincinnati Insurance Company,                )
                                                 )
                    Plaintiff,                   )    **C.A. NO.: 7:22-cv-00189-M-RJ**
                                                 )
v.                                               )
                                                 )
Wayne Hunt, Levi Owens as Personal              )    **ENTRY OF DEFAULT AS TO**
Representative for the Estate of Christopher )    **DEFENDANTS WAYNE HUNT AND**
McLean, Maisha Jacobs, and Wilmington    )    **WILMINGTON SHIPPING COMPANY**
Shipping Company,                                )
                                                 )
                    Defendants.                  )
_____)

Pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") has moved for an Entry of Default against Defendants Wayne Hunt ("Hunt") and Wilmington Shipping Company ("WSC"). The basis for this Motion is that over twenty-one (21) days have passed since Hunt and WSC were served with the Summons and Complaint, and attachments incorporated into the Complaint, and neither Hunt nor WSC have pleaded or otherwise defended this Action. Plaintiff provided proof of service and the lapse of time via Affidavits of Default, which were filed as Exhibits to Plaintiff's Motion. From review of the Affidavits of Default, as well as the docket filings in this case, it appears that Plaintiff is entitled to an Entry of Default as to Defendants Wayne Hunt and Wilmington Shipping Company. It further appears that Plaintiff has effected service upon all parties as required by Local Rule 55.1.

Accordingly, Plaintiff's Motion for Entry of Default is GRANTED, and DEFAULT is hereby entered against Defendants Wayne Hunt and Wilmington Shipping Company.

    DATED: January 11, 2023

                                             _____
                                             Peter A. Moore, Jr.
                                             Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  7:22-cv-00189** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **PLAINTIFF'S MOTION FOR DEFAULT** |
| Representative for the Estate of Christopher | ) | **JUDGMENT AS TO DEFENDANTS HUNT** |
| McLean, Maisha Jacobs, and Wilmington | ) | **AND WILMINGTON SHIPPING COMPANY** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") moves this Court for an Order entering a default judgment against Defendants Wayne Hunt and Wilmington Shipping Company.  The basis for this Motion is that Wayne Hunt was served via personal service with the Summons and Complaint on November 16, 2022, according to an Affidavit of Service filed with the Court on November 21, 2022.  (ECF #9.) Defendant Wilmington Shipping Company was served via United Parcel Service delivery to its Registered Agent, Elizabeth Ruffin, as established by an Affidavit of Service, filed with the Court on November 15, 2022.  (ECF #6.)  On December 8, 2022, Plaintiff filed a Motion for Entry of Default as to Hunt and Wilmington Shipping Company.  (ECF #13.)  On January 12, 2023, the Clerk of Court executed as Order of Entry of Default as to Hunt and Wilmington Shipping Company.  (ECF #17.)

The sole relief sought from Hunt and Wilmington Shipping Company is a declaration of this Court that CIC has no obligation to defend or indemnify Hunt under the Policies at issue; therefore, there is no requirement for any damages hearing.  Plaintiff seeks no award of fees or costs as to Hunt or Wilmington.

1

This Motion is based upon the pleadings and affidavits filed to-date, in this case, the Memorandum of Authority filed herewith, and the Affidavits of C. Daniel Atkinson, filed as Exhibits A and B hereto.

Respectfully submitted,

This 17th day of February, 2023,

/s C. Daniel Atkinson
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767

2

USCA4 Appeal: 25-1848    Doc: 18    Filed: 09/30/2025    Pg: 239 of 526

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT IN SUPPORT OF MOTION FOR** |
| Representative for the Estate of Christopher | ) | **DEFAULT JUDGMENT** |
| McLean, Maisha Jacobs, and Wilmington | ) | **AGAINST WAYNE HUNT** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PERSONALLY appeared before me C. Daniel Atkinson, who being duly sworn states the following:

1.      That he is the attorney for Plaintiff The Cincinnati Insurance Company ("Plaintiff") in the above-captioned matter;

2.      That jurisdiction over Defendant Wayne Hunt ("Hunt"), was accomplished on or before November 16, 2022, by hand delivering a filed copy of the Summons and Complaint and exhibits, all of which have been filed with this court as ECF Nos.1 and 4, to Wayne Hunt at 945B Woods Street, Orangeburg, South Carolina 29115, as reflected by ECF No. 9, filed electronically with this court on November 11, 2022, and incorporated herein by reference;

3.      Hunt is not a minor, and Plaintiff has seen no evidence that Hunt is incompetent, and a South Carolina Court has found Hunt to be competent;

4.      Plaintiff conducted a search of military records to verify that Hunt is not in the military service as defined by the Servicemembers Civil Relief Act of 2003, as previously attested in ECF No. 14;

**JA233**

USCA4 Appeal: 25-1848    Doc: 18    Filed: 09/30/2025    Pg: 240 of 526

5.     Plaintiff seeks no recovery of damages from Hunt, but seeks solely a declaration that Plaintiff owes no duty of defense or indemnity to Hunt under Policies of Insurance issued to Wilmington Shipping Company;

6.     That Hunt has served no valid Answer, notice of appearance, or other pleading in this matter and now is and the Court has issued an Entry of Default against Hunt; and

7.     Plaintiff seeks no recovery of costs against Hunt.

FURTHER AFFIANT SAYETH NAUGHT.

By:          

C. Daniel Atkinson (N.C. Bar #34747)
datkinson@wajlawfirm.com
Attorney for Plaintiff
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-2355

SWORN TO BEFORE ME THIS

17 day of February, 2023



Judith J. Saad
Notary Public for South Carolina
My Commission Expires: 04-21-2024

2

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 7:22-cv-00189-M-RJ** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT IN SUPPORT OF MOTION FOR** |
| Representative for the Estate of Christopher | ) | **DEFAULT JUDGMENT AGAINST** |
| McLean, Maisha Jacobs, and Wilmington | ) | **WILMINGTON SHIPPING COMPANY** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PERSONALLY appeared before me C. Daniel Atkinson, who being duly sworn states the following:

1.     That he is the attorney for Plaintiff The Cincinnati Insurance Company ("Plaintiff") in the above-captioned matter;

2.     That jurisdiction over Defendant Wilmington Shipping Company ("Wilmington"), was accomplished on or before November 15, 2022, by delivering a filed copy of the Summons and Complaint and exhibits, all of which have been filed with this court as ECF Nos.1 and 4,  to Elizabeth Ruffin, Registered Agent for Wilmington Shipping Company, at 330 Shipyard Blvd., Wilmington, North Carolina  28412, via United Parcel Service, as reflected by ECF No. 6 filed electronically with this Court on November 15, 2022, and incorporated herein by reference;

3.     Wilmington is not a person; therefore, it cannot be engaged in military service;

4.     Plaintiff seeks no recovery of damages from Wilmington, but seeks solely a declaration that Plaintiff owes no duty of defense or indemnity to Hunt under Policies of Insurance issued to Wilmington;

USCA4 Appeal: 25-1848      Doc: 18      Filed: 09/30/2025      Pg: 241 of 526

USCA4 Appeal: 25-1848    Doc: 18    Filed: 09/30/2025    Pg: 242 of 526

5.    That Wilmington has served no valid Answer, notice of appearance, or other pleading in this matter and the Court has issued an Entry of Default against Hunt; and

6.    Plaintiff seeks no recovery of costs against Wilmington.

FURTHER AFFIANT SAYETH NAUGHT.

By:    C. Daniel Atkinson (N.C. Bar #34747)
datkinson@wajlawfirm.com
Attorney for Plaintiff

WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-1113

SWORN TO BEFORE ME THIS

_17_ day of February, 2023

Judith J. Saad
Notary Public for South Carolina
My Commission Expires: 04-21-2024



2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:22-CV-00189-M

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | ORDER |
| Representative for the Estate of Christopher | ) | |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on Plaintiff's Motion for Default Judgment as to Defendants Wayne Hunt and Wilmington Shipping Company. DE 18. Pursuant to Fed. R. Civ. P. 55(b)(2) and Local Civil Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") has moved for a Default Judgment against Defendant Wilmington Shipping Company ("Wilmington"). The court has already filed an Entry of Default as to Wilmington [DE 17], and Wilmington has still made no appearance in this case. Plaintiff seeks no damages or costs from Wilmington, and Wilmington is not a party to any suit under the insurance policies at issue. Plaintiff seeks a declaration that Plaintiff owes Wayne Hunt no duty of defense or indemnity under policies of insurance issued by Plaintiff to Wilmington Shipping Company.

The court has reviewed the well-pleaded allegations of Plaintiff's Complaint, which are deemed admitted because of the Entry of Default against it. "Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *United States v. A Perfect Fit for You, Inc.,* 2019 WL 6049940, at *3, *citing Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Upon a Motion for Default

1

Judgment, "[a] court must, therefore, determine whether the well-pleaded allegations in [a plaintiff's] complaint support the relief sought in this action." *Ryan, supra*, 253 F.3d at 780.

The court finds that, based on the factual admissions, Plaintiff is entitled to a declaration from this court that Plaintiff owes no duty of defense or indemnity to Hunt under the Policies. The allegations of Plaintiff's Complaint establish that neither Hunt nor Wilmington ever gave Plaintiff notice of the civil actions filed against Hunt in the Court of Common Pleas for Marlboro County. Under North Carolina law, an insurer's duty to defend "arises when an insurer receives actual notice of the underlying action." *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 293, 708 S.E.2d 138, 154 (2011).

North Carolina courts have a three-step process for evaluating an insurer's duty to defend (or indemnify) once an insurer raises an objection that the insurer did not receive timely notice. First, the court must determine whether the insured gave notice "as soon as practicable." Second, "[i]f not, the trier of fact must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him." Third, "[i]f the good faith test is met [by the insured] then the burden shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay [in reporting]." *Great Am. Ins. Co. v. C.G. Tate Constr. Co. ("Great American I")*, 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981). Further, "the submission of a 'claim' and the giving of a 'notice' of loss or damage are separate and distinct occurrences," meaning that reporting the Accident does not meet all reporting obligations under the Policies. *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 198 (4th Cir. 2005). The Policies required reporting of an incident to provide notice, but they also require all insureds to immediately send CIC copies of legal requests and legal papers received relating to suits, and Wilmington and Hunt did not provide such notice to Plaintiff.

North Carolina's Supreme Court has stated that an insurer meets the first portion of the

2

three-phase test set forth in *Great American I* by simply raising the timeliness of notice as an issue to the court "unless the insurer's allegations that notice was not timely are patently groundless." *Great Am. Ins. Co. v. C.G. Tate Constr. Co. ("Great American II")*, 315 N.C. 714, 719, 340 S.E.2d 743, 747 (1986). The next question becomes whether Wilmington had a good faith reason for delay. Plaintiff made no presentation regarding good faith, reserving its rights in that regard; however, a finding of bad faith in delay is not necessary to defeat coverage obligations. North Carolina's Court of Appeals has found that an insured's failure to give its insurer notice of a negligence suit against the insured relieves the insurer of liability for a default judgment. *South Carolina Ins. Co. v. Hallmark Enters., Inc.*, 88 N.C. App. 642, 364 S.E.2d 678 (1988). To bar coverage for the default judgments, Plaintiff need only demonstrate that the insured's delay "materially impair[ed] its ability to investigate the claim or defend and, thus, to prepare a viable defense." *Id.* at 649, 364 S.E.2d at 682. Here, there are judgments entered against Hunt. *See* Compl. [DE 1] ¶¶ 2, 11–12, 44–46, 48. Because Hunt and/or Wilmington failed to provide notice to Plaintiff, Plaintiff was unable to adequately investigate or defend the claim. Accordingly, Plaintiff is entitled to a declaration from this court that Plaintiff owes no duty of defense or indemnity to Hunt under the Policies.

3

**CONCLUSION**

Because of the default of Hunt and Wilmington, Plaintiff's well-pleaded allegations establish that Plaintiff owes no duty of defense or indemnity to Hunt. Plaintiff has sought no recovery of damages or costs from Wilmington; therefore, the court's judgment is limited to this Declaration.

Plaintiff's Motion for Default Judgment [DE 18] against Defendant Wilmington Shipping Company is GRANTED. The Clerk shall enter judgment against Wilmington Shipping Company declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company.

SO ORDERED this ___19th___ day of April, 2023.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:22-CV-00189-M

The Cincinnati Insurance Company,           )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )                    ORDER
                                            )
Wayne Hunt, Levi Owens as Personal          )
Representative for the Estate of Christopher )
McLean, Maisha Jacobs, and Wilmington       )
Shipping Company,                           )
                                            )
                    Defendants.             )
_____    )

This matter comes before the court on Plaintiff's Motion for Default Judgment as to Defendants Wayne Hunt and Wilmington Shipping Company. DE 18. Pursuant to Fed. R. Civ. P. 55(b)(2) and Local Civil Rule 55.1, Plaintiff The Cincinnati Insurance Company ("Plaintiff") moved for a Default Judgment against Defendant Wayne Hunt ("Hunt"). The court has already filed an Entry of Default as to Hunt [DE 17], and Hunt has still made no appearance in this case. Plaintiff seeks no damages or costs from Hunt. Plaintiff seeks a declaration that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued by Plaintiff to Wilmington Shipping Company.

The court has reviewed the well-pleaded allegations of Plaintiff's Complaint, which are deemed admitted in the form of the Entry of Default against him. "Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *United States v. A Perfect Fit for You, Inc.,* 2019 WL 6049940, at *3, *citing Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Upon a Motion for Default Judgment, "[a] court must, therefore, determine whether the well-pleaded allegations in [a

1

plaintiff's] complaint support the relief sought in this action." *Ryan, supra*, 253 F.3d at 780.

The court finds that, based on the factual admissions, Plaintiff is entitled to a declaration from this court that CIC owes no duty of defense or indemnity to Hunt under the Policies. The allegations of Plaintiff's Complaint establish that neither Hunt nor Wilmington ever gave Plaintiff notice of the civil actions filed against Hunt in the Court of Common Pleas for Marlboro County. Under North Carolina law, an insurer's duty to defend "arises when an insurer receives actual notice of the underlying action." *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 293, 708 S.E.2d 138, 154 (2011).

North Carolina courts have a three-step process for evaluating an insurer's duty to defend (or indemnify) once an insurer raises an objection that the insurer did not receive timely notice. First, the court must determine whether the insured gave notice "as soon as practicable." Second, "[i]f not, the trier of fact must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him." Third, "[i]f the good faith test is met [by the insured] then the burden shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay [in reporting]." *Great Am. Ins. Co. v. C.G. Tate Constr. Co. ("Great American I")*, 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981). Further, "the submission of a 'claim' and the giving of a 'notice' of loss or damage are separate and distinct occurrences," meaning that reporting the Accident does not meet all reporting obligations under the Policies. *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 198 (4th Cir. 2005). The Policies required reporting of an incident to provide notice, but they also require all insureds to immediately send CIC copies of legal requests and legal papers received relating to suits, and Wilmington and Hunt did not provide such notice to Plaintiff.

North Carolina's Supreme Court has stated that an insurer meets the first portion of the three-phase test set forth in *Great American I* by simply raising the timeliness of notice as an issue to the

2

court "unless the insurer's allegations that notice was not timely are patently groundless." *Great Am. Ins. Co. v. C.G. Tate Constr. Co. ("Great American II")*, 315 N.C. 714, 719, 340 S.E.2d 743, 747 (1986). The next question becomes whether Hunt had a good faith reason for delay. Plaintiff made no presentation regarding good faith, reserving its rights in that regard; however, a finding of bad faith in delay is not necessary to defeat coverage obligations. North Carolina's Court of Appeals has found that an insured's failure to give its insurer notice of a negligence suit against the insured relieves the insurer of liability for a default judgment. *South Carolina Ins. Co. v. Hallmark Enters., Inc.*, 88 N.C. App. 642, 364 S.E.2d 678 (1988). To bar coverage for the default judgments, Plaintiff need only demonstrate that your delay "materially impair[ed] its ability to investigate the claim or defend and, thus, to prepare a viable defense." *Id.* at 649, 364 S.E.2d at 682. Here, there are judgments entered against Hunt. *See* Compl. [DE 1] ¶¶ 11–12, 44–46, 48. Because Hunt failed to provide notice to Plaintiff, Plaintiff was unable to adequately investigate or defend the claim. Accordingly, Plaintiff is entitled to a declaration from this court that Plaintiff owes no duty of defense or indemnity to Hunt under the Policies.

3

## CONCLUSION

Because of the default of Hunt and Wilmington, Plaintiff's well-pleaded allegations establish that Plaintiff is entitled to Judgment by Default that Plaintiff owes no duty of defense or indemnity to Hunt. Plaintiff has sought no recovery of damages or costs from Hunt, therefore, the court's judgment is limited to this Declaration.

Plaintiff's Motion for Default Judgment [DE 18] against Defendant Wayne Hunt is GRANTED. The Clerk shall enter judgment against Hunt declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company.

SO ORDERED this ___19th___ day of April, 2023.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:22-CV-189-M-RJ

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER FOR DISCOVERY PLAN** |
| v. | ) | |
| | ) | |
| WAYNE HUNT, et al., | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the Court will enter a scheduling order in this case. **The Rule 26(f) meeting must occur by 5/19/2023.** The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference and for attempting in good faith to agree on the proposed discovery plan. **The discovery plan must be submitted to the Court within fourteen (14) days after the 26(f) meeting.**

Please confer with opposing counsel and present to the Court a discovery plan in accordance with the Rule 26 Report of the Parties' Planning Meeting form, available on the district's website. Pursuant to Rule 16(b), the planning meeting required by Fed. R. Civ. P. 26(f) and the discovery plan contemplated by this request are a mandatory part of the process of formulating a scheduling order. If counsel cannot agree on a discovery plan, please submit your respective positions to the Clerk of Court, and the Court will resolve the disputed issues. Following court approval, modifications of the scheduling order will be allowed only by motion and for good cause shown.

**Mandatory initial disclosures must be made within fourteen (14) days after the Rule 26(f) conference** unless (1) a different time is set by stipulation of parties or court order, or (2) a party objects during the 26(f) conference and states the objection and the response thereto in the discovery plan. Absent a stipulation or court order, any party first served or otherwise joined after the 26(f) conference must make these disclosures within thirty (30) days after being served or joined. Failure to disclose information required by Rule 26(a) or 26(e)(1) may subject the offending party or parties to sanctions pursuant to Rule 37, Fed. R. Civ. P.

Note that Local Rule 7.1 requires that all motions (except those relating to the admissibility of evidence at trial) must be filed within 30 days after the conclusion of discovery. Untimely motions may be summarily denied. Also, note that cases are currently being docketed for trial 60 to 90 days after discovery expires with a final pretrial conference scheduled approximately two weeks prior to trial.

**This district now mandates mediation, pursuant to Local ADR Rule 101, for civil cases in specified categories.** Refer to Local ADR Rule 101.1a and other relevant rules to determine the applicability of the mediation requirement to this case. **The parties in cases subject to mandatory mediation must discuss mediation plans at the 26(f) conference and report their plans in the discovery plan, pursuant to Local ADR Rule 101.1a(b).**

SO ORDERED this 19th day of April, 2023

/s/ Peter A. Moore, Jr.
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
### No. 7:22-CV-00189

| | | |
|---|---|---|
| **The Cincinnati Insurance Company**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS LEVI OWENS, AS** |
| **Wayne Hunt; Levi Owens as Personal** | ) | **PERSONAL REPRESENTATIVE FOR THE** |
| **Representative for the Estate of** | ) | **ESTATE OF CHRISTOPHER MCLEAN,** |
| **Christopher McLean; Maisha Jacobs;** | ) | **AND MAISHA JACOBS' JOINT MOTION** |
| **and Wilmington Shipping Company**, | ) | **TO DISMISS FOR LACK OF PERSONAL** |
| | ) | **JURISDICTION AND MOTION TO** |
| | ) | **TRANSFER VENUE** |
| | ) | |
| Defendants. | ) | |

**TO: C. DANIEL ATKINSON, ESQUIRE, ATTORNEY FOR PLAINTIFF THE CINCINNATI INSURANCE COMPANY, AND TO THE PLAINTIFF NAMED ABOVE:**

YOU WILL PLEASE TAKE NOTICE that the undersigned attorneys for Defendants Levi Owens as Personal Representative for the Estate of Christopher McLean and Maisha Jacobs ("Defendants") jointly move before the United States District Court for the Eastern District of North Carolina, Southern Division for an Order pursuant to Rule 12 and Rule 19 of the Federal Rules of Civil Procedure dismissing this declaratory judgment action for lack of personal jurisdiction. In the alternative, Defendants request that the Court transfer venue to the District of South Carolina pursuant to 28 U.S.C. § 1406(a), as the Court's lack of personal jurisdiction over Defendants is an impediment to the efficient resolution of this matter.

This is a declaratory judgment action where Plaintiff alleges that it has no obligation to indemnify or defend Defendants Wayne Hunt and Wilmington Shipping Company ("WSC") for

a motor vehicle collision that occurred in South Carolina. Both Hunt and WSC have default judgments entered against them for failure to appear and defend this action. Defendants Owens and Jacobs are entitled to a dismissal of this action or a transfer of venue because they have no contacts with North Carolina that are in any way related to the subject collision or the insurance policies at issue in this case.

WHEREFORE, the Defendants move this Court for an Order dismissing all of Plaintiff's requests for declarations, or alternatively, for a transfer of venue to the District of South Carolina. Defendants' joint motion is supported by a memorandum filed contemporaneously herewith along with supporting exhibits.

Respectfully submitted this 23rd day of May, 2023.

| | |
|---|---|
| /s/ John E. Parker Jr. | /s/ Jason Scott Luck |
| John E. Parker, Jr. (Fed ID #13257) | Jason Scott Luck |
| P.O. Box 487 | P.O. Box 47 |
| Hampton, SC 29924 | Bennettsville, SC 29512 |
| 803-903-1781 | 843.479.6863 (o) |
| jayparker@parkerlawgroupsc.com | 843.479.7222 (f) jason@luck.law |
| **Lead Counsel for Defendant Maisha Jacobs** | S.C. Bar No.: 73676 (D.S.C. 9696) |
| | **Lead Counsel for Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean** |
| s/ Gregory Richard Simons | |
| Gregory Richard Simons | |
| THE OVERHOLT LAW FIRM, PC | s/ Gregory Richard Simons |
| 2505 S. College Road | Gregory Richard Simons |
| Wilmington, NC 28412 | THE OVERHOLT LAW FIRM, PC |
| Greg@overholtlaw.com | 2505 S. College Road |
| Telephone: (910) 798-5900 | Wilmington, NC 28412 |
| Facsimile:  (910) 799-8496 | Greg@overholtlaw.com |
| NC Bar No.: 52531 | Telephone: (910) 798-5900 |
| **Local Civil Rule 83.1(d) Counsel for Defendant Maisha Jacobs** | Facsimile:  (910) 799-8496 |
| | NC Bar No.: 52531 |
| | **Local Civil Rule 83.1(d) Counsel for Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean** |

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### No. 7:22-CV-00189

| | |
|---|---|
| **The Cincinnati Insurance Company,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **DECLARATION OF LEVI OWENS** |
| ) | |
| **Wayne Hunt; Levi Owens, as Personal** ) | |
| **Representative for the Estate of** ) | |
| **Christopher McLean; Maisha Jacobs;** and ) | |
| **Wilmington Shipping Company;** ) | |
| ) | |
| Defendants. ) | |

1. My name is Levi Owens, I am 65 years old and competent to make this declaration.

2. All of my statements in this declaration are made to my best recollection and are based on my personal observation and experience, except matters I state upon information and belief, which I believe to be true.

3. I am one of the Defendants in this action.

4. I am a citizen and resident of the state of South Carolina, and have been my entire life.

5. I have never resided in the state of North Carolina.

6. I have never maintained a bank account in the state of North Carolina.

7. I have never owned real property in the state of North Carolina.

8. I have never maintained an address, telephone number, or fax number in the state of North Carolina.

9. I have never been employed or worked in the state of North Carolina, with the exception of working on a farm in the 1960s or 70s for a couple of summers picking cucumbers near Maxton. *L.O,*

10.   I have never filed a lawsuit in the state of North Carolina, though in 2020 I had to consult a lawyer in Laurinburg to get what I believe was a power of attorney for my handicapped nephew Rory Mitchell Owens.

11.   I have never had any continuous or systematic contacts, or any business contacts whatsoever, with the state of North Carolina.

12.   I have never applied for or received any license or permit issued by the state of North Carolina.

13.   I have never entered any into any contracts within the state of North Carolina.

14.   My only connection to North Carolina relevant to this action is that on or about December 10, 2013, Defendant Wayne Hunt (upon information and belief a resident of North Carolina) struck and killed my son Christopher McLean in an automobile accident in Bennettsville, South Carolina. I have no other contacts with the state of North Carolina related to, relevant to, or connected to this lawsuit in the Eastern District of North Carolina.

15.   On December 8, 2016, I filed a lawsuit against Defendant Wayne Hunt in the Marlboro County, South Carolina Court of Common Pleas, captioned *Levi Owens as personal representative of the Estate of Christopher McLean v. Wayne Hunt*, 2016-CP-34-00265.

16.   Defendant Wayne Hunt was served with the Summons and Complaint in action 2016-CP-34-00265 within South Carolina, and not North Carolina, by delivering process to the South Carolina director of the Department of Motor Vehicles as agent for in state service of process for a foreign driver.

I declare under the penalty of perjury the foregoing is true.


Dated: 05/16/2023                          *Levi Owens*

                                           Levi Owens

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**No. 7:22-CV-00189**

|  |  |  |
|---|---|---|
| **The Cincinnati Insurance Company,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF MAISHA JACOBS** |
| | ) | |
| **Wayne Hunt; Levi Owens, as Personal Representative for the Estate of Christopher McLean; Maisha Jacobs; and Wilmington Shipping Company;** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

1.  My name is Maisha Jacobs, I am 27 years old and competent to make this declaration.

2.  All of my statements in this declaration are made to my best recollection and are based on my personal observation and experience, except matters I state upon information and belief, which I believe to be true.

3.  I am one of the Defendants in this action.

4.  I am a citizen and resident of the state of South Carolina, and have been my entire life.

5.  I have never resided in the state of North Carolina, except for temporary visits with my mother around 2008 or 2009.

6.  I have never maintained a bank account in the state of North Carolina.

7.  I have never owned real property in the state of North Carolina.

8.  I have never maintained an address, telephone number, or fax number in the state of North Carolina.

9.  I have never been employed or worked in the state of North Carolina, with the exception of working at the Hanes plant in Laurel Hill, North Carolina in 2014 & 2015.

MJ

10.  I have never filed a lawsuit in the state of North Carolina.

11.  I have never had any continuous or systematic contacts, or any business contacts whatsoever, with the state of North Carolina.

12.  I have never applied for or received any license or permit issued by the state of North Carolina.

13.  I have never entered any into any contracts within the state of North Carolina.

14.  My only connection to North Carolina relevant to this action is that on or about December 10, 2013, Defendant Wayne Hunt (upon information and belief a resident of North Carolina) struck and killed my cousin Christopher McLean in an automobile accident in Marlboro County, South Carolina. I have no other contacts with the state of North Carolina related to, relevant to, or connected to this lawsuit in the Eastern District of North Carolina.

15.  On December 8, 2016, I filed a lawsuit against Defendant Wayne Hunt in the Marlboro County, South Carolina Court of Common Pleas, captioned *Maisha Jacobs v. Wayne Hunt*, 2016-CP-34-00264.

16.  Defendant Wayne Hunt was served with the Summons and Complaint in action 2016-CP-34-00264 within South Carolina, and not North Carolina, by delivering process to the South Carolina director of the Department of Motor Vehicles as agent for in state service of process for a foreign driver.

I declare under the penalty of perjury the foregoing is true.


Dated: 05/18/2023                             *Maisha Jacobs*

                                              Maisha Jacobs

ORIGINAL          FATAL

SOUTH CAROLINA DPS/OHS & DMV USE ONLY    Page # 1

**SOUTH CAROLINA TRAFFIC COLLISION REPORT FORM**
TR-310 (Rev. 11/2011)

# Of Units: 02

Amended - Attach Copy of Original Report

Corrected: 02

Notified: 1629    Arrived: 1650

| Date | Time of Collision | County | | Collision Location (Rt. #/Name) | Miles | Dir. | In / Near City or Town of: |
|------|------|------|------|------|------|------|------|
| 12-10-2013 | 1625 | 36 | 1-Interstate 2-US Primary 3-SC Primary / 4-Secondary 5-County 6-PP | E 15 | .97 | N E S W | MCCOLL |

Base Intersection (Rt. #/Name): From 438 / OAK HILL RD

Second Intersection (Rt. #/Name): Toward 634 / MCGREGOR RD

GPS COORDINATES 00 00' 00.00"
Latitude: 34 41 12.62
Longitude: 79 32 07.73

| | E-641734 | Driver/Pedestrian's Full Name HUNT WAYNE | | E-642062 | Driver/Pedestrian's Full Name JACOBS MAISHA MONE |
|---|---|---|---|---|---|
| Unit # 01 | Sex M Race B | Street 16671 NC HIGHWAY 210 | Unit # 02 | Sex F Race B | Street 504 SOCIETY ST |
| #Occ 1 | Birth Date 1981 | City, State, & Zip ROCKY POINT NC 28457-8994 | #Occ 2 | Birth Date 1995 | City, State, & Zip CLIO SC 295253531 |
| State NC | Driver's License # Class A | Insurance Company: LIBERTY MUTUAL | State SC | Driver's License # Class D | Insurance Company: GMAC |
| Year 2011 | Body TR Vehicle Make FRHT | VIN # 1FUJGLDR4BSAY1128 | Year 1999 | Body SU Vehicle Make JEEP | VIN # 1J4G5268S1X1212121 |
| State IN | Year 2014 | License Plate # 1142486 | Owner's D.L. # NONE | State NC | Year 2014 | License Plate # CAD4065 | Owner's D.L. # UNKNOWN |
| Home Telephone (910) 231 5493 | | Owner's Full Name PENSKE TRUCK LEASING | Home Telephone | | Owner's Full Name BREEDEN VALONDREA |
| Bus. Telephone (910) 231 2719 | | Street 4000 CLINE AVE | Bus. Telephone | | Street 1116 JEFFERSON ST |
| Contributed To Collision Yes No | | City, State, & Zip EAST CHICAGO IN 46312 | Contributed To Collision Yes No | | City, State, & Zip HIGH POINT NC 27260 |
| Estimated Speed 60 | Speed Limit 55 | C.D.L. Req: Yes No   T/B S Req: Yes No | Summons #   Code   Summons #   Code | Towed By: Yes No WATSONS | Estimated Speed 10 | Speed Limit 55 | C.D.L. Req: Yes No | Summons #   Code   Summons #   Code | Alc/Drg Info (see back): Yes No   Towed By: Yes No WEBSTERS |

| | | Driver/Pedestrian's Full Name | State | Year | License Plate # | Owner's D.L. # |
|---|---|---|---|---|---|---|
| Unit # | Sex Race | Street | Home Telephone | | Owner's Full Name |
| #Occ | Birth Date | City, State, & Zip | Bus. Telephone | | Street |
| State | Driver's License # Class | Insurance Company: | Contributed To Collision Yes No | | City, State, & Zip |
| Year | Body Vehicle Make | VIN # | Estimated Speed | Speed Limit | C.D.L. Req: Yes No   Summons #   Code   Summons #   Code   Towed By: Yes No | Alc/Drg Info (see back): Yes No |

Dir. of Travel: Unit 1: N S E W    Unit 2: N S E W    Unit 3: N S E W

| Unit 1 Dam. | Unit 2 Dam. | Unit 3 Dam. | Prop. Dam. 1 | Prop. Dam. 2 |
|------|------|------|------|------|
| $ 10000 | $ 3000 | $ | $ | $ |

Property Owner/Witness: RHYNE TIM
Address: 12660 LAKEWOOD DR LAURINBU
State NC   Zip: 28352   Phone 9102764341

Property Owner/Witness:
Address:
State   Zip:   Phone

Photo: Y N



DITCH
N
SEC-438
UNIT 2
UNIT 1
15

Describe What Happened (Refer to Units by Number):

UNIT 1 WAS TRAVELING NORTH ON US-15. UNIT 2 WAS ATTEMPTING TO MAKE A LEFT TURN ONTO SEC-438 TRAVELING EAST. DRIVER 2, FAILING TO YIELD PULLED INTO THE PATH OF UNIT 1. UNIT 1 STRUCK UNIT 2 IN THE RIGHT SIDE CAUSING UNIT 1 AND UNIT 2 TO RUN OFF THE RIGHT SIDE OF THE ROAD STRIKING A DITCH.

NOTICE - THE TR-310 IS FOR STATISTICAL REPORTING PURPOSES ONLY AND IS A REFLECTION OF THE OFFICER'S BEST KNOWLEDGE, OPINION AND BELIEF COVERING THE COLLISION BUT NO WARRENT IS MADE AS TO THE FACTUAL ACCURACY THEREOF.

| Investigating Officer's Name DICKENS - C M | Rank L/CPL | Badge # T 7 8 7 | Jurisdiction Code H P 0 5 | Review Date | Reviewer's Name | Rank | Internal Agency Code 13FL165274 |
|---|---|---|---|---|---|---|---|

FATAL

| Unit | Date of Birth | Sex | Race | INJ. | Seat | R/SD | A.B.D. | Eject | LAI | Tran: | Name | Street Address | | | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 1981 | M | B | 0 | 01 | 13 | 7 | 3 | 1 | 2 | HUNT WAYNE | 16671 NC HIGHWAY 210 | ROCKY | NC | 28457-8994 |
| 02 | 1995 | F | B | 3 | 01 | 13 | 4 | 3 | 1 | 3 | 1 | JACOBS MAISHA MONE | 504 SOCIETY ST | CLIO | SC | 295253531 |
| 02 | 1994 | M | B | 4 | 03 | 13 | 1 | 3 | 1 | 3 | 1 | MCLEAN CHRISTOPH KENDR | 504 SOCIETY ST | CLIO | SC | 29525 |

**Race**
A - Asian/Pacific Islander    W - Caucasian
B - African American    H - Hispanic    O - Other
I - Alaskan Native or American Indian    U - Unk.

**a) Injury Status**
0 - Not Injured
1 - Possible injury
2 - Non-incapacitating
3 - Incapacitating
4 - Fatal

**Air Bag Deployment / Switch**
1 - Deployed Front 4 - Not Deployed
2 - Deployed Side 7 - Not Applicable
3 - Deployed Both 9 - Deployment Unk
1 - Switch in On Position 3 - No Switch
2 - Switch in Off Position 9 - Unknown

**Ejection**
1 - Not Ejected
2 - Part. Ejected
3 - Tot. Ejected
7 - Not App.
9 - Unk.

**b) 2 or 3 Wheel Motorized Vehicle**
1 - Yes
2 - No

**Head Injury** 1 - Yes 2 - No
**Location After Impact**
1 - Not Trapped
2 - Extricated (Mechanical Means)

**Seating Loc.**
01 02 03
04 05 06
07 08 09

20 - Pedestrian
30 - Trailing Unit
40 - Bus or Van (4th row or Higher)
50 - Other Enclosed Area (nontrailing)
51 - Other Unenclosed Area (nontrailing)

b) 3 - Freed (non-mech.)
4 - Not Applicable
9 - Unknown

**Transported to Medical Facility**
1 - Yes 2 - No 3 - Unknown
b) By: 1 - EMS 2 - Police 8 - Other 9 - Unk.

60 - Sleeper of Cab
70 - Riding on Unit Exterior
80 - Lap
99 - Unk./NA

**Restraint/Safety Device**
00 - None Used   21 - Child Safety Seat
01 - Lap Belt Only   11 - Shoulder belt
02 - Lap Belt Only   88 - Other
13 - Shoulder & Lap Belt 99 - Unk.
Pedestrian, Motor/Pedalcycle Only
31 - Helmet   51 - Reflective Clothing
41 - Protective Pads 61 - Lighting

**Sequence of Events**

| Non-Collision | Collision: Not Fixed | Collision: Fixed Object | |
|---|---|---|---|
| 01 - Cargo/Equip Loss or Shift | 05 - Fire/Explosion | 08 - Overturn/Rollover | 27 - Pedestrian   47 - Embankment   55 - Mail Box   65 - Other |
| 02 - Cross Median/Center | 06 - Immersion | 09 - Ran off Road Left | 28 - Railway Veh.   40 - Bridge Overhead Structure   48 - Equipment   56 - Median Barrier   99 - Unk. |
| 03 - Downhill Runaway | 07 - Jackknife | 10 - Ran off Road Right | 39 - Animal (Deer Only)   41 - Bridge Parapet End   49 - Fence   57 - Overhead Sign Support |

**Manner of Collision (Struck Veh.)**
00 - Not Coll. w/ Motor Veh.
10 - Rear End
20 - Head On
30 - Rear-to-Rear
41 - Angle
42 - Angle
43 - Angle
50 - Sideswipe Same Dir.
51 - Sideswipe Opposite Dir.
70 - Backed Into
99 - Unknown

**Vehicle Type:**
11 - Automobile
12 - Pickup Truck
13 - Truck Tractor
14 - Other Truck
15 - Full Size Van
16 - Mini Van
17 - Sport Utility
25 - Motorcycle
26 - Other Motorbike
27 - Pedalcycle
38 - Animal Drawn Veh.
39 - Animal (Ridden)
41 - Pedestrian
51 - Train
61 - School Bus
62 - Passenger Bus
98 - Other
99 - Unk. (Hit and Run Only)

**Vehicle Use Code**
01 - Personal
02 - Driver Training
03 - Construction/Maint.
04 - Ambulance
05 - Military
06 - Transport Passengers
07 - Transport Property
08 - Farm Use
09 - Wrecker or Tow
10 - Police
11 - Government
12 - Fire Fighting
13 - Logging
18 - Other
41 - Pedestrian

**Vehicle Attachment**
1 - None
2 - Mobile Home
3 - Semi-Trailer
4 - Utility Trailer
5 - Farm Trailer
6 - Trailer w/Boat
7 - Camper Trailer
8 - Towed Motor Vehicle
9 - Petroleum Tanker
A - Lowboy Trailer
B - Autocarrier Trailer
C - Other Tanker
D - Flat Bed
E - Twin Trailers
F - Other

**Action Prior to Impact** (Vehicle) / (Non-motorist)
01 - Going Straight Ahead
02 - Changing lanes
03 - Entering traffic lane
04 - Leaving traffic lane
05 - Making U-turn
06 - Movements Essentially Straight Ahead
07 - Overtaking/passing
08 - Slowing or stopping in traffic
09 - Slowing or
10 - Turning left
11 - Turning right
12 - Parked
21 - Approaching Leaving Vehicle
22 - Entering/Crossing Location
23 - Playing/Working on Vehicle
24 - Pushing Vehicle
25 - Standing
26 - Walking, Playing, Cycling
27 - Working
88 - Other 99 - Unk.

**Alcohol / Drug Test Given**
0 - Given - Known Results
1 - Given - Known Results
2 - Given - Unusable

**Test Type**
1 - Breath (Alc Only)
2 - Blood
3 - Urine
4 - Serum
5 - Other

**Drug Results**
1 - Amphetamines
2 - Cocaine
3 - Marijuana
4 - Barbiturates
5 - PCP
0 - None/Minor
8 - Other

**Alc Test Results**
A1 -
A2 -
A3 -

**Weather Condition**
1 - Clear (no adverse conditions)
2 - Rain
3 - Cloudy
4 - Sleet, Hail
5 - Snow
6 - Fog, Smog, Smoke
7 - Blowing Sand,
Oil, Dirt or Snow
8 - Severe Crosswinds
9 - Unk.

**Light Condition**
1 - Daylight
2 - Dawn
3 - Dusk
4 - Dark (Lighting Unspecified)
5 - Dark (Street Lamp Lit)
6 - Dark (Street Lamp Not Lit)
7 - Dark (No Street Lamp)
9 - Unk.

**Junction Type**
01 - Crossover
02 - Driveway
03 - Five/More Points
04 - Four-way Intersection
05 - Railway Grade Crossing
07 - Shared Use Paths or Trail
08 - Traffic Circle
12 - Y-Intersection
13 - Nonjunction
14 - Underpass

**Contributing Factors**

| Primary | Driver | Roadway | Non-Motorist | Environmental |
|---|---|---|---|---|
| 05 | 01 - Disregarded Signs, Signals, Etc. | 30 - Debris | 50 - Inattentive | 60 - Animal in Road   63 - Weather Cond |
| 06 | 02 - Distracted/Inattention | 31 - Non-highway Work | 51 - Lying &/or Illegally in Roadway | 61 - Glare   68 - Other   69 - Unk. |
| Others | 03 - Driving Too Fast for Conditions | 32 - Obstruction in Roadway | 52 - Failure to Yield R. of W. | **Vehicle Defect** |
| | 04 - Exceeded Authorized Speed Limit | 33 - Road Surface Condition (i.e., Wet) | 53 - Disregarded Signs, Signals, Etc. | 70 - Brakes   76 - Windows/Shield |
| | 05 - Failed to Yield Right of Way | 34 - Rut, Holes, Bumps | 54 - Improper Crossing | 71 - Steering   77 - Restraint System |
| | 06 - Ran off Road | 35 - Shoulders (None, Low, Soft, High) | 55 - Darting | 72 - Power Plant   78 - Truck Coupling |
| | 07 - Fatigued/Asleep | 36 - Traffic Control Device (i.e., Missing) | 56 - Wrong Side of Road | 73 - Tires/Wheel   79 - Cargo |
| | 08 - Texting | 37 - Work Zone (Const./Maint./Utility) | 57 - Other   59 - Unk. | 74 - Lights   80 - Fuel System |
| | 09 - Made an Improper Turn | 38 - Worn, Travel-Polished Surface | 58 - Other   59 - Unk. | 75 - Signals   88 - Other   89 - Unk. |
| | 10 - Medical Related | | 66 - Under the Influence | |
| | | | 67 - Other Person under Influence | |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No: 7:22-CV-00189-M

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> WAYNE HUNT; LEVI OWENS, as personal representative for the ESTATE OF CHRISTOPHER MCLEAN; MAISHA JACOBS; and WILMINGTON SHIPPING COMPANY, <br><br> Defendants. | ORDER |

This matter comes before the court on Defendants Levi Owens and Maisha Jacobs' joint motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue (the "motion") [DE 24]. For the reasons that follow, the motion is GRANTED IN PART: the court VACATES its default judgments as to Defendants Wayne Hunt and Wilmington Shipping Company, and TRANSFERS this action to the District of South Carolina pursuant to 28 U.S.C. §§ 1406 & 1631.

## I.    Background

### a.    Plaintiff's Statement of Facts

Plaintiff is an insurance company. DE 1 at 2. Plaintiff provided insurance to vehicles owned or operated by Defendant Wilmington Shipping Company ("WSC"), a North Carolina

1

company. *Id.* at 4. WSC, in turn, employed Defendant Wayne Hunt ("Hunt") as a truck driver. *Id.* at 6.

In December 2013, Hunt was driving a truck for WSC in South Carolina. *Id.* He was involved in an accident with a vehicle operated by Defendant Maisha Jacobs ("Jacobs"), in which Christopher McLean ("McLean") was a passenger. *Id.* McLean died in the accident, and Jacobs was seriously injured. *Id.*

In December 2016, Defendant Levi Owens ("Owens"), on behalf of McLean, filed a state court wrongful death suit in South Carolina against Hunt. *Id.* At the same time, Jacobs filed a personal injury action against Hunt in the same court (collectively, with Owens' suit, the "state court lawsuits" or "state court litigation"). *Id.* at 9. Hunt, at the time of the filing of the state court lawsuits, was a resident of North Carolina. *Id.* at 2. WSC was not named in either suit. *See id.*

Owens and Jacobs reportedly effected service on Hunt by providing the summons and complaints to the Director of the South Carolina Department of Motor Vehicles, pursuant to state law. *Id.* at 6-7, 9; S.C. Code Ann. § 15–9–350. The Director then mailed those materials from South Carolina to Hunt's North Carolina address. *See* DE 1-8; DE 1-15.

Hunt failed to appear in either lawsuit. DE 1 at 7, 10. As a result, Owens and Jacobs moved for entry of default in their respective actions in November 2017. *Id.* The court entered defaults and the matters were then, in October 2018, referred for a damages hearing. *Id.* Owens mailed notice of the damages hearing to Hunt's North Carolina address. DE 1-12 at 2.

McClean's damages hearing took place in November 2021, and Jacobs' damages hearing occurred in February 2022. DE 1 at 8, 11. The special referees in the state court lawsuits then issued orders and default judgments in each action. *Id.* Owens (on behalf of McClean) and Jacobs collectively received judgments in excess of $5 million. *Id.* at 12, 14.

2

Plaintiff contends it never received notice of the state court litigation, and only recently learned of the default judgments entered against Hunt. *Id.* at 11. Jacobs has sought satisfaction of her judgment from Plaintiff, and Plaintiff believes Owens will do the same. *Id.* at 13.

b. Procedural History

Plaintiff initiated this action pursuant to the Federal Uniform Declaratory Judgment Act and North Carolina Uniform Declaratory Judgment Act. *Id.* at 1. Plaintiff seeks a declaration that it has no obligation to defend Hunt with respect to the South Carolina state court lawsuits and judgments. *Id.* at 14.

Owens and Jacobs (hereinafter, "Defendants") each answered the Complaint, averring that this court lacks personal jurisdiction over them. DE 12 at 8; DE 16 at 8. Hunt and WSC failed to appear in this action, so Plaintiff moved for entry of default, which the Clerk of Court granted. DE 13; DE 17. Plaintiff then moved for default judgment as to Hunt and WSC, which the court granted. DE 18; DE 20; DE 21. Those orders concluded "that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to [WSC]." DE 20 at 4; DE 21 at 4.

Defendants then moved to dismiss the Complaint. DE 24. As its basis, the motion contends that the court possesses "neither general nor specific jurisdiction over [Defendants]" because they "are citizens and residents of South Carolina, and there is no nexus between the subject insurance policies and [their] *de minimus* contacts with North Carolina." DE 24-1 at 1 (italics in original). Defendants further assert that, because they are indispensable parties, their dismissal on personal jurisdiction grounds would necessitate dismissal of the action in its entirety. *Id.* at 13-16. Alternatively, Defendants argue that the court could transfer venue to the District of South Carolina pursuant to 28 U.S.C. § 1406. *Id.* at 16. Plaintiff responded to the motion, and Defendants replied. DE 32; DE 34.

3

## II.    Legal Standards

A federal court sitting in diversity[1] may exercise "personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (internal quotation mark omitted). "North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the Fourteenth Amendment's Due Process Clause." *Williams v. Sig Sauer, Inc.*, No. 4:22-CV-48, 2023 WL 5165426, at *2 (E.D.N.C. June 27, 2023). Accordingly, "the dual jurisdictional requirements collapse into a single inquiry." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Due process requires that a defendant "have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). To that end, courts recognize "two types of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (internal quotation marks omitted). A court may exercise general jurisdiction over a party in its state of residence, or when its "affiliations with the [forum] State are so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

---

[1] Although Plaintiff brought this action under the Federal Uniform Declaratory Judgment Act, that Act "merely creates a remedy, not jurisdiction." *Crowder v. N. Carolina Admin. Off. of Cts.*, 374 F. Supp. 3d 539, 543 (E.D.N.C. 2019). The court here is exercising diversity subject matter jurisdiction. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004); *accord* DE 1 at 3.

4

On the other hand, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). In those circumstances, a plaintiff's "claim must arise out of or relate to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)) (alterations omitted). In addition, a defendant's contacts with the forum state must reflect "purposeful[] avail[ment] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "[R]andom, isolated, or fortuitous" contacts by a defendant do not suffice. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).

Defendants may move to dismiss a complaint on the grounds that the forum court "lack[s] [] personal jurisdiction" over them. Fed. R. Civ. P. 12(b)(2). Once challenged by a defendant, "the plaintiff bears the burden of demonstrating personal jurisdiction." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). When a court resolves a challenge to personal jurisdiction without a separate evidentiary hearing, and solely "on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers*, 561 F.3d at 276.

"[W]hen considering a motion to dismiss under Rule 12(b)(2) at such a preliminary stage, even when the motion is accompanied by affidavits, [courts] give the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018). In addition, though, "a court may look beyond the complaint to affidavits and exhibits in order to assure itself

5

of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

If a complaint's allegations are controverted "by opposing affidavits," they need not "be taken as

true." *Capstar Corp. v. Pristine Indus., Inc.*, 768 F. Supp. 518, 522 (W.D.N.C. 1991); *see also*

*Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

## III.    Analysis

a.    Personal Jurisdiction

This court lacks personal jurisdiction over Defendants. As alleged in the Complaint, and

as corroborated by affidavits attached to the motion, Defendants are residents of South Carolina.

DE 1 at 2; DE 24-3 at 1; DE 24-4 at 1. The Complaint contains no allegations that would suggest

Defendants maintain continuous and systematic affiliations with North Carolina such that they

could be considered at home in the forum, and Defendants disclaim any such connection to North

Carolina. *See id.* at 2-11; DE 24-3 at 1-2; DE 24-4 at 1-2. As a result, Plaintiff has not made a

prima facie showing that the court possesses general personal jurisdiction over Defendants. *See*

*Goodyear*, 564 U.S. at 919; *Consulting Engineers*, 561 F.3d at 276.

As for specific jurisdiction, the Complaint alleges that Defendants' "efforts at service upon

Hunt [in the state court litigation], which are the central issue in this case, occurred in North

Carolina." DE 1 at 3. This allegation, even if true, falls short of a prima facie showing of specific

personal jurisdiction for three independent reasons.

First, to the extent Defendants effectuated service of process on Hunt in the state court

litigation, that service was completed in North Carolina by the Director of the South Carolina

Department of Motor Vehicles, not Defendants. South Carolina law provides that, if a nonresident

accepts "the rights and privileges conferred by the laws in force in [South Carolina] permitting the

operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident,"

6

that acceptance is tantamount to "the appointment by such nonresident of the Director of the Department of Motor Vehicles . . . to be his true and lawful attorney ***upon whom may be served all summons*** or other lawful process in any action or proceeding against him growing out of any accident or collision in which such nonresident may be involved." S.C. Code Ann. § 15–9–350 (emphasis added). In short, by driving in South Carolina, nonresident drivers agree that South Carolina's Director of the Department of Motor Vehicles (the "Director") may serve as their agent for purposes of accepting service of process for any lawsuits arising out of motor vehicle accidents that occur in South Carolina.

The Complaint acknowledges that, in the state court litigation, Defendants served the Director in South Carolina with the summons and complaints. *See* DE 1 at 6, 9. The Director then mailed those materials to Hunt at his address in North Carolina. *Id.* at 7, 9; DE 1-8; DE 1-15. When the Director did so, she was acting as an agent of Hunt, not Defendants. *See* S.C. Code Ann. § 15–9–350. Consequently, any service-related contact with North Carolina is attributable to Hunt's agent, not Defendants. By serving the Director in South Carolina, pursuant to South Carolina law, Defendants cannot be said to have purposefully availed themselves of "the benefits and protections" of North Carolina. *Hanson*, 357 U.S. at 253.

Second, putting aside Hunt's agency relationship with the Director, Plaintiff's claim in this action is unrelated to service of process in the state court litigation. DE 1 at 6-11. Plaintiff's claim, that it owes no duty to defend or indemnify Hunt, may relate to that state court litigation generally, but it does not "arise out of or relate to" Defendants' efforts at serving Hunt with process in North Carolina. *See Daimler*, 571 U.S. at 127. On the contrary, Plaintiff's claim arises out of and relates to (1) its issuance of policies to WSC, (2) whether Hunt timely provided notice to Plaintiff of the state court litigation, and (3) Defendants' demand for satisfaction under the policies Plaintiff issued

7

to WSC. *See* DE 1 at 12-13. The first two events do not involve Defendants, and Defendants' demand for satisfaction apparently occurred in Ohio, where Plaintiff is incorporated and maintains its principal place of business. *Id.* at 2. Therefore, Defendants' alleged service of process in North Carolina is inconsequential to Plaintiff's claim in this action and cannot be a basis for the exercise of specific personal jurisdiction over Defendants.

Third, even assuming Defendants (and not the Director) had served Hunt with service of process in North Carolina, that contact (on its own) would be insufficient to establish specific jurisdiction. "The jurisprudence of surrogate presence in a state" requires that a defendant's contacts with a forum state be sufficiently meaningful to the extent that those contacts may serve as an "analog for physical presence." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 136 (4th Cir. 1996). Courts have thus regularly concluded that limited correspondence by an out-of-state individual with an individual in a forum state, whether telephonic or by mail, "do[es] not provide a basis for the exercise of personal jurisdiction." *Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 354 (D. Md. 1997); *Pharmabiodevice Consulting, LLC v. Evans*, No. 14-CV-00732, 2014 WL 3741692, at *8 (D. Md. July 28, 2014) (holding that "periodic and isolated e-mails from an out-of-state defendant into Maryland, without more, will not rise to the level of purposeful availment for purposes of establishing specific jurisdiction under the Due Process Clause"). That principle is particularly salient when the correspondence occurs only once; as noted, "isolated" contacts are generally insufficient to confer specific jurisdiction. *See Keeton*, 465 U.S. at 774.

Assuming Defendants made an isolated contact with North Carolina by serving Hunt in the state court litigation, that contact does not connote "purposeful[] avail[ment] of the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of its

8

laws." *Hanson*, 357 U.S. at 253. Quite the opposite – Defendants' contact with Hunt in North Carolina was for the purpose of haling him into court in South Carolina. If Defendants directed service of process at North Carolina, they only did so because North Carolina was Hunt's state of residence. In that sense, Defendants' contact with the forum state was largely "fortuitous." *Keeton*, 465 U.S. at 774. A fortuitous and isolated contact with a forum state, particularly one that does not give rise to Plaintiff's claim, would not license this court's exercise of personal jurisdiction over Defendants.[2]

Several arguments Plaintiff raises in opposition to the motion merit discussion. First, Plaintiff maintains that, in the state court litigation, Defendants did not "accomplish[] service in compliance with S.C. Code Ann. § 15-9-370," and so therefore "the question becomes whether service was actually accomplished within North Carolina." DE 32 at 7. But for purposes of resolving the motion to dismiss, the court is unconcerned with whether Defendants properly served Hunt in the state court litigation. That is an issue for a South Carolina state court to resolve, and it appears Hunt has raised that exact issue there. *See id.* at 4; *accord* DE 32-5; DE 32-6 (Hunt's motions to be relieved from the South Carolina default judgments). The determination of that issue may implicate the validity of the default judgments in the state court litigation, but it does not bear on whether Defendants purposefully availed themselves of this forum.

On that point, Plaintiff's opposition to the motion appears to imply that, because Defendants' service in the state court litigation was allegedly noncompliant with South Carolina law, Defendants must have engaged in some unknown and unspecified conduct in North Carolina in order to properly serve Hunt; otherwise, the validity of the default judgments is in doubt. *See* DE 32 at 7 ("the question becomes ***whether*** service was actually accomplished within North

---

[2] For the same reasons, Owens' mailing of notice of the damages hearing to Hunt in North Carolina is insufficient to establish specific personal jurisdiction.

9

Carolina"), 9 ("the question for purposes of [Defendant Jacobs] providing notice to Hunt and CIC

is *whether* she accomplished service upon Hunt in North Carolina"), 10 (the question that is central

to this case is *whether* [Defendant] Owens properly effected service on Hunt in North Carolina,

because it is clear that [he] did not do so in South Carolina"), 11 ("the only option left for service

is [that] service was made in the manner prescribed by the law of the state of North Carolina"), 11

("Defendants must demonstrate that they took *some action* in North Carolina sufficient to create

personal jurisdiction in South Carolina and give notice of a claim"). Plaintiff does not provide any

evidence as to what that conduct in North Carolina might be, and its speculation and supposition

do not suffice.

        In fact, Plaintiff highlights that, as it relates to the state court litigation, "there is no proof

of personal delivery, no proof of delivery by certified mail (in fact the only certified card filed

shows that service was not accomplished), nor is there any evidence of any court order allowing

for service outside of South Carolina by any special means." *Id.* at 11; *see also id.* (explaining that

"there is *no evidence in the record* in this case or in the underlying South Carolina cases to indicate

*that Hunt ever received any actual notice* of the South Carolina cases" and that "[t]he only

evidence in the record indicates that [] Defendants never actually provided Hunt [] with notice of

the proceedings in the South Carolina action") (emphasis added). For purposes of the motion to

dismiss, Plaintiff bears the burden of setting forth a prima facie case of personal jurisdiction over

Defendants – that requires some showing of conduct by Defendants directed at the forum state.

*See Consulting Engineers*, 561 F.3d at 276. By repeatedly challenging the validity of the default

judgments and averring that there is "no evidence" Defendants served Hunt in North Carolina,

Plaintiff is making an argument that goes to the merits of its claim but undermines its position that

this court may exercise personal jurisdiction over Defendants. If Defendants never provided notice

10

of the state court litigation to Hunt, then Plaintiff's sole argument for this court's exercise of personal jurisdiction fails.

Second, Plaintiff argues that Defendants are subject to personal jurisdiction under two separate provisions of North Carolina's long-arm statute. DE 32 at 13-14. This argument does not carry Plaintiff's burden for two reasons, foremost because the court's personal jurisdictional analysis "collapse[s] into a single inquiry" directed at constitutional due process, *Christian Sci. Bd. of Directors*, 259 F.3d at 215, and Defendants (as explained previously) lack sufficient minimum contacts with North Carolina; maintenance of this suit would "offend traditional notions of fair play and substantial justice," *Consulting Engineers*, 561 F.3d at 277; *Int'l Shoe*, 326 U.S. at 316.

In addition, the provisions of North Carolina's long-arm statute that Plaintiff references do not cover Defendants' conduct. Plaintiff contends that Defendants' demand for coverage from Plaintiff "arose" out of their "provision of notice to Plaintiff of a claim," and so therefore they are subject "to personal jurisdiction, pursuant to N.C. Gen. Stat. § 1-75.4(10)(b)." DE 32 at 13-14. But that provision only applies to "a contract of insurance . . . made . . . between the plaintiff . . . and the defendant." N.C. Gen. Stat. § 1-75.4(10). Defendants here are not parties to the insurance contract between Plaintiff and WSC, so this provision does not apply.

Moreover, the cited provision only applies when "[t]he event out of which the claim arose occurred within" North Carolina. N.C. Gen. Stat. Ann. § 1-75.4(10)(b). Although Plaintiff is seeking a declaratory judgment that it has no duty to defend or indemnify Hunt after Defendants demanded coverage under the policy Plaintiff issued to WSC, "[t]he 'event' out of which the declaratory action on the contractual claim arose should be properly understood as the car accident – the genesis of this dispute." *Progressive Am. Ins. Co. v. De Pinto*, No. 3:21-CV-00006, 2022 WL

11

2438427, at *8 (W.D.N.C. July 5, 2022) (citing N.C. Gen. Stat. Ann. § 1-75.4(10)(b) and rejecting

argument that claim "arose" out of demand for coverage). The car accident relevant to this matter

occurred in South Carolina. Consequently, Section 1-75.4(10)(b) does not apply to Defendants for

two reasons.

Plaintiff also contends that "the claims asserted by [] Defendants . . . arise for services

actually performed for [] Hunt and WSC in North Carolina – the provision of insurance coverage

via the Policies – under which [] Defendants seek coverage, which is an act of ratification." DE

32 at 14. Therefore, Plaintiff asserts that Defendants are subject to personal jurisdiction "pursuant

to N.C. Gen. Stat. § 1-75.4(5)(b)." *Id.* This contention also fails for two reasons.

For one, this provision of the long-arm statute only reaches "services actually performed

for the defendant by the plaintiff." N.C. Gen. Stat. § 1-75.4(5)(b). Plaintiff provided insurance in

North Carolina to WSC (and by extension, Hunt). Plaintiff did not "actually perform[]" any service

for Defendants in the forum.

In addition, any services rendered must have been "authorized or ratified by the defendant."

*Id.* Plaintiff fails to explain how a third-party's demand for satisfaction under a life insurance

policy to which it is not a party constitutes ratification of the services Plaintiff provided to WSC.

"In contract law, ratification is a legal doctrine that binds" a party to certain acts that the party had

not previously authorized. *IO Moonwalkers, Inc. v. Banc of Am. Merch. Servs.*, LLC, 258 N.C.

App. 618, 622, 814 S.E.2d 583, 586 (2018). A party cannot ratify services it did not receive. *See,*

*e.g., Morris v. Y. & B. Corp.*, 198 N.C. 705, 153 S.E. 327, 333 (1930) (when a party "accepts or

retains the benefit of an unauthorized contract or other transaction . . ., or accepts the benefit of

services , etc., it thereby ratifies the contract or other transaction"); *dmarcian, Inc. v. dmarcian Eur.*

*BV*, 60 F.4th 119, 132 (4th Cir. 2023) (explaining that defendant's acceptance of services

12

constitutes authorization or ratification); *Embark, LLC v. 1105 Media, Inc.*, 231 N.C. App. 538, 543, 753 S.E.2d 166, 171 (2014) (employer's payment for new employee's office space in North Carolina and paycheck deposits into employee's North Carolina checking account represented acts of ratification of services that new employee rendered to employer from North Carolina). As a result, Section 1-75.4(5)(b) also does not apply to Defendants for two reasons.[3]

Lastly, Plaintiff avers that Defendants waived any objection to personal jurisdiction "[b]y answering Plaintiff's Complaint, allowing the running of nearly four months without filing a Motion to Dismiss, and by allowing the Entry of Defaults against WSC and Hunt, as well as the entries of Default Judgments against WSC and Hunt, which have become final judgments." DE 32 at 20. The court disagrees.

In certain circumstances, litigation conduct may be interpreted as an implied waiver to a court's exercise of personal jurisdiction. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). For example, a party that "seeks affirmative relief from a court[ ] normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Revman Int'l, Inc. v. SEL Mfg. Co.*, No. 7:17-CV-01944, 2019 WL 10893956, at *8 (D.S.C. Mar. 26, 2019) (citing *Adam v. Saenger*, 303 U.S. 59 (1938)). In addition, "Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Finally, participation in the litigation by "continuing to litigate on the merits may constitute a waiver of [a preexisting] objection to personal

---

[3] Plaintiff's failure to identify any provision of North Carolina's long-arm statute that applies to Defendants' conduct (serving Hunt with process in the state court litigation) provides an independent reason to find personal jurisdiction lacking as to Defendants. *See Perdue Foods*, 814 F.3d at 188.

13

jurisdiction." *Singh v. Haas*, No. 3:09-CV-386, 2010 WL 1506973, at \*4 (E.D. Va. Mar. 30, 2010), *recommendation adopted*, No. 3:09-CV-386, 2010 WL 1506972 (E.D. Va. Apr. 14, 2010), *aff'd sub nom. Singh v. Hass*, 428 F. App'x 230 (4th Cir. 2011).

None of those considerations are present here. Defendants seek no affirmative relief from the court. They objected to personal jurisdiction in their answers. DE 12 at 8; DE 16 at 8. And they did not participate in the litigation ***at all*** between the filing of their answers and their motion to dismiss. Plaintiff suggests that, by sitting silently and observing as the court entered default judgments as to WSC and Hunt, Defendants waived their objection to personal jurisdiction. DE 32 at 21-23. But the opposite is true; had Defendants sought to litigate the merits of the default judgments as to WSC and Hunt, they likely would have waived their preexisting "objection to personal jurisdiction." *Singh*, 2010 WL 1506973, at \*4.

At bottom, "waiver is the intentional relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (internal quotation mark omitted). Waiver may at times be inferred from a party's affirmative conduct, such as participation in litigation. *See Insurance Corp. of Ireland*, 456 U.S. at 703. But the court is unaware of any case, and Plaintiff has not identified none, where fewer than six months of nonparticipation in litigation has been considered sufficient inaction to constitute a waiver of a party's objection to personal jurisdiction. *E.g.*, *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 381 (5th Cir. 2004) (finding no waiver where defendant waited seven months after filing answer to file motion to dismiss on personal jurisdiction grounds, and participated in litigation to limited extent during that time); *accord Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1225 (S.D. Ala. 2006) (collecting cases and noting that, "in addition to the sheer passage of time, courts assessing whether there is a waiver by conduct look to the extent of the objecting defendant's involvement in the

14

action.  The more active a defendant has been in litigating a case, the more likely it is that the defendant will be deemed to have waived defects in personal jurisdiction and impliedly consented to a court's jurisdiction.") (internal footnote omitted).  Given the limited time that passed after Defendants first raised an objection to the court's personal jurisdiction, and their complete lack of involvement in this action in the interim, the court does not find they have waived their objection to personal jurisdiction.

In sum, Plaintiff failed to make a prima facie showing that the court may exercise personal jurisdiction over Defendants.  The record conclusively establishes that Defendants had no contact with North Carolina that is related to this lawsuit.  The Director served Hunt with process in North Carolina, but she was acting as Hunt's agent at the time.  Further, Plaintiff's claim does not arise out of or relate to Defendants' service of process in the state court litigation, and that contact, on its own, is insufficient to demonstrate purposeful availment.  The court therefore lacks personal jurisdiction over Defendants.

    b.  Transfer

Because this court lacks personal jurisdiction over Defendants, and Defendants contend they are necessary and indispensable parties, they argue that the court must dismiss this action in its entirety.  DE 24-1 at 13-15.  Alternatively, Defendants seek transfer to the District of South Carolina under 28 U.S.C. § 1406(a).  *Id.* at 16.  Plaintiff argues for transfer in lieu of dismissal, and additionally notes that 28 U.S.C. § 1631 requires the court to transfer the action instead of dismissing it, should the court find that such transfer is "in the interest of justice."  DE 32 at 18.

"In a situation where a case or part of it could be dismissed for lack of personal jurisdiction, the Court should consider the alternative of transferring the case to a district where it could have been originally brought."  *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007).

15

In the Fourth Circuit, "section 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking." *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255 (4th Cir. 2002). On the other hand, the Fourth Circuit has not decided "whether [S]ection 1631 extends to cases where only personal jurisdiction is lacking," or whether that section contemplates only a lack of subject matter jurisdiction. *See id.* at 257 n.2. That said, courts to consider Section 1631 have largely concluded that its language "encompasses both personal and subject-matter jurisdiction." *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 794 (5th Cir. 2021); *see also Federal Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 114 (1st Cir. 2016) (finding that "§ 1631's plain language talks about 'jurisdiction' and 'want of jurisdiction'" and that "[t]his lack of specificity very nicely and reasonably lends itself to an interpretation that it includes both well-known jurisdictional flavors"); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (holding that statute's broad language "applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction"). In any event, whether the court considers transfer under Section 1406 or Section 1631, "the statutory directive[s are] the same—namely, a district 'shall, if it is in the interest of justice, transfer the case to any other such court in which the action or appeal could have been brought at the time it was filed." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (internal brackets omitted); 28 U.S.C. §§ 1406(a) & 1631. That directive entails two subsidiary analyses.

First, "[t]o determine where a case could have been brought," the court must find "that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017). In that regard, the court finds that venue is proper in the District of South Carolina because "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2).

16

Even if the accident involving Hunt, McClean, and Jacobs had not occurred in South Carolina, venue would still be proper there because Defendants are subject to personal jurisdiction in South Carolina. 28 U.S.C. § 1391(b)(3). Furthermore, WSC, Hunt, and Defendants are all subject to personal jurisdiction in South Carolina. Defendants are residents of that forum (conferring general jurisdiction), and WSC and Hunt are subject to specific jurisdiction, in light of the fatal car accident that gave rise to the state court litigation and this action. In sum, Plaintiff could have brought this action in the District of South Carolina. *See Symbology Innovations*, 282 F. Supp. 3d at 935.

Next, the court must find that transfer is in the interest of justice. The Fourth Circuit has explained that "[t]he analysis of whether a transfer is 'in the interest of justice' is the same under section 1404(a) as it is under section 1406(a)." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993). "[T]his factor implicates many considerations," including "the particular interest a forum may have in deciding a case, and the local interest in having localized controversies settled at home." *Hubbard v. Eitan Grp. N. Am.*, No. 5:22-CV-382, 2023 WL 2959991, at *7 (E.D.N.C. Apr. 14, 2023). The court finds that North Carolina and South Carolina have roughly equivalent interests in deciding this case. The relevant insurance policy was issued to a North Carolina company and is to be governed by North Carolina law, which implicates the interests of this forum. Still, the accident that gave rise to this litigation took place in South Carolina, and that state has an interest in adjudicating the rights of its citizens when accidents occur within its borders. Ultimately, though, North Carolina's interest in deciding this case (for purposes of transfer analysis) is at least partially undermined by the court's prior finding that it lacks personal jurisdiction over Defendants. In addition, neither Plaintiff nor Defendants object to transfer to the District of South Carolina. On balance, a transfer to that court is "in the interest of justice." *See* 28 U.S.C. §§ 1406(a) & 1631.

17

c. <u>Default Judgments</u>

Having concluded that it lacks personal jurisdiction over Defendants, but that transfer instead of dismissal is warranted, the remaining issue for the court is how to deal with the default judgments it has already entered against WSC and Hunt. *See* DE 20; DE 21. As Defendants observe, "[w]hile there are two default judgments stating that [Plaintiff] has no duty to indemnify or defend WSC and Hunt in this action, a favorable outcome for [Defendants] in another federal court could result in the opposite being true." DE 24-1 at 14-15; *accord* DE 34 at 9 (in reply, noting that "[i]f [Defendants] are successful on the merits of this declaratory judgment action, the default judgment against Hunt, the insured, would be logically inconsistent"). Plaintiff, in response, contends that Defendants' "argument regarding inconsistent judgments is clearly waived . . . because [] Defendants did not raise it by any objection to entry of judgments against WSC or Hunt prior to entry of the judgments or prior to the judgments becoming final." DE 32 at 23. As noted previously, the court does not find this waiver argument persuasive because Defendants' participation in this litigation by addressing the merits of default judgments against co-Defendants would have likely amounted to an implicit waiver of their objection to personal jurisdiction. *See supra* at 14.

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) of the Federal Rules of Civil Procedure allows the court to relieve a party from final judgment "for any one of five specified reasons or for 'any other reason justifying relief from the operation of the judgment.'" *Klapprott v. United States*, 335 U.S. 601, 613 (1949) (quoting 1946 amendment to Rule 60(b)); *see also* Fed. R. Civ. P. 60(b)(6) (authorizing vacatur for any reason "that justifies relief"). Rule 60(b)(6) is a "catch-all clause" that "provides the court with a grand reservoir of equitable power

18

to do justice in a particular case." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 106 (4th Cir. 1979) (internal quotation marks omitted). Courts have used Rule 60(b)(6) as a basis for setting aside a default judgment in a multi-defendant action in order to avoid "inconsistent judgments." *Chavez v. Grill Enterprises, LLC*, No. 20-CV-22603, 2020 WL 10229081, at *7 (S.D. Fla. Dec. 1, 2020).

In addition, "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*." Fed. R. Civ. P. 54(b) (emphasis added); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 3 (1980) (explaining that when court "direct[s] the entry of final judgment as to fewer than all of the claims or parties[, it] must make an express determination that there is no just reason for delay"). If a court does not make that express finding, "any order [] that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.* Rule 54(b) likewise may be employed to vacate default judgments in a multi-defendant action so as to avoid "the risk of inconsistent judgments." *Lin v. Grand Sichuan 74 St Inc.*, No. 15-CV-2950, 2021 WL 4295208, at *8 (S.D.N.Y. Sept. 21, 2021); *see also Curtiss-Wright*, 446 U.S. at 8 (when considering Rule 54(b), consideration for court is whether adjudicated claims "[a]re separable from the others remaining to be adjudicated"); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956) (before entering final judgment as to fewer than all claims, court should assess whether those claims are "inherently inseparable from, or closely related to" claims that have not been adjudicated).

In the present case, vacatur of the default judgments is warranted under both Rule 54(b) and Rule 60(b)(6). First, under Rule 60(b)(6), the court will exercise its equitable discretion to vacate the judgments against Hunt and WSC to avoid the risk of inconsistent judgments after this

19

action is transferred to the District of South Carolina. As the Supreme Court has explained, "[t]he true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Id.* Although *Frow* dealt with a case of joint liability, its holding has been extended cases where "where the liability is joint and/or several," *U. S. for Use of Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944 (4th Cir. 1967), and where "defendants are similarly situated, [even if] not jointly liable," *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984). Distilled to its essence, "the *Frow* principle is designed to apply [] when it is necessary that the relief against the defendants be consistent." Wright & Miller, 10A FED. PRAC. & PROC. CIV. § 2690 (4th ed.).

In this action, it is necessary that the relief against all Defendants be consistent, so *Frow* applies. Two default judgments already state that Plaintiff has no duty to defend or indemnify Hunt. DE 20; DE 21. If, after this action is transferred, the court in South Carolina found that Plaintiff did have a duty to defend or indemnify Hunt, Plaintiff would be subject to two contradictory court orders and judgments in the same action. "[S]uch an incongruity" would be "unseemly and absurd, as well as unauthorized by law." *Frow*, 82 U.S. at 554. Avoiding that incongruity is a reason "that justifies relief." Fed. R. Civ. P. 60(b)(6); *accord In re Bryan*, 429 B.R. 1, 10 n.27 (Bankr. D. Colo. 2010) (explaining that, "[a]t a minimum, a *Frow* argument must qualify as a Rule 60(b)(6) argument"); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 435 (E.D. Va. 2006) ("the Fourth Circuit has interpreted *Frow* [] broadly"); *see also id.* at n.7 ("the underlying

20

theme of *Frow* is indisputable: logically inconsistent judgments among multiple defendants are to be avoided"); *Chavez*, 2020 WL 10229081, at *7.

Furthermore, in considering Rule 54(b), the default judgment orders entered against Hunt and WSC contain no express determination that there is no just reason for delay. *See* DE 20; DE 21; *Curtiss-Wright*, 446 U.S. at 3. Accordingly, because the court has not adjudicated "all the parties' rights," those judgments "may be revised at any time." Fed. R. Civ. P. 54(b). The court thus concludes that those judgments should be vacated to avoid the risk of inconsistent judgments. *See Lin*, 2021 WL 4295208, at *8; *Frow*, 82 U.S. at 554.[4] Plaintiff's claim against WSC and Hunt is not "separable from" its claim against Defendants. *Curtiss-Wright*, 446 U.S. at 8. Because the claims in this action are so closely related, vacatur is appropriate to ensure logically consistent adjudications. *See Sears*, 351 U.S. at 436.

## IV.    Conclusion

The court lacks personal jurisdiction over Defendants, but transfer to the District of South Carolina instead of outright dismissal is in the interest of justice. So that the district court there may reach the merits of Plaintiff's claim without the risk of inconsistent judgments, the default judgments as to WSC and Hunt must be vacated. Accordingly, the motion to dismiss [24] is GRANTED IN PART, the default judgments entered against WSC and Hunt [DE 20; DE 21] are VACATED, and this action is TRANSFERRED to the District of South Carolina.

SO ORDERED this _23_ day of February, 2024.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The court specifically notes that its vacatur is limited to the default *judgments* entered against WSC and Hunt, not the entries of default. *See, e.g., Frow*, 82 U.S. at 554 (noting that "defaulting defendant has [] lost his standing in court" and "can adduce no evidence, [nor] be heard at the final hearing"); *Lin*, 2021 WL 4295208, at *8.

21

CLOSED,LC3

# U.S. District Court
# EASTERN DISTRICT OF NORTH CAROLINA (Southern Division)
# CIVIL DOCKET FOR CASE #: 7:22–cv–00189–M–RJ

The Cincinnati Insurance Company v. Hunt et al
Assigned to: Chief Judge Richard E. Myers, II
Referred to: Magistrate Judge Robert B. Jones, Jr
Cause: 28:1332 Diversity–Insurance Contract

Date Filed: 11/08/2022
Date Terminated: 02/23/2024
Jury Demand: None
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**The Cincinnati Insurance Company**                      represented by   **Charles Daniel Atkinson**
Wilkes Atkinson & Joyner, LLC
127 Dunbar Street
Suite 200
Spartanburg, SC 29306
864–591–1113
Fax: 864–591–1767
Email: datkinson@wajlawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wayne Hunt**
*TERMINATED: 04/19/2023*

**Defendant**

**Levi Owens**                                           represented by   **Jason Scott Luck**
*Personal Representative for the Estate of*                              Luck VI, Ltd. Co. d/b/a Jason Scott Luck,
*Christopher McLean*                                                      Attorney at Law
P.O. Box 47
Bennettsville, SC 29512
843–479–6863
Fax: 843–479–7222
Email: jason@luck.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Richard Simons**
Overholt Law Firm, PC
2505 S. College Rd.
Wilmington, NC 28412
910–798–5900
Fax: 910–799–8496
Email: greg@overholtlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JA275**

**Maisha Jacobs**    represented by    **Gregory Richard Simons**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wilmington Shipping Company**
*TERMINATED: 04/19/2023*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/08/2022 | Ï 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ANCEDC–6813524.), filed by The Cincinnati Insurance Company. (Attachments: # 1 Proposed Summons to Hunt, # 2 Proposed Summons to Owens, # 3 Proposed Summons to Jacobs, # 4 Proposed Summons to Wilmington Shipping Company, # 5 Exhibit A – Business Auto Policy, # 6 Exhibit B – Excess Coverage Policy, # 7 Exhibit C – Wrongful Death Summons and Complaint, # 8 Exhibit D – Proof of Service for Wrongful Death Action, # 9 Exhibit E – Affidavit of Default for Wrongful Death Action, # 10 Exhibit F – Entry of Default for Wrongful Death Action, # 11 Exhibit G – Order of Reference for Wrongful Death Action, # 12 Exhibit H – Notice of Hearing for Wrongful Death Action, # 13 Exhibit I – Order of Default Judgment for Wrongful Death Action, # 14 Exhibit J – Summons and Complaint for Personal Injury Action, # 15 Exhibit K – Letter re Service for Personal Injury Action, # 16 Exhibit L – Affidavit of Default for Personal Injury Action, # 17 Exhibit M – Entry of Default for Personal Injury Action, # 18 Exhibit N – Order of Reference for Personal Injury Action, # 19 Exhibit O – Order of Judgment for Personal Injury Action) (Atkinson, Charles) (Attachments 1, 2, 3 and 4 flattened and replaced on 11/15/2022) (Edwards, S.). (Entered: 11/08/2022) |
| 11/08/2022 | Ï 2 | Financial Disclosure Statement by The Cincinnati Insurance Company identifying Corporate Parent Cincinnati Financial Corporation for The Cincinnati Insurance Company. (Atkinson, Charles) (Entered: 11/08/2022) |
| 11/14/2022 | Ï | NOTICE OF DEFICIENCY regarding 1 Complaint – Counsel failed to file a JS44 Civil Cover Sheet as required by the Court. Counsel should file a Cover Sheet using the event "Notice–Other" as soon as possible. (Rudd, D.) (Entered: 11/14/2022) |
| 11/14/2022 | Ï 3 | Notice filed by The Cincinnati Insurance Company *Cover Sheet*. (Atkinson, Charles) (Main Document 3 flattened and replaced on 11/15/2022) (Edwards, S.). (Entered: 11/14/2022) |
| 11/14/2022 | Ï | Notice to Counsel regarding: [1–1] Proposed Summons, [1–2] Proposed Summons, [1–3] Proposed Summons, [1–4] Proposed Summons, 3 Notice – other *Civil Cover Sheet* – Counsel is reminded that the filing user must lock or flatten the PDF document. Failure to flatten documents may result in the clerks office issuing a notice of deficiency. Counsel should "flatten" (*the proposed summons, the civil cover sheet*) prior to attaching it in accordance with Section IV.B of the CM/ECF Policies and Procedures Manual. No further action is needed. (Rudd, D.) (Entered: 11/14/2022) |
| 11/14/2022 | Ï 4 | Summons Issued as to Wayne Hunt, Maisha Jacobs, Levi Owens, Wilmington Shipping Company. (*NOTICE: Counsel shall print the attached summons and serve with other case opening documents in accordance with Fed.R.Civ.P. 4.*) (Rudd, D.) (Entered: 11/14/2022) |
| 11/14/2022 | Ï | NOTICE OF DEFICIENCY regarding 1 Complaint. All counsel appearing on behalf of a party shall file a Notice of Appearance pursuant to Local Civil Rule 5.2(a). (McNally, Kimberly) (Entered: 11/14/2022) |
| 11/14/2022 | Ï 5 | Notice of Appearance filed by Charles Daniel Atkinson on behalf of The Cincinnati Insurance Company. (Atkinson, Charles) (Entered: 11/14/2022) |

| 11/15/2022 | Ï 6 | Affidavit of Service for Summons and Complaint filed by The Cincinnati Insurance Company served on Wilmington Shipping Company on 11/15/2022. (Attachments: # 1 Exhibit Proof of Service, # 2 Exhibit Receipt of Service) (Atkinson, Charles) (Entered: 11/15/2022) |
| 11/15/2022 | Ï 7 | Affidavit of Service for Summons and Complaint filed by The Cincinnati Insurance Company served on Levi Owens as PR of the Estate of Christopher McLean on 11/15/2022. (Attachments: # 1 Exhibit Proof of Service, # 2 Exhibit Receipt of Service) (Atkinson, Charles) (Entered: 11/15/2022) |
| 11/21/2022 | Ï 8 | Waiver of Service Returned Executed filed by The Cincinnati Insurance Company. Maisha Jacobs waiver sent on 11/21/2022, answer due 1/20/2023. (Atkinson, Charles) (Entered: 11/21/2022) |
| 11/21/2022 | Ï 9 | SUMMONS Returned Executed by The Cincinnati Insurance Company. Wayne Hunt served on 11/16/2022, answer due 12/7/2022. (Atkinson, Charles) (Entered: 11/21/2022) |
| 12/06/2022 | Ï 10 | Notice of Appearance filed by Gregory Richard Simons on behalf of Levi Owens. (Simons, Gregory) (Entered: 12/06/2022) |
| 12/06/2022 | Ï 11 | Notice of Special Appearance for non−district by Gregory Richard Simons on behalf of Levi Owens. (Simons, Gregory) (Entered: 12/06/2022) |
| 12/06/2022 | Ï 12 | ANSWER to 1 Complaint,,,,, by Levi Owens. (Simons, Gregory) (Entered: 12/06/2022) |
| 12/07/2022 | Ï | NOTICE OF DEFICIENCY regarding 11 Notice of Special Appearance. Pursuant to Section VI.C.2 of the CM/ECF Policies and Procedures Manual, each attorney making an appearance in the case must be a registered CM/ECF filer with this court and must file his or her own Notice of Appearance to be recognized by the court as counsel of record for a party. Attorney Jason Scott Luck will not appear on the docket as counsel of record for the Defendant until a proper appearance by Attorney Luck is filed with the court. (McNally, Kimberly) (Entered: 12/07/2022) |
| 12/08/2022 | Ï 13 | MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping Company* filed by The Cincinnati Insurance Company. (Attachments: # 1 Exhibit A – Affidavit of Default as to Wayne Hunt, # 2 Exhibit B – Affidavit of Default as to Wilmington Shipping Company, # 3 Text of Proposed Order Proposed Order of Entry of Default, # 4 Exhibit Certificate of Service) (Atkinson, Charles) (Entered: 12/08/2022) |
| 12/13/2022 | Ï 14 | AFFIDAVIT regarding 13 MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping Company* by The Cincinnati Insurance Company (Attachments: # 1 Exhibit Military Status) (Atkinson, Charles) (Entered: 12/13/2022) |
| 01/11/2023 | Ï 15 | Notice of Appearance filed by Jason Scott Luck on behalf of Levi Owens. (Luck, Jason) (Entered: 01/11/2023) |
| 01/11/2023 | Ï | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 13 MOTION for Entry of Default *as to Defendants Wayne Hunt and Wilmington Shipping Company*. (McNally, Kimberly) (Entered: 01/11/2023) |
| 01/11/2023 | Ï 16 | ANSWER to 1 Complaint,,,,, by Maisha Jacobs. (Simons, Gregory) (Entered: 01/11/2023) |
| 01/12/2023 | Ï 17 | **ENTRY OF DEFAULT as to Defendants Wayne Hunt and Wilmington Shipping Company. Signed by Peter A. Moore, Jr., Clerk of Court on 1/11/2023.** (McNally, Kimberly) (Entered: 01/12/2023) |
| 02/17/2023 | Ï 18 | MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company* filed by The Cincinnati Insurance Company. (Attachments: # 1 Affidavit Exhibit A – Affidavit as to Hunt, # 2 Affidavit Exhibit B – Affidavit as to Wilmington Shipping Company, # 3 Supplement Memorandum in Support, # 4 Text of Proposed Order Proposed Order as to Hunt, # 5 Text of Proposed Order Proposed Order as to Wilmington Shipping Company) (Atkinson, Charles) (Entered: 02/17/2023) |

| 02/17/2023 | 19 | Certificate of Service filed by The Cincinnati Insurance Company regarding 18 MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company* . (Atkinson, Charles) (Entered: 02/17/2023) |
|---|---|---|
| 03/13/2023 |  | Motion Submitted to Chief US District Judge Richard E. Myers II regarding 18 MOTION for Default Judgment as to *as to Defendants Wayne Hunt and Wilmington Shipping Company*. (McNally, Kimberly) (Entered: 03/13/2023) |
| 04/19/2023 | 20 | **VACATED** ORDER granting 18 Motion for Default Judgment. The Clerk shall enter judgment against Wilmington Shipping Company declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company. Signed by Chief U.S. District Judge Richard E. Myers II on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). (Entered: 04/19/2023) |
| 04/19/2023 | 21 | **VACATED** ORDER granting 18 MOTION for Default Judgment as to as to Defendant Wayne Hunt. The Clerk shall enter judgment against Hunt declaring that Plaintiff owes Hunt no duty of defense or indemnity under policies of insurance issued to Wilmington Shipping Company. Signed by Chief U.S. District Judge Richard E. Myers II on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). (Entered: 04/19/2023) |
| 04/19/2023 | 22 | **VACATED** JUDGMENT against Wayne Hunt and Wilmington Shipping Company. Signed by Peter A. Moore, Jr., Clerk of Court on 4/19/2023. (McNally, Kimberly) Modified on 2/23/2024 (McNally, Kimberly). (Entered: 04/19/2023) |
| 04/19/2023 | 23 | **ORDER FOR DISCOVERY PLAN sent to all parties. Signed by Peter A. Moore, Jr., Clerk of Court on 4/19/2023.** (McNally, Kimberly) (Entered: 04/19/2023) |
| 05/23/2023 | 24 | MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by Maisha Jacobs, Levi Owens. (Attachments: # 1 – memorandum in support, # 2SEALED Exhibit A – Collision report, # 3 Exhibit B – Decl. of Levi Owens, # 4 Exhibit C – Decl. of Maisha Jacobs) (Luck, Jason) Modified on 5/24/2023 to modify document security for Exhibit A (McNally, Kimberly). (Entered: 05/23/2023) |
| 05/24/2023 | 25 | MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24−2)* filed by Levi Owens. (Attachments: # 1 Exhibit A – collision report (redacted)) (Luck, Jason) (Entered: 05/24/2023) |
| 05/25/2023 |  | Notice to Counsel regarding: 25 Motion to Seal Document. Pursuant to Local Civil Rule 7.1(b)(3) and Section V(I)(3) of the CM/ECF Policy and Procedures Manual, parties must file a proposed order with any non−dispositive motion. Please file the proposed order using the 'Proposed Order' event in the Responses and Replies category and link it back to the motion to which it corresponds. Additionally, pursuant to the Practice Preferences of Chief Judge Myers, counsel shall also email proposed orders in a word processing format to Documents_Judge_Myers@nced.uscourts.gov. (McNally, Kimberly) (Entered: 05/25/2023) |
| 05/30/2023 | 26 | Proposed Order regarding 25 MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24−2)* filed by Levi Owens. (Attachments: # 1 Text of Proposed Order) (Luck, Jason) (Entered: 05/30/2023) |
| 05/31/2023 |  | Motion Submitted to Chief U.S. District Judge Richard E. Myers II regarding 25 MOTION to Seal Document 24 MOTION to Dismiss *for Lack of Personal Jurisdiction (docket entry 24−2)*. (McNally, Kimberly) (Entered: 05/31/2023) |
| 06/01/2023 | 27 | **ORDER granting 25 Motion to Seal Document at docket entry 24−2. Signed by Chief U.S. District Judge Richard E. Myers II on 5/31/2023.** (McNally, Kimberly) (Entered: 06/01/2023) |
| 06/02/2023 | 28 | Rule 26(f) Report (joint) filed by The Cincinnati Insurance Company. (Atkinson, Charles) (Entered: 06/02/2023) |

| 06/05/2023 | Ỉ | Document Referred: 28 Joint Rule 26(f) Report referred to U.S. Magistrate Judge Robert B. Jones, Jr. (McNally, Kimberly) (Entered: 06/05/2023) |
|---|---|---|
| 06/05/2023 | Ỉ 29 | **ORDER regarding 28 Rule 26(f) Report (joint) filed by The Cincinnati Insurance Company. The parties shall file any stay motion within seven (7) days from the date of this order, and if no motion is filed, the court will proceed with entry of a scheduling order. Signed by U.S. Magistrate Judge Robert B. Jones, Jr. on 6/5/2023.** (McNally, Kimberly) (Entered: 06/05/2023) |
| 06/09/2023 | Ỉ 30 | Joint MOTION to Stay *All Discovery Deadlines and Entry of Scheduling Order* filed by Levi Owens. (Attachments: # 1 Text of Proposed Order) (Luck, Jason) (Entered: 06/09/2023) |
| 06/09/2023 | Ỉ | Motion Referred to US Magistrate Judge Robert B. Jones, Jr regarding 30 Joint MOTION to Stay *All Discovery Deadlines and Entry of Scheduling Order*. (McNally, Kimberly) (Entered: 06/09/2023) |
| 06/12/2023 | Ỉ 31 | **ORDER granting 30 Motion to Stay Discovery. Signed by U.S. Magistrate Judge Robert B. Jones, Jr. on 6/12/2023.** (McNally, Kimberly) (Entered: 06/12/2023) |
| 06/13/2023 | Ỉ 32 | Memorandum in Opposition regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by The Cincinnati Insurance Company. (Attachments: # 1 Exhibit A – S.C. Supreme Court Order, # 2 Exhibit B – Amended Complaint and Answer in Nautilus Case, # 3 Exhibit C – Affidavit of Non–Service re Hunt, # 4 Exhibit D – Jacobs Document, # 5 Exhibit E– Jacobs Motion for Relief, # 6 Exhibit F – Owens Motion for Relief) (Atkinson, Charles) (Entered: 06/13/2023) |
| 06/13/2023 | Ỉ 33 | Certificate of Service filed by The Cincinnati Insurance Company regarding 32 Memorandum in Opposition, . (Atkinson, Charles) (Entered: 06/13/2023) |
| 06/27/2023 | Ỉ 34 | REPLY to Response to Motion regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by Levi Owens. (Luck, Jason) (Entered: 06/27/2023) |
| 06/28/2023 | Ỉ | Motion Submitted to Chief U.S. District Judge Richard E. Myers II regarding 24 MOTION to Dismiss *for Lack of Personal Jurisdiction*. (McNally, Kimberly) (Entered: 06/28/2023) |
| 10/10/2023 | Ỉ 35 | Notice filed by The Cincinnati Insurance Company *Request for Protection (4–24 to 4–26, 2024)*. (Atkinson, Charles) (Entered: 10/10/2023) |
| 02/23/2024 | Ỉ 36 | **ORDER granting in part and denying in part 24 Motion to Dismiss. The motion to dismiss 24 is GRANTED IN PART, the default judgments entered against WSC and Hunt [DE 20; DE 21] are VACATED, and this action is TRANSFERRED to the District of South Carolina. Signed by Chief U.S. District Judge Richard E. Myer, II on 2/23/2024.** (McNally, Kimberly) (Entered: 02/23/2024) |
| 02/23/2024 | Ỉ | Case transferred to District of District of South Carolina. File transmitted electronically. (McNally, Kimberly) (Entered: 02/23/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No.: 4:24-cv-00951-JDA |
| | ) | |
| v. | ) | **DEFENDANT LEVI OWENS AS** |
| | ) | **PERSONAL REPRESENTATIVE FOR THE** |
| | ) | **ESTATE OF CHRISTOPHER MCLEAN'S** |
| | ) | **MOTION TO STAY** |
| | ) | |
| WAYNE HUNT, LEVI OWENS as | ) | |
| Personal Representative for the ESTATE | ) | |
| OF CHRISTOPHER MCLEAN, MAISHA | ) | |
| JACOBS, and WILMINGTON SHIPPING | ) | |
| CO., | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Levi Owens as Personal Representative for the Estate of Christopher McLean ("Defendant") hereby moves[1] the Court to stay this case while an underlying state tort action is concluded. Defendant is currently the plaintiff in a pending state court action against Defendant Wayne Hunt arising from the same events described in Plaintiff The Cincinnati Insurance Company's ("Plaintiff's") Complaint. Plaintiff contends that it should not be required to provide coverage primarily because Defendant allegedly failed to properly serve Plaintiff's insured, Defendant Wayne Hunt. This factual issue will be conclusively determined in the pending state court action, and unless this proceeding is stayed the Court runs the risk of offending considerations of federalism, efficiency, and comity. For the foregoing and following reasons, Defendant respectfully requests that the Court temporarily abstain from exercising jurisdiction over this action and stay these proceedings.

---

[1] As a full explanation of this motion is herein, a supporting memorandum is not attached. Local Civ. Rule 7.04.

Defendant also moves the Court for an Order staying the parties' Fed. R. Civ. P. 26(f) and 16(b) disclosure deadlines and deadline to submit a scheduling order pending the resolution of Defendant's Motion to Stay.

## FACTUAL BACKGROUND

On December 10, 2013, Defendant Maisha Jacobs and Christopher McLean were involved in a severe collision with a heavy truck operated by Defendant Wayne Hunt while driving on U.S. Highway 15 near McColl, Marlboro County, South Carolina. (Dkt. No. 1).[2] McLean was killed as a result of the collision. (*Id.*). Jacobs survived but was seriously injured. Both Jacobs and McLean's Estate filed separate Complaints on December 8, 2016 in the Marlboro County Court of Common Pleas, alleging wrongful death, survival, and negligence causes of action against Hunt for failing to keep a proper lookout, failing to keep his vehicle within his lane of travel, traveling too fast for the conditions, and failing to yield the right of way, amongst other particular negligent acts and omissions of Hunt. (Dkt. Nos. 1-7; 1-14). The subject truck was insured by policies issued to Hunt's employer, Wilmington Shipping Company, by Plaintiff. (Dkt. No. 1).

At the time of the subject collision, Hunt possessed a North Carolina driver's license documenting that his address was 16671 NC Highway 210, Rocky Point, North Carolina. (Ex. A, South Carolina Traffic Collision Report). The collision report does not document that Defendant Wilmington Shipping Company ("WSC") was Hunt's employer. Additionally, the heavy truck operated by Hunt in the collision was leased from Penske Truck Leasing Co., Ltd. and was not owned by WSC, as demonstrated by the collision report. Therefore, Defendant Owens and Jacobs subsequently named Hunt as the sole defendant and served him within South Carolina through the

---

[2] These references are to the docket numbers of the original action filed with the Eastern District of North Carolina. Defendant asks this Court to take judicial notice of this record. *See* Fed. R. Evid. 201.

2

JA281

Director of the South Carolina Department of Motor Vehicles as the statutorily designated agent for domestic service of process on nonresident motor vehicle drivers, pursuant to S.C. Code Ann. sections 15-9-350 *et seq.*[3] (Dkt. Nos. 1-8; 1-15).

Hunt did not appear or file an Answer within 35 days as required by Rules 6(e) and 12(a), SCRCP, and the Circuit Court entered default against Hunt on November 16, 2017 and referred the actions to a Special Referee to take testimony and determine damages on October 22, 2018. (Dkt. No. 1). The Circuit Court found that the Summons and Complaint were properly served upon Hunt. (Dkt. No. 1-10). On November 18, 2021 and March 23, 2022, the Special Referee filed respective Orders awarding default judgments to both Owens and Jacobs. (*Id.*). Owens and Jacobs have demanded coverage under the two policies issued by Plaintiff to WSC, leading Plaintiff to file this declaratory judgment action in the United States District Court for the Eastern District of North Carolina seeking declarations that it has no duty to defend or indemnify Hunt with respect to the default judgments. On October 26, 2022, Hunt filed a motion in the state court action asking for relief from the default judgment and to have it vacated. (Ex. B, Motion to Vacate Def. Judgment). Hunt's argument for relief focuses on whether service on the Director of the SCDMV was effective under S.C. Code Ann. § 15-9-380.

On May 23, 2023, Defendant filed a motion to dismiss this action due to a lack of personal jurisdiction or in the alternative to transfer venue to this District. (Dkt. No. 24). In opposition, Plaintiff argued that the central issue of this case was whether, when, and how Hunt was served with the pleadings in the underlying state tort action. (Dkt. No. 32). According to Plaintiff, "the sole factual issue for consideration in this case" was whether Defendant provided notice of the

---

[3] Defendant Hunt failed to accept and receipt for certified mail containing notice of service sent by the SCDMV, and the notice was subsequently sent by open mail as evidenced by the affidavit of mailing and envelope filed with the Circuit Court. (Ex. C, Affidavit of Mailing).

South Carolina tort action to Hunt through the South Carolina Department of Motor Vehicles in compliance with statutory requirements. The case was transferred to this District on February 23, 2024. (Dkt. No. 36).

Defendant has requested a hearing in the state court on Hunt's motion for relief from the default judgment, and Defendant hopes to have this motion heard and decided in the coming 60 days.

## **ARGUMENT**

The Court should temporarily abstain from exercising jurisdiction and grant Defendant's stay in the interest of federalism, efficiency, and comity. There is an action pending in state court which will effectively resolve and clarify the issue of whether Defendant Hunt was effectively served with the Summons and Complaint through the Director of the SCDMV. The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). A declaratory judgment action is appropriate when the action will settle the legal relations in issue and terminate and afford relief from the uncertainty giving rise to the proceeding. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Declaratory judgment actions should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy . . . ." *Id.* When there are pending state court actions, federal courts should consider whether the issue would be better settled by the state court proceedings. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). "This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . .'" *Poston*, 88 F.3d at 257 (quoting *Brillhart*, 316 U.S. at 495).

4

**JA283**

The Fourth Circuit has articulated four specific factors for the district courts to consider when weighing whether to abstain from exercising jurisdiction over a declaratory judgment action or to grant a stay:

> 1) the strength of the state's interest in having the issue raised in the federal declaratory action decided in the state court; 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and 4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for res judicata.

*Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir. 1994) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)). By considering the preceding factors, federal courts will be guided by considerations of federalism, efficiency, and comity and may avoid interference with state court proceedings. *Columbia Ins. Co. v. Reynolds*, 225 F. Supp. 3d 375, 380 (D.S.C. 2016). The Supreme Court of the United States has warned that district courts may be engaging in "gratuitous interference" when permitting a federal declaratory action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issue is pending in state court." *Wilton*, 515 U.S. at 283.

I.    **South Carolina has a strong interest in having its courts decide this issue.**

South Carolina's General Assembly has codified statutes setting forth when personal jurisdiction may be exercised over a nonresident motorist. To that end, South Carolina statutes prescribe the steps that must be taken to effect service over a nonresident motorist by serving process on the Director of the SCDMV. The federal government has no interest in regulating or prescribing methods of instate service of process concerning state law claims, and the Federal Rules of Civil Procedure defer to state law for prescribing the means to serve individuals and corporations. Fed. R. Civ. P. 4(e)(1). Plaintiff's Complaint references the instate service of a state tort action under South

5

JA284

Carolina law, and the subject accident occurred within South Carolina on a South Carolina roadway. Compliance with statutory provisions for service on the SCDMV when the nonresident motorist fails to accept notice from the DMV is a novel issue under state law, as there are no binding South Carolina authorities interpreting S.C. Code Ann. § 15-9-380. South Carolina not only has a strong interest in having any state law issues regarding service interpreted and decided in a state court, but also in having a state court apply its laws regarding service to the circumstances giving rise to this action.

Additionally, South Carolina maintains its roadways, responds to, and investigates motor vehicle accidents on those roadways, and motor vehicle liability insurance is an area of extensive state regulation. The federal government has little interest in the regulation of automobile insurance, and Congress has deferred to the states on issues of automobile insurance. This Court has found in the past that South Carolina has a strong interest in having issues of motor vehicle insurance coverage decided within state courts. *See Lyndon S. Ins. Co. v. Walker*, Case No. 9:18-cv-3019-RMG, 2019 WL 1118513 at *2 (D.S.C. March 11, 2019); *Reynolds*, 225 F. Supp. 3d at 383; *Beach Cove Assocs. v. United States Fire Ins. Co.*, 903 F. Supp. 959, 962-63 (D.S.C. 1995). More importantly, the factual issue of whether Defendant properly served Defendant Hunt will be litigated in state court in the underlying tort action. In order to vacate the default judgment, Defendant Hunt will have to prove in state court that Plaintiff did not comply with the requirements for service on a nonresident motorist. A close review of the factual issue at heart in this declaratory judgment action can lead to only one conclusion: that South Carolina has a strong interest in having the issue resolved in state court, and not a federal court.

## II.    <u>The Special Referee can resolve this issue more efficiently than federal court.</u>

The second factor for the Court to consider in determining whether this action is appropriate is whether a South Carolina state court could resolve this issue more efficiently. The Fourth Circuit

6

**JA285**

has encouraged district courts to make a "careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding . . . [and] whether such parties are amenable to process in that proceeding.'" *Penn. Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc.*, No. Civ. A.: 4:04-1576-RBH, 2006 WL 569589 at *8 (D.S.C. March 6, 2006) (quoting *Nautilus*, 15 F.3d at 378-79). Currently, there are parallel actions in state and federal court on the factual issue of service. A decision by the Special Referee in state court that service was ineffective could make the coverage issue moot. The outcome of Defendant Hunt's motion to vacate the default judgment could be determinative of the outcome of the federal declaratory judgment action. The Circuit Court in the underlying action was familiar with the factual circumstances of the case and has already made a factual finding that service was proper, and Defendant Hunt has already filed his motion to vacate the default judgment, which will be expeditiously resolved once it is heard by the Special Referee. (Dkt. No. 1-10).

### III.   Permitting this action to proceed will result in unnecessary entanglement between federal and state courts.

The third factor asks whether allowing the declaratory judgment action to go forward would create unnecessary entanglement between the state and federal courts. "Entanglement means that *issues of fact* in the federal declaratory action 'are already being litigated by the same parties in the related state court actions.'" *Reynolds*, 225 F. Supp. 3d at 384 (quoting *Nautilus*, 15 F.3d at 379). "While somewhat similar to the second factor, this factor requires the court to consider whether any decision by this court would have a preclusive effect in the state court actions." *Harleysville Mut. Ins. Co. v. Cambridge Bldg. Corp.*, C.A. No.: 9:04-23412-23, 2006 WL 2038302 at *5 (D.S.C. July 19, 2006). A decision by the Court finding that Defendant Hunt was not effectively served would have a preclusive effect on the underlying state court action. Plaintiff has brought this action knowing that it

7

**JA286**

could be binding on the state court action. Whether Hunt was properly served is already being litigated in the underlying tort claim. Allowing this declaratory judgment action to proceed is likely to result in unnecessary entanglement.

Defendant concedes that it is unlikely that this declaratory judgment action can be successfully used as a device for "procedural fencing" due to the timing of the actions and Hunt's pending motion to vacate the default judgment. However, the abstention factors weigh in favor of dismissal of this action, even if the fourth factor is not met. As described above, there are compelling reasons for the Court to abstain in the interest of federalism, efficiency, and comity. A strong showing by Defendant under the fourth factor is not necessary for the Court to dismiss this action. *See Poston*, 88 F.3d at 258; *Harleysville Mut. Ins. Co.*, 2006 WL 2038302 at *6.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion and stay these proceedings, the parties' disclosure deadlines, and the deadline to submit a scheduling order pending the outcome of the underlying tort action. Pursuant to Local Civ. Rule 7.02, undersigned counsel affirms that prior to filing this motion he conferred with counsel for Plaintiff and Plaintiff opposes the motion.

[SIGNATURE PAGE TO FOLLOW]

8

JA287

February 28, 2024
Hampton, South Carolina

By: /s/ John E. Parker, Jr.

John E. Parker, Jr. (#13257)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803-903-1781
jayparker@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

9

**JA288**

ELECTRONICALLY FILED - 2022 Oct 26 5:19 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

STATE OF SOUTH CAROLINA

COUNTY OF MARLBORO

Levi Owens, as Personal Representative of the
Estate of Christopher McLean,

                                      Plaintiff,

v.

Wayne Hunt,

                                      Defendant.

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:  2016-CP-34-00265

**DEFENDANT'S MOTION TO BE RELIEVED
FROM DEFAULT DAMAGES JUDGMENT
AND/OR IN THE ALTERNATIVE TO
VACATE JUDGMENT**

**TO:    JOHN E. PARKER, ESQUIRE, ATTORNEY FOR PLAINTIFF, AND TO THE
PLAINTIFF ABOVE NAMED:**

**YOU WILL PLEASE TAKE NOTICE** that the undersigned, as counsel for Defendant

Wayne Hunt will, ten (10) days after service hereof, or as soon thereafter as counsel may be heard,

move for an Order relieving the Defendant Wayne Hunt from the default damages judgment

entered by the Special Referee Douglas Jennings, Jr. on November 18th, 2021, and filed in the

Marlboro County Court of Common Pleas on November 18th, 2021. The Defendant Wayne Hunt

would herein show that he is entitled to the relief sought in this motion pursuant to *South Carolina*

*Rule of Civil Procedure* 60(b). Additional grounds to support the Defendant's Motion include

*South Carolina Rule of Civil Procedure* 12(b)(2), 12(b)(4), and 12(b)(5). This Motion will be

further supported by the pleadings, correspondence, affidavits to be submitted, memorandums of

law, the contents of the court file and any and all other evidence properly accepted by the court at

the time the hearing is held.

Counsel certifies that he has attempted to communicate with opposing counsel in order

to resolve the issues raised in this Motion but has been unsuccessful in resolving the issues, or

that consultation would serve no useful purpose or could not be timely held.

MURPHY & GRANTLAND, P.A.

*s/John M. Grantland*
John M. Grantland, Esquire
S.C. Bar No. 64158
Jody C. Lyles
S.C. Bar No. 104187
P.O. Box 6648
Columbia, SC 29260
Phone: 803-782-4100
Fax: 803-782-4140

*Attorneys for Wayne Hunt*

Columbia, South Carolina
October 26, 2022

ELECTRONICALLY FILED - 2022 Oct 26 5:19 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**EXHIBIT C**

STATE OF SOUTH CAROLINA   )
                               )        **AFFIDAVIT**

COUNTY  OF  RICHLAND   )

PERSONALLY appeared before me, Wanda R. Ealy, who, first being duly sworn, deposes and says that:

This Affidavit is made in compliance with Section 15-9-380 of the Code of Laws of South Carolina;

That she is the designated representative of the Director of the South Carolina Department of Motor Vehicles;

That on February 9, 2017 in accordance with the provisions of Sections 15-9-350 or 15-9-360 of the 1976 Code of Laws of South Carolina, the Summons and Complaint in an action styled Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt: Case No.: 2016-CP-34-00265 received by the South Carolina Department of Motor Vehicles;

That on February 10, 2017 a copy of the Summons and Complaint was sent to Defendant Wayne Hunt by certified mail, at the address furnished by Plaintiff's attorney that is 16671 NC Highway 210 Rocky Point, NC 28457. That said copy of the Summons and Complaint was returned to the South Carolina Department of Motor Vehicles by the Post Office Department marked "Return To Sender Unclaimed Unable To Forward," and is attached hereto;

That a copy of the Summons and Complaint was sent to Wayne Hunt by open mail to the same address with sufficient postage attached thereto.

Wanda R. Ealy, Paralegal Assistant
For: Director, S.C. Department of Motor Vehicles

Sworn to and subscribed before me this
10th day of March 2017

Notary Public of South Carolina
My Commission Expires: May 28, 2024

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

# EXHIBIT C



## S. C. DEPARTMENT OF MOTOR VEHICLES

OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax: 896-9901*

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

March 10, 2017

R. Alexander Murdaugh, Esquire
P. O. Box 457
Hampton, SC 29924

**Re:  Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt: Case No.: 2016-CP-34-00265, DMV 17-73**

Dear Mr. Murdaugh:

The notice of service and copy of the Summons and Complaint in the above-entitled action were sent certified mail on February 10, 2017 to defendant Wayne Hunt and returned to this office marked "Return to Sender Unclaimed Unable To Forward."

In accordance with the provisions of Section 15-9-380 of the 1976 Code of Laws, as amended, I am today sending notice of service and a copy of the Summons and Complaint to defendant Wayne Hunt by open mail. Enclosed are the Affidavit of the mailing, the original envelope, and the unsigned return receipt card for filing by you with the Clerk of Court.

If you have any questions, please contact me at 803-896-9900.

Sincerely,

Wanda R. Ealy
Paralegal Assistant
For: Director, South Carolina Department of Motor Vehicles

Enclosures

/wre

**EXHIBIT C**

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265



**EXHIBIT C**

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265



South Carolina Dept
P.O. Box 1498
Blythewood, S.C. 294

Form 103

Forwarding Service Requested

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

CERTIFIED MAIL

7007 0710 0004 9204 0135

U.S. POSTAGE >> PITNEY BOWES
ZIP 29016 $ 006.77⁰
0001394666 FEB 10 2017

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

NIXIE    276    SE 1    0003/06/17

BC: 29016149898

*1554-04256-10-43

RECEIVED
MAR 08 2017
DMV
GENERAL
COUNSEL

**EXHIBIT B**

**PARKER** LAW GROUP

February 29, 2024

John E. Parker, Jr.
Email: jayparker@parkerlawgroupsc.com
Asst. Email: ccartier@parkerlawgroupsc.com

*Via Email Only*

Attn: Claims Department
The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250

> *Re:* *Our Client and Claimant: Levi Owens as PR for the Estate of*
> *Christopher McLean*
> *Your Insured: Wilmington Shipping Company & Wayne Hunt*
> *Civil Action No.: 2016-CP-34-00265*
> *Date of Accident: December 10, 2013*

Dear Sr. or Madam:

Please find enclosed a filed judgment against your insured in the above-referenced matter. We understand that the judgment is covered by a policy issued to Wilmington Shipping Company. Please forward a check for the judgment and we will satisfy the judgment. Otherwise, we will have no choice but to seek to collect the judgment from your insured through supplemental proceedings. Please take this opportunity to protect your insured. If we do not receive payment by March 21, 2024, we will commence supplemental proceedings.

Please do not hesitate to contact me if you should have any questions.

With kind regards, I am

Sincerely,

John E. Parker Jr.

JAY/cc
Enclosures as stated

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

# EXHIBIT B

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | FOURTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| *Levi Owens as Personal Representative of* | ) | No. 2016-CP-34-00265 |
| *the Estate of Christopher McLean,* | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER AWARDING DEFAULT** |
| | ) | **JUDGMENT** |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This matter was referred to me pursuant to Judge Paul M. Burch's Order of Reference dated October 22, 2018 and Entry of Default dated November 16, 2017. The purpose of the reference was to conduct a hearing to ascertain the amount of the Plaintiff's damages in this default matter and to issue a final order awarding damages against Defendant.

After several delays which were unavoidable, I conducted the damages hearing on November 17, 2021. Plaintiff appeared with his attorneys, John E. Parker, Jr. and Jason Scott Luck. Defendant did not appear, either personally or through counsel, despite notice to him from Plaintiff's counsel. As evidence of notice of this hearing being provided to Defendant, Attorney Jason Luck filed an Affidavit of Service certifying that, pursuant to Rule 55(b)(2), SCRCP, on November 4, 2021, a Notice of Hearing was sent to Defendant Wayne Hunt at his last known address via First Class U.S. Mail. There has been no return of that notice, nor has Defendant responded or appeared. I therefore proceeded with the hearing in Defendant's absence.

1

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

# EXHIBIT B

## SUMMARY OF THE EVIDENCE

This case arises out of a motor vehicle collision that occurred on December 10, 2013 on U.S. Highway 15 outside of McColl, South Carolina in Marlboro County. Christopher McLean, the 19-year-old son of Levi Owens(father) and Wanda Breeden (mother), was a passenger in a vehicle which was traveling in a southeasterly direction on US Hwy 15 attempting to make a left turn onto a secondary road when a truck being driven by Defendant Wayne Hunt traveling in a northerly direction on US Hwy 15 at a high rate of speed, crossed the center line of the road and violently struck the vehicle in which Christopher McLean was a passenger. As a result, Christopher McLean was gravely injured and was transported by helicopter to McLeod Regional Medical Center in Florence, SC, where he thereafter died as a result of the multiple trauma from this collision. According to the death certificate, Christopher McLean (hereinafter "decedent") died approximately six(6) hours after the collision as a result of the multiple trauma, including a closed head injury, a ruptured diaphragm, a ruptured bladder, and hypovolemic shock.

Christopher McLean was a 19-year-old unmarried recent graduate of Marlboro County High School with no children. He was intestate and is survived by his parents as his statutory beneficiaries and heirs at law. Plaintiff Levi Owens, father of decedent, was duly appointed as Personal Representative of the Estate by the Marlboro County Probate Judge on September 10, 2014. Plaintiff thereafter filed suit for the Wrongful Death of his deceased son and asserting the survival claim for the conscious pain and suffering of decedent. According to the prior Order of Circuit Judge Paul M. Burch filed November 16, 2017, the Summons and Complaint were properly served upon Defendant Wayne Hunt on February 10, 2017, and no timely response or answer was made by or on behalf of the defendant. Judge Burch thereafter ordered that Plaintiff was entitled

2

# EXHIBIT B

to an Entry of Default, and subsequently referred the matter to the undersigned Special Referee with finality to take testimony and determine the amount of damages to be awarded to Plaintiff in this wrongful death and survival case. *See Order of Reference filed 10/22/2018 by Circuit Judge Paul M. Burch.* By virtue of his default, Defendant has admitted that he was negligent and reckless with respect to the collision and that his negligence and recklessness proximately caused the decedent's injuries and death.

The Plaintiff was the only witness who testified at the hearing and I found his testimony to be very genuine and convincing and to unquestionably establish all the elements of damages in a wrongful death and survival case. In addition, Plaintiff introduced the following exhibits without objection:

1. Death certificate of the decedent.

2. Summary of Plaintiff's medical and funeral expenses totaling $62,323.88.

## FINDINGS OF FACT

Based on the foregoing, I make the following findings of fact:

1. The decedent was 19 years old at the time of his untimely death, was single and without children, and enjoyed a particularly close, wholesome and loving relationship with his parents;

2. The decedent was in excellent health before the subject collision and had frequently engaged in exercise and sports activities with his father.

3. On December 10, 2013, the decedent was a passenger in a car that was negligently and recklessly struck by a truck operated by Defendant.

4. The collision was directly and proximately caused by Defendant's negligence, carelessness and recklessness.

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

3

**EXHIBIT B**

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

5. The collision directly caused the decedent to suffer very serious bodily injuries which resulted in conscious pain and suffering, and which ultimately caused his wrongful death.

6. Defendant's negligence and recklessness caused pecuniary loss to the Plaintiff as outlined below, as well as significant mental shock and suffering, wounded feelings, grief, sorrow, and the loss of his son's society and companionship.

7. The decedent's estate incurred bills totaling at least $48,232.00 for medical treatment of the serious bodily injuries sustained in the collision.

8. The Plaintiff incurred funeral and burial expenses totaling $14,091.88.

<u>CONCLUSIONS OF LAW</u>

Based on the foregoing, I reach the following conclusions of law:

1. Defendant was negligent and reckless, which directly and proximately caused the collision, the decedent's injuries, conscious pain and suffering, and his wrongful death, and all damages which Plaintiff is entitled to under South Carolina law.

2. As a result of Defendant's negligence and recklessness, Plaintiff sustained actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars, with $100,000.00 to be apportioned as survival damages to the estate and $5,000,000.00 to be apportioned as wrongful death damages to the statutory beneficiaries, itemized as follows:

   a. Wrongful Death

      i. Pecuniary loss (i.e., funeral expense): $14,091.88

      ii. Mental shock and suffering: $1,000,000.00

      iii. Wounded feelings: $1,000,000.00

4

**JA299**

**EXHIBIT B**

    iv.  Grief and sorrow:  $1,000,000.00

    v.  Loss of society and companionship: $1,935.908.12

  b.  Survival

    i.  Medical expenses:  $48,232.00

    ii.  Conscious Pain, suffering, mental distress: $51,768.00

3.  I do not find grounds to justify an award of punitive damages against Defendant.

**ORDER**

**IT IS HEREBY ORDERED** that Plaintiff is hereby awarded a final judgment against Defendant for actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars.

    **AND IT IS SO ORDERED.**

_____
Douglas Jennings, Jr.
Special Referee

November _18_, 2021

Bennettsville, South Carolina

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**JA300**

Thursday, July 24, 2025 at 10:17:54 PM Eastern Daylight Time

**Subject:** Activity in Case 4:24-cv-00951-JDA The Cincinnati Insurance Company v. Hunt et al Order on Motion to Stay
**Date:** Wednesday, March 13, 2024 at 09:13:20 Eastern Daylight Time
**From:** SCDEfilingstat@scd.uscourts.gov
**To:** scd_ecf_nef@scd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of South Carolina

## Notice of Electronic Filing

The following transaction was entered on 3/13/2024 at 9:11 AM EDT and filed on 3/13/2024
**Case Name:**    The Cincinnati Insurance Company v. Hunt et al
**Case Number:**    4:24-cv-00951-JDA
**Filer:**
**Document Number:** 45(No document attached)

**Docket Text:**
**TEXT ORDER denying [39] Defendant Owens's motion to stay. As Plaintiff argues, the instant action is not based upon the contention that Defendant Hunt was not properly served in the underlying state court case. Accordingly, even assuming that Owens is correct regarding what factors the Court should weigh in considering the motion to stay, those factors do not justify a stay here. Signed by the Honorable Jacquelyn D Austin on 3/13/2024. (lgib, )**

**4:24-cv-00951-JDA Notice has been electronically mailed to:**

Charles Daniel Atkinson    datkinson@wajlawfirm.com, jsaad@wajlawfirm.com

Jason Scott Luck    jason@luck.law, office@luck.law

John Elliott Parker, Jr    jayparker@parkerlawgroupsc.com, teamjay@parkerlawgroupsc.com

Brian Michael Peters, Jr    bpeters@wajlawfirm.com, jsaad@wajlawfirm.com

1 of 2

JA301

**4:24-cv-00951-JDA Notice will not be electronically mailed to:**

Gregory Richard Simons
Overholt Law Firm, PC
2505 S. College Rd.
Wilmington, NC 28412

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | CA: 4:24-cv-00951-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **RULE 26(f) REPORT** |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | |
| Representative for the Estate of Christopher | ) | |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The parties, having consulted pursuant to Rule 26(f), Fed. R. Civ. P., hereby report as follows (check one below):

☐    We agree that the schedule set forth in the Conference and Scheduling Order filed is appropriate for this case. **The parties' proposed discovery plan as required by Fed. R. Civ. P. Rule 26(f) and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

☒    We agree that the schedule set forth in the Conference and Scheduling Order filed requires modification as set forth in the proposed Consent Amended Scheduling Order which will be e-mailed to chambers as required (use format of the Court's standard scheduling order). **The parties' proposed discovery plan as required by Fed. R. Civ. P. Rule 26(f) and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

☐    We are unable, after consultation, to agree on a schedule for this case.  We, therefore, request a scheduling conference with the Court. **The parties' proposed discovery plan as required by 26(f) Fed. R. Civ. P., with disagreements noted, and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

(SIGNATURE PAGE ATTACHED)

JA303

April 18, 2024

s/ C. Daniel Atkinson
C. Daniel Atkinson (Fed Id. No. 09626)
datkinson@wajlawfirm.com
Brian M. Peters, Jr. (Fed Id. No. 14021)
bpeters@wajlawfirm.com
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113
**Counsel for Plaintiff**


s/ Jason Scott Luck
Jason Scott Luck (Fed. Id. No. 9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law
S.C. Bar No.: 73676 (D.S.C. 9696)

-AND-

s/ John E. Parker
John E. Parker, Jr. (Fed. Id. No. 13257)
Ashley B. Nance (Fed. Id. No. 11093)
101 Mulberry Street East
P.O. Box 487
Hampton, South Carolina 29924
Ph (803) 903-1781
Facsimile: (803)-903-1793
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

**Counsel for Defendant Levi Owens, as**
**Personal Representative for the Estate of**
**Christopher McLean**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **RULE 26(f) DISCOVERY PLAN** |
| Representative for the Estate of Christopher | ) | |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Parties, having consulted pursuant to Rule 26(f), Fed. R. Civ. P., hereby file this Rule 26(f) Discovery Plan separately in accordance with their Rule 26(f) Report, and state as follows:

**Fed. R. Civ. P. 26(f)(3).**

(A) *What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made*;

    a.  The Parties agree no changes should be made in the timing, form, or requirement for disclosures under Rule 26(a).

(B) *The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues*;

    a.  Since this action primarily concerns issues of law, extensive discovery will be unnecessary. Discovery will likely be narrowly tailored to the legal issues of this

Page 1 of 8

JA305

case, including the issue of notice. However, developments in the related, Underlying Lawsuit[1] may influence this response.

(C) *Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced*;

    a. None at this time. However, developments in the related, Underlying Lawsuit may influence this response.

(D) *Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production— whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502*;

    a. None at this time. The Parties agree to coordinate with regard to any inadvertent production of privileged or confidential materials.

(E) *What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed*; *and*

    a. The Parties agree that no changes should be made in the limitations on discovery imposed under these rules or by local rule, and that no other limitations should be imposed, at this time.

(F) *Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c)*.

    a. If needed, the Parties agree that a joint confidentiality order may be considered by this Court. The Parties see no need for a confidentiality order at this time.

---

[1]    The "Underlying Lawsuit" is Civil Action File No. 2016-CP-34-00265, entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant*, pending in the Court of Common Pleas of the State of South Carolina, County of Marlboro.

**Local Civil Rule 26.03(A).**

(1) *A short statement of the facts of the case.*

    a. This is a declaratory judgment action regarding Plaintiff The Cincinnati Insurance Company's duty to defend or indemnify Defendant Wayne Hunt. Defendant Wilmington Shipping Company was Defendant Hunt's employer, and Defendant Wilmington Shipping Company was the named insured under the relevant policies. Plaintiff contends that it was not provided the necessary notice of the Underlying Lawsuit brought by Defendant Owens against Defendant Hunt. Default judgment was entered against Defendant Hunt in the Underlying Lawsuit. CIC alleges that this was done prior to receipt of any notice by CIC. Defendants Hunt and Wilmington Shipping Company are subject to entries of default in this case, and CIC plans to file a Motion for Default Judgment in short order for each. Defendant Owens will oppose any such motion and asserts that the proper course of action is to hold entries of default and any Motions for Default Judgment in abeyance until resolution of the case against Owens to avoid the risk of inconsistent outcomes on the factual issues in this case. Prior to transfer the District Court for the Eastern District of North Carolina vacated default judgments against Hunt and Wilmington to avoid the risk of inconsistent judgments as described in *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). (Dkt. No. 36, pp. 18-21).

(2) *The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.*

    a. These are the following fact witnesses likely to be called:

        i. Corporate Representative(s) of The Cincinnati Insurance Company ("CIC")

Corporate representative(s) are expected to testify that CIC never received timely or sufficient notices of the Underlying Lawsuits and the subsequent default proceedings.

    ii.  <u>Wayne Hunt</u>

Hunt was the sole defendant in the underlying state court actions. He is expected to testify that he never gave any notice to CIC regarding the suits at issue.

    iii.  <u>Levi Owens</u>

Owens is the Personal Representative for the Estate of Christopher McLean, Plaintiff in the Wrongful Death Action.

    iv.  <u>Corporate Representative(s) of Wilmington Shipping Company</u>

Corporate representative(s) are expected to testify that Wilmington Shipping Company never received timely or sufficient notices of the Underlying Lawsuits and the subsequent default proceedings, and thus that Wilmington Shipping Company never provided CIC with timely or sufficient notices of the Underlying Lawsuits and the subsequent default proceedings.

(3) *The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).*

    a.  No expert witnesses are likely to be called in this declaratory judgment action.

(4) *A summary of the claims or defenses with statutory and/or case citations supporting the same.*

a.　Claims:

i.　Plaintiff brings one cause of action under the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et seq.*, to determine whether CIC has any obligation to defend or indemnify Hunt under the Policies at issue. *Great Am. Ins. Co. v. C.G. Tate Constr. Co.* ("*Great American I*"), 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981). The Default Judgment in the Underlying Lawsuit entered against Hunt, due to a lack of notice provided by Hunt and/or Wilmington to CIC, prevented CIC from adequately investigating or defending the claim. The lack of notice prejudiced CIC.

ii.　North Carolina law applies because, as the Eastern District of North Carolina Court recognized, the Policies were issued to a North Carolina company, with such policies being governed by North Carolina law. (*See* ECF No. 36 at p. 17). North Carolina law applies because (1) South Carolina follows *lex loci contractus* "where a 'subject' of the insurance contract—the lives, property, or interests—just happened to be in South Carolina when the incident triggering coverage occurred," *Young v. USAA Gen. Indem. Co.*, 436 S.C. 311, 316, 872 S.E.2d 185, 187 (Ct. App. 2022), *reh'g denied* (May 19, 2022), *cert. dismissed* (Nov. 17, 2022), and (2) North Carolina law governs "[a]ll contracts of insurance on property, lives, or interests in [North Carolina]," N.C. Gen. Stat. Ann. § 58-3-1.

iii.　The Clerk of Court of the Eastern District of North Carolina filed an Order of Entry of Default as to Defendants Wilmington Shipping Company and

Wayne Hunt. (ECF No. 17.) Those Entries still stand. (ECF No. 36 at p. 21, n. 4.)

b. <u>Defenses</u>:

   i. Defendant Owens denies that Hunt and/or Wilmington never received actual notice of the Underlying Lawsuit or provided such notice to CIC.

   ii. Defendant Owens asserts all defenses and laws as stated in the federal Motor Carrier Act of 1980 (49 U.S.C. § 13906), and specifically asserts that said Act preempts state law governing CIC's insurance policies. Specifically, Defendant Owens believes that CIC's insurance policies contain an MCS-90 endorsement in compliance with section 13906 and that Hunt is an insured under the policies, regardless of whether he is a "named insured." As such, in the event that coverage is lacking under the policies, CIC's obligations under the MCS-90 endorsement will be triggered, and CIC will be required to satisfy its suretyship obligations when it disclaims coverage on the ground that it was not provided with prompt notice of the loss as required by its policies' cooperation provisions. *See Pierre v. Providence Washington Ins. Co.*, 286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000); *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1996). Under the MCS-90 endorsement, CIC will be able to recover any payments it makes in satisfaction of the default judgment from its insured.

(5) *Absent special instructions from the assigned judge, proposed dates for the following deadlines listed in Local Civ. Rule 16.02 (D.S.C.): (a) Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures. (b) Completion of discovery.*

a.  Please see the proposed Consent Amended Scheduling Order, which the parties have e-mailed to chambers as required. Those dates are reproduced here as follows:

    i.  July 10, 2024: Plaintiff's expert disclosures;

    ii.  August 9, 2024: Defendants' expert disclosures; and

    iii.  October 9, 2024: Completion of discovery.

(6) *Any special circumstances that would affect the time frames applied in preparing the scheduling order. See generally Local Civ. Rule 16.02(C) (D.S.C.) (Content of Scheduling Order).*

a.  The Underlying Lawsuits are proceeding but the Parties disagree to the effect of the other proceeding on this action. Defendant Owens intends to amend his Answer to assert counterclaims for bad faith and breach of contract, as well as a declaration that CIC is obligated to make payments toward the default judgment under any MCS-90 endorsements to the policies, once he receives a judicial assignment of Hunt's rights in the Underlying Lawsuit. Owens has commenced supplemental proceedings in the Underlying Lawsuit to collect the default judgment. A motion hearing in that matter is anticipated for late May in advance of the Consent Amended Scheduling Order's deadline for amendment of pleadings. Defendant Owens reserves the right to request further amendment of the Scheduling Order's deadlines depending on the resolution of the Underlying Lawsuit.

(7) *Any additional information requested in the Pre-Scheduling Order (Local Civ. Rule 16.01 (D.S.C.)) or otherwise requested by the assigned judge.*

a.  The Parties do not wish to consent to trial before a United States Magistrate Judge.

April 18, 2024

s/ C. Daniel Atkinson
C. Daniel Atkinson (Fed Id. No. 09626)
datkinson@wajlawfirm.com
Brian M. Peters, Jr. (Fed Id. No. 14021)
bpeters@wajlawfirm.com
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113
**Counsel for Plaintiff**


s/ Jason Scott Luck
Jason Scott Luck (Fed. Id. No. 9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law
S.C. Bar No.: 73676 (D.S.C. 9696)

-AND-

s/ John E. Parker
John E. Parker, Jr. (Fed Id. No. 13257)
Ashley B. Nance (Fed Id. No. 11093)
101 Mulberry Street East
P.O. Box 487
Hampton, South Carolina 29924
Ph (803) 903-1781
Facsimile: (803)-903-1793
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

**Counsel for Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | **CONSENT AMENDED** |
| Wayne Hunt, Levi Owens as Personal | ) | **SCHEDULING ORDER** |
| Representative for the Estate of Christopher | ) | |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, the

following schedule is established for this case.

1.   A conference of the parties pursuant to Fed. R. Civ. P. 26(f) shall be held no later than **April 04, 2024**.[1]  At conference the parties shall confer concerning all matters set forth in Fed. R. Civ. P. 26(f) and whether the schedule set forth in this Order is appropriate and, if not, what modifications are necessary.[2]

2.   No later than **April 18, 2024**, the required initial disclosures under Fed. R. Civ. P. 26(a)(1) shall be made.[3]

3.   No later than **April 18, 2024**, the parties shall file a Rule 26(f) Report in the form attached to this Order.  Parties are hereby notified that Local Civil Rule 26.03 lists additional queries to be answered in the Rule 26(f) Report.

4.   Motions to join other parties and amend the pleadings shall be filed no later than **June 07, 2024**. ALL motions to amend pleadings must be accompanied by a  proposed amended

---

[1] Plaintiff's counsel shall initiate the scheduling of the Rule 26(f) conference with all counsel known to plaintiff regardless of whether they have filed appearances.

[2] The parties shall also consider whether they wish to consent to trial before a United States Magistrate Judge.  *See* Notice of Availability of United States Magistrate Judge.

[3] Pursuant to Fed. R. Civ. P. 26(a)(1), the parties may, by stipulation, agree not to make some or all of the Rule 26(a)(1) initial disclosures.  If such a stipulation is made, it shall be confirmed in writing between the parties. *See* Fed. R. Civ. P. 29 and Local Civil Rule 29.01.

**JA313**

pleading.

5.    Plaintiff(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Plaintiff(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **July 10, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **July 10, 2024**.

6.    Defendant(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Defendant(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **August 09, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **August 09, 2024**.

7.    Counsel shall file and serve affidavits of records custodian witnesses proposed to be presented by affidavit at trial no later than **August 09, 2024**. Objections to such affidavits must be made within fourteen (14) days after the service of the disclosure. *See* Fed. R. Evid. 803(6), 902(11), or 902(12) and Local Civil Rule 16.02(D)(3).

8.    Discovery shall be completed no later than **October 09, 2024**. All discovery requests shall be served in time for the responses thereto to be served by this date. De bene esse depositions must be completed by discovery deadline. No motions relating to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Civil Rule 7.02.

      **(The parties may, with the consent of all counsel, conduct discovery up to the time of trial, provided the deadlines in this Order are not affected.)**

9.    A Rule 56 Conference shall be held no later than **November 15, 2024**.[4]

10.   All other motions, except those to complete discovery, those nonwaivable motions made pursuant to Fed. R. Civ. P. 12, and those relating to the admissibility of evidence at trial, shall be filed no later than **December 13, 2024**.[5]

---

[4] Counsel for the moving party shall initiate the scheduling of the Rule 56 Conference and shall provide a complete, proposed statement of undisputed material facts to the non-moving party at least 5 days before the conference as outlined in the Summary Judgment Motion Procedures for Judge Austin. *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

[5] Motions for summary judgment shall comply with the requirements outlined in the Summary Judgment Motion Procedures for Judge Austin. *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

11.    Mediation, pursuant to Local Civil Rules 16.04–16.12, shall be completed in this case no later than **November 08, 2024**.[6]  *See* Mediation Requirements for Judge Austin, "Austin Mediation Requirements" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.  **At least thirty (30) days prior to this mediation deadline**, counsel for each party shall file and serve a statement certifying that counsel has: (1) provided the party with a copy of the mediation requirements; (2) discussed the availability of mediation with the party; and (3) discussed the timing of mediation with opposing counsel.  The parties are directed to complete the attached Mediation Initiation Form and return it to the Court no later than thirty (30) days prior to the mediation deadline.

12.    This case is subject to being called for jury selection and/or trial the later of 60 days after dispositive motions have been resolved or on or after **February 11, 2025**.  Once a specific jury selection and trial date are scheduled, a NOTICE will be issued at that time.  The Notice will set forth deadlines for the Fed. R. Civ. P. 26(a)(3) pretrial disclosures and objections, motions in limine, pretrial briefs, and marking of exhibits.

   **IT IS SO ORDERED.**

                               s/Jacquelyn D Austin
                               UNITED STATES DISTRICT JUDGE


Date: April 19, 2024
Florence, South Carolina


   Pursuant to Local Civil Rule 83.I.06, this Order is being sent to local counsel only.

---

   [6] Attorneys primarily responsible for handling the trial, parties, and/or insurer representatives with full settlement authority are ordered to be present in person and will only be excused for good cause shown.  "Full settlement authority" for the defendant means an individual who can decide to offer the plaintiff a sum up to the existing demand of the plaintiff or the policy limits of any applicable insurance policy, whichever is less.  "Full settlement authority" for the plaintiff means the plaintiff himself or herself or a representative of the plaintiff who can make a binding decision on behalf of the plaintiff or plaintiffs.  At the mediation, primary trial counsel, along with parties and/or their insurer representatives, should be prepared to negotiate on this case in a mutual, good faith effort to reach a fair and reasonable settlement.

**JA315**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **The Cincinnati Insurance Company**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| **Wayne Hunt; Levi Owens as Personal** | ) | |
| **Representative for the Estate of** | ) | **CONSENT MOTION TO AMEND** |
| **Christopher McLean; Maisha Jacobs;** | ) | **SCHEDULING ORDER** |
| **and Wilmington Shipping Company**, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean, pursuant to Fed. R. Civ. P. 6 and LCR 6.01, moves to extend the deadlines of the current scheduling order to allow adjudication of post-judgment motions in the underlying action. Defendant Owens would show the following[1] in support of his motion:

1. On April 19, 2024, this Court entered a Consent Amended Scheduling Order in this matter. (ECF Entry 57).

2. As noted in the parties' discovery plan (ECF Entry 55 p. 7), the deadlines in this order, and particularly the deadline to amend pleadings, were calculated to allow the Marlboro County Court of Common Pleas time to hear and decide a motion to set aside the judgment in the underlying action and a competing motion for supplemental proceedings to obtain a judicial assignment of Defendant Wayne Hunt's bad faith cause of action against Plaintiff The Cincinnati Insurance Company.

3. The Marlboro County Court of Common Pleas heard the motion to set aside the judgment on May 28, 2024. The presiding judge took the matter under advisement and requested

---

[1] Pursuant to LCR 7.04, a supporting memorandum is not necessary.

**JA316**

further briefing (due by June 17, 2024) regarding questions of jurisdiction. This additional briefing will delay the resolution of all post-judgment matters in the underlying action for an undetermined period of time.

4. Additionally, the wife of Jason Luck (one of Defendant Owens' counsel) gave birth to a daughter on May 13, 2024, eight weeks premature via an emergency c-section. While the mother and child's prognoses are good and they gain strength daily, the child nonetheless remains at the East Cooper Hospital NICU for the foreseeable future.

5. The deadlines of the current scheduling order are: Motions to Amend Pleadings due by 6/7/2024, Plaintiffs ID of Expert Witness due by 7/10/2024, Defendants ID of Expert Witnesses Due by 8/9/2024, Records Custodian Affidavit due by 8/9/2024, Discovery due by 10/9/2024, Motions due by 12/13/2024, Bench Trial Deadline 2/11/2025, Mediation Due by 11/8/2024, Rule 56 Conference Deadline 11/15/2024.

6. These deadlines have only been extended once, as a result of the parties' Rule 26(f) conference.

7. The parties request 90 additional days.

8. The proposed new deadlines would be: Motions to Amend Pleadings due by September 5,2024, Plaintiffs ID of Expert Witness due by October 8, 2024, Defendants ID of Expert Witnesses Due by November 7, 2024, Records Custodian Affidavit due by November 7, 2024, Discovery due by January 7, 2025, Motions due by March 13, 2025, Bench Trial Deadline May 12, 2025, Mediation Due by February 6, 2025, Rule 56 Conference Deadline February 13, 2025.

9. A proposed amended scheduling order is attached to this motion as an exhibit and will also be emailed to chambers.

10. Pursuant to LCR 7.02, undersigned counsel has consulted with counsel for the Plaintiff, who consents to this motion.

Dated: 06/05/2024

By: s/Ashley B. Nance

John E. Parker, Jr. (#13257)
Ashley B. Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803-903-1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

WE CONSENT:

By: s/C. Daniel Atkinson

C. Daniel Atkinson (Fed Id. No. 09626)
datkinson@wajlawfirm.com
Brian M. Peters, Jr. (Fed Id. No. 14021)
bpeters@wajlawfirm.com
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113

**Counsel for Plaintiff**

4

**JA319**

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **The Cincinnati Insurance Company**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| **Wayne Hunt; Levi Owens as Personal Representative for the Estate of Christopher McLean; Maisha Jacobs; and Wilmington Shipping Company**, | ) ) ) ) | **CONSENT AMENDED SCHEDULING ORDER** |
| | ) | |
| Defendants. | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, the following schedule is established for this case.

1.    Motions to join other parties and amend the pleadings shall be filed no later than **September 5, 2024**. ALL motions to amend pleadings must be accompanied by a proposed amended pleading.

2.    Plaintiff(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Plaintiff(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **October 8, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **October 8, 2024**.

3.    Defendant(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Defendant(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **November 7, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **November 7, 2024**.

4.    Counsel shall file and serve affidavits of records custodian witnesses proposed to be presented by affidavit at trial no later than **November 7, 2024**. Objections to such affidavits must be made within fourteen (14) days after the service of the disclosure. *See* Fed. R. Evid. 803(6), 902(11), or 902(12) and Local Civil Rule 16.02(D)(3).

5.    Discovery shall be completed no later than **January 7, 2025**. All discovery requests shall be served in time for the responses thereto to be served by this date. De bene esse depositions

must be completed by discovery deadline. No motions relating to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Civil Rule 7.02.

**(The parties may, with the consent of all counsel, conduct discovery up to the time of trial, provided the deadlines in this Order are not affected.)**

6.     A Rule 56 Conference shall be held no later than **February 13, 2025**.[1]

7.     All other motions, except those to complete discovery, those nonwaivable motions made pursuant to Fed. R. Civ. P. 12, and those relating to the admissibility of evidence at trial, shall be filed no later than **March 13, 2025**.[2]

8.     Mediation, pursuant to Local Civil Rules 16.04–16.12, shall be completed in this case no later than **February 6, 2025**.[3]  *See* Mediation Requirements for Judge Austin, "Austin Mediation Requirements" under Judge Austin: Form Orders and Instructions on the District of South Carolina website. **At least thirty (30) days prior to this mediation deadline**, counsel for each party shall file and serve a statement certifying that counsel has: (1) provided the party with a copy of the mediation requirements; (2) discussed the availability of mediation with the party; and (3) discussed the timing of mediation with opposing counsel. The parties are directed to complete the attached Mediation Initiation Form and return it to the Court no later than thirty (30) days prior to the mediation deadline.

9.     This case is subject to being called for jury selection and/or trial the later of 60 days after

---

[1] Counsel for the moving party shall initiate the scheduling of the Rule 56 Conference and shall provide a complete, proposed statement of undisputed material facts to the non-moving party at least 5 days before the conference as outlined in the Summary Judgment Motion Procedures for Judge Austin. *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

[2] Motions for summary judgment shall comply with the requirements outlined in the Summary Judgment Motion Procedures for Judge Austin. *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

[3] Attorneys primarily responsible for handling the trial, parties, and/or insurer representatives with full settlement authority are ordered to be present in person and will only be excused for good cause shown. "Full settlement authority" for the defendant means an individual who can decide to offer the plaintiff a sum up to the existing demand of the plaintiff or the policy limits of any applicable insurance policy, whichever is less. "Full settlement authority" for the plaintiff means the plaintiff himself or herself or a representative of the plaintiff who can make a binding decision on behalf of the plaintiff or plaintiffs. At the mediation, primary trial counsel, along with parties and/or their insurer representatives, should be prepared to negotiate on this case in a mutual, good faith effort to reach a fair and reasonable settlement.

dispositive motions have been resolved or on or after **May 12, 2025**.  Once a specific jury selection and trial date are scheduled, a NOTICE will be issued at that time.  The Notice will set forth deadlines for the Fed. R. Civ. P. 26(a)(3) pretrial disclosures and objections, motions in limine, pretrial briefs, and marking of exhibits.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

Date:_____
Florence, South Carolina

Pursuant to Local Civil Rule 83.I.06, this Order is being sent to local counsel only.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **The Cincinnati Insurance Company**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| **Wayne Hunt; Levi Owens as Personal** | ) | |
| **Representative for the Estate of** | ) | **SECOND CONSENT** |
| **Christopher McLean; Maisha Jacobs;** | ) | **AMENDED SCHEDULING** |
| **and Wilmington Shipping Company**, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, the

following schedule is established for this case.

1.  Motions to join other parties and amend the pleadings shall be filed no later than **September 5, 2024**. ALL motions to amend pleadings must be accompanied by a proposed amended pleading.

2.  Plaintiff(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Plaintiff(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **October 8, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **October 8, 2024**.

3.  Defendant(s) shall file and serve a document identifying by full name, address, and telephone number each person whom Defendant(s) expects to call as an expert at trial, and certifying that a written report prepared and signed by any expert meeting the criteria under Fed. R. Civ. P. 26(a)(2)(B), including all information required by Fed. R. Civ. P. 26(a)(2)(B), has been disclosed to other parties by **November 7, 2024**. For all other expert witnesses, counsel should make the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) by **November 7, 2024**.

4.  Counsel shall file and serve affidavits of records custodian witnesses proposed to be presented by affidavit at trial no later than **November 7, 2024**. Objections to such affidavits must be made within fourteen (14) days after the service of the disclosure. *See* Fed. R. Evid. 803(6), 902(11), or 902(12) and Local Civil Rule 16.02(D)(3).

5.  Discovery shall be completed no later than **January 7, 2025**. All discovery requests shall be served in time for the responses thereto to be served by this date. De bene esse depositions

must be completed by discovery deadline.  No motions relating to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Civil Rule 7.02.

**(The parties may, with the consent of all counsel, conduct discovery up to the time of trial, provided the deadlines in this Order are not affected.)**

6.    A Rule 56 Conference shall be held no later than **February 13, 2025**.[1]

7.    All other motions, except those to complete discovery, those nonwaivable motions made pursuant to Fed. R. Civ. P. 12, and those relating to the admissibility of evidence at trial, shall be filed no later than **March 13, 2025**.[2]

8.    Mediation, pursuant to Local Civil Rules 16.04–16.12, shall be completed in this case no later than **February 6, 2025**.[3]    *See* Mediation Requirements for Judge Austin, "Austin Mediation Requirements" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.  **At least thirty (30) days prior to this mediation deadline**, counsel for each party shall file and serve a statement certifying that counsel has: (1) provided the party with a copy of the mediation requirements; (2) discussed the availability of mediation with the party; and (3) discussed the timing of mediation with opposing counsel.  The parties are directed to complete the attached Mediation Initiation Form and return it to the Court no later than thirty (30) days prior to the mediation deadline.

9.    This case is subject to being called for jury selection and/or trial the later of 60 days after

---

[1] Counsel for the moving party shall initiate the scheduling of the Rule 56 Conference and shall provide a complete, proposed statement of undisputed material facts to the non-moving party at least 5 days before the conference as outlined in the Summary Judgment Motion Procedures for Judge Austin.  *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

[2] Motions for summary judgment shall comply with the requirements outlined in the Summary Judgment Motion Procedures for Judge Austin.  *See* "Austin Rule 56" under Judge Austin: Form Orders and Instructions on the District of South Carolina website.

[3] Attorneys primarily responsible for handling the trial, parties, and/or insurer representatives with full settlement authority are ordered to be present in person and will only be excused for good cause shown.  "Full settlement authority" for the defendant means an individual who can decide to offer the plaintiff a sum up to the existing demand of the plaintiff or the policy limits of any applicable insurance policy, whichever is less.  "Full settlement authority" for the plaintiff means the plaintiff himself or herself or a representative of the plaintiff who can make a binding decision on behalf of the plaintiff or plaintiffs.  At the mediation, primary trial counsel, along with parties and/or their insurer representatives, should be prepared to negotiate on this case in a mutual, good faith effort to reach a fair and reasonable settlement.

dispositive motions have been resolved or on or after **May 12, 2025**.  Once a specific jury selection and trial date are scheduled, a NOTICE will be issued at that time.  The Notice will set forth deadlines for the Fed. R. Civ. P. 26(a)(3) pretrial disclosures and objections, motions in limine, pretrial briefs, and marking of exhibits.

**IT IS SO ORDERED.**

s/Jacquelyn D. Austin
UNITED STATES DISTRICT JUDGE

Date: June 7, 2024
Florence, South Carolina

Pursuant to Local Civil Rule 83.I.06, this Order is being sent to local counsel only.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE CO.,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | C/A No.: 4:24-cv-00951-JDA |
| ) | |
| WAYNE HUNT, LEVI OWENS as ) | |
| Personal Representative for the ESTATE ) | |
| OF CHRISTOPHER MCLEAN, and ) | |
| WILMINGTON SHIPPING CO.,     ) | |
| ) | |
| Defendants.     ) | |

---

## DEFENDANT LEVI OWENS' MOTION TO EXTEND DEADLINE TO AMEND, OR, IN THE ALTERNATIVE, TO STAY THE DEADLINE TO AMEND

Defendant Levi Owens, pursuant to Fed. R. Civ. P. 6(b)(1)(B) & 16(b)(4) and LCR 6.01, moves[1] to extend the deadline to amend pleadings in this matter sixty (60) days, from September 5, 2024, to November 4, 2024. In the alternative, Defendant Owens moves to stay the deadline to amend until the pending post-trial motions before the Marlboro County Special Referee are disposed. Defendant Owens would show the following in support of his motion:

### Background

On December 10, 2013, Christopher McLean was the passenger in a vehicle involved in a severe collision with a heavy truck operated by Defendant Wayne Hunt while driving on U.S. Highway 15 near McColl, Marlboro County, South Carolina. (ECF No. 1). McLean was killed as a result of the collision. (*Id.*). McLean's Estate filed a complaint on December 8, 2016 in the

---

[1] A supporting memorandum is not necessary. *See* LCR 7.04.

Marlboro County Court of Common Pleas, alleging wrongful death and survival causes of action against Hunt for failing to keep a proper lookout, failing to keep his vehicle within his lane of travel, traveling too fast for the conditions, and failing to yield the right of way, amongst other particular negligent acts and omissions of Hunt. (ECF No. 1-7). The subject truck was insured by policies issued to Hunt's employer, Defendant Wilmington Shipping Company, by Plaintiff The Cincinnati Insurance Co. (ECF No. 1).

At the time of the subject collision, Hunt possessed a North Carolina driver's license documenting that his address was 16671 NC Highway 210, Rocky Point, North Carolina. (ECF No. 39-1). The collision report does not document that Defendant Wilmington Shipping Company ("WSC") was Hunt's employer. Additionally, the heavy truck operated by Hunt in the collision was leased from Penske Truck Leasing Co., Ltd. and was not owned by WSC, as demonstrated by the collision report, but was instead a hired or borrowed vehicle. Therefore, Owens subsequently named Hunt as the sole defendant in the Estate's tort action and served him within South Carolina through the Director of the South Carolina Department of Motor Vehicles as the statutorily designated agent for domestic service of process on nonresident motor vehicle drivers, pursuant to S.C. Code Ann. sections 15-9-350 *et seq.*[2] (ECF No. 1-8).

Hunt did not appear or file an Answer within 35 days as required by Rules 6(e) and 12(a), SCRCP, and the circuit court entered default against Hunt on November 16, 2017 and referred the actions to a special referee, Douglas Jennings, Jr., to take testimony and determine damages on October 22, 2018. (Dkt. No. 1). The circuit court found that the Summons and Complaint

---

[2] Defendant Hunt failed to accept and receipt for certified mail containing notice of service sent by the SCDMV, and the notice was subsequently sent by open mail as evidenced by the affidavit of mailing and envelope filed with the circuit court. (ECF No. 39-3).

2

were properly served upon Hunt. (Dkt. No. 1-10). On November 18, 2021, the special referee filed an Order awarding a default judgment to Owens. (*Id.*). Owens has demanded coverage under the two policies issued by Plaintiff to WSC, leading Plaintiff to file this declaratory judgment action in the United States District Court for the Eastern District of North Carolina on November 8, 2022, seeking declarations that it has no duty to defend or indemnify Hunt with respect to the default judgments.[3] Previously, on October 26, 2022, Hunt filed a motion in the state court tort action asking for relief from the default judgment and to have it vacated. (ECF No. 39-2). Hunt's argument for relief focuses on whether service on the Director of the SCDMV was effective under S.C. Code Ann. § 15-9-380.

On June 2, 2023, the Marlboro County clerk of court signed and filed an execution of the default judgment against Hunt as the judgment debtor. (Ex. A, Execution). The execution was returned nulla bona by the Marlboro County Sheriff on February 27, 2024, four days after this declaratory judgment action was transferred to this District. (Ex. A, Nulla Bona). On March 14, 2024, the Court entered a Scheduling Order in this action setting a deadline of May 9, 2024, for the parties to amend the pleadings. (ECF No. 47). On March 22, 2024, Owns filed a Motion for Supplemental Proceedings in the state court actions with the intent of seeking a judicial assignment of any bad faith or breach of contract claims that Hunt may have against Plaintiff.

On April 18, 2024, the parties filed a Rule 26(f) Report informing the Court that a modification of the Court's Scheduling Order deadlines was required. (ECF No. 54). In the parties' April 18, 2024 Rule 26(f) Discovery Plan, Owens contended that Hunt and/or WSC had

---

[3] This action was subsequently transferred to this Court on Owens' Motion to Dismiss on February 23, 2024. (ECF No. 36). Prior to the transfer of venue, the parties had not engaged in any discovery, and the entry of a scheduling order and discovery were stayed by Order of the court while Owens' Motion to Dismiss was pending. (ECF No. 31).

received actual notice of the underlying tort action and provided such notice to Plaintiff, and that Owens would seek to amend his Answer to assert counterclaims against Plaintiff for a declaration that Plaintiff was required to satisfy its suretyship obligations under the policies' MCS-90 endorsement, as well as causes of action for bad faith and breach of contract once he could obtain a judicial assignment of Hunt's rights. (ECF No. 55, pp. 6-7). The Discovery Plan sets forth that Owens had commenced supplemental proceedings in the underlying action to collect the default judgment, that the hearing was anticipated to occur in May of 2024, and that he reserved the right to request further amendment of the Scheduling Order's deadlines depending on the resolution of the underlying tort action. (ECF No. 55, p. 7). On April 19, 2024, the parties' Consent Amended Scheduling Order was filed, setting a deadline of June 7, 2024 for the parties to amend the pleadings.

In the state court action, Owens' Motion for Supplemental Proceedings was set for hearing on May 28, 2024, by the circuit court. At the hearing, the circuit court held any decision on the merits of the Motion in abeyance and requested supplemental briefing on the issue of whether it had subject matter jurisdiction. On June 6, 2024, the parties filed a Consent Motion to Amend the Scheduling Order, explaining that the circuit court had heard the motions on May 28, 2024, and that it had requested further briefing on the issue of whether it had jurisdiction to hear and decide the motions, or whether jurisdiction lied with the special referee. (ECF No. 58). The Motion requested a 90-day extension of the deadlines, making any motions to amend the pleadings due by September 5, 2024. (ECF No. 58). A Second Consent Amended Scheduling Order was filed by the Court on June 7, 2024, incorporating the proposed 90-day extensions. (ECF No. 60).

4

JA329

Owens has since diligently sought to have his Motion for Supplemental Proceedings heard in the state court action such that he could obtain an assignment of Hunt's rights and thus bring his counterclaims in the declaratory judgment action before the Court. On June 14, 2024, Owens filed a memorandum in state court asserting his position as to whether the circuit court or special referee had jurisdiction to hear his Motion. (Ex. B, Subject Matter Jurisdiction Brief). On July 24, 2024, the circuit court signed and filed an order providing that it did not have jurisdiction over the Motion, and that it would be heard by the special referee. (Ex. C, Circuit Court Order). Immediately thereafter on July 25, 2024, counsel for Owens informed the office of Doug Jennings, the special referee, that the circuit court had determined it did not have jurisdiction to hear the Motion. (Ex. D, Email Correspondence). The special referee did not have any availability to hear the Motion until late August/early September at the earliest, but counsel for Hunt and the special referee did not provide any specific dates, and the parties, including counsel for Hunt who was hired by Plaintiff, have yet to come to an agreement with the special referee as to a set date for the hearing. (*Id.*).

### Argument

Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 6(b)(1)(B) provide that a scheduling order deadline may be modified for good cause and with the Court's consent. Rule 16 gives courts "wide latitude in entering scheduling orders." *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996). Owens has diligently sought to obtain a judicial assignment of Hunt's rights since February 27, 2024, just four days after this action was transferred to this District. His Motion for Supplemental Proceedings was filed on March 22, 2024, and he informed the Court on April 18, 2024, that he was seeking an assignment and needed time to get a ruling from the state court. His Motion was set for hearing on May 28, 2024. It was not anticipated by Owens

5

that the circuit court would determine it did not have jurisdiction to hear the matter (although he believes this is the correct ruling), that the circuit court would require supplemental briefing on the issue, or that it would remand the Motion to the special referee for determination. The time it took for the circuit court to reach a decision was beyond Owens' control, and upon learning that the issue would have to be determined by the special referee, he immediately sought to set a hearing date for the Motion, although he has not been able to ascertain definite availability from the special referee or counsel for Hunt. Good cause exists to grant an extension, or in the alternative, to stay the deadline to amend the pleadings until the special referee can take up the Motion and issue a decision.

The current deadline for Owens to amend his Answer to assert counterclaims against Plaintiff is September 5, 2024. The deadline has been extended twice, both times by agreement of the parties, once within the 26(f) Report and subsequently by Consent Motion. Owens requests an additional 60-day extension to the Second Amended Scheduling Order deadline to amend the pleadings in order to ensure that he can obtain a judicial assignment prior to amending his Answer, making the new deadline November 4, 2024, or in the alternative, for a stay of the deadline in order to avoid unnecessary further modifications of the Scheduling Order. Extending the deadline does not of necessity require the alteration of any other deadlines within the Second Amended Scheduling Order. Although it appears nearly certain that his Motion will be heard by the special referee by mid-October, the date of the hearing will be subject to certain events beyond the control of counsel for Owens, including the schedules and availability of the special referee and counsel for Hunt. Plaintiff has consented to a 30-day extension of the deadline but opposes a stay or any extension beyond 30-days. (Ex. E, email correspondence).

6

**Conclusion**

For the foregoing reasons, Defendant Levi Owens as Personal Representative for the Estate of Christopher McLean respectfully requests a 60-day extension to the deadline for the parties to amend the pleadings, or in the alternative, for a stay of this deadline. Owens additionally requests that this Court hold the deadline to amend pleadings in abeyance while this motion is pending.

Dated: 09/04/2024

By: /s/ Jason Scott Luck

John E. Parker, Jr. (#13257)
Ashley Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.903.1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

7

Exhibit A

Execution / Nulla Bona Return

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                                        )
COUNTY OF MARLBORO        )    FOURTH JUDICIAL CIRCUIT
                                        )
**Levi Owens as Personal Representative of** )
**the Estate of Christopher McLean,**       )    № 2016-CP-34-00265
                                        )
          Plaintiff,                    )          **EXECUTION**
                                        )
          v.                            )
                                        )
**Wayne Hunt,**                         )
                                        )
          Defendant.                    )

Judgment Filed:      November 16, 2021
C/A Number:          2016-CP-34-00265
Judgment Amount:     $5,100,000.00

WHEREAS, judgment was rendered in the above-captioned action between the Plaintiff and

the Defendant in favor of the said Plaintiff for the above amount, as appears by the Judgment Roll,

filed in the Office of the Clerk of Court for the above named County.

THEREFORE, we request that you satisfy said judgment out of the personal property of the

said judgment debtor within your County, or if sufficient personal property cannot be found, then out

of the real property in your County belonging to such judgment debtor on the day when said judgment

was so docketed in your County or any time thereafter in whose hands soever the same may be, and

duly return this Execution according to law to the Clerk of Court of this County.

At the request of:

/s/ Jason Scott Luck              Parker Law Group, L.L.P.
Jason Scott Luck (#73676)
P.O. Box 47                       /s/ John E. Parker Jr.
Bennettsville, SC 29512           John E. Parker, Jr.
843.479.6863                      P.O. Box 487
jason@luck.law                    Hampton, SC 29924
**Attorney for Plaintiff**       803-903-1781
                                  jayparker@parkerlawgroupsc.com
                                  **Attorney for Plaintiff**

                                  NULLA BONA
                                  LARRY McNEIL

                                  SHERIFF, Marlboro County
                                  Bennettsville, S.C.
                                  Date 2-27-24

**JA334**



Common Pleas

**Case Caption:**    Levi  Owens Est VS Wayne  Hunt

**Case Number:**    2016CP3400265

**Type:**    Execution/Issued

So Ordered

s/Anita M. Williams, Marlboro County Clerk Of Court

Electronically signed on 2023-06-02 14:30:44    page 2 of 2

ELECTRONICALLY FILED - 2023 Jun 02 2:27 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

ELECTRONICALLY FILED - 2024 Feb 27 6:45 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

Exhibit B

Subject Matter Jurisdiction Brief

ELECTRONICALLY FILED - 2024 Jun 14 11:58 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | CIVIL ACTION NO.: 2016-CP-34-00265 |
| | ) | |
| LEVI OWENS AS PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF CHRISTOPHER MCLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S BRIEFING** |
| | ) | **REGARDING COURT'S SUBJECT** |
| v. | ) | **MATTER JURISDICTION TO HEAR** |
| | ) | **MOTION TO VACATE DEFAULT** |
| WAYNE HUNT, | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |

Plaintiff Levi Owens as Personal Representative of the Estate of Christopher McLean submits this memorandum as required by the Court at the May 28, 2024 hearing on Defendant Wayne Hunt's Motion to Vacate Default Judgment, Motion to Stay Execution of Judgment, and Plaintiff's Motion for Supplemental Proceedings. Pursuant to Rule 53, SCRCP, a special referee has the power and authority that a circuit judge sitting without a jury would have in all cases referred to the special referee as granted by the order of reference. The order of reference does not terminate, nor does the power to dispose of the case return to the circuit court, until the special referee has exercised that authority. *Smith v. Ocean Lakes Family Campground*, 315 S.C. 379, 381, 433 S.E.2d 909, 901 (Ct. App. 1993).

The Order of Reference provides that the Special Referee was authorized to "take testimony and determine the amount of damages" and that any motions filed after the Order of Reference were to be heard by the Special Referee. The three

Motions pending before the Court were just that. The Order did not provide that the Special Referee's authority ended once a default judgment was entered. The Special Referee has not exercised the full extent of the power granted by the Order of Reference, and he still retains subject matter jurisdiction to hear these Motions, as he has not extinguished the authority granted by the Order. To the extent that the Court has concerns about its subject matter jurisdiction over this default case, Plaintiff respectfully requests that the Court abstain from hearing these motions, which would be more properly adjudicated by the Special Referee.

PARKER LAW GROUP, LLP

BY: _____/s/ John E. Parker, Jr._____
          John E. Parker, Jr. SC Bar No. 104225
          Ashley B. Nance SC Bar No. 78463
          101 Mulberry Street East
          P.O. Box 457
          Hampton, SC 29924
          (803) 903-1781
          jayparker@parkerlawgroupsc.com
          anance@parkerlawgroupsc.com

AND

          Jason Scott Luck SC Bar No. 73676
          P.O. Box 47
          Bennettsville, SC 29512
          (843) 479-6863
          jason@luck.law

ATTORNEYS FOR PLAINTIFF

June 14, 2024
Hampton, South Carolina

2

**JA338**

Exhibit C

Circuit Court Order on Jurisdiction

**FORM 4**

STATE OF SOUTH CAROLINA | JUDGMENT IN A CIVIL CASE
COUNTY OF  Marlboro
IN THE COURT OF COMMON PLEAS

CASE NO.  2016CP3400265

Levi Owens, Est
PLAINTIFF(S)

Wayne Hunt
DEFENDANT(S)

### DISPOSITION TYPE (CHECK ONE)

☐ **JURY VERDICT**. This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

☑ **DECISION BY THE COURT**. This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

☐ **ACTION DISMISSED** (*CHECK REASON*): ☐ Rule 12(b), SCRCP; ☐ Rule 41(a), SCRCP (Vol. Nonsuit); ☐ Rule 43(k), SCRCP (Settled); ☐ Other

☐ **ACTION STRICKEN** (*CHECK REASON*): ☐ Rule 40(j), SCRCP; ☐ Bankruptcy; ☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award; ☐ Other

☐ **STAYED DUE TO BANKRUPTCY**

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT** (*CHECK APPLICABLE BOX*): ☐ Affirmed; ☐ Reversed; ☐ Remanded; ☐ Other

NOTE: ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☐ See attached order (formal order to follow) ☑ Statement of Judgment by the Court:

After review of the previous Order of Reference, this Court does not have jurisdiction over this matter. The Order of Reference states that "Any motions filed after this order shall be heard by the referee."

### ORDER INFORMATION

This order ☐ ends ☑ does not end the case.          ☐ See Page 2 for additional information.

### For Clerk of Court Office Use Only

This judgment was electronically entered by the Clerk of Court as reflected on the Electronic Time Stamp, and a copy mailed first class to any party not proceeding in the Electronic Filing System on 07/24/2024 .

### NAMES OF TRADITIONAL FILERS SERVED BY MAIL

SCRCP Form 4CE (08/31/2017)                                    Page 1 of 2

ELECTRONICALLY FILED - 2024 Jul 24 1:34 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**Court Reporter:**

**E-Filing Note:  The date of Entry of Judgment is the same date as reflected on the Electronic File Stamp and the clerk's entering of the date of judgment above is not required in those counties. The clerk will mail a copy of the judgment to parties who are not E-Filers or who are appearing pro se. See Rule 77(d), SCRCP.**

ELECTRONICALLY FILED - 2024 Jul 24 1:34 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**JA341**



Marlboro Common Pleas

**Case Caption:**     Levi Owens Est VS Wayne Hunt

**Case Number:**     2016CP3400265

**Type:**     Order/Electronic Form 4

So Ordered

s/Paul M. Burch, Judge #2048

Electronically signed on 2024-07-24 11:52:48     page 3 of 3

ELECTRONICALLY FILED - 2024 Jul 24 1:34 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

# Exhibit D

## Scheduling Correspondence

**Wednesday, September 4, 2024 at 14:37:40 Eastern Daylight Time**

---

**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265
**Date:** Tuesday, September 3, 2024 at 4:09:36 PM Eastern Daylight Time
**From:** Lesley Wiggins
**To:** Jason Luck, Carol Dudley, Ashley Nance, Doug Jennings
**CC:** jgrantland@murphygrantland.com, Jay Parker, 'Renee Dillon'
**Attachments:** ~WRD0794.jpg, image001.jpg

Carol and Mr. Grantland,

We have availability the following for the availability provided by Mr. Luck below:

September 19, 20, 24, 25, 27
October 1, 3, 4, 8, 9, 10, 11



**Lesley Wiggins**
**Office of Ashley B. Nance**

📞    803.903.1873
🖶    803.903.1896
🌐    parkerlawgroupsc.com
✉    lwiggins@parkerlawgroupsc.com
📍    601 W. Evans St., Florence, SC, 29501
❯    101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

---

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

**From:** Jason Luck <jason@luck.law>
**Sent:** Thursday, August 29, 2024 10:46 AM
**To:** Carol Dudley <carol@jenningslawoffice.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jay Parker <jayparker@parkerlawgroupsc.com>
**Subject:** Re: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

Carol,

Generally, the last two weeks of September and the first two weeks of October are best for me. I could also make September 5, 6, 9 (telephone), and 12 work.

Jason Scott Luck
Attorney at Law
P.O. Box 47 (107 S. Parsonage St.)
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)

---

**From:** Carol Dudley <carol@jenningslawoffice.com>
**Date:** Wednesday, August 28, 2024 at 1:31 PM
**To:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>, Ashley Nance <anance@parkerlawgroupsc.com>, Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com <jgrantland@murphygrantland.com>, Jason Luck <jason@luck.law>, Jay Parker <jayparker@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Good Afternoon Lesley:

If you guys can give me some dates in September/October, I'll let you know what Doug has available.

Thanks.

Carol


Carol B. Dudley, Legal Assistant
Douglas Jennings Law Firm, LLC
P. O. Box 995
151 Broad Street
Bennettsville, SC 29512
Telephone: (843) 479-2865
Fax:  (843) 479-2866

---

**From:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Sent:** Monday, August 26, 2024 10:56 AM
**To:** Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Doug

Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker
<jayparker@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Good morning Carol,

I apologize for the delay in responding on this case. Whenever you have a free moment can you let us know a time frame to look at dates for Mr. Jennings to hear the pending motions in this matter?

**Lesley Wiggins**
Office of Ashley B. Nance

803.903.1873
803.903.1896
parkerlawgroupsc.com
lwiggins@parkerlawgroupsc.com
601 W. Evans St., Florence, SC, 29501
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Carol Dudley <carol@jenningslawoffice.com>
**Sent:** Thursday, July 25, 2024 2:51 PM
**To:** Ashley Nance <anance@parkerlawgroupsc.com>; Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker
<jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins
<lwiggins@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

Good Afternoon:

Doug has asked me to explore dates with all counsel to hear the pending motions. Please provide me with dates in late August/early September.

3 of 7

**JA346**

Thank you.

Carol

Carol B. Dudley, Legal Assistant
Douglas Jennings Law Firm, LLC
P. O. Box 995
151 Broad Street
Bennettsville, SC 29512
Telephone: (843) 479-2865
Fax:  (843) 479-2866

---

**From:** Ashley Nance <anance@parkerlawgroupsc.com>
**Sent:** Thursday, July 25, 2024 2:42 PM
**To:** Doug Jennings <doug@jenningslawoffice.com>; Carol Dudley <carol@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker <jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> Some people who received this message don't often get email from anance@parkerlawgroupsc.com. Learn why this is important

Doug,

I hope all is well with you.  I'm circling back with you on this case.  Judge Burch issued the attached Form 4 yesterday stating the following:

"After review of the previous Order of Reference, this Court does not have jurisdiction over this matter. The Order of Reference states that "Any motions filed after this order shall be heard by the referee."

We have some pending motions in this case involving the default judgment that we'd like to schedule with you so that they can be heard.  The pending Motions include the following:

By Plaintiff:

1.  Motion for Supplemental Proceedings

By Defendant:

1.  Motion to Stay Execution of Judgment
2.  Motion to be Relieved from Default Judgment and/or in the Alternative to Vacate Judgment

I've copied all parties on this email and we can forward you all motions/supporting Memos for your review as well. If you can let us know some available dates for you, we can coordinate with our calendars and and schedule it accordingly. If you have any questions, or would like to conduct a conference call in advance for planning purposes, please let me know. Thanks again.

**Ashley B. Nance**
Attorney

803.903.1874
843.364.1743
parkerlawgroupsc.com
anance@parkerlawgroupsc.com
601 W. Evans St., Florence, SC, 29501
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Ashley Nance
**Sent:** Friday, June 14, 2024 1:56 PM
**To:** doug@jenningslawoffice.com; carol@jenningslawoffice.com
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker <jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Subject:** Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Doug,

I hope you are doing well. I wanted to provide you with an update on this matter. I recently became involved in this case and represent Plaintiff along with Jay Parker and Jason Luck.

We had a hearing on May 28th concerning the Motions that involve the Default Judgment in this case. During the Hearing, Judge Burch asked that both parties provide the Court with a supplemental brief as to the Court's jurisdiction to hear these matters in light of the previous Order of Reference made to you as the Special Referee. I've attached both briefs for reference.

Judge Burch has not issued a ruling yet but I just wanted to make sure you were aware in the event that this matter is sent back to you. Of course, we will be in touch if the Court does send this matter back for you to hear. If you have any questions, please don't hesitate to let us know. I hope you have a great weekend.

**Ashley B. Nance**
Attorney

803.903.1874
843.364.1743
parkerlawgroupsc.com
anance@parkerlawgroupsc.com
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Please note my new email address and other contact information contained in my signature. Thanks.

**From:** Doug Jennings <doug@jenningslawoffice.com>
**Sent:** Tuesday, March 19, 2024 5:52 PM
**To:** John M. Grantland (jgrantland@murphygrantland.com) <jgrantland@murphygrantland.com>; jason@luck.law
**Cc:** Jay Parker <jayparker@parkerlawgroupsc.com>; Carol Dudley <carol@jenningslawoffice.com>
**Subject:** Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

To All Counsel:
As you know, I was appointed as Special Referee to "take testimony and determine the amount of damages" in this case, which I did resulting in an Order filed on November 18, 2021.
After reviewing this matter, it is my position that the Order of Reference was limited to that purpose and that I no longer have jurisdiction to hear and decide upon the various pending motions which you have filed in this matter.  Accordingly, it is my intention to ask the Clerk's Office to put your pending motions on the CPNJ roster to be heard by a Circuit Judge.  However, as a courtesy to all counsel, I just wanted to let you know of my position and my intentions.

I wish you all the best in litigating the various matters which have arisen in this case, and you should expect to see the pending motions added to the Marlboro CPNJ roster in the very near future.

Kindly,
Doug Jennings

Douglas Jennings, Jr., Esq.

6 of 7

**JA349**

**DOUGLAS JENNINGS LAW FIRM, LLC**
**151 BROAD ST., P. O. BOX 995**
**BENNETTSVILLE, SC 29512-0995**
**(843)479-2865 (main ofc.)**
**(843)479-2866 (fax)**



Exhibit E

Consultation Emails

**Wednesday, September 4, 2024 at 14:39:05 Eastern Daylight Time**

---

**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures
**Date:** Wednesday, September 4, 2024 at 8:49:09 AM Eastern Daylight Time
**From:** Jay Parker
**To:** Dan Atkinson, Lesley Wiggins, Ashley Nance, Judy Saad, Jason Luck
**CC:** Claudia Cartier, Brian Peters

Ok thanks



**John "Jay" E. Parker, Jr.**
**Attorney**

📞 803.903.1814
📱 843.408.8458
🌐 parkerlawgroupsc.com
✉ jayparker@parkerlawgroupsc.com
📍 101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

---

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

**From:** Dan Atkinson <datkinson@wajlawfirm.com>
**Sent:** Wednesday, September 4, 2024 8:48 AM
**To:** Jay Parker <jayparker@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** Re: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

That's fine.

Get Outlook for iOS

---

**From:** Jay Parker <jayparker@parkerlawgroupsc.com>
**Sent:** Wednesday, September 4, 2024 8:47:07 AM
**To:** Dan Atkinson <datkinson@wajlawfirm.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>

1 of 9

**JA352**

**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

Dan

Appreciate the consent for 30 days but we have several dates for the hearing in circuit court w/ the special referee and some of them are in October, so I am concerned a 30-day extension will not be sufficient to cover all contingencies. We will go ahead and file our motion asking for a stay or a 60-day extension and I will put in the motion that you consent to a 30-day extension but no more if that suits you.

Thanks,



**John "Jay" E. Parker, Jr.**
**Attorney**

📞 803.903.1814
📱 843.408.8458
🌐 parkerlawgroupsc.com
✉ jayparker@parkerlawgroupsc.com
📍 101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Dan Atkinson <datkinson@wajlawfirm.com>
**Sent:** Wednesday, September 4, 2024 8:34 AM
**To:** Jay Parker <jayparker@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

Jay:

I do not have authority to stay the deadlines.

That said, due to my delay, I will consent to a 30-day extension of current deadlines, to allow you to take necessary action, due to the delay of my response.

2 of 9

**JA353**

Dan

---

**From:** Jay Parker <jayparker@parkerlawgroupsc.com>
**Sent:** Tuesday, September 3, 2024 4:29 PM
**To:** Dan Atkinson <datkinson@wajlawfirm.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

Dan:

Just following up, the deadline to amend is this Thursday. Let us know if your client can consent, I plan on filing a motion tomorrow either way..

Thanks,



**John "Jay" E. Parker, Jr.**
Attorney

📞 803.903.1814
📱 843.408.8458
🌐 parkerlawgroupsc.com
✉ jayparker@parkerlawgroupsc.com
📍 101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

---

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

**From:** Jay Parker
**Sent:** Monday, August 12, 2024 3:23 PM
**To:** Dan Atkinson <datkinson@wajlawfirm.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

thanks

**John "Jay" E. Parker, Jr.**
Attorney

📞 803.903.1814
📱 843.408.8458



🌐 parkerlawgroupsc.com

✉️ jayparker@parkerlawgroupsc.com

📍 101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

---

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

**From:** Dan Atkinson <datkinson@wajlawfirm.com>
**Sent:** Monday, August 12, 2024 8:55 AM
**To:** Jay Parker <jayparker@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

Jay:

Let me check with my client and I will advise.

Dan

---

**From:** Jay Parker <jayparker@parkerlawgroupsc.com>
**Sent:** Friday, August 9, 2024 10:08 AM
**To:** Dan Atkinson <datkinson@wajlawfirm.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

Dan

We have been having difficulties getting the hearing set on Wayne Hunt's motion to vacate the default judgment and our supplementary proceedings (for numerous reasons) and are trying to get mediation set up prior to the hearing (don't know if John Grantland has contacted you regarding this). Regardless, I would like to file a motion to stay the scheduling order deadlines during the

4 of 9

**JA355**

pendency of the unresolved motions in the tort action. I think this would be a more efficient approach than repeatedly asking the court to amend the scheduling order. I think staying these deadlines would save all of us a bunch of wasted effort depending on resolution of the motions in Marlborough county and/or if we are able to successfully resolve at mediation. Please let me know if you consent to us filing a motion to stay the deadlines.

Thanks,



**John "Jay" E. Parker, Jr.**
**Attorney**

📞 803.903.1814
📱 843.408.8458
🌐 parkerlawgroupsc.com
✉ jayparker@parkerlawgroupsc.com
📍 101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

  

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Dan Atkinson <datkinson@wajlawfirm.com>
**Sent:** Thursday, June 6, 2024 8:51 AM
**To:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Judy Saad <jsaad@wajlawfirm.com>; Jay Parker <jayparker@parkerlawgroupsc.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

This is fine.

**From:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Sent:** Wednesday, June 5, 2024 5:35 PM
**To:** Ashley Nance <anance@parkerlawgroupsc.com>; Dan Atkinson <datkinson@wajlawfirm.com>; Judy Saad <jsaad@wajlawfirm.com>; Jay Parker <jayparker@parkerlawgroupsc.com>; 'Jason Luck' <jason@luck.law>
**Cc:** Claudia Cartier <ccartier@parkerlawgroupsc.com>; Brian Peters <bpeters@wajlawfirm.com>
**Subject:** RE: The Cincinnati Insurance Company v. Hunt et al: Pl's Rule 26(a)(1) Disclosures

Mr. Atkinson,

5 of 9

**Tuesday, September 23, 2025 at 11:11:44 PM Eastern Daylight Time**

**Subject:** Activity in Case 4:24-cv-00951-JDA The Cincinnati Insurance Company v. Hunt et al Order on Motion for Extension of Time
**Date:** Thursday, September 5, 2024 at 09:53:41 Eastern Daylight Time
**From:** SCDEfilingstat@scd.uscourts.gov
**To:** scd_ecf_nef@scd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of South Carolina

### Notice of Electronic Filing

The following transaction was entered on 9/5/2024 at 9:52 AM EDT and filed on 9/5/2024
**Case Name:**       The Cincinnati Insurance Company v. Hunt et al
**Case Number:**     4:24-cv-00951-JDA
**Filer:**
**Document Number:** 62(No document attached)

**Docket Text:**
**TEXT ORDER granting [61] motion for extension or, in the alternative, for a stay of the deadline. The deadline to amend pleadings in this matter is now November 4, 2024. Signed by the Honorable Jacquelyn D Austin on 09/05/2024. (lgib, )**

**4:24-cv-00951-JDA Notice has been electronically mailed to:**

Charles Daniel Atkinson      datkinson@wajlawfirm.com, jsaad@wajlawfirm.com

Jason Scott Luck      jason@luck.law, office@luck.law

Ashley Bruce Nance      anance@parkerlawgroupsc.com, lwiggins@parkerlawgroupsc.com

John Elliott Parker, Jr      jayparker@parkerlawgroupsc.com, teamjay@parkerlawgroupsc.com

Brian Michael Peters, Jr      bpeters@wajlawfirm.com, jsaad@wajlawfirm.com

1 of 2

**4:24-cv-00951-JDA Notice will not be electronically mailed to:**

Gregory Richard Simons
Overholt Law Firm, PC
2505 S. College Rd.
Wilmington, NC 28412

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

THE CINCINNATI INSURANCE CO.,    )
    )
    Plaintiff,    )    C/A No.: 4:24-cv-00951-JDA
    )
    v.    )    **DEFENDANT LEVI OWENS AS**
    )    **PERSONAL REPRESENTATIVE FOR THE**
    )    **ESTATE OF CHRISTOPHER MCLEAN'S**
    )    **MOTION TO AMEND ANSWER and**
    )    **MOTION FOR EXTENSION OF DEADLINE**
WAYNE HUNT, LEVI OWENS as    )    **TO AMEND PLEADINGS**
Personal Representative for the ESTATE    )
OF CHRISTOPHER MCLEAN, MAISHA    )
JACOBS, and WILMINGTON SHIPPING    )
CO.,    )
    )
    Defendants.    )
_____    )

Defendant Levi Owens as Personal Representative for the Estate of Christopher McLean

("Defendant") hereby moves[1] the Court for an Order permitting him to amend his Answer to assert a

counterclaim asking for a declaration that the subject insurance policies' MCS-90 endorsement

requires Plaintiff The Cincinnati Insurance Company ("Plaintiff") to satisfy its suretyship obligations

if it successfully disclaims coverage on the ground that it was not provided with prompt notice of the

loss as required by its policies' cooperation provisions.[2] Plaintiff has been on notice that Defendant

intended to assert this theory of recovery since at least April 18, 2024. Since Plaintiff cannot

reasonably argue that it will be prejudiced by the amendment, there is no evidence that Defendant's

amendment would be in bad faith, and the amendment would not be clearly futile, the Court should

---

[1] As a full explanation of this motion is herein, a supporting memorandum is not attached. Local Civ. Rule 7.04.

[2] A copy of the proposed amendment is attached as Exhibit A.

grant Defendant's Motion to Amend Answer. Additionally, Defendant moves the Court to extend the deadline to amend the pleadings solely for the purpose of permitting Defendant to add a counterclaim for bad faith once the underlying state court proceedings result in the judicial assignment of the claim to Defendant.

To recap, Defendant is currently the plaintiff in a pending state court action against Defendant Wayne Hunt arising from the same events described in Plaintiff's Complaint. Plaintiff contends that it should not be required to provide coverage primarily because Defendant allegedly failed to properly serve Plaintiff's insured, Hunt, and because Hunt in turn allegedly failed to transmit the pleadings in the underlying suit to Plaintiff. However, even if these facts as alleged are true, under the MCS-90 scheme Plaintiff is arguably still obligated to provide sufficient compensation when the subject policies provide no coverage. Defendant has broadly asserted this as an affirmative defense in his Answer, and now seeks to make a counterclaim asking the Court for a declaration that Plaintiff will be responsible for its suretyship obligations under the MCS-90 endorsement even if it does not have a duty to indemnify Hunt. For the foregoing and following reasons, Defendant respectfully requests that the Court grant his Motion for leave to amend his Answer and grant his Motion to extend the time to amend his Answer to assert a counterclaim for bad faith.

**FACTUAL BACKGROUND**

On December 10, 2013, Defendant Maisha Jacobs and Christopher McLean were involved in a severe collision with a heavy truck operated by Defendant Wayne Hunt while driving on U.S. Highway 15 near McColl, Marlboro County, South Carolina. (ECF No. 1). McLean was killed as a result of the collision. (*Id.*). Jacobs survived but was seriously injured. Both Jacobs and McLean's Estate filed separate Complaints on December 8, 2016 in the Marlboro County Court of Common Pleas, alleging wrongful death, survival, and negligence causes of action against Hunt for failing

2

**JA360**

to keep a proper lookout, failing to keep his vehicle within his lane of travel, traveling too fast for the conditions, and failing to yield the right of way, amongst other particular negligent acts and omissions of Hunt. (ECF Nos. 1-7; 1-14). The subject truck was insured by policies issued to Hunt's employer, Wilmington Shipping Company, by Plaintiff. (ECF No. 1).

At the time of the subject collision, Hunt possessed a North Carolina driver's license documenting that his address was 16671 NC Highway 210, Rocky Point, North Carolina. (ECF No. 39-1). The collision report does not document that Defendant Wilmington Shipping Company ("WSC") was Hunt's employer. Additionally, the heavy truck operated by Hunt in the collision was leased from Penske Truck Leasing Co., Ltd. and was not owned by WSC, as demonstrated by the collision report. Therefore, Defendant Owens and Jacobs subsequently named Hunt as the sole defendant and served him within South Carolina through the Director of the South Carolina Department of Motor Vehicles as the statutorily designated agent for domestic service of process on nonresident motor vehicle drivers, pursuant to S.C. Code Ann. sections 15-9-350 *et seq.*[3] (ECF Nos. 1-8; 1-15).

Hunt did not appear or file an Answer within 35 days as required by Rules 6(e) and 12(a), SCRCP, and the Circuit Court entered default against Hunt on November 16, 2017 and referred the actions to a Special Referee to take testimony and determine damages on October 22, 2018. (ECF No. 1). The Circuit Court found that the Summons and Complaint were properly served upon Hunt. (ECF No. 1-10). On November 18, 2021 and March 23, 2022, the Special Referee filed respective Orders awarding default judgments to both Owens and Jacobs. (*Id.*). Owens and Jacobs have demanded coverage under the two policies issued by Plaintiff to WSC, leading Plaintiff to

---

[3] Defendant Hunt failed to accept and receipt for certified mail containing notice of service sent by the SCDMV, and the notice was subsequently sent by open mail as evidenced by the affidavit of mailing and envelope filed with the Circuit Court. (ECF No. 39-3).

3

**JA361**

file this declaratory judgment action seeking declarations that it has no duty to defend or indemnify

Hunt with respect to the default judgments.

## ARGUMENT

### I.    The Court should grant Defendant's Motion to Amend under Rule 15(a).

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading should be freely

given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the merits.
> In the absence of any apparent or declared reason-such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.-the leave sought should, as
> the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "[L]eave to amend a pleading should be denied only when

the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the

moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242

(4th Cir. 1999).

Defendant's proposed amendment would not cause prejudice to Plaintiff. "Whether an

amendment is prejudicial will often be determined by the nature of the amendment and its timing."

*Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). "An amendment is not prejudicial . . . if it merely

adds an additional theory of recovery to the facts already pled and is offered before any discovery has

occurred." *Id.* Mere delay does not constitute sufficient prejudice to justify the denial of a motion to

amend. *Id.* at 426. The parties' Rule 26(f) Discovery Plan, filed on April 18, 2024, sets forth

Defendant's theory of recovery under the Motor Carrier Act and MCS-90 endorsement and

Defendant's intent to assert it, and Defendant's Answer filed December 6, 2022, asserted all laws as

stated in the federal Motor Carrier Act. (ECF Nos. 12, 55). These filings provided sufficient advanced

notice to Plaintiff of the substance of the counterclaim it will have to defend if Defendant's proposed amendment is granted, and any elaboration of the facts supporting the counterclaim in Defendant's proposed amendment are already known to Plaintiff. The discovery deadline in this case is not until January 7, 2025, and the deadline to amend the pleadings is November 4, 2024. (ECF No. 60). No discovery has been exchanged between the parties at this stage of the litigation. Regardless, Defendant's amendment will have no impact on discovery in this matter because the theory advanced by Defendant's proposed counterclaim is entirely a legal argument that is solely based on the MCS-90 endorsement, which Plaintiff already has in its possession.

Defendant's delay in amending his Answer has already been explained to Plaintiff and the Court. In previous filings on June 6, 2024, and September 4, 2024, in which Defendant asked the Court to amend the previous scheduling order and for an extension of the deadline to amend the pleadings, Defendant asserted that he wished to amend the pleadings to add a counterclaim for bad faith, that he was waiting for the resolution of proceedings in the underlying tort action so that he could seek an assignment of that claim, and that the filing of an amended answer had been delayed for those reasons. (ECF Nos. 58, 61). For the sake of efficiency, Defendant planned to amend the Answer only once, to add the bad faith counterclaim and a counterclaim asking for a declaration on Plaintiff's suretyship obligations under the MCS-90 endorsement at the same time, but Defendant's pursuit of a judicial assignment of the bad faith claim has been further delayed by those proceedings.

While the state court heard arguments on Defendant's and Hunt's motions on October 10, 2024, it has yet to rule on Defendant's motion for supplemental proceedings in that action, which seeks the judicial assignment, as well as Hunt's motion to vacate the default judgment, and the court was holding a decision on those motions in abeyance until the parties could mediate the case, which occurred on October 29, 2024. The reason for Defendant's delay in amending his Answer is not due

to bad faith or any dilatory behavior on Defendant's part, and instead is the result of Defendant's wish to conserve his own resources and avoid burdening the Court and Plaintiff with hearing and ruling on two separate motions to amend while the state court proceedings were pending. However, since Defendant was not able to obtain the assignment prior to the expiration of the Court's current deadline to amend the pleadings, Defendant believes the best course of action at this stage is to amend his Answer to add the counterclaim asking for a declaration concerning the MCS-90 endorsement, and to further move the Court to extend the deadline solely for the purpose of adding the bad faith counterclaim once the state court decides whether a judicial assignment of the bad faith claim is appropriate.

Defendant's proposed amendment is not futile. A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Defendant's theory is not frivolous or legally deficient. While no court in this District or the Fourth Circuit has ruled on Defendant's theory, other jurisdictions have found that the MCS-90 endorsement mandates payment of the surety to an injured third party in scenarios such as this, where the insured defaults and the insurer denies coverage based on the cooperation clause provisions in its policies. *See e.g. Pierre v. Providence Washington Ins. Co.*, 286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000); *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1996). Thus, Defendant's proposed amendment to add a counterclaim against Plaintiff under the federal Motor Carrier Act is not futile under South Carolina or Fourth Circuit precedent.

**II.**     **The Court should extend the deadline to amend pleadings a final time to permit Defendant to amend his Answer to add a bad faith counterclaim once the state court has reached a decision as to whether a judicial assignment of the claim is warranted.**

The Court should extend the Second Amended Scheduling Order's deadline to amend the pleadings a final time pursuant to Federal Rules of Civil Procedure 6(b)(1)(B) and 16(b)(4) and Local Civil Rule 6.01. Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 6(b)(1)(B) provide that a scheduling order deadline may be modified for good cause and with the Court's consent. Rule 16 gives courts "wide latitude in entering scheduling orders." *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996). Good cause exists to extend the Second ASO's deadline in this instance a final time because Defendant has diligently sought to have Hunt's bad faith claim judicially assigned in supplemental proceedings before the state court, and through no fault of his own has had the assignment delayed by the state court proceedings.

On June 2, 2023, the Marlboro County clerk of court signed and filed an execution of the default judgment against Hunt as the judgment debtor. (ECF No. 61-1). The execution was returned nulla bona by the Marlboro County Sheriff on February 27, 2024, four days after this declaratory judgment action was transferred to this District. On March 14, 2024, the Court entered a Scheduling Order in this action setting a deadline of May 9, 2024, for the parties to amend the pleadings. (ECF No. 47). On March 22, 2024, Defendant filed a Motion for Supplemental Proceedings as plaintiff in the state court action with the intent of seeking a judicial assignment of any bad faith or breach of contract claims that Hunt may have against Plaintiff.

On April 18, 2024, the parties filed a Rule 26(f) Report informing the Court that a modification of the Court's Scheduling Order deadlines was required. (ECF No. 54). In the parties' April 18, 2024 Rule 26(f) Discovery Plan, Defendant contended that Hunt and/or WSC had received actual notice of the underlying tort action and provided such notice to Plaintiff, and that Defendant would seek to amend his Answer to assert counterclaims against Plaintiff for a declaration that Plaintiff was required to satisfy its suretyship obligations under the policies' MCS-

90 endorsement, as well as causes of action for bad faith and breach of contract once he could obtain a judicial assignment of Hunt's rights. (ECF No. 55, pp. 6-7). The Discovery Plan sets forth that Defendant had commenced supplemental proceedings in the underlying action to collect the default judgment, that the hearing was anticipated to occur in May of 2024, and that he reserved the right to request further amendment of the Scheduling Order's deadlines depending on the resolution of the underlying tort action. (ECF No. 55, p. 7). On April 19, 2024, the parties' ASO was filed, setting a deadline of June 7, 2024 for the parties to amend the pleadings. (ECF No. 57).

In the state court action, Owens' Motion for Supplemental Proceedings was set for hearing on May 28, 2024, by the circuit court. At the hearing, the circuit court held any decision on the merits of the Motion in abeyance and requested supplemental briefing on the issue of whether it had subject matter jurisdiction. On June 6, 2024, the parties filed another Consent Motion to Amend the Scheduling Order, explaining that the circuit court had heard the motions on May 28, 2024, and that it had requested further briefing on the issue of whether it had jurisdiction to hear and decide the motions, or whether jurisdiction lied with the special referee. (ECF No. 58). The Motion requested a 90-day extension of the deadlines, making any motions to amend the pleadings due by September 5, 2024. (ECF No. 58). A Second Consent Amended Scheduling Order ("Second ASO") was filed by the Court on June 7, 2024, incorporating the proposed 90-day extensions. (ECF No. 60).

Thereafter, Defendant diligently sought to have his Motion for Supplemental Proceedings heard in the state court action such that he could obtain an assignment of Hunt's rights and thus bring his counterclaims in this declaratory judgment action before the Court. On June 14, 2024, Owens filed a memorandum in state court asserting his position as to whether the circuit court or special referee had jurisdiction to hear his Motion. (ECF No. 61-2). On July 24, 2024, the circuit

8

JA366

court signed and filed an order providing that it did not have jurisdiction over the Motion, and that it would be heard by the special referee. (ECF No. 61-3). Immediately thereafter on July 25, 2024, counsel for Defendant informed the office of Doug Jennings, the special referee, that the circuit court had determined it did not have jurisdiction to hear the Motion. (ECF No. 61-4). The special referee did not have any availability to hear the Motion until late August/early September at the earliest, but counsel for Hunt and the special referee did not provide any specific dates, and the parties, including counsel for Hunt who was hired by Plaintiff, did not come to an agreement with the special referee as to a set date for the hearing until October 10, 2024. (Ex. B, Hearing Emails). After hearing the parties' arguments, the special referee informed the parties that he would hold his decision on the motions in abeyance until the parties had the opportunity to mediate the case, which occurred on October 29, 2024. (Ex. C, Proof of ADR).

The current deadline for Defendant to amend his Answer to assert counterclaims against Plaintiff is November 4, 2024. The deadline has been extended three times, the first two times by agreement of the parties, once within the 26(f) Report and subsequently by Consent Motion. (ECF Nos. 28, 58). The third extension was at Defendant's request for an additional 60-day extension to the Second Amended Scheduling Order deadline to amend the pleadings in order to ensure that he could obtain the judicial assignment prior to amending his Answer, making the new deadline November 4, 2024.[4] Anticipating the present circumstances, which require Defendant to file yet another motion for an extension, at that time Defendant also moved the Court for a stay of the deadline in order to avoid unnecessary further modifications of the Scheduling Order or motions for an extension, which was not granted by the Court. (ECF No. 61).

---

[4] Plaintiff consented to a 30-day extension at that time but not a 60-day extension. (ECF No. 61-5).

JA367

Extending the deadline is likely to require the future alteration of the parties' expert disclosure deadlines within the Second ASO, as both parties will need to disclose experts concerning the bad faith claim, but this in itself does not necessitate the alteration of any further deadlines. Defendant's Motion for Supplemental Proceedings has been heard by the special referee, the underlying case has been mediated to an impasse, and a decision from the special referee on Defendant's Motion for Supplemental Proceedings should be forthcoming. Defendant requests a 45-day extension for the sole purpose of filing a motion to amend his Answer to add a bad faith counterclaim once he obtains the judicial assignment, making the final deadline for filing a motion to amend the pleadings December 19, 2024.

As set forth above, Defendant has diligently sought to obtain a judicial assignment of Hunt's rights since February 27, 2024, just four days after this action was transferred to this District. His Motion for Supplemental Proceedings was filed on March 22, 2024, and he informed the Court on April 18, 2024, that he was seeking an assignment and needed time to get a ruling from the state court. His Motion was set for hearing on May 28, 2024. It was not anticipated by Defendant that the circuit court would determine it did not have jurisdiction to hear the matter (although he believes this is the correct ruling), that the circuit court would require supplemental briefing on the issue, or that it would remand the Motion to the special referee for determination. The time it took for the circuit court to reach a decision was beyond Defendant's control, and upon learning that the issue would have to be determined by the special referee, he immediately sought to set a hearing date for the Motion, the first available date for which was October 10, 2024. Again, Defendant did not anticipate that the special referee would hold a decision on the Motion in abeyance until the parties could mediate the case, and he subsequently sought to hold mediation at

the soonest date possible, on October 29, 2024. Good cause exists to grant an extension one final time.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion to amend his Answer and extend the deadline to amend the pleadings one final time for 45-days. Pursuant to Local Civ. Rule 7.02, undersigned counsel affirms that prior to filing this motion he conferred with counsel for Plaintiff and Plaintiff cannot consent to the motion at this time.

November 4, 2024                    By: /s/ John E. Parker, Jr.
Hampton, South Carolina

John E. Parker, Jr. (#13257)
Ashley B. Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803-903-1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

11

**JA369**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE CO., | ) | |
| | ) | C/A No.: 4:24-cv-00951-JDA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED ANSWER OF LEVI OWENS, AS** |
| | ) | **PERSONAL REPRESENTATIVE FOR THE** |
| WAYNE HUNT, LEVI OWENS as | ) | **ESTATE OF CHRISTOPHER MCLEAN** |
| Personal Representative for the ESTATE | ) | |
| OF CHRISTOPHER MCLEAN, MAISHA | ) | |
| JACOBS, and WILMINGTON SHIPPING | ) | |
| CO., | ) | |
| Defendants. | ) | |

Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean, ("Defendant" or "this Defendant"), answers the Complaint of Plaintiff The Cincinnati Insurance Company ("Cincinnati") as follows:

1.    Upon information and belief, the allegations in Paragraphs 1-3 of Cincinnati's complaint are admitted.

2.    Upon information and belief, Paragraph 4 of Cincinnati's complaint is admitted to the extent that Defendant Wayne Hunt was a citizen and resident of Pender County, North Carolina at the time of the incident which gave rise to the underlying wrongful death action. All remaining allegations and specifically those regarding Hunt's current residence are denied as Defendant lacks knowledge or information sufficient to form a belief about the truth of any such allegation.

3.    Upon information and belief, the allegations in Paragraphs 5-9 of Cincinnati's complaint are admitted.

4.      Defendant lacks knowledge or information sufficient to form a belief about the truth of Paragraph 10 of Cincinnati's complaint and any allegations contained therein are denied and strict proof thereof is demanded.

5.      Upon information and belief, the allegations in Paragraphs 11-14 of Cincinnati's complaint are admitted.

6.      Upon information and belief, Paragraph 15 of Cincinnati's complaint is admitted to the extent that Defendant Wilmington Shipping Company's ("WSC") principal place of business is in New Hanover County, North Carolina. As to the remaining allegations, Defendant either lacks sufficient knowledge or information sufficient to form a belief about the truth of such allegations or denies the allegations and strict proof thereof is demanded.

7.      Upon information and belief, the allegations in Paragraph 16 of Cincinnati's complaint are admitted, with the qualification that Defendant lacks information sufficient to admit Exhibits A and B are true and complete copies of the policies in question.

8.      Upon information and belief, Paragraph 17 of Cincinnati's complaint is admitted to the extent that the Court has subject matter jurisdiction over the action. All remaining allegations, and specifically those regarding personal jurisdiction and venue, are denied and strict proof thereof is demanded.

**FACTUAL ALLEGATIONS**

9.      Upon information and belief, the allegations in Paragraphs 18-25 of Cincinnati's complaint are admitted.

10.     Upon information and belief, Paragraph 26 of Cincinnati's complaint is admitted to the extent that the subject truck involved in the underlying incident was leased from Penske Truck Leasing Co., Ltd. under a written lease agreement. All remaining allegations are denied as

2

Defendant lacks knowledge or information sufficient to form a belief about the truth of any such allegation.

11.    Upon information and belief, the allegations in Paragraphs 27-29 of Cincinnati's complaint are admitted.

12.    Upon information and belief, the allegations in Paragraph 30 of Cincinnati's complaint are admitted to the extent that service was effected through the South Carolina Department of Motor Vehicles; however, the date of service was February 9, 2017, not February 10, 2017, as stated by the complaint. All other allegations of Paragraph 30 are admitted.

13.    Upon information and belief, the allegations in Paragraph 31 of Cincinnati's complaint are admitted.

14.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 32 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

15.    Upon information and belief, the allegations in Paragraph 33 of Cincinnati's complaint are admitted.

16.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

17.    Upon information and belief, the allegations in Paragraph 35 of Cincinnati's complaint are admitted.

18.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 36 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

3

**JA372**

19.     Upon information and belief, the allegations in Paragraphs 37-38 of Cincinnati's complaint are admitted.

20.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 39 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

21.     Upon information and belief, the allegations in Paragraphs 40-41 of Cincinnati's complaint are admitted.

22.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 42 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

23.     Upon information and belief, the allegations in Paragraphs 43-44 of Cincinnati's complaint are admitted.

24.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 45-47 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

25.     Upon information and belief, the allegations in Paragraphs 48-49 of Cincinnati's complaint are admitted.

26.     Upon information and belief, the allegations in Paragraph 50 of Cincinnati's complaint are admitted to the extent that service was effected through the South Carolina Department of Motor Vehicles; however, the date of service was February 9, 2017, not February 10, 2017, as stated by the complaint. All other allegations of Paragraph 50 are admitted.

27.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 51 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

28.     Upon information and belief, the allegations in Paragraph 52 of Cincinnati's complaint are admitted to the extent that an affidavit of default was filed with the Marlboro County Clerk of Court; however, the date of filing was October 16, 2017, not November 16, 2017, as stated by the complaint. All other allegations of Paragraph 52 are admitted.

29.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 53 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

30.     Upon information and belief, the allegations in Paragraph 54 of Cincinnati's complaint are admitted to the extent that an entry of default was executed by Judge Paul M. Burch; however, the date of filing was October 16, 2017, not November 16, 2017, as stated by the complaint. All other allegations of Paragraph 54 are admitted.

31.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 55 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

32.     Upon information and belief, the allegations in Paragraphs 56-57 of Cincinnati's complaint are admitted.

33.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 58 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

34.    Upon information and belief, the allegations in Paragraph 59 of Cincinnati's complaint are admitted.

35.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 60 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

36.    Upon information and belief, the allegations in Paragraphs 61-62 of Cincinnati's complaint are admitted.

37.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 63-65 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

38.    Upon information and belief, the allegations in Paragraph 66 of Cincinnati's complaint are admitted.

<u>**FOR A DEFENSE TO FIRST DECLARATION**</u>

39.    The allegations in Paragraph 67 of Cincinnati's complaint are denied in that they restate denied allegations and strict proof thereof is demanded.

40.    Upon information and belief, the allegations in Paragraphs 68-69 of Cincinnati's complaint are admitted.

41.    Upon information and belief, the allegations in Paragraph 70 of Cincinnati's complaint are admitted to the extent that a default judgment was entered against Hunt; however, Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 70 and as such the allegations are denied and strict proof thereof is demanded.

42.    Upon information and belief, the allegations in Paragraph 71 of Cincinnati's complaint are admitted.

43.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 72 of Cincinnati's complaint and as such the allegations are denied and strict proof thereof is demanded.

44.    The allegations in Paragraphs 73 are denied and strict proof thereof is demanded.

45.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 74-80 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary

46.    Upon information and belief, the allegations in Paragraphs 81-82 of Cincinnati's complaint are admitted.

47.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 83 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary

48.    Upon information and belief, the allegations in Paragraph 84 of Cincinnati's complaint are admitted to the extent that this is a declaratory judgment brought pursuant to federal and North Carolina law and that a justiciable controversy exists between Cincinnati, Hunt, Owens, and Defendant Maisha Jacobs; as to the remaining allegations concerning Defendant WSC Defendant either lacks sufficient knowledge or information to form a belief about the truth of the allegations or such allegations call for or state legal conclusions, and as

such the remaining allegations as to WSC are denied and strict proof thereof is demanded, or no response is necessary.

49.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 85 of Cincinnati's complaint or the allegations state or call for legal conclusions, and as such the allegations are denied and strict proof thereof is demanded, or no response is necessary.

50.    Upon information and belief, the allegations in Paragraph 86 of Cincinnati's complaint are admitted.

51.    To the extent that any allegations are contained in the WHEREFORE paragraph of Cincinnati's complaint, such allegations are denied.

52.    ALL ALLEGATIONS IN CINCINNATI'S COMPLAINT NOT EXPRESSLY ADMITTED ARE DENIED, INCLUDING THE PRAYER FOR RELIEF, ANY HEADINGS, EXHIBITS, AND SUBPARTS.

### FOR A SECOND DEFENSE

53.    Cincinnati's complaint fails to state facts sufficient to constitute a cause of action and the complaint should be dismissed pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(6).

### FOR A THIRD DEFENSE

54.    There is a lack of personal jurisdiction over Defendant Levi Owens as Personal Representative of the Estate of Christopher McLean, and this case should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

### FOR A FOURTH DEFENSE

55.    The Court should refrain from exercising jurisdiction over this action pursuant to federal abstention doctrine.

### **FOR A FIFTH DEFENSE**

56.    Venue in the Southern Division of the Eastern District of North Carolina is improper and this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative, transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404.

### **FOR AS SIXTH DEFENSE**

57.    Defendant asserts all defenses and laws as stated in the federal Motor Carrier Act of 1980 (49 U.S.C. § 13906), and specifically asserts that said act preempts state law governing Cincinnati's insurance policies.

### **FOR A SEVENTH DEFENSE**

58.    Defendant reserves his right to assert any additional and affirmative defenses as may be revealed or become available to him during the course of the investigation and/or discovery in this case and are consistent with the Federal Rules of Civil Procedure.

### **FOR AN EIGHTH DEFENSE AND COUNTERCLAIM**
(Declaratory Judgment Compelling Payment by Defendant)

59.    This case arises out of a tragic incident in which Plaintiff's son, Christopher McLean, was killed in Marlboro County, South Carolina when a vehicle he was a passenger in was struck by a commercial truck operated by Hunt.

60.    Hunt was operating a commercial truck leased from Penske Truck Leasing Co., Ltd. by Hunt's employer, WSC, at the time of the collision.

61.    Defendant brings this counterclaim to compel Plaintiff to pay a final judgment that Defendant obtained against Plaintiff's insured.

62.     Defendant's counterclaim is brought against Plaintiff pursuant to the Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*, and the regulations promulgated thereunder, thereby giving this Court subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to determine the parties' rights and obligations under an MCS-90 endorsement that Plaintiff issued to its insured.

63.     After the collision, Defendant brought suit against Plaintiff's named insured in the Court of Common Pleas for Marlboro County.

64.     As part of the underlying Complaint, Defendant alleged that Hunt's negligence was a direct and proximate cause of Defendant's injuries.

65.     Hunt failed to file an answer or otherwise plead, and the court entered an order holding the insured in default.

66.     The court later conducted a damages hearing and based on the testimony and evidence entered judgment in favor of Defendant as a result of the death of his son.

67.     Defendant then requested Plaintiff to pay the judgment, relying on the terms of the liability policy that Plaintiff had issued to WSC and Hunt as a named insured and which was in effect on the day of the incident.

68.     The policy contains an endorsement that is required by Sections 29 and 30 of the Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*

69.     The language of this endorsement, known as the MCS-90 endorsement, is prescribed by federal regulation, 49 C.F.R. § 387.15.

70.     Under the express terms of this endorsement, Plaintiff is obligated to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance, or use" of a covered vehicle.

10

JA379

71.    The endorsement further provides that "no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment."

72.    The endorsement also states that upon the failure of an insurance company, like Plaintiff, "to pay any final judgment recovered against the insured," then the "judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment."

73.    To date, Plaintiff has refused to pay the judgment and has now asked the Court for a declaration that under a condition of the subject policies that it should be relieved from its indemnity obligations.

74.    The truck that Plaintiff's insured was driving on the day of the incident is a covered vehicle under the subject policies.

75.    The judgment is a final judgment against Plaintiff's insured resulting from Hunt's negligence in the operation or use of a covered vehicle, and Defendant is now a judgment creditor.

WHEREFORE, having fully responded to Plaintiff's complaint, the Defendant prays for an Order compelling Plaintiff to fulfill its MCS-90 suretyship obligations under the subject policies if the Court makes a finding of no coverage based on any provision or condition of the policies, for Plaintiff's complaint to be dismissed or judgment against Plaintiff, for the costs of this action, attorneys fees, and for such other and further relief as the Court may deem just and proper.

*(Signature page to follow)*

11

November 4, 2024                          By: /s/ John E. Parker, Jr.
Hampton, South Carolina
                                          John E. Parker, Jr. (#13257)
                                          Ashley B. Nance (#11093)
                                          PARKER LAW GROUP, LLP
                                          P.O. Box 487
                                          Hampton, SC 29924
                                          803-903-1781
                                          jayparker@parkerlawgroupsc.com
                                          anance@parkerlawgroupsc.com

                                          Jason Scott Luck (#9696)
                                          P.O. Box 47
                                          Bennettsville, SC 29512
                                          843.479.6863 (o)
                                          843.479.7222 (f)
                                          jason@luck.law

                                          **Attorneys for Defendant Levi Owens, as
                                          Personal Representative of the Estate of
                                          Christopher McLean**

**JA381**

| | |
|---|---|
| **From:** | Doug Jennings |
| **To:** | John M. Grantland; Lesley Wiggins; Jason Luck; Carol Dudley; Ashley Nance |
| **Cc:** | Jay Parker; Renee Dillon |
| **Subject:** | RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265 |
| **Date:** | Monday, September 23, 2024 7:00:05 PM |
| **Attachments:** | Notice of Hearing.pdf |

**Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

To All Counsel:

Attached is the Notice of Hearing. I look forward to receiving any written submissions from you in advance of the hearing in accordance with the Rules.

Also, John or Renee, I'd appreciate you confirming to Carol Dudley of my office when you have made arrangements for the Court Reporter. If you'd prefer that we do this, simply let Carol know.

Thanks,
Doug Jennings

**From:** John M. Grantland <jgrantland@murphygrantland.com>
**Sent:** Friday, September 6, 2024 7:32 AM
**To:** Doug Jennings <doug@jenningslawoffice.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Jason Luck <jason@luck.law>; Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>
**Cc:** Jay Parker <jayparker@parkerlawgroupsc.com>; Renee Dillon <rdillon@murphygrantland.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Thank you Doug and counsel.

Take care.
JG

**From:** Doug Jennings <doug@jenningslawoffice.com>
**Sent:** Thursday, September 5, 2024 4:59 PM
**To:** John M. Grantland <jgrantland@murphygrantland.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Jason Luck <jason@luck.law>; Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>
**Cc:** Jay Parker <jayparker@parkerlawgroupsc.com>; Renee Dillon <rdillon@murphygrantland.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

To All Counsel:

This will confirm that our hearing in this case is set for October 10, 2024 at 10:00am in the Family Courtroom on the second floor of the Marlboro County Courthouse in Bennettsville. John Grantland has kindly agreed to arrange for a Court Reporter. I am asking April in the Clerk's Office to reserve this courtroom for our use that day.

This email will serve as the formal notice of this hearing unless any party requests that a formal Notice of Hearing be distributed.

Thank you,

Doug Jennings
Special Referee

**From:** John M. Grantland <jgrantland@murphygrantland.com>
**Sent:** Thursday, September 5, 2024 3:33 PM
**To:** Doug Jennings <doug@jenningslawoffice.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Jason Luck <jason@luck.law>; Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>
**Cc:** Jay Parker <jayparker@parkerlawgroupsc.com>; Renee Dillon <rdillon@murphygrantland.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Hey Doug, Jason, Jay and everyone.

Thank you for your email.   I can do October 10, at 10:00 a.m., and I'll be happy to get a court reporter if that is o.k. w/ everyone.

Just let me know when we confirm.

Thank you and take care.
JG

**From:** Doug Jennings <doug@jenningslawoffice.com>
**Sent:** Thursday, September 5, 2024 1:22 PM
**To:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Jason Luck <jason@luck.law>; Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>
**Cc:** John M. Grantland <jgrantland@murphygrantland.com>; Jay Parker <jayparker@parkerlawgroupsc.com>; Renee Dillon <rdillon@murphygrantland.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Folks:
I appreciate your patience and efforts towards finding a convenient date to conduct this hearing, and I apologize for any delays caused by me.
We have checked with the Clerk's office and I can reserve us a courtroom to conduct this hearing on either of the following dates:

Tuesday, October 1, 2024 - @ 10am; or
Thursday, Oct. 10, 20224 – 10am.

Would counsel for the plaintiff and the defendant kindly confirm to Carol and me whether or not either of these dates will work (and which you prefer), and we will get it scheduled.
Also, we are going to need a Court Reporter.  Please let me know who is going to take responsibility for arranging a Court Reporter, or whether you prefer for us to arrange the reporter with the

**JA383**

understanding that the bill for their services will be paid by the parties (presumably split 50/50).

Thank you and we look forward to getting this scheduled.

Doug Jennings
Special Referee

**From:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Sent:** Tuesday, September 3, 2024 4:09 PM
**To:** Jason Luck <jason@luck.law>; Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jay Parker <jayparker@parkerlawgroupsc.com>; 'Renee Dillon' <rdillon@murphygrantland.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Carol and Mr. Grantland,

We have availability the following for the availability provided by Mr. Luck below:

September 19, 20, 24, 25, 27
October 1, 3, 4, 8, 9, 10, 11

**Lesley Wiggins**
**Office of Ashley B. Nance**

803.903.1873
803.903.1896
parkerlawgroupsc.com
lwiggins@parkerlawgroupsc.com
601 W. Evans St., Florence, SC, 29501
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Jason Luck <jason@luck.law>
**Sent:** Thursday, August 29, 2024 10:46 AM
**To:** Carol Dudley <carol@jenningslawoffice.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>; Ashley Nance <anance@parkerlawgroupsc.com>; Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jay Parker <jayparker@parkerlawgroupsc.com>
**Subject:** Re: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

**JA384**

**Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

Carol,

Generally, the last two weeks of September and the first two weeks of October are best for me. I could also make September 5, 6, 9 (telephone), and 12 work.

Jason Scott Luck
Attorney at Law
P.O. Box 47 (107 S. Parsonage St.)
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)

---

**From:** Carol Dudley <carol@jenningslawoffice.com>
**Date:** Wednesday, August 28, 2024 at 1:31 PM
**To:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>, Ashley Nance <anance@parkerlawgroupsc.com>, Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com <jgrantland@murphygrantland.com>, Jason Luck <jason@luck.law>, Jay Parker <jayparker@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Good Afternoon Lesley:

If you guys can give me some dates in September/October, I'll let you know what Doug has available.

Thanks.

Carol

Carol B. Dudley, Legal Assistant
Douglas Jennings Law Firm, LLC
P. O. Box 995
151 Broad Street
Bennettsville, SC 29512
Telephone: (843) 479-2865
Fax: (843) 479-2866

**JA385**

**From:** Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Sent:** Monday, August 26, 2024 10:56 AM
**To:** Carol Dudley <carol@jenningslawoffice.com>; Ashley Nance <anance@parkerlawgroupsc.com>;
Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker
<jayparker@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-
00265

Good morning Carol,

I apologize for the delay in responding on this case. Whenever you have a free moment
can you let us know a time frame to look at dates for Mr. Jennings to hear the pending
motions in this matter?

**Lesley Wiggins**
**Office of Ashley B. Nance**

803.903.1873
803.903.1896
parkerlawgroupsc.com
lwiggins@parkerlawgroupsc.com
601 W. Evans St., Florence, SC,
29501
101 Mulberry St. E., P.O. Box
487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named
recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose
the contents to anyone or make copies thereof.

**From:** Carol Dudley <carol@jenningslawoffice.com>
**Sent:** Thursday, July 25, 2024 2:51 PM
**To:** Ashley Nance <anance@parkerlawgroupsc.com>; Doug Jennings <doug@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker
<jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins
<lwiggins@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-
00265

**Caution:** This email came from outside the ParkerLaw network. Use caution when
clicking on links and attachments.

Good Afternoon:

Doug has asked me to explore dates with all counsel to hear the pending motions.

Please provide me with dates in late August/early September.

Thank you.

Carol


Carol B. Dudley, Legal Assistant
Douglas Jennings Law Firm, LLC
P. O. Box 995
151 Broad Street
Bennettsville, SC 29512
Telephone: (843) 479-2865
Fax:  (843) 479-2866

**From:** Ashley Nance <anance@parkerlawgroupsc.com>
**Sent:** Thursday, July 25, 2024 2:42 PM
**To:** Doug Jennings <doug@jenningslawoffice.com>; Carol Dudley <carol@jenningslawoffice.com>
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker
<jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins
<lwiggins@parkerlawgroupsc.com>
**Subject:** RE: Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> Some people who received this message don't often get email from anance@parkerlawgroupsc.com. Learn why this is important

Doug,

I hope all is well with you.  I'm circling back with you on this case.  Judge Burch issued the attached Form 4 yesterday stating the following:

"After review of the previous Order of Reference, this Court does not have jurisdiction over this matter. The Order of Reference states that "Any motions filed after this order shall be heard by the referee."

We have some pending motions in this case involving the default judgment that we'd like to schedule with you so that they can be heard.  The pending Motions include the following:

By Plaintiff:

1. Motion for Supplemental Proceedings

By Defendant:

1. Motion to Stay Execution of Judgment
2. Motion to be Relieved from Default Judgment and/or in the Alternative to Vacate Judgment

**JA387**

I've copied all parties on this email and we can forward you all motions/supporting Memos for your review as well.  If you can let us know some available dates for you, we can coordinate with our calendars and and schedule it accordingly.  If you have any questions, or would like to conduct a conference call in advance for planning purposes, please let me know.  Thanks again.

**Ashley B. Nance**
**Attorney**

803.903.1874
843.364.1743
parkerlawgroupsc.com
anance@parkerlawgroupsc.com
601 W. Evans St., Florence, SC, 29501
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Ashley Nance
**Sent:** Friday, June 14, 2024 1:56 PM
**To:** doug@jenningslawoffice.com; carol@jenningslawoffice.com
**Cc:** jgrantland@murphygrantland.com; Jason Luck <jason@luck.law>; Jay Parker <jayparker@parkerlawgroupsc.com>; Claudia Cartier <ccartier@parkerlawgroupsc.com>; Lesley Wiggins <lwiggins@parkerlawgroupsc.com>
**Subject:** Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

Doug,

I hope you are doing well.  I wanted to provide you with an update on this matter.  I recently became involved in this case and represent Plaintiff along with Jay Parker and Jason Luck.

We had a hearing on May 28th concerning the Motions that involve the Default Judgment in this case.  During the Hearing, Judge Burch asked that both parties provide the Court with a supplemental brief as to the Court's jurisdiction to hear these matters in light of the previous Order of Reference made to you as the Special Referee.  I've attached both briefs for reference.

Judge Burch has not issued a ruling yet but I just wanted to make sure you were aware in the event that this matter is sent back to you.  Of course, we will be in touch if the Court does send this matter back for you to hear.  If you have any questions, please don't hesitate to let us know.  I hope you have a great weekend.

**Ashley B. Nance**
Attorney

803.903.1874
843.364.1743
parkerlawgroupsc.com
anance@parkerlawgroupsc.com
101 Mulberry St. E., P.O. Box 487, Hampton, SC 29924

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Please note my new email address and other contact information contained in my signature. Thanks.

**From:** Doug Jennings <doug@jenningslawoffice.com>
**Sent:** Tuesday, March 19, 2024 5:52 PM
**To:** John M. Grantland (jgrantland@murphygrantland.com) <jgrantland@murphygrantland.com>; jason@luck.law
**Cc:** Jay Parker <jayparker@parkerlawgroupsc.com>; Carol Dudley <carol@jenningslawoffice.com>
**Subject:** Levi Owens, as PR of the Est. of Christopher McLean vs. Wayne Hunt - C/A # 2016-CP-34-00265

> **Caution:** This email came from outside the ParkerLaw network. Use caution when clicking on links and attachments.

To All Counsel:
As you know, I was appointed as Special Referee to "take testimony and determine the amount of damages" in this case, which I did resulting in an Order filed on November 18, 2021.
After reviewing this matter, it is my position that the Order of Reference was limited to that purpose and that I no longer have jurisdiction to hear and decide upon the various pending motions which you have filed in this matter. Accordingly, it is my intention to ask the Clerk's Office to put your pending motions on the CPNJ roster to be heard by a Circuit Judge. However, as a courtesy to all counsel, I just wanted to let you know of my position and my intentions.

I wish you all the best in litigating the various matters which have arisen in this case, and you should expect to see the pending motions added to the Marlboro CPNJ roster in the very near future.

Kindly,
Doug Jennings

Douglas Jennings, Jr., Esq.
**DOUGLAS JENNINGS LAW FIRM, LLC**
**151 BROAD ST., P. O. BOX 995**
**BENNETTSVILLE, SC 29512-0995**
**(843)479-2865 (main ofc.)**
**(843)479-2866 (fax)**



DOUGLAS JENNINGS LAW FIRM, LLC

STATE OF SOUTH CAROLINA                                    CIRCUIT COURT
COUNTY OF MARLBORO

LEVI OWENS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
CHRISTOPHER MCLEAN V. WAYNE HUNT

Docket No. 2016-CP-34-00265

## PROOF OF ADR

Pursuant to the South Carolina Alternative Dispute Resolution Rules (SCADR):

1.    Alternative Dispute Resolution (ADR) was conducted on October 29, 2024, in the form
      of: **Mediation**.

2.    The neutral was: **Karl A. Folkens**

3.    Present at the ADR conference were:

      __X__   Plaintiff
      _____ Defendant
      __X__   Lawyers for Plaintiff: *Jason S. Luck, Esq. & Ashley B. Nance, Esq.*
      __X__   Lawyer for Defendant: *Crawford A. Krebs, Esq.*
      __X__   Representative for insurance carrier: *John Benintendi, CIC*
      _____ Guardian ad Litem:
      _____ Expert:
      _____ Others:

4.    As a result of ADR, this case should be considered (check one):

      _____ fully Settled by Consent Judgment to be filed by the parties' counsel.

      _____ fully settled by Voluntary Dismissal to be filed by the parties' counsel.

      _____ partially settled.

      __X__   at an impasse.

5.    Further comments of the neutral: *None.*

Submitted: October 29, 2024

                                          Karl A. Folkens, Mediator
                                          karl@folkenslaw.com
MA24-322                                  601 W. Evans St., Florence, SC  29502-3409
SCADR 104A (04/2021)                      (843) 665-0100; FAX (843) 665-0500

**JA391**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR DEFAULT** |
| Wayne Hunt, Levi Owens as Personal | ) | **JUDGMENT AGAINST WAYNE HUNT AND** |
| Representative for the Estate of Christopher | ) | **WILMINGTON SHIPPING COMPANY** |
| McLean, Maisha Jacobs, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Fed. R. Civ. P. 55, Plaintiff The Cincinnati Insurance Company ("CIC") moves this Court for an Order entering a default judgment against Defendants Wayne Hunt and Wilmington Shipping Company.  The basis for this Motion is that Wayne Hunt was served via personal service with the Summons and Complaint on November 16, 2022, according to an Affidavit of Service filed with the Court on November 21, 2022.  (ECF #9.)  Defendant Wilmington Shipping Company was served via United Parcel Service delivery to its Registered Agent, Elizabeth Ruffin, as established by an Affidavit of Service, filed with the Court on November 15, 2022. (ECF #6.)  On December 8, 2022, Plaintiff filed a Motion for Entry of Default as to Hunt and Wilmington Shipping Company, in the Eastern District of North Carolina.  (ECF #13.)  On January 12, 2023, the Clerk of Court for the Eastern District of North Carolina executed an Order of Entry of Default as to Hunt and Wilmington Shipping Company.  (ECF #17.)  On April 19, 2023, Judge Richard E. Myers II of the Eastern District of North Carolina entered Orders of Default Judgment against Hunt and Wilmington Shipping.  (ECF #21 and 22).  Judge Myers vacated those orders on February 23, 2024, in which he also transferred the case to this Court (ECF #36.)  Judge Myers did not vacate the entries of default against Hunt or Wilmington Shipping.

1

The sole relief sought from Hunt and Wilmington Shipping Company is a declaration of this Court that CIC has no obligation to defend or indemnify Hunt under the Policies at issue; therefore, there is no requirement for any damages hearing.  Plaintiff seeks entry of final judgment, or, in the alternative, a certification as to the duty to defend and indemnify, pursuant to Rule 54(b).

This Motion is based upon the pleadings and affidavits filed to-date, in this case and in the Eastern District of North Carolina prior to transfer of the case.  Because this is a Motion for dispositive relief, in the form of a default judgment, there is no duty to consult under Local Rule 7.02, DSC.


November 18, 2024                          s/ C. Daniel Atkinson
                                          C. Daniel Atkinson (Fed Id. No. 34747)
                                          datkinson@wajlawfirm.com

                                          WILKES ATKINSON & JOYNER, LLC
                                          127 Dunbar Street, Suite 200
                                          Spartanburg, SC 29306
                                          (864) 591-1113

                                          ATTORNEY FOR PLAINTIFF

2

**JA393**

## USDOT INFORMATION

| Entry Type: | CARRIER |
|---|---|
| USDOT Status: | ACTIVE |
| USDOT Number: | 522762 |
| State Carrier ID Number: | |
| Out of Service Date: | None |
| MCS-150 Form Date: | 02/02/2024 |
| MCS-150 Mileage (Year): | 589,329 (2023) |

## OPERATING AUTHORITY INFORMATION

| Operating Authority Status: | AUTHORIZED FOR Property |
|---|---|
| | For Licensing and Insurance details click here. |
| MC/MX/FF Number(s): | MC-196950 |

## COMPANY INFORMATION

| Legal Name: | WILMINGTON SHIPPING COMPANY |
|---|---|
| DBA Name: | CHESTNUT ENTERPRISES TRUCKING |
| Physical Address: | 3930 RIVER ROAD WILMINGTON, NC 28412 |
| Phone: | (910) 392-8340 |
| Mailing Address: | 3930 RIVER ROAD WILMINGTON, NC 28412 |
| DUNS Number: | 44-382-968 |
| Power Units: | 11 |
| Drivers: | 11 |

## Operation Classification:

| X Auth. For Hire | Priv. Pass. (Non-business) | State Gov't |
|---|---|---|
| X Exempt For Hire | Migrant | Local Gov't |
| Private(Property) | U.S. Mail | Indian Nation |
| Priv. Pass. (Business) | Fed. Gov't | |

## Carrier Operation:

| X Interstate | Intrastate Only (HM) | Intrastate Only (Non-HM) |
|---|---|---|

## Cargo Carried:

| X General Freight | Liquids/Gases | Chemicals |
|---|---|---|
| Household Goods | X Intermodal Cont. | X Commodities Dry Bulk |
| X Metal: sheets, coils, rolls | Passengers | Refrigerated Food |
| Motor Vehicles | Oilfield Equipment | Beverages |
| Drive/Tow away | Livestock | X Paper Products |
| Logs, Poles, Beams, Lumber | Grain, Feed, Hay | Utilities |
| Building Materials | Coal/Coke | Agricultural/Farm Supplies |
| Mobile Homes | Meat | Construction |
| Machinery, Large Objects | Garbage/Refuse | Water Well |
| X Fresh Produce | US Mail | |



## U.S. Department of Transportation
## Federal Motor Carrier Safety Administration
### Licensing and Insurance Public

Choose Menu Option   GO

### Active/Pending Insurance

| US DOT: | 522762 | | | | | | |
|---|---|---|---|---|---|---|---|
| Legal Name: | WILMINGTON SHIPPING COMPANY | | | | | | |
| | | | | Docket Number: | MC00196950 | | |

| Form | Type | Insurance Carrier | Policy/Surety | Posted Date | Coverage From | Coverage To | Effective Date | Cancellation Date |
|---|---|---|---|---|---|---|---|---|
| 91X | BIPD/Primary | THE CINCINNATI INSURANCE CO. | EBA 010 40 45 | 10/05/2016 | $0 | $750,000 | 10/01/2016 | |

Carrier Details    Rejected Insurance    Insurance History    Authority History    Pending Application    Revocation

FMCSA Home | DOT Home | Feedback | Privacy Policy | USA.gov | Freedom of Information Act (FOIA) | Accessibility | OIG Hotline | Web Policies and Important Links | Plug-ins | Related Sites | Help

Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE, Washington, DC 20590 - 1-800-832-5660 - TTY: 1-800-877-8339 - Field Office Contacts

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **The Cincinnati Insurance Company**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| **Wayne Hunt; Levi Owens as Personal Representative for the Estate of Christopher McLean; Maisha Jacobs; and Wilmington Shipping Company**, | ) ) ) ) | **Defendant Levi Owens' Motion to Stay Deadlines** |
| | ) | |
| Defendants. | ) | |

Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean, pursuant to LCR 16.00(C), to stay the deadlines of the current scheduling order pending consideration of pending dispositive motion(s). Defendant Owens would show the following in support of his motion:

1.  On November 4, 2024, Defendant Owens moved (Entry 63) to amend his answer to assert a counterclaim requiring Plaintiff to pay the limits of the MCS-90 endorsement it was required to obtain under Federal Motor Carrier law. *See* 49 C.F.R. § 387.15; 49 U.S.C. § 10101 *et seq.*

2.  On November 18, 2024, Plaintiff filed a motion to enter a default judgment as to Wayne Hunt and Wilmington Shipping Company (Entry 65).

3.  March 13, 2025, is the current deadline to file dispositive motions in this matter (Entry 60), and upon information and belief Plaintiff will file a motion for summary judgment at some point before this deadline ends.

4.  The original deadlines proposed by the parties' discovery plan (ECF Entry 55 p. 7), were calculated to allow the Marlboro County Court of Common Pleas time to hear and decide

**JA396**

a motion to set aside the judgment in the underlying action and a competing motion for supplemental proceedings to obtain a judicial assignment of Defendant Wayne Hunt's bad faith cause of action against Plaintiff The Cincinnati Insurance Company.

5. While these motions were heard on May 28, 2024, the Special Referee in the state court matter has not yet issued an order. Once this order is issued, Defendant Owens expects to amend his answer to assert counterclaims for, *inter alia*, breach of contract and insurance bad faith.

6. Additionally, Jason Luck (one of Defendant Owens' counsel) was elected to the South Carolina House of Representatives on November 5, 2024, and he will be occupied with House business until *sine die* on May 8, 2025. *See also In re: Lawyer-Legislator Protection* (S.C. Sup. Ct. Order dated Jan. 31, 2025) (attached).

7. Local Civil Rule 16.00(C) provides as follows:

   *Stay of Deadlines and Entry of Scheduling Orders.* The court may stay entry of the scheduling order(s) and all federal and local civil rule disclosure and conference requirements pending resolution of a motion to remand or to dismiss or other dispositive motion. Any party desiring a stay on this basis shall file a separate motion to stay. No consultation or separate memorandum is required.

8. Further, this Court has the inherent power to stay its proceedings. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").

9. In light of the pending motion to amend, pending motion for default judgment, pending decision in the state court matter, the likely pending motion for summary judgment, and Mr. Luck's responsibilities in Columbia, this Court should stay all deadlines in the scheduling order until further notice.

**JA397**

Dated: 03/13/2025

By: /s/ John E. Parker

John E. Parker, Jr. (#13257)
Ashley Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.903.1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

3

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.:  4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **JOINT STATEMENT OF STIPULATED** |
| Representative for the Estate of Christopher | ) | **MATERIAL FACTS** |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Joint Statement of Stipulated Material Facts is being provided by the parties to this action, by and through their counsel of record, the undersigned below, pursuant to the Summary Judgment Motion Procedures for Judge Austin, Section 2(a)(1). In addition, pursuant to the same section and subdivision, the parties have agreed that these stipulations are entered into only for purposes of this summary judgment motion and are not intended to be otherwise binding.

1.    Hunt is currently a citizen and resident of Orangeburg County, South Carolina. (ECF No. 1, Complaint ¶ 4).

2.    At the time of the Accident, Hunt was a citizen and resident of Pender County, North Carolina. (ECF No. 1, Complaint ¶ 4).

3.    At the time of the Accident, Hunt was an employee of Defendant Wilmington Shipping Company ("WSC"). (ECF No. 1, Complaint ¶ 26).

4.    Defendant Levi Owens ("Owens"), is a citizen and resident of Marlboro County, South Carolina, with a residence in Bennettsville, South Carolina. (ECF No. 1, Complaint ¶ 5).

1

**JA399**

5.    Owens has been appointed by the Marlboro County Probate Court to act as Personal Representative for the Estate of Christopher McLean. (ECF No. 1, Complaint ¶ 6).

6.    At all times relevant hereto, Christopher McLean was a citizen and resident of Marlboro County, State of South Carolina. (ECF No. 1, Complaint ¶ 7).

7.    WSC is a North Carolina corporation, with a principal place of business at 330 Shipyard Blvd., Wilmington, New Hannover County, North Carolina 28412. (ECF No. 1, Complaint ¶ 9).

8.    At all times relevant hereto, WSC was doing business in North Carolina. (ECF No. 1, Complaint ¶ 10).

9.    CIC is an Ohio corporation, with its principal place of business located at 6200 S. Gilmore Road, Fairfield, OH 45014-5141. (ECF No. 1, Complaint ¶ 3).

10.    CIC issued two policies of insurance, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy"), (collectively, the "Policies"), to WSC on or around October 1, 2013. (ECF No. 1, Complaint ¶ 16).

11.    The Business Auto Policy and the Excess Coverage Liability Policy in effect on October 1, 2013, are the CIC policies which would potentially apply to any judgments that Owens obtained against Hunt related to the Accident based on policy periods. (ECF No. 1-5, Business Auto Policy, pp. 36 and 63; ECF No. 1-6, Excess Coverage Liability Policy, p. 3).

12.    Hunt was not a named insured under the Policies but had certain coverages available as a permissive user of vehicles. (ECF No. 1-5, Business Auto Policy, Section II(A)(1)(b)).

13.    The Accident occurred on December 10, 2013, in Marlboro County, South Carolina at the intersection of US Highway 15 and SEC-438. (South Carolina Collision Report).

14.    At the time of the Accident, Hunt was driving a truck which WSC leased from Penske Truck Leasing Co., Ltd., under a written lease agreement with Penske Truck Leasing Co., Ltd., and within the scope of his employment with WSC. (ECF No. 1, Complaint ¶ 26).

15.    At the time of the Accident, Christopher McLean was riding as a passenger in a car driven by Maisha Jacobs. (ECF No. 1, Complaint ¶ 24).

16.    McLean died as a result of injuries that he suffered in the Accident. (ECF No. 1, Complaint ¶ 25).

17.    On December 8, 2016, Owens filed a Summons and Complaint in the Marlboro County Court of Common Pleas, Civil Action No. 2016-CP-34-00265 entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant* (the "Wrongful Death Action"). (ECF No. 1-7, Wrongful Death Action).

18.    In the Wrongful Death Action, Owens alleged that Hunt was liable to Owens for damages as a result of the bodily injury and death suffered by Christopher McLean in the Accident. (ECF No. 1-7, Wrongful Death Action).

19.    Owens acknowledged that Hunt resided outside of the State of South Carolina. (ECF No. 1-7, Wrongful Death Action, ¶ 2).

20.    Owens, through counsel, stated in proof of service to the South Carolina Court of Common Pleas that he effected service of the Wrongful Death Action Summons and Complaint on Hunt through the South Carolina Department of Motor Vehicles ("SCDMV"). (ECF No. 1-8, Letter from SCDMV).

21.    On September 28, 2017, Owens' then-Attorney R. Alexander Murdaugh executed an Affidavit of Default in the Wrongful Death Action. (ECF No. 1-9, Affidavit of Default).

3

**JA401**

22.     On November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Wrongful Death Action executed by Judge Paul M. Burch (ECF No. 1-10, Entry of Default).

23.     On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Wrongful Death Action to a Special Referee, Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee. (ECF No. 1-11, Order of Reference).

24.     On November 4, 2021, Owens' counsel filed a Notice of Hearing in the Wrongful Death Action. (ECF No. 1-12, Notice of Hearing).

25.     The Notice of Hearing included an Affidavit of Service which stated that the Notice of Hearing for the Wrongful Death Action was mailed to Hunt at the Rocky Point Address. (ECF No. 1-12, Affidavit of Service).

26.     On November 17, 2021, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Wrongful Death Action. (ECF No. 1-13, Order Awarding Default Judgment, p.1).

27.     On November 18, 2021, Special Referee Douglas Jennings, Jr., filed an Order Awarding Default Judgment in the Wrongful Death Action. (ECF No. 1-13, Order Awarding Default Judgment).

28.     In the Order Awarding Default Judgment in the Wrongful Death Action, the Special Referee found that Hunt acted negligently and caused damages to Owens, and the Special Referee awarded $5,000,000 in wrongful death damages and $100,000 in survival damages. (ECF No. 1-13, Order Awarding Default Judgment, pp. 4-5).

29.     Neither Owens nor his attorneys sent notice of the Wrongful Death Action to CIC prior to entry of the default judgment. (Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 1).

30.     The Policies contained language requiring Hunt to immediately send CIC copies of any summons or legal paper received regarding any "suit," as defined in the Business Auto Policy. (ECF No. 1-5, Business Auto Policy, Section IV(A)(2)(b) and Section V(N); ECF No. 1-6, Excess Liability Coverage Policy, Section III(4)).

31.     On September 8, 2023, Claudia Cartier, Paralegal to John E. Parker, Jr., sent copies of the Summons and Complaint in the Wrongful Death Action to CIC via certified mail. (Certified Letter to CIC, dated September 8, 2023).

32.     On February 29, 2024, John E. Parker, Jr., sent a letter to CIC via email, with a copy of the filed judgment enclosed, requesting that CIC issue a check for the judgment amount. (ECF 41-2, Letter to CIC, dated February 29, 2024).

**[signatures on following page]**

Respectfully submitted,

March 13, 2025

s/ C Daniel Atkinson_____
C. Daniel Atkinson (Fed Id. No. 09626)
datkinson@wajlawfirm.com
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
(864) 591-1113
*Attorney for Plaintiff The Cincinnati Insurance Company*

s/ Jason Scott Luck_____
Jason Scott Luck, Esq.
Jason Scott Luck, Attorney at Law
PO Box 47
Bennettsville, SC  29512
jason@luck.law
*Attorney for Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean*

**JA404**

**TABLE OF CONTENTS FOR JOINT STATEMENT OF STIPULATED MATERIAL FACTS**

| Description | Page |
|---|---|
| ECF No. 1, Complaint | 001-015 |
| ECF No. 1, Complaint ¶ 3 | 002 |
| ECF No. 1, Complaint ¶ 4 | 002 |
| ECF No. 1, Complaint ¶ 5 | 002 |
| ECF No. 1, Complaint ¶ 6 | 002 |
| ECF No. 1, Complaint ¶ 7 | 002 |
| ECF No. 1, Complaint ¶ 9 | 002 |
| ECF No. 1, Complaint ¶ 10 | 002 |
| ECF No. 1, Complaint ¶ 16 | 003 |
| ECF No. 1, Complaint ¶ 24 | 006 |
| ECF No. 1, Complaint ¶ 25 | 006 |
| ECF No. 1, Complaint ¶ 26 | 006 |
| ECF No. 1-5, Business Auto Policy, p. 36 | 016 |
| ECF No. 1-5, Business Auto Policy, p. 63 | 023 |
| ECF No. 1-5, Business Auto Policy, Section II(A)(1)(b) | 020-021 |
| ECF No. 1-5, Business Auto Policy, Section IV(A)(2)(b) | 022-023 |
| ECF No. 1-5, Business Auto Policy, Business Auto Part Declarations | 017-019 |
| ECF No. 1-6, Excess Coverage Liability Policy, Excess Liability Coverage Part Declarations | 024-025 |
| ECF No. 1-6, Excess Coverage Liability Policy, p. 3 | 066 |
| ECF No. 1-6, Excess Liability Coverage Policy, Section III(4) | 026-028 |
| ECF No. 1-7, Wrongful Death Action | 029-032 |
| ECF No. 1-8, Letter from SCDMV | 033 |
| ECF No. 1-9, Affidavit of Default | 034 |
| ECF No. 1-10, Entry of Default | 035 |
| ECF No. 1-11, Order of Reference | 036 |
| ECF No. 1-12, Notice of Hearing | 037 |
| ECF No. 1-12, Affidavit of Service | 038 |
| ECF No. 1-13, Order Awarding Default Judgment | 039-043 |
| ECF No. 1-13, Order Awarding Default Judgment, pp. 4-5 | 042-043 |
| Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 1 | 065 |
| Letter to CIC, dated February 29, 2024 | 059-064 |
| Certified Letter to CIC, dated September 8, 2023 | 046-058 |
| South Carolina Collision Report | 044-045 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-00189

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Wayne Hunt; Levi Owens, as Personal | ) | **(Declaratory Judgment)** |
| Representative for the Estate of Christopher | ) | |
| McLean; Maisha Jacobs; and Wilmington | ) | **Non-Jury Trial Demanded** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Plaintiff, complaining of the Defendants above-named, would respectfully allege and show unto this Honorable Court as follows:

**PRELIMINARY STATEMENT**

1.     This action is brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et. seq*.

2.     The Cincinnati Insurance Company ("CIC") respectfully requests a declaratory judgment that CIC does not owe a duty to defend or indemnify Wayne Hunt ("Hunt"), under a primary policy of insurance, bearing Policy Number EBA0104045, and an excess coverage liability policy of insurance, bearing Policy Number ENP0104045, both issued by CIC to Wilmington Shipping Company ("WSC"), related to a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00265, entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant,* pending in the Court of Common Pleas of the State of South Carolina, County of Marlboro (the "Wrongful Death Action"),

or a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00264, entitled *Maisha Jacobs, Plaintiff v. Wayne Hunt, Defendant*, pending in the Court of Common Pleas for the State of South Carolina, County of Marlboro (the "Personal Injury Action").

### PARTIES AND JURISDICTION

3.    Plaintiff CIC is an Ohio corporation, with its principal place of business located at 6200 S. Gilmore Road, Fairfield, OH 45014-5141. CIC is an insurance company.

4.    Upon information and belief, Defendant Hunt is currently a citizen and resident of Orangeburg County, South Carolina; however, at the time of the incident which gave rise to the Wrongful Death Action, Hunt was a citizen and resident of Pender County, North Carolina.

5.    Upon information and belief, Levi Owens ("Owens"), is a citizen and resident of Marlboro County, South Carolina, with a residence in Bennettsville, South Carolina.

6.    Owens has been appointed by the Marlboro County Probate Court to act as Personal Representative for the Estate of Christopher McLean.

7.    At all times relevant hereto, Christopher McLean was a citizen and resident of the State of South Carolina.

8.    Upon information and belief, Maisha Jacobs ("Jacobs") is a citizen and resident of Marlboro County, South Carolina.

9.    Defendant Wilmington Shipping Company ("WSC") is a North Carolina corporation, with a principal place of business at 330 Shipyard Blvd., Wilmington, New Hannover County, North Carolina 28412.

10.    At all times relevant hereto, WSC was doing business in North Carolina.

11.    Owens has obtained a default judgment against Hunt in the amount of $5,100,000 in the Wrongful Death Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

2

12.     Jacobs has obtained a default judgment against Hunt in the amount of $110,000 in the Personal Injury Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

13.     There is complete diversity between CIC and the Defendants in this action.

14.     The amount in controversy exceeds $75,000, exclusive of interest and costs, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

15.     Venue is appropriate in the Eastern District of North Carolina, and the Southern Division, pursuant to 28 U.S.C. § 1391, because WSC's principal place of business is in New Hanover County, and the insurance policies at issue were issued in New Hanover County to WSC, both of which are in the Southern Division of the Eastern District of North Carolina.  Further, all efforts at service upon Hunt, which are the central issue in this case, occurred in North Carolina. The issuance of the insurance policies to a North Carolina entity in North Carolina, combined with the purported service upon the party in default in North Carolina, means that both a substantial part of the events giving rise to this action and a substantial part of the property that is the subject of the action is situated in North Carolina.

16.     CIC issued two policies of insurance, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy"), to Wilmington Shipping Company (the Business Auto Policy and Excess Coverage Liability Policy are from time to time hereafter reference collectively as "the Policies") on or around October 1, 2013.  A copy of the Business Auto Policy is attached hereto as Exhibit A and a copy of the Excess Coverage Liability Policy is attached hereto as Exhibit B, and both of the Policies incorporated herein as if set forth fully.

17.     This Court has jurisdiction over the parties and subject matter of the action, and this District Court is the proper venue for this action.

3

## FACTUAL ALLEGATIONS

18.    CIC issued the Policies to WSC on or around October 1, 2013.

19.    The Policies provided certain insurance coverages related to motor vehicles owned, leased and/or operated by or on behalf of WSC, under a Business Auto Coverage Form.

20.    The Business Auto Policy stated that the class of persons and entities defined as "insureds" under the Business Auto Policy includes WSC and "[a]nyone else [other than WSC] while using with [WSC's] permission a covered "auto" [WSC] own[s], hire[s] or borrow[s]." (Exhibit A, Section II(A)(1)(b).)

21.    The Business Auto Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

**2.  Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.**  In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or loss occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.**  Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)**  Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

(Exhibit A, Section IV(A)(2).)

22.     The Excess Coverage Liability Policy incorporates the "terms, definitions, conditions, limitations and exclusions of the [Business Auto Policy] . . ., except for terms and conditions related to duties to investigate or defend, the limits of insurance, the payment of expenses, the premium, cancellation or non-renewal, the policy period, or other provisions inconsistent with the Excess Coverage Liability Policy.  (Exhibit B, Section I(5).)

23.     The Excess Coverage Liability Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

**4.  Duties in the Event of Occurrence, Claim or Suit**

**a.** You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

**(1)** How, when and where the occurrence took place;

**(2)** The names and addresses of injured persons and witnesses;

**(3)** The nature and location of any injury or damage arising out of the occurrence.

**b.** If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

**c.** You must see to it that we and your underlying insurers:

**(1)** Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

**(2)** Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

     **d.** No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

(Exhibit B, Section III(4).)

24.     On or around December 10, 2013, Hunt was involved in a motor vehicle accident (the "Accident") at the intersection of US Highway 15 and SEC-438 in Marlboro County, South Carolina, with a vehicle driven by Jacobs in which Christopher McLean rode as a passenger.

25.     Upon information and belief, McLean died as a result of injuries that he suffered in the Accident.

26.     At the time of the Accident, Hunt was working as an employee of WSC, driving a truck which WSC leased from Penske Truck Leasing Co., Ltd., under a written lease agreement with Penske Truck Leasing Co., Ltd.

27.     Upon information and belief, Owens will seek coverage under the Policies for damages recovered in the Wrongful Death Action.

28.     Jacobs has demanded coverage under the Policies for damages recovered in the Personal Injury Action.

29.     On or around December 8, 2016, Owens filed a Summons and Complaint the Wrongful Death Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Owens for damages as a result of the bodily injury and death suffered by Christopher McLean in the Accident.  A copy of the filed Summons and Complaint in the Owens Action is filed as Exhibit C hereto, and it is incorporated herein by reference.

30.     According to an Affidavit filed with the Marlboro County Clerk of Court, Plaintiff effected service of the Wrongful Death Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the affidavit of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit D hereto, and it is incorporated herein by reference.

31.     In her Affidavit, Wanda Ealy states that SCDMV first attempted service of the Owens Action Summons and Complaint via Certified Mail, which was returned to sender. Early further avers that SCDMV then mailed the Wrongful Death Action Summons and Complaint by open mail. (Exhibit D.)

32.     Although CIC presently has no evidence that Hunt received actual notice of the Summons and Complaint, CIC never received notice of the Wrongful Death Action Summons and Complaint.

33.     On November 16, 2017, Owens filed an Affidavit of Default in the Wrongful Death Action with the Marlboro County Clerk of Court. A copy of the Affidavit of Default in the Wrongful Death Action is filed herewith as Exhibit E, and it is incorporated herein by reference.

34.     Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Wrongful Death Action, CIC never received notice of the Affidavit of Default in the Wrongful Death Action.

35.     Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Wrongful Death Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit F, and it is incorporated herein by reference.

36.     Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Wrongful Death Action, CIC never received notice of the Entry of Default in the Wrongful Death Action.

37.     The Entry of Default in the Wrongful Death Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant." (Exhibit F.)

38.    On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Wrongful Death Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee.  A copy of the Order of Reference for the Wrongful Death Action is filed herewith as Exhibit G, and it is incorporated herein by reference.

39.    Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Wrongful Death Action, CIC never received notice of the Order of Reference for the Wrongful Death Action.

40.    On November 4, 2021, Owens' counsel filed a Notice of Hearing in the Wrongful Death Action, which is attached hereto as Exhibit H.

41.    The Notice of Hearing included an Affidavit of Service which stated that the Notice of Hearing for the Wrongful Death Action was mailed to Hunt's last known address.  (Exhibit H.)

42.    Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Wrongful Death Action, CIC never received Notice of Hearing, nor was CIC ever notified that a damages hearing was scheduled to occur.

43.    On November 17, 2021, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Wrongful Death Action.

44.    On November 18, 2021, the Special Referee filed an Order Awarding Default Judgment in the Wrongful Death Action, which is attached hereto as Exhibit I, and which is incorporated herein by reference.

45.    Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Wrongful Death Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

46.    Recently, CIC learned of the Default Judgment in the Wrongful Death Action against Hunt, from someone other than Hunt.

47.    In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

48.    To-date, Hunt remains subject to the Default Judgment entered in the Wrongful Death Action.

49.    On or around December 8, 2016, Jacobs filed a Summons and Complaint in the Personal Injury Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Jacobs for damages as a result of the bodily injury and death suffered by Jacobs in the Accident.  A copy of the filed Summons and Complaint in the Personal Injury Action is filed as Exhibit J hereto, and it is incorporated herein by reference.

50.    According to a letter filed with the Marlboro County Clerk of Court, Jacobs effected service of the Personal Injury Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the letter of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit K hereto, and it is incorporated herein by reference.

51.    Although CIC presently has no evidence that Hunt received actual notice of the Personal Injury Action Summons and Complaint, CIC never received notice of the Personal Injury Action Summons and Complaint.

52.    On November 16, 2017, Jacobs filed an Affidavit of Default in the Personal Injury Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Personal Injury Action is filed herewith as Exhibit L, and it is incorporated herein by reference.

9

53.     Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Personal Injury Action, CIC never received notice of the Affidavit of Default in the Personal Injury Action.

54.     Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Personal Injury Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit M, and it is incorporated herein by reference.

55.     Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Personal Injury Action, CIC never received notice of the Entry of Default in the Personal Injury Action.

56.     The Entry of Default in the Personal Injury Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant." (Exhibit M.)

57.     On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Personal Injury Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee. A copy of the Order of Reference for the Personal Injury Action is filed herewith as Exhibit N, and it is incorporated herein by reference.

58.     Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Personal Injury Action, CIC never received notice of the Order of Reference for the Personal Injury Action.

59.     The Marlboro Clerk of Court's file does not indicate that Jacobs filed a Notice of Hearing for the Personal Injury Action.

60.    Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Personal Injury Action, CIC never received Notice of Hearing for the Personal Injury Action, nor was CIC ever notified that a damages hearing was scheduled to occur.

61.    On February 21, 2022, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Personal Injury Action.

62.    On March 23, 2022, the Special Referee filed an Order Awarding Default Judgment in the Personal Injury Action, which is attached hereto as Exhibit O, and which is incorporated herein by reference.

63.    Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Personal Injury Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

64.    Recently, CIC learned of the Default Judgment in the Personal Injury Action against Hunt, from someone other than Hunt.

65.    In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

66.    To-date, Hunt remains subject to the Default Judgment entered in the Personal Injury Action.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

67.    CIC incorporates its allegations of Paragraphs 1 through 66, to the extent consistent herewith.

68.    In the Wrongful Death Action Complaint, Owens alleges that Hunt acted negligently, causing McLean's death.  (Exhibit C.)

69.    In the Order Awarding Default Judgment in the Wrongful Death Action, the Special Referee found that Hunt acted negligently and caused damages to Owens, and the Special Referee awarded $5,000,000 in wrongful death damages and $100,000 in survival damages.  (Exhibit I.)

70.    The Special Referee entered a Default Judgment against Hunt in the Wrongful Death Action before CIC ever received notice of the Wrongful Death Action.

71.    In the Personal Injury Action Complaint, Jacobs alleges that Hunt acted negligently or recklessly causing Jacobs' injuries.  (Exhibit J.)

72.    The Special Referee entered a Default Judgment against Hunt in the Personal Injury Action before CIC ever received notice of the Personal Injury Action.

73.    Both of the Policies required Hunt to immediately send CIC copies of any summons or legal paper received regarding any "suit," as defined under the Policy.  (*See* Exhibit A, Section IV(A)(2)(b); *see also* Exhibit B, Excess Liability Coverage Policy, Section III(4).)

74.    Over five years ran from service of the Wrongful Death Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Wrongful Death Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

75.    Over five years ran from service of the Personal Injury Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Personal Injury Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

76.    Based on present information, CIC is unaware of whether Hunt has a good faith reason for failing to provide timely notice to CIC of the Wrongful Death Action, the Personal Injury Action, or related claims.

77.    Regardless of whether Hunt had a good faith reason for failing to timely provide CIC with notice of the Wrongful Death Action and/or the Personal Injury Action, CIC has suffered material prejudice to its ability to investigate and defend the Wrongful Death Action and the Personal Injury Action, in the form of two Default Judgments entered against Hunt.

78.    Based upon the material prejudice to CIC's abilities to investigate or defend Hunt under the Policies, as well as Hunt's failure to comply with a material condition of the Policies, regardless of whether he received actual notice of the Wrongful Death Action or the Personal Injury Action, CIC has no duty to defend or indemnify Hunt under the Policies for the Wrongful Death Action or the Personal Injury Action.

79.    Even if CIC obtains relief from the Default Judgments entered against Hunt in the Wrongful Death Action and the Personal Injury Action, CIC has no obligation to defend or indemnify Hunt, because the delay in provision of notice has materially impaired CIC's ability to investigate and defend the claims.

80.    Defendant Hunt is seeking or likely will seek defense and indemnification for the Wrongful Death Action and the Personal Injury Action.

81.    Upon information and belief, Owens will seek satisfaction from CIC under the Policies for the Default Judgment obtained in the Wrongful Death Action.

82.    Jacobs has sought satisfaction from CIC under the Policies for the Default Judgment obtained in the Personal Injury Action, and CIC files this Action to seek a Declaration as to coverage obligations.

83.    WSC has an interest in this action and must be included as a party, because WSC is the named insured under the Policies, which received delivery of same.  Further, the outcome of this declaration is likely to impact WSC in the form of future premiums and insurability.

84.     This is an action for declaratory judgment brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, et seq.  A justiciable controversy exists between the parties in which the parties have a legal and actual interest, and which is ripe for resolution.

85.     CIC's failure to receive timely notice of the Wrongful Death Action and the Personal Injury Action bars CIC from having any duty of defense or indemnity under the Policies, and CIC has no duty to pay the Default Judgments entered in the Wrongful Death Action or the Personal Injury Action.

86.     The amount of the Default Judgment in the Wrongful Death Action is $5,100,000, and the amount of the Default Judgment in the Personal Injury Action is $110,000; therefore, the amount in controversy in this case exceeds $75,000.

WHEREFORE, CIC respectfully prays for the following:

a)      That the Court determine the rights and obligations of CIC, Hunt, WSC, Owens, and Jacobs under the Policies and determine that CIC has no obligation to defend or indemnify Hunt with respect to the claims presented and the Default Judgment entered in the Wrongful Death Action and the Personal Injury Action;

b)      For a non-jury trial; and

b)      For such other and further relief as this Court deems fair and appropriate.

Respectfully submitted this 8th day of November, 2022,

*Signature Page to Follow*

WILKES ATKINSON & JOYNER, LLC

s/ C. Daniel Atkinson
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767

ATTORNEY FOR PLAINTIFF THE
CINCINNATI INSURANCE COMPANY



# The Cincinnati Insurance Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **AGENCY BILL**

| POLICY NUMBER | ENP 010 40 45 / EBA 010 40 45 |

**NAMED INSURED** WILMINGTON SHIPPING COMPANY, CHESTNUT ENTERPRISES, CHESTNUT ENTERPRISES TRUCKING, EAST CAROLINA BONDED WAREHOUSE

**ADDRESS** REFER TO IA905
(Number & Street, 330 SHIPYARD BLVD
Town, County, WILMINGTON, NC 28412-1837
State & Zip Code)

**Previous Policy Number:**
ENP0104045

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
 Policy number: ENP 010 40 45     FROM: 10-01-2013   TO: 10-01-2014

**Automobile and / or Garage**
 Policy number: EBA 010 40 45     FROM: 10-01-2013   TO: 10-01-2014

Agency   WOODBURY & CO. 32-033
City    WILMINGTON, NC

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA905 | 02/98 | NAMED INSURED SCHEDULE |
| IA4236 | 01/08 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4086 | 05/09 | EARLIER NOTICE OF CANCELLATION PROVIDED BY US |
| IA4117NC | 09/10 | NORTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| AA505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| XSC504 | 05/10 | EXCESS LIABILITY COVERAGE PART DECLARATIONS |

10-22-2013 08:38

Countersigned _____    By _____
                        (Date)                              (Authorized Representative)

IA 509 01 12                                                    **Page  1 of  1**

                                    ENP 010 40 45 / EBA 010 40 45

# THE CINCINNATI INSURANCE COMPANY
## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER:  EBA 010 40 45
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**    **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $        Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $        Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 3, 10 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2, 10 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2, 10 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8, 10 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $        Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8, 10 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $        for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 505 03 06    EBA 010 40 45    Page 1 of 3

017

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |
| AA4171 | 11/05 | ADDITIONAL INSURED BY CONTRACT |
| AA4172 | 09/09 | BLANKET WAIVER OF SUBROGATION - AUTO |
| AA4177 | 03/06 | LESSOR - ADDITIONAL INSURED AND LOSS PAYEE |
| AA4178 | 04/06 | TRUCKERS - UNIFORM INTERMODAL INTERCHANGE ENDORSEMENT FORM UIIE-1 |
| AA4214 | 08/07 | COVERED AUTO DESIGNATION SYMBOL |
| AA4231 | 08/08 | SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND SIX |
| AA4243NC | 02/10 | NORTH CAROLINA UNINSURED / UNDERINSURED MOTORISTS COVERAGE NOTICE |
| AA4263 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| AP415NC | 01/09 | NORTH CAROLINA SELECTION OF HIGHER UNINSURED/UNDERINSURED MOTORISTS COVERAGE LIMITS |
| CA0126 | 07/10 | NORTH CAROLINA CHANGES |
| CA2116 | 04/10 | NORTH CAROLINA UNINSURED MOTORISTS COVERAGE |
| CA9944 | 12/93 | LOSS PAYABLE CLAUSE |
| AA261 | 03/06 | AUTO MEDICAL PAYMENTS COVERAGE |
| AA265 | 04/09 | CINCIPLUS BUSINESS AUTO EXPANDED COVERAGE (XC®) ENDORSEMENT |
| AA273 | 03/06 | TRUCKERS ENDORSEMENT |

* This policy may be subject to final audit

AA 505 03 06 <span>Includes copyrighted material of Insurance Services Office, Inc., with its permission.</span> EBA 010 40 45    Page 2 of 3

Case 7:22-cv-00189-M   Document 1-5   Filed 11/08/22   Page 48 of 124    018

JA423

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                              **Beginning on Page**

Description of Covered Auto Designation Symbols..............................................................1
Owned Autos You Acquire After the Policy Begins ..........................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos.............................................................................................. 2

**SECTION II - LIABILITY COVERAGE**

Coverage................................................................................................................................ 2
Who is an Insured ................................................................................................................ 2
Coverage Extensions
    Supplementary Payments ............................................................................................ 2
    Out of State .................................................................................................................... 3
Exclusions ............................................................................................................................. 3
Limit of Insurance ............................................................................................................... 5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage................................................................................................................................ 7
Exclusions ............................................................................................................................. 7
Limit of Insurance ............................................................................................................... 8
Deductible.............................................................................................................................. 8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
    Appraisal for Physical Damage Loss ......................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss .............................................. 9
    Legal Action Against Us .............................................................................................. 9
    Loss Payment - Physical Damage Coverages........................................................... 9
    Transfer of Rights of Recovery Against Others to Us........................................... 10
General Conditions
    Bankruptcy.................................................................................................................... 10
    Concealment, Misrepresentation or Fraud.............................................................. 10
    Liberalization ............................................................................................................... 10
    No Benefit to Bailee - Physical Damage Coverages............................................... 10
    Other Insurance ........................................................................................................... 10
    Premium Audit.............................................................................................................. 10
    Policy Period, Coverage Territory ............................................................................ 10
    Two or More Coverage Forms or Policies Issued by Us........................................ 11

**SECTION V - DEFINITIONS** ............................................................................................ 11

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.   EBA  010  40  45    **Page  3  of  3**
AA 505 03 06
Case 7:22-cv-00189-M   Document 1-5   Filed 11/08/22   Page 49 of 124    **019**

**JA424**

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

## SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b.** **Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B.** **Exclusions**

This insurance does not apply to any of the following:

**1.** **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3.** **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** **Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06

**JA426**

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 8 of 14

Case 7:22-cv-00189-M     Document 1-5     Filed 11/08/22     Page 62 of 124     **022**

**JA427**

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**AA 101 03 06**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 9 of 14**

Case 7:22-cv-00189-M    Document 1-5    Filed 11/08/22    Page 63 of 124    **023**

**JA428**

# THE CINCINNATI INSURANCE COMPANY

## EXCESS LIABILITY COVERAGE PART DECLARATIONS

Previous Policy Number
ENP0104045

Attached to and forming part of POLICY NUMBER: ENP 010 40 45     Effective Date: 10-01-2013

NAMED INSURED is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**

| | |
|---|---|
| Each Occurrence Limit | $4,000,000 |
| Aggregate Limit | $4,000,000 |

**ADVANCE PREMIUM** $8,061
Applicable to Premium, if box is checked:

☐ Subject to Annual Adjustment
☐ Subject to Audit as follows:

| Premium Basis | Estimated Exposure | Each Unit of Exposure Rate Per: | Minimum Premium |
|---|---|---|---|
| | | | |

**SCHEDULE OF UNDERLYING INSURANCE**

| Underlying Insurance, Carrier, Policy Number & Term: | | Underlying Limits: | |
|---|---|---|---|
| a) COMMERCE & INDUSTRY INS<br>WC051754685<br>10-01-2012 TO 10-01-2013 | Employer's Liability | Bodily Injury by Accident:<br>$  1,000,000  Each Accident<br>Bodily Injury by Disease:<br>$  1,000,000  Each Employee<br>Bodily Injury by Disease:<br>$  1,000,000  Policy Limit | |
| b) CINCINNATI INS. CO.<br>EBA 010 40 45<br>10-01-2013 TO 10-01-2014 | Automobile Liability<br>Including:<br>☐ Owned Autos<br>☐ Non-Owned Autos<br>☐ Hired Autos<br>☒ Any Auto | Bodily Injury Liability Limit:<br>$          Each Person<br>$          Each Accident<br>Property Damage Liability Limit:<br>$          Each Accident<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$  1,000,000   Each Accident | |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| XS101UM | 12/04 | EXCESS LIABILITY - TABLE OF CONTENTS |
| XS304 | 12/04 | POLLUTANT EXCLUSION |
| XS306 | 09/02 | EMPLOYMENT - RELATED PRACTICES EXCLUSION |
| XS409NC | 09/02 | NORTH CAROLINA CHANGES |

# EXCESS LIABILITY - TABLE OF CONTENTS

**Coverage Part Provision:**      **Begins on Page:**

Preamble ........................................................................................................ 2

**SECTION I - COVERAGE** ............................................................................... 2

    **A. Insuring Agreement** ............................................................................ 2

    **B. Exclusions:** ........................................................................................ 2

        **1.** Asbestos ................................................................................... 2
        **2.** Distribution of Material in Violation of Statutes .......................... 3
        **3.** Electronic Data ........................................................................ 3
        **4.** Pollutant - Auto ....................................................................... 3
        **5.** Pollutant - Other Than Auto ..................................................... 4
        **6.** Underlying Insurance ............................................................... 5
        **7.** Uninsured or Underinsured Motorists ....................................... 5
        **8.** War ........................................................................................ 5

    **C. Defense and Supplementary Payments** ............................................ 5

**SECTION II - LIMITS OF INSURANCE** ......................................................... 6

**SECTION III - CONDITIONS:** ....................................................................... 7

        **1.** Appeals ................................................................................... 7
        **2.** Audit ........................................................................................ 7
        **3.** Bankruptcy .............................................................................. 7
        **4.** Duties in the Event of Occurrence, Claim or Suit ...................... 7
        **5.** First Named Insured ................................................................. 7
        **6.** Liberalization ........................................................................... 7
        **7.** Loss Payments ........................................................................ 8
        **8.** Maintenance of Underlying Insurance ...................................... 8
        **9.** Other Insurance ...................................................................... 8
        **10.** Premium ................................................................................ 8
        **11.** Representations ..................................................................... 8
        **12.** Transfer of Rights of Recovery Against Others to Us .............. 8
        **13.** When We Do Not Renew ........................................................ 9

**SECTION IV - DEFINITIONS:** ....................................................................... 9

        **1.** "Authorized representative" ..................................................... 9
        **2.** "Coverage term" ..................................................................... 9
        **3.** "Electronic data" ..................................................................... 9
        **4.** "Hostile fire" ............................................................................ 9
        **5.** "Insured" ................................................................................. 9
        **6.** "Loss" ..................................................................................... 10
        **7.** "Pollutants" ............................................................................. 10
        **8.** "Underlying insurance" ............................................................ 10

    **NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ............... 11

XS 101 UM 12 04        Includes copyrighted material of Insurance        Page 1 of 12
Services Office, Inc. with its permission.

of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor;

**(b)** Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **b.** does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

**6. Underlying Insurance**

Any liability not covered by "underlying insurance" for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

**7. Uninsured or Underinsured Motorists**

Any liability or obligation to any "insured" or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**8. War**

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**C. Defense and Supplementary Payments**

**1.** We will have the right and duty to defend the "insured" against any suit seeking damages because of injury or damage to which this insurance applies when the applicable limits of "underlying insurance" and any other insurance have been exhausted by payment of claims. We will have no duty to defend the "insured" against any suit seeking damages for injury or damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**2.** We have no duty to investigate, settle or defend any claim or suit other than those

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 5 of 12

Case 7:22-cv-00189-M    Document 1-6    Filed 11/08/22    Page 6 of 16    **026**

**JA431**

circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or suit to which this insurance applies. If we exercise this right, we will do so at our expense.

3.  If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

    a.  All expenses we incur.

    b.  The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

    c.  The cost of bonds to appeal a judgment or award in any claim or suit we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

    d.  Reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or suit, including the actual loss of earnings.

    e.  All costs taxed against the "insured" in the suit.

4.  If there is no underlying insurer obligated to do so, we will pay the following expenses for a "loss" to which this insurance applies:

    a.  Prejudgment interest awarded against the "insured" on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    b.  All interest awarded against the "insured" on the full amount of any judgment that accrues:

        (1)  After entry of the judgment; and

        (2)  Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

5.  If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

These payments will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**SECTION II - LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  "Insureds";

    b.  Claims made or suits brought;

    c.  Persons or organizations making claims or bringing suits; or

    d.  Coverages provided under this Coverage Part.

2.  The Limits of Insurance of this Coverage Part apply in excess of the "underlying insurance" limits specified in the Schedule of Underlying Insurance.

3.  The Aggregate Limit specified in the Declarations is the most we will pay for "loss" to which this insurance applies. The Aggregate Limit of this Coverage Part applies to "loss" in the same manner as the aggregate limit in the "underlying insurance" applies to "loss". When the "underlying insurance" does not apply an aggregate limit of "loss", the Aggregate Limit of this Coverage Part will not apply to "loss". When the "underlying insurance" does apply an aggregate limit to "loss", the Aggregate Limit of this Coverage Part will apply to "loss".

4.  Subject to **3.** above, the Each Occurrence Limit specified in the Declarations is the most we will pay for "loss" arising out of any one occurrence.

    We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for Each Occurrence because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5.  The following provision applies only if this Coverage Part contains an Aggregate Limit of Insurance which applies to the "loss".

    If the Each Occurrence Limit of Insurance of the "underlying insurance" is less than as stated in the Schedule of Underlying Insurance because the aggregate limits of the "underlying insurance" have been reduced, this Coverage Part becomes excess of such re-

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 6 of 12

Case 7:22-cv-00189-M     Document 1-6     Filed 11/08/22     Page 7 of 16     **027**

**JA432**

duced limit of insurance if such reduction is solely the result of injury or damage occurring after the inception date of this Coverage Part and not before. This provision does not increase the Limits of Insurance of this Coverage Part.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION III - CONDITIONS

### 1. Appeals

We may elect to appeal a judgment against any "insured" if the judgment exceeds the underlying limits of insurance. If we appeal, we will do so at our own expense, but in no event shall this provision increase our liability beyond:

**a.** Our applicable Limits of Insurance as shown in the Declarations;

**b.** Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments;** and

**c.** The expense of such appeal.

### 2. Audit

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

**a.** The premium shown in the Declarations as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

However, in no event will the earned premium be less than the Minimum Premium stated in the Declarations.

**b.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 3. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve us of any obligations under this Coverage Part.

### 4. Duties in the Event of Occurrence, Claim or Suit

**a.** You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

**(1)** How, when and where the occurrence took place;

**(2)** The names and addresses of injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the occurrence.

**b.** If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

**c.** You must see to it that we and your underlying insurers:

**(1)** Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

**(2)** Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

**d.** No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

### 5. First Named Insured

The person or organization first named in the Declarations will act on behalf of all other "insureds" where indicated in this Coverage Part.

### 6. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF MARLBORO | ) C/A NO.: 2016-CP-34-00265 |
| | ) |
| LEVI OWENS AS PERSONAL | ) |
| REPRESENTATIVE OF THE ESTATE OF | ) |
| CHRISTOPHER MCLEAN, | ) |
| | ) |
| Plaintiff, | ) **SUMMONS** |
| | ) **(Jury Trial requested)** |
| -vs- | ) |
| | ) |
| WAYNE HUNT, | ) |
| | ) |
| Defendant. | ) |

**TO:    THE DEFENDANTS ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in this Complaint.

PETERS, MURDAUGH, PARKER,  ELTZROTH
& DETRICK, P.A.

BY:

R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

✓Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 8, 2016

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF MARLBORO ) | C/A NO.: 2016-CP-34-00265 |
| ) | |
| LEVI OWENS AS PERSONAL ) | |
| REPRESENTATIVE FOR THE ) | |
| ESTATE OF CHRISTOPHER ) | **COMPLAINT** |
| MCLEAN, ) | **(Jury Trial requested)** |
| ) | **(Wrongful Death)** |
| Plaintiff, ) | **(Survival)** |
| ) | |
| vs. ) | |
| ) | |
| WAYNE HUNT. ) | |
| ) | |
| Defendant. ) | |

**The plaintiff, complaining of the defendant, alleges:**

1.    The Plaintiff has been duly appointed Personal Representative of the Estate of Christopher McLean by the Marlboro County Probate Court, and he brings this action for the wrongful death and conscious pain and suffering of Christopher McLean on behalf of the statutory beneficiaries.

2.    The defendant is a citizen and resident of a State other than South Carolina.

3.    That on December 10, 2013, the deceased was a passenger in a vehicle traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, crossed the center line and struck the vehicle the plaintiff was a passenger in; as a result of the collision Christopher McLean was seriously injured and did thereafter die. Prior to his death Christopher McLean endured serious conscious pain and suffering.

4.    That the direct and proximate cause of the plaintiff's personal injuries and death was the negligent and reckless conduct of the defendant in the following particulars:

   a.    In failing to keep a proper lookout;

   b.    In failing to keep his vehicle within his lane of travel;

c.    In traveling too fast for conditions then and there existing;

d.    In failing to keep his vehicle under proper control;

e.    In failing to stop, slow or turn his vehicle to avoid colliding with the plaintiff;

f.    In operating an automobile in utter disregard for the safety of others on the highway;

g.    In failing to yield the right of way;

h.    In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;

i.    In failing to apply his brakes, if he had any;

j.    In failing to take evasive action to avoid the collision;

k.    In operating his vehicle in utter disregard for the safety of others on the highway.

5.    As a result of the above conduct of the defendant, Christopher McLean sustained serious and severe injuries which caused conscious pain and suffering and resulted in his wrongful death, resulting in damages to him. That the beneficiaries of Christopher McLean have endured grief, sorrow, shock, wounded feelings and loss of love and companionship.

WHEREFORE, the Plaintiff prays for judgment against the defendants for actual damages and for whatever additional and further relief this court deems just and proper all in an amount determined fair and reasonable by a jury.

PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A.

BY:

R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

✓Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 6, 2016



# S. C. DEPARTMENT OF
# MOTOR VEHICLES

OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax :( 803) 896-9901*

February 10, 2017

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

**Re:**    *Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt:* **Case No.: 2016-CP-34-00265, DMV 17-73**

Dear Mr. Hunt:

In accordance with the provisions of Section 15-9-350 of the Code of Laws of South Carolina (1976), this office has received the enclosed Summons and Complaint in the above-entitled action. Under South Carolina law, this has the same legal effect as if you had been served with these documents personally.

Section 15-9-350 of the 1976 Code of Laws of South Carolina, as amended, provides that:

> "The acceptance by a nonresident of the rights and privileges conferred by the laws in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways, the streets of any incorporated municipality or the public roads of this State or anywhere within this State, or the operation by such nonresident of a motor vehicle on any such public highways, streets, or public roads or anywhere within this State other than as so permitted or regulated shall be deemed equivalent to the appointment by such nonresident of the Director of the Department of Motor Vehicles or of his successor in office to be his true and lawful attorney upon whom may be served all summons or other lawful process in any action or proceeding against him growing out of any accident or collision in which such nonresident may be involved by reason of the operation by him, for him or under his control or direction, express or implied, of a motor vehicle on such public highways, Streets, or public roads or anywhere within this State. Such acceptance or operation shall be a signification of his agreement that any such process against him shall be of the same legal force and validity as if served on him personally."

Sincerely,

*Wanda R. Ealy*

Wanda R. Ealy, Paralegal Assistant
Office of General Counsel
For: Director, South Carolina Department of Motor Vehicles

Enclosure

cc:    R. Alexander Murdaugh, Esquire
      P. O. Box 457
      Hampton, SC 29924



RECEIVED
FEB 1 3 2017

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34-00265 |
| | ) | |
| LEVI OWENS AS PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE OF | ) | |
| CHRISTOPHER MCLEAN, | ) | |
| | ) | **AFFIDAVIT OF DEFAULT** |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| WAYNE HUNT. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PERSONALLY appeared before me, **R. Alexander Murdaugh**, who upon being duly

sworn, deposes and says:

That he is the attorney for the Plaintiff in the above entitled action; that no Answer,

Demurrer or Notice of Appearance was timely served on him or on behalf of the Plaintiff, Levi

Owens as Personal Representative of the Estate of Christopher McLean, as required by the

Summons in this action; that the Summons and Complaint were served upon the Defendant,

Wayne Hunt by the South Carolina Department of Motor Vehicles on February 10, 2017, as

shown by the Acceptance of Service in this case; that more than thirty (30) days have elapsed

since the service aforesaid, exclusive of the day of such service.

_____

R. Alexander Murdaugh

SWORN to before me this

__28__ day of __September__, 2017

_____

Notary Public for South Carolina

My Commission Expires: __4/4/2023__

ANITA R. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
2017 NOV 16 PM 3 41
FILED

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF MARLBORO               )     C/A NO.: 2016-CP-34-00265
                                 )
LEVI OWENS AS PERSONAL           )
REPRESENTATIVE OF THE ESTATE     )
OF CHRISTOPHER MCLEAN,           )
                                 )
              Plaintiff,         )
                                 )          **ENTRY OF DEFAULT**
       -vs-                      )
                                 )
WAYNE HUNT,                      )
                                 )
              Defendant.         )
_____)

It appears from the Affidavit of Default and other evidence presented by counsel for

plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt

on February 10, 2017 and that more than 30 days have elapsed and no timely answer has been

made by the defendant. Plaintiff is therefore entitled to an Entry of Default.

It is hereby **ORDERED** that the Clerk of Court for Marlboro County make an entry of

default on the roster of case by the name of defendant, Wayne Hunt.

**IT IS SO ORDERED.**

_____
The Honorable Paul M. Burch
Judge, Fourth Judicial Circuit


_____, South Carolina
September _18__, 2017

ANITA M. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.

2017 NOV 16 PM 3 45

FILED

055

**JA440**

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF MARLBORO | ) C/A NO.: 2016-CP-34-00265 |
| | ) |
| LEVI OWENS AS PERSONAL | ) |
| REPRESENTATIVE OF THE ESTATE | ) |
| OF CHRISTOPHER MCLEAN, | ) |
| | ) |
| Plaintiff, | ) **ORDER OF REFERENCE** |
| | ) |
| -vs- | ) |
| | ) |
| WAYNE HUNT, | ) |
| | ) |
| Defendant(s). | ) |

This matter comes before me on motion of Alex Murdaugh to refer the matter to a Special

Referee in order to determine the amount of damages.

It is, therefore, ORDERED that this matter be referred to Douglas Jennings, Jr. with finality

to take testimony and determine the amount of damages. Any motions filed after this order shall be

heard by the referee.

The Honorable Paul M. Burch
Fourth Judicial Circuit

**WE MOVE**:
PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P. A.

BY: _____

R. Alexander Murdaugh
P. O. Box 457
Hampton, SC 29924
(803) 943-2111
ATTORNEYS FOR PLAINTIFF

**I CONSENT TO SERVE AS SPECIAL REFEREE**:

Douglas Jennings, Jr.
Douglas Jennings Law Firm, LLC
P.O. Drawer 995
Bennettsville, SC 29512-0995

ANITA H. WILLIAMS
CLERK OF COURT
MARLBORO COUNTY, S.C.
2018 OCT 22 PM 3 20
FILED

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF MARLBORO** | ) | **FOURTH JUDICIAL CIRCUIT** |
| | ) | |
| **Levi Owens as personal representative of** | ) | No. 2016-CP-34-00265 |
| **the Estate of Christopher McLean,** | ) | |
| | ) | **Notice of Hearing** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**To:    Wayne Hunt**

**Please take notice** that a damages hearing in this matter will be held on November 17, 2021, at 10:00 a.m. before Douglas Jennings, Jr., Special Referee, at 151 Broad Street, Bennettsville, SC 29512.

Dated: 11/4/2021

By: Jason Scott Luck

Jay Parker
P.O. Box 457
Hampton, SC 29924
*and*
Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law
**Attorneys for Plaintiff**

ELECTRONICALLY FILED - 2021 Nov 04 10:15 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

ELECTRONICALLY FILED - 2021 Nov 04 10:15 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF MARLBORO** | ) | **FOURTH JUDICIAL CIRCUIT** |
| | ) | |
| **Levi Owens as personal representative of** | ) | No. 2016-CP-34-00265 |
| **the Estate of Christopher McLean,** | ) | |
| | ) | **Affidavit of Service** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |

The undersigned certifies that, pursuant to Rule 55(b)(2), SCRCP, on the date below he deposited a copy of the Notice of Hearing in the U.S. Mail, first class, postage prepaid, addressed as follows, which is the last known address of the Defendant: Wayne Hunt, 16671 NC Highway 210, Rocky Point, NC 28457-8994.

Dated: 11/4/2021

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**SWORN TO AND SUBSCRIBED BEFORE ME**
this 4 Day of **NOV.** , 2021
Lindsay Williams
(SEAL)
NOTARY PUBLIC FOR SOUTH CAROLINA
My Commission Expires: October 4, 2022

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF MARLBORO | FOURTH JUDICIAL CIRCUIT |

**Levi Owens as Personal Representative of the Estate of Christopher McLean,**

        Plaintiff,

        v.

**Wayne Hunt,**

        Defendant.

No. 2016-CP-34-00265

**ORDER AWARDING DEFAULT JUDGMENT**

## INTRODUCTION

This matter was referred to me pursuant to Judge Paul M. Burch's Order of Reference dated October 22, 2018 and Entry of Default dated November 16, 2017. The purpose of the reference was to conduct a hearing to ascertain the amount of the Plaintiff's damages in this default matter and to issue a final order awarding damages against Defendant.

After several delays which were unavoidable, I conducted the damages hearing on November 17, 2021. Plaintiff appeared with his attorneys, John E. Parker, Jr. and Jason Scott Luck. Defendant did not appear, either personally or through counsel, despite notice to him from Plaintiff's counsel. As evidence of notice of this hearing being provided to Defendant, Attorney Jason Luck filed an Affidavit of Service certifying that, pursuant to Rule 55(b)(2), SCRCP, on November 4, 2021, a Notice of Hearing was sent to Defendant Wayne Hunt at his last known address via First Class U.S. Mail. There has been no return of that notice, nor has Defendant responded or appeared. I therefore proceeded with the hearing in Defendant's absence.

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

## SUMMARY OF THE EVIDENCE

This case arises out of a motor vehicle collision that occurred on December 10, 2013 on U.S. Highway 15 outside of McColl, South Carolina in Marlboro County. Christopher McLean, the 19-year-old son of Levi Owens(father) and Wanda Breeden (mother), was a passenger in a vehicle which was traveling in a southeasterly direction on US Hwy 15 attempting to make a left turn onto a secondary road when a truck being driven by Defendant Wayne Hunt traveling in a northerly direction on US Hwy 15 at a high rate of speed, crossed the center line of the road and violently struck the vehicle in which Christopher McLean was a passenger. As a result, Christopher McLean was gravely injured and was transported by helicopter to McLeod Regional Medical Center in Florence, SC, where he thereafter died as a result of the multiple trauma from this collision. According to the death certificate, Christopher McLean (hereinafter "decedent") died approximately six(6) hours after the collision as a result of the multiple trauma, including a closed head injury, a ruptured diaphragm, a ruptured bladder, and hypovolemic shock.

Christopher McLean was a 19-year-old unmarried recent graduate of Marlboro County High School with no children. He was intestate and is survived by his parents as his statutory beneficiaries and heirs at law. Plaintiff Levi Owens, father of decedent, was duly appointed as Personal Representative of the Estate by the Marlboro County Probate Judge on September 10, 2014. Plaintiff thereafter filed suit for the Wrongful Death of his deceased son and asserting the survival claim for the conscious pain and suffering of decedent. According to the prior Order of Circuit Judge Paul M. Burch filed November 16, 2017, the Summons and Complaint were properly served upon Defendant Wayne Hunt on February 10, 2017, and no timely response or answer was made by or on behalf of the defendant. Judge Burch thereafter ordered that Plaintiff was entitled

to an Entry of Default, and subsequently referred the matter to the undersigned Special Referee with finality to take testimony and determine the amount of damages to be awarded to Plaintiff in this wrongful death and survival case. *See Order of Reference filed 10/22/2018 by Circuit Judge Paul M. Burch.* By virtue of his default, Defendant has admitted that he was negligent and reckless with respect to the collision and that his negligence and recklessness proximately caused the decedent's injuries and death.

The Plaintiff was the only witness who testified at the hearing and I found his testimony to be very genuine and convincing and to unquestionably establish all the elements of damages in a wrongful death and survival case. In addition, Plaintiff introduced the following exhibits without objection:

1. Death certificate of the decedent.

2. Summary of Plaintiff's medical and funeral expenses totaling $62,323.88.

### FINDINGS OF FACT

Based on the foregoing, I make the following findings of fact:

1. The decedent was 19 years old at the time of his untimely death, was single and without children, and enjoyed a particularly close, wholesome and loving relationship with his parents;

2. The decedent was in excellent health before the subject collision and had frequently engaged in exercise and sports activities with his father.

3. On December 10, 2013, the decedent was a passenger in a car that was negligently and recklessly struck by a truck operated by Defendant.

4. The collision was directly and proximately caused by Defendant's negligence, carelessness and recklessness.

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

5. The collision directly caused the decedent to suffer very serious bodily injuries which resulted in conscious pain and suffering, and which ultimately caused his wrongful death.

6. Defendant's negligence and recklessness caused pecuniary loss to the Plaintiff as outlined below, as well as significant mental shock and suffering, wounded feelings, grief, sorrow, and the loss of his son's society and companionship.

7. The decedent's estate incurred bills totaling at least $48,232.00 for medical treatment of the serious bodily injuries sustained in the collision.

8. The Plaintiff incurred funeral and burial expenses totaling $14,091.88.

<u>CONCLUSIONS OF LAW</u>

Based on the foregoing, I reach the following conclusions of law:

1. Defendant was negligent and reckless, which directly and proximately caused the collision, the decedent's injuries, conscious pain and suffering, and his wrongful death, and all damages which Plaintiff is entitled to under South Carolina law.

2. As a result of Defendant's negligence and recklessness, Plaintiff sustained actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars, with $100,000.00 to be apportioned as survival damages to the estate and $5,000,000.00 to be apportioned as wrongful death damages to the statutory beneficiaries, itemized as follows:

    a. Wrongful Death

        i. Pecuniary loss (i.e., funeral expense): $14,091.88

        ii. Mental shock and suffering: $1,000,000.00

        iii. Wounded feelings: $1,000,000.00

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

      iv.  Grief and sorrow: $1,000,000.00

      v.  Loss of society and companionship: $1,935.908.12

  b.  Survival

      i.  Medical expenses:  $48,232.00

      ii.  Conscious Pain, suffering, mental distress: $51,768.00

3.  I do not find grounds to justify an award of punitive damages against Defendant.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiff is hereby awarded a final judgment against Defendant for actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars.

**AND IT IS SO ORDERED.**

_____
Douglas Jennings, Jr.
Special Referee

November  _18_, 2021

Bennettsville, South Carolina

**ORIGINAL**

**FATAL**

## SOUTH CAROLINA TRAFFIC COLLISION REPORT FORM TR-310 (Rev. 11/2011)

| SOUTH CAROLINA OPS/DHS & DMV USE ONLY | | | | | | Page # 1 | | # Of Units 02 | Amended - Accident not Notified on Original Report Corrected | | Notified 1629 | Arrived 1650 |

| Date 12-10-2013 | Time of Collision 1625 | County 35 | 1- Interstate 2- US Primary 3- SC Primary | 4- Secondary 5- County 6- PP | Collision Location (Rt. # / Name) 5 15 / | | 1- Main Line 2- Alternate 3- Spur | 6- Connection 7- Business | Miles .97 | Dir. N E S W | In (Near) City or Town of: MCCOLL |

| Lane # / Div. | Distance Other | Direction | 1- Interstate 2- US Primary 3- SC Primary | 4- Secondary 5- County 6- Other | Base Intersection (Rt. # / Name) 438 / OAK HILL RD | | 1- Main Line 2- Alternate 3- Spur | 6- Connection 7- Business 9- Other | GPS COORDINATES 00 00 00.00" DEGREES MINUTES SECONDS | | |
| 1 2 | Miles (Feet) 5 | N E S W | | | | From | | | Latitude 34 41 12.82 | | |
| RR I.d. | From N E S W 1- Entrance 2- Exit | To N E S W | 1- Interstate 2- US Primary 3- SC Primary | 4- Secondary 5- County 6- Other | Second Intersection (Rt. # / Name) 534 / MCGREGOR RD | Toward | 1- Main Line 2- Alternate 3- Spur | 6- Connection 7- Business 9- Other | Longitude 79 32 07.73 | | |

| E-641734 | | | Driver/Pedestrian's Full Name HUNT WAYNE | | | E-642062 | | | Driver/Pedestrian's Full Name JACOBS MAISHA MONE | | |
| Unit # 01 | Sex M | Race B | Street 1667 1 NC HIGHWAY 210 | | | Unit # 02 | Sex F | Race B | Street 504 SOCIETY ST | | |
| #Occ 1 | Birth Date | | City, State, & Zip ROCKY POINT NC 28457-8994 | | | #Occ 2 | Birth Date | | City, State, Zip CLIO SC 29525 3531 | | |
| State NC | Driver's License # | Class A | Insurance Company LIBERTY MUTUAL | | | State SC | Driver's License # | Class D | Insurance Company GMAC | | |
| Year 2011 | Body TR | Vehicle Make FRHT | VIN # 1FUJGLDR4BSAY1128 | | | Year 1999 | Body SU | Vehicle Make JEEP | VIN # 1J4G258S1X1212121 | | |
| State IN | Year 2014 | License Plate # 1142486 | Owner's D.L. # NONE | | | State NC | Year 2014 | License Plate # CAD4068 | Owner's D.L. # UNKNOWN | | |
| Home Telephone (810) 231 2593 | | Owner's Full Name PENSKE TRUCK LEASING | | | | Home Telephone | | Owner's Full Name BREEDEN VALONDREA | | | |
| Bus. Telephone (910) 231 2719 | | Street 4000 CLINE AVE | | | | Bus. Telephone | | Street 1116 JEFFERSON ST | | | |
| Contributed To Collision Yes No | | City, State, & Zip EAST CHICAGO IN 46312 | | | | Contributed To Collision Yes No | | City, State, & Zip HIGH POINT NC 27260 | | | |
| Estimated Speed 50 | Speed Limit 55 | C.D.L. Req (Yes No) | Summons # | T/A'S Req (Yes No) Code | Alc/Drg Info (see back) Yes No Summons # Code Towed By Yes No WATSONS | | Estimated Speed 10 | Speed Limit 55 | C.D.L. Req Yes No Summons # Code | T/A'S Req Yes No Summons # Code | Alc/Drg Info (see back) Yes No Towed By Yes No WEBSTERS |

| | | | Driver/Pedestrian's Full Name | | | State | Year | License Plate # | Owner's D.L. # | | |
| Unit # | Sex | Race | Street | | | Home Telephone | | Owner's Full Name | | | |
| #Occ | Birth Date | | City, State, & Zip | | | Bus. Telephone | | Street | | | |
| State | Driver's License # | Class | Insurance Company | | | Contributed To Collision Yes No | | City, State, & Zip | | | |
| Year | Body | Vehicle Make | VIN # | | | Estimated Speed | Speed Limit | C.D.L. Req Yes No Summons # | T/A'S Req Yes No Code Summons # | Alc/Drg Info (see back) Yes No Code Towed By Yes No | |
| Dir. of Travel | Unit 1: (N) S E W | | Unit 2: N S (E) W | Unit 3: N S E W | | | | | | | |



| | Unit 1 Dam. | Unit 2 Dam. | Unit 3 Dam. | Prop. Dam. 1 | Prop. Dam. 2 |
| | $ 10000 | $ 3000 | $ | | |
| | Property Owner/Witness RHYNE TIM | | | Property Owner/Witness | |
| | Address 12560 LAKEWOOD DR LAURINBU | | | Address | |
| | State NC | Zip 28352 | Phone 910 276 4341 | State Zip | Phone |

**DITCH**

N

**UNIT 2**

**SEC-438**

**UNIT 1**

15

**Photo:** Describe What Happened (Refer to Units by Number)

UNIT 1 WAS TRAVELING NORTH ON US-15. UNIT 2 WAS ATTEMPTING TO MAKE A LEFT TURN ONTO SEC-438 TRAVELING EAST. DRIVER 2, FAILING TO YIELD PULLED INTO THE PATH OF UNIT 1. UNIT 1 STRUCK UNIT 2 IN THE RIGHT SIDE CAUSING UNIT 1 AND UNIT 2 TO RUN OFF THE RIGHT SIDE OF THE ROAD STRIKING A DITCH.

NOTICE - THE TR-310 IS FOR STATISTICAL REPORTING PURPOSES ONLY AND IS A REFLECTION OF THE OFFICER'S BEST KNOWLEDGE, OPINION AND BELIEF COVERING THE COLLISION BUT NO WARRENT IS MADE AS TO THE FACTUAL ACCURACY THEREOF.

| Investigating Officer's Name DICKENS - C M | Rank LCPL | Badge # T 7 8 7 | Jurisdiction Code H P O 5 | Review Date 12-11-2013 | Reviewer's Name W M Clemmons | Rank Cpl | Internal Agency Code 13RL155274 |

044

JA449

**ORIGINAL**

| | | | | | |
|---|---|---|---|---|---|
| SOUTH CAROLINA DPS AND DMV USE ONLY | | | South Carolina Uniform Traffic Collision Report (For Investigating Officers) Supplemental Bus & Truck Collision Report (Revised 04/2009) | Amended/Xerox Copy of Original Report | Corrected |
| | | | | Page ___1___ of ___1___ Pages | |

| Date | Time | County | Route Category | Accident Location (Route Number and Name if Any) | Auxiliary |
|---|---|---|---|---|---|
| 12-10-2013 | 1625 | 35 | 1-Interstate  4-Secondary 2-US Primary  5-County 3-SC Primary  6-PF | DN 15  / | 1-Mainline  6-Connection 2-Alternate  7-Business 5-Spur  9-Other |

**IF THIS CRASH INCLUDES:**

Any truck that has a gross vehicle weight rating (GVWR) of more than 10,000 pounds or a gross combination weight rating (GCWR) of more than 10,000 pounds and is used on public highways: → **1**

**OR**

Any motor vehicle with seating to transport nine (9) or more people, including the driver

**OR**

Any motor vehicle (regardless of weight) displaying a hazardous materials placard:

**AND RESULTS IN:**

Any fatality or fatalities → **1**

Any person(s) transported for immediate medical services → **2**

Number of Vehicles Towed

Any disabled motor vehicle(s) towed away from the scene → **2**

**Complete This Form Only If:**

One or More Qualifying Vehicle(s) was Involved – AND

One or More Qualifying Injuries/Fatalities was Sustained - OR

One or More Disabled Vehicle(s) was Towed Away From the Scene

Total Number of Supplemental Forms Required for this Collision — **1**

Unit Number ___01___    FR-10 Number E-641734

**Carrier Information**

Name: PENSKE TRUCK LEASING

Address: 4000 CLINE AVE

City: EAST CHICAGO    State: | I | N |    Zip: | 4 | 6 | 3 | 1 | 2 |

Business Phone Number: | 9 | 1 | 0 | | 2 | 3 | 1 | | 2 | 5 | 9 | 3 |

**Identification Numbers**

U.S. DOT | 0 | 5 | 2 | 2 | 7 | 6 | 2 |    None = 0

State Number | | | S | C |

Carrier Type: Is this vehicle a(n) (1) Interstate, (2) Intrastate Carrier? | 1 |

(3) Not in Commerce - Other Truck/Bus
(4) Not in Commerce - Government
(5) Other Operation/Not Specified

Was a Citation Issued to this Vehicle? | 1-Yes | 2-No | 3-Pending | 2 |

DICKENS - C M    L/CPL    12-11-2013

**Access Control**

| | |
|---|---|
| 1- No Access Control 2- Full Access Control 3- Partial Access Control | 1 |

**Vehicle Information**

**Gross Vehicle Weight Rating**
**Gross Combination Weight Rating**
01 - Less than or Equal to 10,000 Pounds
02- 10,001-26,000 Pounds
03- More than 26,000 Pounds
99- Unknown/ Hit and Run
| 03 |

**Vehicle Configuration**
00 - Passenger Car (only w/ HAZMAT placard)    08 - Tractor w/ Semi-Trailer
01 - Light Truck (only w/ HAZMAT placard)    09 - Tractor w/ Double Trailers
02 - Bus (seats for 9-16 people)    10 - Tractor w/ Triple Trailers
03 - Bus (seats for 16 + people)    98 - Other/Unable to Classify
04 - Single Unit Truck (2axle6+ tires)    99 - Unknown/ Hit and Run
05 - Single Unit Truck (3 or more axles)
06 - Truck w/ Trailer
07 - Truck-Tractor Only (Bobtail)
| 08 |

**Bus Use**
01 - Not used as a bus    05 - Charter/Tour
02 - School    06 - Shuttle/Church
03 - Transit/Commuter/Church service    07 - Unknown
04 - Intercity
| 01 |

**Cargo Body Type**
00 - Bus (seats for 9-15 people)    09 - Grain, Chips, Gravel
01 - Bus (seats for 16+ people)    10 - Pole
02 - Enclosed Box    11 - Intermodal Container
03 - Cargo Tank    12 - Log
04 - Flat Bed    13 - Veh. Towing Vehicle
05 - Dump    97 - N/A
06 - Concrete Mixer    98 - Other
07 - Auto Transporter    99 - Unknown/ Hit & Run
08 - Garbage/Refuse
| 11 |

**Trailer Length and Width**

**Length**
00 - No Trailer    Trailer 1 Length | 02 |    Trailer 2 Length
01 - Less than 450 in. (40 ft)
02 - 451 in. - 576 in (48 ft.)
03 - 577 in. or more
99 - Unknown/ Hit and Run

**Width**
00 - No Trailer    Trailer 1 Width | 03 |    Trailer 2 Width
01 - Less than 60 in. (8 ft.)
02 - 61 in. - 84 in. (7 ft.)
03 - 85 in. or more
99 - Unknown/ Hit and Run

**Hazardous Material Involvement**

Was This Vehicle Carrying Hazardous Materials?
1- Yes    2- No    3- Unknown/Hit and Run
| 2 |

Did the Vehicle Have a Hazardous Material Placard?
1- Yes    2- No    3- Unknown/Hit and Run
| 2 |

If "Yes", What Class of Hazardous Material (off placards/shipping papers)?
01- Class 1 (Explosives)    06- Class 6 (Poison/Infectious Substance)
02- Class 2 (Gases)    07- Class 7 (Radioactive)
03- Class 3 (Flammable Liquids)    08- Class 8 (Corrosives)
04- Class 4 (Flammable Solids)    09- Class 9 (Misc. Goods)
05- Class 5 (Oxidizing Substance)    10- No Placard
99- Other/Unknown/Hit and Run

If "YES", enter 4 digit HAZMAT ID & edit on placards/shipping papers)

Did Hazardous Material Release from this Vehicle?
1- Yes    2- No    3- Unknown/Hit and Run
| 2 |

Name of Agency Notified (In Case of Release):

W M Clemmons

045

JA450

**PARKER** LAW GROUP

September 8, 2023

***VIA CERTIFED MAIL***
***NO: 9436 0098 9864 3564 3735 51***

Attn: Claims Department
Cincinnati Insurance Company
Post Office Box 145496
Cincinnati, Ohio 45250

> ***Re: Maisha Jacobs v. Wayne Hunt***
> ***Civil Action No.: 2016-CP-34-00264***
>
> ***Estate of Christopher McLean v. Hunt***
> ***Civil Action No.: 2016-CP-34-00265***

Dear Sr. or Madam:

Please find enclosed copies of the summons and complaint regarding the above reference cases.

With kind regards, I am

Sincerely,

Claudia Cartier
Paralegal to John E. Parker, Jr.

/cc
Enclosures as stated.

JOHN E. PARKER,JR  |  JAYPARKER@PARKERLAWGROUPSC.COM  |  DIRECT: 803.903-1819  |  OFFICE: 803.903-1781
101 MULBERRY ST. E, PO BOX 487, HAMPTON, SC 29924  |  WWW.PARKERLAWGROUPSC.COM
PARALEGAL: CLAUDIA CARTIER - CCARTIER@PARKERLAWGROUPSC.COM

046

JA451

PARKER LAW GROUP
PO BOX 487
HAMPTON SC 29924-0487

**USPS CERTIFIED MAIL**





PITNEY BOWES
$14.52 0
US POSTAGE (M)
FIRST-CLASS
026W0004897694
9058489754
ZIP 29924

9436 0098 9864 3564 3735 51

CLAIMS DEPARTMENT
CINCINNATI INSURANCE
COMPANY
PO BOX 145496
CINCINNATI OH 45250-5496

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF MARLBORO )

LEVI OWENS AS PERSONAL ) CIVIL ACTION COVERSHEET
REPRESENTATIVE OF THE ESTATE OF ) 2016-CP-34- 00265
CHRISTOPHER MCLEAN, )
                    Plaintiff(s) )
 )
           vs. )
 )
WAYNE HUNT. )
 )
                    Defendant(s) )

Submitted By: R. Alexander Murdaugh    SC Bar #:    6996
Address: P.O. Box 457    Telephone #:    (803) 914-2007
Hampton, SC 29924    Fax #:    (803) 914-2014
    Other:
    E-mail:    amurdaugh@pmped.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
### *If Action is Judgment/Settlement do not complete

☒ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Construction (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☒ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20____-NI-____-_____ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| Warranty (160) | ☐ Other (299) _____ | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) _____ |
| ☐ Employment (180) | | ☐ Other (399) _____ | |
| ☐ Other (199) _____ | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| _____ | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured | ☐ Worker's Comp (960) |
| | | Settlement Payment Rights | ☐ Zoning Board (970) |
| | | Application (760) | ☐ Public Service Comm (990) |
| Special/Complex /Other | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers | |
| ☐ Automobile Arb (610) | ☐ Unfair Trade Practices (640) | Compensation Settlement | ☐ Other (999) _____ |
| | | Approval (780) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (799) | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in | CERTIFIED | |
| ☐ Sexual Predator (510) | an Out-of-County Action (660) | TRUE COPY | |
| ☐ Permanent Restraining Order (680) | ☐ Pre-Suit Discovery (670) | William B. Sunderburg | |

CLERK OF COURT
MARLBORO COUNTY

Submitting Party Signature: _for_ R. Alexander Murdaugh    Date: 12/6/2016

SCCA / 234 (03/2016)    Page 1 of 2

048

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1.  The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2.  The initial ADR conference must be held within 300 days after the filing of the action.

3.  Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4.  Cases are exempt from ADR only upon the following grounds:

    a.  Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b.  Requests for temporary relief;

    c.  Appeals

    d.  Post Conviction relief matters;

    e.  Contempt of Court proceedings;

    f.  Forfeiture proceedings brought by governmental entities;

    g.  Mortgage foreclosures; and

    h.  Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5.  In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

*A CERTIFIED TRUE COPY*

William B. Funderburk

*CLERK OF COURT MARLBORO COUNTY*

SCCA / 234 (03/2016)                                                        Page 2 of 2

FILED

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF MARLBORO ) C/A NO.: 2016-CP-34- 00265

LEVI OWENS AS PERSONAL )
REPRESENTATIVE OF THE ESTATE OF )
CHRISTOPHER MCLEAN, )

          Plaintiff, ) **SUMMONS**
                                         ) **(Jury Trial requested)**
     -vs-              )

WAYNE HUNT, )

          Defendant. )
_____ )

**TO:    THE DEFENDANTS ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, of
which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint on
the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina within thirty (30)
days after the service hereof, exclusive of the day of such service; and if you fail to answer the
Complaint within the time aforesaid, judgment by default will be rendered against you for the relief
demanded in this Complaint.

                    PETERS, MURDAUGH, PARKER,   ELTZROTH
                              & DETRICK, P.A.

                    BY: _____
                         R. Alexander Murdaugh
                         Post Office Box 457
                         Hampton, SC 29924
                         (803) 943-2111

                    ~and~

                    ✓Delton W. Powers
                     Powers Law Firm
                     Post Office Box 47
                     Bennettsville, SC 29512
Hampton, South Carolina            *A CERTIFIED*
December 8, 2016           ATTORNEYS FOR PLAINTIFF

                    William B. Sunderburg

                    *CLERK OF COURT*
                    *MARLBORO COUNTY*

                                              **050**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34- 00265 |
| | ) | |
| LEVI OWENS AS PERSONAL | ) | |
| REPRESENTATIVE FOR THE | ) | |
| ESTATE OF CHRISTOPHER | ) | **COMPLAINT** |
| MCLEAN, | ) | **(Jury Trial requested)** |
| | ) | **(Wrongful Death)** |
| Plaintiff, | ) | **(Survival)** |
| | ) | |
| vs. | ) | |
| | ) | |
| WAYNE HUNT. | ) | |
| | ) | |
| Defendant. | ) | |

**The plaintiff, complaining of the defendant, alleges:**

1.      The Plaintiff has been duly appointed Personal Representative of the Estate of Christopher McLean by the Marlboro County Probate Court, and he brings this action for the wrongful death and conscious pain and suffering of Christopher McLean on behalf of the statutory beneficiaries.

2.      The defendant is a citizen and resident of a State other than South Carolina.

3.      That on December 10, 2013, the deceased was a passenger in a vehicle traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, crossed the center line and struck the vehicle the plaintiff was a passenger in; as a result of the collision Christopher McLean was seriously injured and did thereafter die. Prior to his death Christopher McLean endured serious conscious pain and suffering.

4.      That the direct and proximate cause of the plaintiff's personal injuries and death was the negligent and reckless conduct of the defendant in the following particulars:

    a.      In failing to keep a proper lookout; *A CERTIFIED*

    b.      In failing to keep his vehicle within his lane of travel; *TRUE COPY*

William B. Funderburk

*CLERK OF COURT*
*MARLBORO COUNTY*

051

c.    In traveling too fast for conditions then and there existing;

d.    In failing to keep his vehicle under proper control;

e.    In failing to stop, slow or turn his vehicle to avoid colliding with the plaintiff;

f.    In operating an automobile in utter disregard for the safety of others on the highway;

g.    In failing to yield the right of way;

h.    In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;

i.    In failing to apply his brakes, if he had any;

j.    In failing to take evasive action to avoid the collision;

k.    In operating his vehicle in utter disregard for the safety of others on the highway.

5.    As a result of the above conduct of the defendant, Christopher McLean sustained serious and severe injuries which caused conscious pain and suffering and resulted in his wrongful death, resulting in damages to him. That the beneficiaries of Christopher McLean have endured grief, sorrow, shock, wounded feelings and loss of love and companionship.

WHEREFORE, the Plaintiff prays for judgment against the defendants for actual damages and for whatever additional and further relief this court deems just and proper all in an amount determined fair and reasonable by a jury.

PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A.

BY:

R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111 *CERTIFIED TRUE COPY*

~and~ William B. Sunderburg

*CLERK OF COURT*
*MARLBORO COUNTY*

**052**

✓Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 6, 2016

A CERTIFIED
TRUE COPY
William B. Sunderland
CLERK OF COURT
MARLBORO COUNTY

053

STATE OF SOUTH CAROLINA                  )
                                         )     IN THE COURT OF COMMON PLEAS
COUNTY OF MARLBORO                       )
                                         )
MAISHA JACOBS,                           )     CIVIL ACTION COVERSHEET
                                         )     2016-CP-34- 00264
                                         )
                          Plaintiff(s)   )
                                         )
              vs.                        )
                                         )
WAYNE HUNT.                              )
                                         )
                                         )
                          Defendant(s)   )

| | |
|---|---|
| Submitted By: R. Alexander Murdaugh | SC Bar #: 6996 |
| Address: P.O. Box 457 | Telephone #: (803) 914-2007 |
| Hampton, SC 29924 | Fax #: (803) 914-2014 |
| | Other: |
| | E-mail: amurdaugh@pmped.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.          ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts – Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☒ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___ -NI-___ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| Warranty (160) | ☐ Other (299) _____ | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) _____ |
| ☐ Employment (180) | | ☐ Other (399) _____ | |
| ☐ Other (199) _____ | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeus Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| _____ | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured | ☐ Worker's Comp (960) |
| | | Settlement Payment Rights | ☐ Zoning Board (970) |
| | | Application (760) | ☐ Public Service Comm. (990) |
| Special/Complex /Other | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers | ☐ Other (999) _____ |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | Compensation Settlement | |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | Approval (780) | |
| ☐ Other (699) _____ | ☐ Motion to Quash Subpoena in | A CERTIFIED | |
| ☐ Sexual Predator (510) | an Out-of-County Action (660) | TRUE COPY | |
| ☐ Permanent Restraining Order (680) | ☐ Pre-Suit Discovery (670) | William B. Funderburk | |

CLERK OF COURT
MARLBORO COUNTY

Submitting Party Signature: _[signature]_ for R. Alexander Murdaugh    Date: 12/6/2016

SCCA / 234 (03/2016)                                                     Page 1 of 2

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

*A CERTIFIED*
*TRUE COPY*
William B. Funderburk
*CLERK OF COURT*
*MARLBORO COUNTY*

SCCA / 234 (03/2016)                                           Page 2 of 2

FILED

055

**JA460**

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br><br>COUNTY OF MARLBORO )<br><br>MAISHA JACOBS. )<br><br>          Plaintiff, )<br><br>          -vs- )<br><br>WAYNE HUNT. )<br><br>          Defendant. )<br>_____) | IN THE COURT OF COMMON PLEAS<br><br>C/A NO.: 2016-CP-34- 00264<br><br><br>**SUMMONS**<br>**(Jury Trial requested)** |

TO:     THE DEFENDANTS ABOVE NAMED:

       YOU ARE HEREBY SUMMONED and required to answer the Complaint in this

action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said

Complaint on the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina

within thirty (30) days after the service hereof, exclusive of the day of such service; and if you

fail to answer the Complaint within the time aforesaid, judgment by default will be rendered

against you for the relief demanded in this Complaint.

                         PETERS, MURDAUGH, PARKER, ELTZROTH
                         & DETRICK, P.A.


                         BY: _____
                              R. Alexander Murdaugh
                              Post Office Box 457
                              Hampton, SC 29924
                              (803) 943-2111

                              ~and~

                              ✓Delton W. Powers
                              Powers Law Firm
                              Post Office Box 47
                              Bennettsville, SC 29512

Hampton, South Carolina              *A CERTIFIED*
December 6, 2016                     *TRUE COPY* ATTORNEYS FOR PLAINTIFF

                         *William B. Funderburk*

                         *CLERK OF COURT*
                         *MARLBORO COUNTY*

                                                              **056**

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF MARLBORO | ) | C/A NO.: 2016-CP-34-00264 |
| MAISHA JACOBS, | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **(Jury Trial requested)** |
| vs. | ) | |
| WAYNE HUNT. | ) | |
| Defendant. | ) | |

**The plaintiff, complaining of the defendant, alleges:**

1.  The defendant is a citizen and resident of a State other than South Carolina.

2.  That on December 10, 2013, the plaintiff was traveling East on US-15 attempting to make a left turn onto SEC-438 in Marlboro County when the defendant traveling North on US-15 at a high rate of speed, crossed the center line and struck the plaintiff's vehicle causing the plaintiff to be injured as more particularly hereinafter set forth.

3.  That the direct and proximate cause of the plaintiff's injuries was the negligent and reckless conduct of the defendant in the following particulars:

    a.    In failing to keep a proper lookout;

    b.    In failing to keep his vehicle within his lane of travel;

    c.    In traveling too fast for conditions then and there existing;

    d.    In failing to keep his vehicle under proper control;

    e.    In failing to stop, slow or turn his vehicle to avoid colliding with the plaintiff;

    f.    In operating an automobile in utter disregard for the safety of others on the highway;

    g.    In failing to yield the right of way;

    h.    In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances;



*William B. Funderburk*

*CLERK OF COURT*
*MARLBORO COUNTY*

057

JA462

i.    In failing to apply his brakes, if he had any;

j    In failing to take evasive action to avoid the collision;

k    In operating his vehicle in utter disregard for the safety of others on the highway.

4.    As a direct and proximate result of the aforementioned negligent and reckless conduct of the defendants the plaintiff has been injured in the following particulars: that she has been forced to suffer serious personal injuries and mental anguish; that she has been caused to lose the enjoyment of life; that she has been caused to incur doctor and medical bills; that she has been caused to lose wages; that her injuries are permanent and pursuant to §19-1-150 of the South Carolina Code of Laws she will continue to incur damages into the future.

WHEREFORE, the Plaintiff prays for judgment against the defendants both actual and punitive damages the costs of the action and for such other relief this court deems fair reasonable all in an amount determined fair and reasonable by a jury.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.

BY: _____
R. Alexander Murdaugh
Post Office Box 457
Hampton, SC 29924
(803) 943-2111

~and~

Delton W. Powers
Powers Law Firm
Post Office Box 47
Bennettsville, SC 29512

ATTORNEYS FOR PLAINTIFF

Hampton, South Carolina
December 6, 2016

*A CERTIFIED*
*TRUE COPY*
William B. Sunderburk
*CLERK OF COURT*
*MARLBORO COUNTY*

058

# PARKER LAW GROUP

February 29, 2024

John E. Parker, Jr.
Email: jayparker@parkerlawgroupsc.com
Asst. Email: ccartier@parkerlawgroupsc.com

***Via Email Only***

Attn: Claims Department
The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250

> **Re:** ***Our Client and Claimant: Levi Owens as PR for the Estate of***
> ***Christopher McLean***
> ***Your Insured: Wilmington Shipping Company & Wayne Hunt***
> ***Civil Action No.: 2016-CP-34-00265***
> ***Date of Accident: December 10, 2013***

Dear Sr. or Madam:

Please find enclosed a filed judgment against your insured in the above-referenced matter. We understand that the judgment is covered by a policy issued to Wilmington Shipping Company. Please forward a check for the judgment and we will satisfy the judgment. Otherwise, we will have no choice but to seek to collect the judgment from your insured through supplemental proceedings. Please take this opportunity to protect your insured. If we do not receive payment by March 21, 2024, we will commence supplemental proceedings.

Please do not hesitate to contact me if you should have any questions.

With kind regards, I am

Sincerely,

John E. Parker Jr.

JAY/cc
Enclosures as stated

JOHN E. PARKER,JR  |  JAYPARKER@PARKERLAWGROUPSC.COM  |  DIRECT: 803.903-1819  |  OFFICE: 803.903-1781
101 MULBERRY ST. E, PO BOX 487, HAMPTON, SC 29924  |  WWW.PARKERLAWGROUPSC.COM

**059**

**JA464**

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF MARLBORO | ) | FOURTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| Levi Owens as Personal Representative of | ) | No. 2016-CP-34-00265 |
| the Estate of Christopher McLean, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER AWARDING DEFAULT** |
| | ) | **JUDGMENT** |
| v. | ) | |
| | ) | |
| **Wayne Hunt,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

This matter was referred to me pursuant to Judge Paul M. Burch's Order of Reference dated October 22, 2018 and Entry of Default dated November 16, 2017. The purpose of the reference was to conduct a hearing to ascertain the amount of the Plaintiff's damages in this default matter and to issue a final order awarding damages against Defendant.

After several delays which were unavoidable, I conducted the damages hearing on November 17, 2021. Plaintiff appeared with his attorneys, John E. Parker, Jr. and Jason Scott Luck. Defendant did not appear, either personally or through counsel, despite notice to him from Plaintiff's counsel. As evidence of notice of this hearing being provided to Defendant, Attorney Jason Luck filed an Affidavit of Service certifying that, pursuant to Rule 55(b)(2), SCRCP, on November 4, 2021, a Notice of Hearing was sent to Defendant Wayne Hunt at his last known address via First Class U.S. Mail. There has been no return of that notice, nor has Defendant responded or appeared. I therefore proceeded with the hearing in Defendant's absence.

1

060

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

## SUMMARY OF THE EVIDENCE

This case arises out of a motor vehicle collision that occurred on December 10, 2013 on U.S. Highway 15 outside of McColl, South Carolina in Marlboro County.  Christopher McLean, the 19-year-old son of Levi Owens(father) and Wanda Breeden (mother), was a passenger in a vehicle which was traveling in a southeasterly direction on US Hwy 15 attempting to make a left turn onto a secondary road when a truck being driven by Defendant Wayne Hunt traveling in a northerly direction on US Hwy 15 at a high rate of speed, crossed the center line of the road and violently struck the vehicle in which Christopher McLean was a passenger.  As a result, Christopher McLean was gravely injured and was transported by helicopter to McLeod Regional Medical Center in Florence, SC, where he thereafter died as a result of the multiple trauma from this collision.   According to the death certificate, Christopher McLean (hereinafter "decedent") died approximately six(6) hours after the collision as a result of the multiple trauma, including a closed head injury, a ruptured diaphragm, a ruptured bladder, and hypovolemic shock.

Christopher McLean was a 19-year-old unmarried recent graduate of Marlboro County High School with no children. He was intestate and is survived by his parents as his statutory beneficiaries and heirs at law. Plaintiff Levi Owens, father of decedent, was duly appointed as Personal Representative of the Estate by the Marlboro County Probate Judge on September 10, 2014. Plaintiff thereafter filed suit for the Wrongful Death of his deceased son and asserting the survival claim for the conscious pain and suffering of decedent.   According to the prior Order of Circuit Judge Paul M. Burch filed November 16, 2017, the Summons and Complaint were properly served upon Defendant Wayne Hunt on February 10, 2017, and no timely response or answer was made by or on behalf of the defendant. Judge Burch thereafter ordered that Plaintiff was entitled

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

to an Entry of Default, and subsequently referred the matter to the undersigned Special Referee with finality to take testimony and determine the amount of damages to be awarded to Plaintiff in this wrongful death and survival case. *See Order of Reference filed 10/22/2018 by Circuit Judge Paul M. Burch.* By virtue of his default, Defendant has admitted that he was negligent and reckless with respect to the collision and that his negligence and recklessness proximately caused the decedent's injuries and death.

The Plaintiff was the only witness who testified at the hearing and I found his testimony to be very genuine and convincing and to unquestionably establish all the elements of damages in a wrongful death and survival case. In addition, Plaintiff introduced the following exhibits without objection:

1. Death certificate of the decedent.

2. Summary of Plaintiff's medical and funeral expenses totaling $62,323.88.

<u>FINDINGS OF FACT</u>

Based on the foregoing, I make the following findings of fact:

1. The decedent was 19 years old at the time of his untimely death, was single and without children, and enjoyed a particularly close, wholesome and loving relationship with his parents;

2. The decedent was in excellent health before the subject collision and had frequently engaged in exercise and sports activities with his father.

3. On December 10, 2013, the decedent was a passenger in a car that was negligently and recklessly struck by a truck operated by Defendant.

4. The collision was directly and proximately caused by Defendant's negligence, carelessness and recklessness.

3

062

JA467

5. The collision directly caused the decedent to suffer very serious bodily injuries which resulted in conscious pain and suffering, and which ultimately caused his wrongful death.

6. Defendant's negligence and recklessness caused pecuniary loss to the Plaintiff as outlined below, as well as significant mental shock and suffering, wounded feelings, grief, sorrow, and the loss of his son's society and companionship.

7. The decedent's estate incurred bills totaling at least $48,232.00 for medical treatment of the serious bodily injuries sustained in the collision.

8. The Plaintiff incurred funeral and burial expenses totaling $14,091.88.

## CONCLUSIONS OF LAW

Based on the foregoing, I reach the following conclusions of law:

1. Defendant was negligent and reckless, which directly and proximately caused the collision, the decedent's injuries, conscious pain and suffering, and his wrongful death, and all damages which Plaintiff is entitled to under South Carolina law.

2. As a result of Defendant's negligence and recklessness, Plaintiff sustained actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars, with $100,000.00 to be apportioned as survival damages to the estate and $5,000,000.00 to be apportioned as wrongful death damages to the statutory beneficiaries, itemized as follows:

    a. Wrongful Death

        i. Pecuniary loss (i.e., funeral expense): $14,091.88

        ii. Mental shock and suffering: $1,000,000.00

        iii. Wounded feelings: $1,000,000.00

4

063

JA468

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP340026S

ELECTRONICALLY FILED - 2021 Nov 18 3:05 PM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

  iv.  Grief and sorrow: $1,000,000.00

   v.  Loss of society and companionship: $1,935.908.12

  b.  Survival

   i.  Medical expenses:  $48,232.00

  ii.  Conscious Pain, suffering, mental distress: $51,768.00

3.  I do not find grounds to justify an award of punitive damages against Defendant.


### ORDER

**IT IS HEREBY ORDERED** that Plaintiff is hereby awarded a final judgment against Defendant for actual damages in the amount of Five Million One Hundred Thousand ($5,100,000.00) Dollars.

**AND IT IS SO ORDERED.**


_____
Douglas Jennings, Jr.
Special Referee


November _18_, 2021

Bennettsville, South Carolina

5

**064**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | Case No.: 4:24-cv-00951-JDA |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Defendant Levi Owens as Personal** |
| | ) | **Representative for the Estate of** |
| v. | ) | **Christopher Mclean's Answers to** |
| | ) | **Plaintiff's First Set of Interrogatories** |
| | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | |
| Representative for the Estate of | ) | |
| Christopher McLean, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>INTERROGATORIES</u>

1. Please list all attempts to notify Plaintiff CIC of the Summons & Complaint filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

**<u>ANSWER:</u>**

**Defendant's attorney is in possession of the following documents:**

- **Certified Letter to Cincinnati Insurance Company dated September 8, 2023;**
- **Electronic Return Receipt dated September 11, 2023; and**
- **Filed Affidavit of mailing dated February 2, 2024.**

2. Please list all attempts to notify Plaintiff CIC of the Affidavit of Default filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

**<u>ANSWER:</u>**

**Defendant objects to this Interrogatory to the extent that it requests information that is not relevant to any claim or defense in this case. The Interrogatory calls for privileged**

065

**JA470**

# EXCESS LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IV - DEFINITIONS**.

**SECTION I - COVERAGE**

**A. Insuring Agreement**

1. We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies in excess of "underlying insurance".

2. This insurance applies to injury or offense only if:

   a. The injury or offense takes place during the policy period shown in the Declarations; and

   b. Prior to the "coverage term" in which the injury or offense takes place, you did not know, per Paragraph **4.** below, that the injury or offense had taken place or begun to take place, in whole or in part.

3. Injury or offense which:

   a. Takes place during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **4.** below, to have taken place;

   includes any continuation, change or resumption of that injury or offense after the end of the "coverage term" in which it first became known by you.

4. You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

   a. Reports all, or any part of the injury or offense to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of the injury or offense;

   c. First observes, or reasonably should have first observed, the injury or offense;

   d. Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that injury or offense has taken place or begun to take place; or

   e. Becomes aware, or reasonably should have become aware, of a condition from which injury or offense is substantially certain to take place.

5. The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

   a. Any term or condition relating to:

      (1) Any duty to investigate or defend;

      (2) The limits of insurance;

      (3) The payment of expenses;

      (4) The premium;

      (5) Cancellation or non-renewal;

      (6) Any renewal agreement;

      (7) The policy period; or

   b. Any other provision that is not consistent with this Coverage Part;

   in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

6. The amount we will pay is limited as described in **SECTION II - LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments**.

**B. Exclusions**

This insurance does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

XS 101 UM 12 04     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 2 of 12

Case 7:22-cv-00189-M   Document 1-6   Filed 11/08/22   Page 3 of 16    066

JA471

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **MOVANT'S STATEMENT OF MATERIAL** |
| Representative for the Estate of Christopher | ) | **FACTS** |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The parties met and conferred pursuant to the Summary Judgement Motion Procedures for Judge Austin, Section 1, and Defendant Levi Owens contends that the following are further undisputed material facts that the parties could not agree to include in the Joint Statement of Stipulated Material Facts. *See id*. Section 2(a)(2).

1.      Owens filed a letter from the SCDMV with the Marlboro County Clerk of Court as proof of service, and the letter was filed February 15, 2017. (ECF No. 1-8, Letter from SCDMV).

2.      Owens filed the Affidavit of Wanda R. Ealy, dated March 10, 2017, on July 11, 2022. (ECF No. 32-3, Affidavit of Ealy).   The Affidavit states that Ealy is a designated representative of the Director of SCDMV.

3.      In her Affidavit, Ealy states that a copy of the Wrongful Death Action Summons and Complaint was sent to Hunt at 16671 NC Highway 210, Rocky Point, NC 28457 (the "Rocky Point Address") by certified mail. (ECF No. 32-3, Affidavit of Ealy).

4.      Ealy states that the Wrongful Death Action Summons and Complaint was returned to the SCDMV by the Post Office Department and marked, "Return To Sender Unclaimed Unable To Forward." (ECF No. 32-3, Affidavit of Ealy).

1

5.    Ealy states that a copy of the Wrongful Death Action Summons and Complaint was then sent to Hunt at the Rocky Point Address by open mail. (ECF No. 32-3, Affidavit of Ealy).

6.    The Special Referee entered a Default Judgment against Hunt in the Wrongful Death Action before CIC ever received notice of the Wrongful Death Action. (ECF No. 1, Complaint ¶ 70).

7.    At all times prior to the entry of default judgment against Hunt, Hunt did not notify CIC of the Wrongful Death Action brought against him. (ECF No. 1, Complaint ¶ 46).

8.    CIC has no record of receipt of any notice regarding the Wrongful Death Action prior to entry of the default judgment. (CIC Affidavit, ¶ 9).

9.    CIC learned of the Default Judgment in the Wrongful Death Action against Hunt from someone other than Hunt. (ECF No. 1, Complaint ¶ 46).

10.    In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights. (ECF No. 1, Complaint ¶ 47).

11.    Owens did not attempt to notify CIC of the Wrongful Death Action until September 8, 2023. (Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 1).

12.    Owens did not attempt to notify CIC of the Order Awarding Default Judgment in the Wrongful Death Action until February 29, 2024. (Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 6).


March 13, 2025                                   s/ C. Daniel Atkinson
                                                C. Daniel Atkinson (Fed Id. No. 09626)
                                                datkinson@wajlawfirm.com
                                                WILKES ATKINSON & JOYNER, LLC
                                                127 Dunbar Street, Suite 200
                                                Spartanburg, SC 29306
                                                (864) 591-1113

2

4:24-cv-00951-JDA     Date Filed 03/13/25     Entry Number 76-1     Page 1 of 1

### TABLE OF CONTENTS FOR MOVANT'S STATEMENT OF MATERIAL FACTS

| Description | Page |
|---|---|
| **ECF No. 1-8, Letter from SCDMV** | **008** |
| **ECF No. 32-3, Affidavit of Ealy** | **009-012** |
| **ECF No. 1, Complaint ¶ 46** | **006** |
| **ECF No. 1, Complaint ¶ 47** | **006** |
| **ECF No. 1, Complaint ¶ 70** | **007** |
| **Ronzitti Affidavit** | **003-005** |
| **Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 1** | **001** |
| **Owens' Answers to Plaintiff's Interrogatories, Interrogatory No. 6** | **002** |

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | Case No.: 4:24-cv-00951-JDA |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Defendant Levi Owens as Personal** |
| | ) | **Representative for the Estate of** |
| v. | ) | **Christopher Mclean's Answers to** |
| | ) | **Plaintiff's First Set of Interrogatories** |
| | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | |
| Representative for the Estate of | ) | |
| Christopher McLean, and Wilmington | ) | |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>INTERROGATORIES</u>

1. Please list all attempts to notify Plaintiff CIC of the Summons & Complaint filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

<u>**ANSWER:**</u>

> **Defendant's attorney is in possession of the following documents:**
>
> - **Certified Letter to Cincinnati Insurance Company dated September 8, 2023;**
> - **Electronic Return Receipt dated September 11, 2023; and**
> - **Filed Affidavit of mailing dated February 2, 2024.**

2. Please list all attempts to notify Plaintiff CIC of the Affidavit of Default filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

<u>**ANSWER:**</u>

> **Defendant objects to this Interrogatory to the extent that it requests information that is not relevant to any claim or defense in this case. The Interrogatory calls for privileged**

**#1 and South Carolina Rules of Civil Procedure for notice requirements regarding default and default judgments.**

5. Please list all attempts to notify Plaintiff CIC of the Notice of Hearing filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

**ANSWER:**

**Defendant objects to this Interrogatory to the extent that it requests information that is not relevant to any claim or defense in this case. The Interrogatory calls for privileged information in the form of work product encompassing the thoughts and impressions of Defendant's counsel. Notwithstanding Defendant's objection, see Answer to Interrogatory #1 and South Carolina Rules of Civil Procedure for notice requirements regarding default and default judgments.**

6. Please list all attempts to notify Plaintiff CIC of the Order Awarding Default Judgment filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

**ANSWER:**

**Defendant's attorney is in possession of the following documents:**

- **Letter to Cincinnati Insurance Company with a copy of the filed judgment dated February 29, 2024.**
- **Email to Attorney Dan Atkinson with letter to Cincinnati Insurance Company dated February 29, 2024.**

7. Please list all efforts and attempts to serve Defendant Hunt the Summons & Complaint filed in the Wrongful Death Action. If no attempt was made, please provide your justification as to why it was not.

3

002

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **AFFIDAVIT OF THE CINCINNATI** |
| Representative for the Estate of Christopher | ) | **INSURANCE COMPANY** |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW the affiant, Mitchell A. Ronzitti who, being duly sworn, deposes and states as follows:

1. I am over the age of twenty-one (21) years, I am a citizen and resident of Butler County, Ohio, I have personal knowledge of the facts contained in this affidavit, and I am competent to give testimony in this case.

2. I am a Casualty Team Leader of The Cincinnati Insurance Company ("CIC"), and I have held that position at all times relevant to this case.

3. CIC's physical address is 6200 S. Gilmore Road, Fairfield, OH 45014-5141.

4. I have reviewed CIC's files for Wilmington Shipping, which are maintained in the ordinary course of CIC's business, and to which I have access as part of my employment obligations.

5. In 2013, CIC issued two policies of insurance, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy"), (collectively, the "Policies"), to Defendant Wilmington Shipping Company. True and accurate certified copies of those policies, which are business records maintained in the

**003**

**JA477**

ordinary course of CIC's business, are filed as attachments to CIC's Complaint, bearing ECF Docket Numbers 1-5 and 1-6.

6. Based on the terms of the policies, the 2013 policies are the only ones which may apply to the Accident at issue in this case, which occurred on December 10, 2013, because the policies are "claims made policies." (See ECF No. 1-5, p. 63, and ECF No. 1-6, p. 3.)

7. These Policies did not contain an MCS-90 endorsement, nor did the application for coverage request one.

8. CIC first issued an MCS-90 endorsement to Wilmington Shipping Company in a 2016 policy. Additionally, CIC did not issue any BMX-91 reports to the FMCSA until 2016.

9. Furthermore, CIC did not receive notice of the Summons and Complaint filed in the Marlboro County Court of Common Pleas, Civil Action No. 2016-CP-34-00265 entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant* (the "Wrongful Death Action"), from any of the parties, or from anyone else, prior to the entry of default judgment against Wayne Hunt.

10. CIC has never been notified of the default judgment against Wayne Hunt in the Wrongful Death Action from someone by Hunt or Wilmington Shipping.

11. In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights, but CIC also filed this Declaratory Judgment Action seeking a declaration of rights.

**004**

**JA478**

FURTHER AFFIANT SAYETH NAUGHT.

Mitchell A. Ronzitti

SWORN TO AND SUBSCRIBED BEFORE ME

This 13th day of March , 2025

Beth Ann Sturgill

Notary Public for the State of Ohio
My Commission Expires: January 26, 2027



46.     Recently, CIC learned of the Default Judgment in the Wrongful Death Action against Hunt, from someone other than Hunt.

47.     In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

48.     To-date, Hunt remains subject to the Default Judgment entered in the Wrongful Death Action.

49.     On or around December 8, 2016, Jacobs filed a Summons and Complaint in the Personal Injury Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Jacobs for damages as a result of the bodily injury and death suffered by Jacobs in the Accident.  A copy of the filed Summons and Complaint in the Personal Injury Action is filed as Exhibit J hereto, and it is incorporated herein by reference.

50.     According to a letter filed with the Marlboro County Clerk of Court, Jacobs effected service of the Personal Injury Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the letter of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit K hereto, and it is incorporated herein by reference.

51.     Although CIC presently has no evidence that Hunt received actual notice of the Personal Injury Action Summons and Complaint, CIC never received notice of the Personal Injury Action Summons and Complaint.

52.     On November 16, 2017, Jacobs filed an Affidavit of Default in the Personal Injury Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Personal Injury Action is filed herewith as Exhibit L, and it is incorporated herein by reference.

69.    In the Order Awarding Default Judgment in the Wrongful Death Action, the Special Referee found that Hunt acted negligently and caused damages to Owens, and the Special Referee awarded $5,000,000 in wrongful death damages and $100,000 in survival damages.  (Exhibit I.)

70.    The Special Referee entered a Default Judgment against Hunt in the Wrongful Death Action before CIC ever received notice of the Wrongful Death Action.

71.    In the Personal Injury Action Complaint, Jacobs alleges that Hunt acted negligently or recklessly causing Jacobs' injuries.  (Exhibit J.)

72.    The Special Referee entered a Default Judgment against Hunt in the Personal Injury Action before CIC ever received notice of the Personal Injury Action.

73.    Both of the Policies required Hunt to immediately send CIC copies of any summons or legal paper received regarding any "suit," as defined under the Policy.  (*See* Exhibit A, Section IV(A)(2)(b); *see also* Exhibit B, Excess Liability Coverage Policy, Section III(4).)

74.    Over five years ran from service of the Wrongful Death Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Wrongful Death Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

75.    Over five years ran from service of the Personal Injury Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Personal Injury Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

76.    Based on present information, CIC is unaware of whether Hunt has a good faith reason for failing to provide timely notice to CIC of the Wrongful Death Action, the Personal Injury Action, or related claims.



# S. C. DEPARTMENT OF
# MOTOR VEHICLES

OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax :( 803) 896-9901*

February 10, 2017

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

**Re:**   ***Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne
Hunt:* Case No.: 2016-CP-34-00265, DMV 17-73**

Dear Mr. Hunt:

In accordance with the provisions of Section 15-9-350 of the Code of Laws of South Carolina (1976), this
office has received the enclosed Summons and Complaint in the above-entitled action. Under South
Carolina law, this has the same legal effect as if you had been served with these documents personally.

Section 15-9-350 of the 1976 Code of Laws of South Carolina, as amended, provides that:

> "The acceptance by a nonresident of the rights and privileges conferred by the laws in force in this
> State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle
> by such nonresident on the public highways, the streets of any incorporated municipality or the
> public roads of this State or anywhere within this State, or the operation by such nonresident of a
> motor vehicle on any such public highways, streets, or public roads or anywhere within this State
> other than as so permitted or regulated shall be deemed equivalent to the appointment by such
> nonresident of the Director of the Department of Motor Vehicles or of his successor in office to be
> his true and lawful attorney upon whom may be served all summons or other lawful process in any
> action or proceeding against him growing out of any accident or collision in which such
> nonresident may be involved by reason of the operation by him, for him or under his control or
> direction, express or implied, of a motor vehicle on such public highways, Streets, or public roads
> or anywhere within this State.   Such acceptance or operation shall be a signification of his
> agreement that any such process against him shall be of the same legal force and validity as if
> served on him personally."

Sincerely,

*Wanda R. Ealy*

Wanda R. Ealy, Paralegal Assistant
Office of General Counsel
For: Director, South Carolina Department of Motor Vehicles

Enclosure

cc:    R. Alexander Murdaugh, Esquire
       P. O. Box 457
       Hampton, SC 29924



**EXHIBIT C**

| STATE OF SOUTH CAROLINA | ) | |
|---|---|---|
| | ) | **AFFIDAVIT** |
| COUNTY OF RICHLAND | ) | |

PERSONALLY appeared before me, Wanda R. Ealy, who, first being duly sworn, deposes and says that:

This Affidavit is made in compliance with Section 15-9-380 of the Code of Laws of South Carolina;

That she is the designated representative of the Director of the South Carolina Department of Motor Vehicles;

That on February 9, 2017 in accordance with the provisions of Sections 15-9-350 or 15-9-360 of the 1976 Code of Laws of South Carolina, the Summons and Complaint in an action styled Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt: Case No.: 2016-CP-34-00265 received by the South Carolina Department of Motor Vehicles;

That on February 10, 2017 a copy of the Summons and Complaint was sent to Defendant Wayne Hunt by certified mail, at the address furnished by Plaintiff's attorney that is 16671 NC Highway 210 Rocky Point, NC 28457. That said copy of the Summons and Complaint was returned to the South Carolina Department of Motor Vehicles by the Post Office Department marked "Return To Sender Unclaimed Unable To Forward," and is attached hereto;

That a copy of the Summons and Complaint was sent to Wayne Hunt by open mail to the same address with sufficient postage attached thereto.

Wanda R. Ealy, Paralegal Assistant
For: Director, S.C. Department of Motor Vehicles

Sworn to and subscribed before me this
10th day of March 2017

Notary Public of South Carolina
My Commission Expires: May 28, 2024

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**EXHIBIT C**



## S. C. DEPARTMENT OF
## MOTOR VEHICLES
OFFICE OF GENERAL COUNSEL
*P.O. Box 1498, Blythewood, S.C. 29016: (803) 896-9900, Fax: 896-9901*

March 10, 2017

R. Alexander Murdaugh, Esquire
P. O. Box 457
Hampton, SC 29924

**Re:  Levi Owens as Personal Representative of the Estate of Christopher McLean v. Wayne Hunt: Case No.: 2016-CP-34-00265, DMV 17-73**

Dear Mr. Murdaugh:

The notice of service and copy of the Summons and Complaint in the above-entitled action were sent certified mail on February 10, 2017 to defendant Wayne Hunt and returned to this office marked "Return to Sender Unclaimed Unable To Forward."

In accordance with the provisions of Section 15-9-380 of the 1976 Code of Laws, as amended, I am today sending notice of service and a copy of the Summons and Complaint to defendant Wayne Hunt by open mail. Enclosed are the Affidavit of the mailing, the original envelope, and the unsigned return receipt card for filing by you with the Clerk of Court.

If you have any questions, please contact me at 803-896-9900.

Sincerely,

Wanda R. Ealy
Paralegal Assistant
For: Director, South Carolina Department of Motor Vehicles

Enclosures

/wre

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265

**EXHIBIT C**

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265



**EXHIBIT C**

ELECTRONICALLY FILED - 2022 Jul 11 8:49 AM - MARLBORO - COMMON PLEAS - CASE#2016CP3400265



South Carolina Dep...
P.O. Box 1498
Blythewood, S.C. 294...

Form 103

Forwarding Service Requested

Wayne Hunt
16671 NC Highway 210
Rocky Point, NC 28457

7007 0710 0004 9204 0135

CERTIFIED MAIL

U.S. POSTAGE >> PITNEY BOWES

ZIP 29016
02 1W
0001394666 FEB 10 2017
$ 006.77⁰

RECEIVED
MAR 0 8 2017
DMV
GENERAL
COUNSEL

UNC

NIXIE    276    SE 1    0003/06/17

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC: 29016149898    *1554-04256-10-43

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO.: 4:24-cv-00951-JDA** |
| | ) | |
| v. | ) | |
| | ) | |
| Wayne Hunt, Levi Owens as Personal | ) | **PLAINTIFF'S MOTION FOR SUMMARY** |
| Representative for the Estate of Christopher | ) | **JUDGMENT** |
| McLean, and Wilmington Shipping | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Fed. R. Civ. P. 56 and the Court's Current Scheduling Order (ECF No. 60), Plaintiff The Cincinnati Insurance Company ("CIC") moves this Court for an Order granting CIC summary judgment on CIC's sole cause of action for declaratory judgment. In this action, CIC seeks a declaration that it has no obligations of defense or indemnity under two policies of insurance issued to Defendant Wilmington Shipping Company to satisfy all or any portion of a judgment obtained by Defendant Owens against Defendant Hunt in the Court of Common Pleas for Marlboro County, South Carolina. To the extent necessary, CIC has already presented a Motion and Brief demonstrating that it is entitled to a default judgment against Defendants Wayne Hunt and Wilmington Shipping Company for the same cause of action, which motion remains pending before the Court. (ECF Nos. 65 and 65-1.) The basis for this Motion for Summary Judgment is that there is no genuine issue of material fact as to whether Wayne Hunt or Wilmington Shipping ever gave CIC notice of the underlying wrongful death action filed in the Court of Common Pleas for Marlboro County, at any time prior to imposition of a default judgment against Hunt on November 18, 2021. (ECF No. 1-13.) Accordingly, pursuant to North Carolina

1

law, CIC has no obligation to indemnify Hunt or Wilmington Shipping Company for any portion of the judgment debt owed by Hunt to Owens as a matter of law. This Motion is based upon the pleadings; North Carolina state substantive law; federal procedural law; the Brief, the Joint Statement of Stipulated Facts, CIC's Statement of Material Facts and supporting documents contained in the appendices of same, and affidavits, all of which are filed herewith; previously-filed documents already in the record with the Court, as well as any Reply Statement of Material Facts and Reply Brief to be filed hereafter.

Pursuant to Local Rule 7.02, the undersigned certifies that he had no duty to consult prior to filing this Motion, as this is a Motion for Summary Judgment. In accordance with the Court's Current Scheduling Order, the undersigned engaged in a Rule 56 Conference with Attorney Nance, counsel for Hunt, via Microsoft Teams on February 13, 2025, and CIC provided Hunt's counsel with a Proposed Joint Statement of Material Facts on February 6, 2025, via electronic mail.


March 13, 2025                          s/ C. Daniel Atkinson_____
                                        C. Daniel Atkinson (Fed Id. No. 09626)
                                        datkinson@wajlawfirm.com

                                        WILKES ATKINSON & JOYNER, LLC
                                        127 Dunbar Street, Suite 200
                                        Spartanburg, SC 29306
                                        (864) 591-1113

                                        ATTORNEY FOR PLAINTIFF


2

**JA488**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **The Cincinnati Insurance Company,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| **Wayne Hunt; Levi Owens as Personal Representative for the Estate of Christopher McLean; Maisha Jacobs; and Wilmington Shipping Company,** | ) ) ) ) | **Notice of Filing** |
| | ) | |
| Defendants. | ) | |

The undersigned hereby files the attachment referenced in Defendant Owens' motion to stay (Entry 74 ¶ 6).

Dated: 03/14/2025

By: /s/ Jason Scott Luck

John E. Parker, Jr. (#13257)
Ashley Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.903.1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean**

# The Supreme Court of South Carolina

RE: Lawyer-Legislator Protection (As
Amended January 31, 2025)

———————————

ORDER

———————————

On December 6, 2024, I issued an Order concerning protection for lawyer-legislators. Since that Order was issued, several questions have arisen relating to the exception involving lawyer-legislator protection for trials. Therefore, I find it necessary to amend the prior Order to clarify the trial protection exception for lawyer-legislators.

Pursuant to Article V, Section 4 of the South Carolina Constitution,

Consistent with the practice established by my predecessors, I reaffirm that lawyers who have been elected by the citizens of South Carolina to serve as members of the General Assembly provide a great service to the State. While discharging their lawyer-legislative duties, I find there is a need for lawyer-legislators to be protected from trials, court hearings, and other lawyer-related responsibilities. However, in extending protection to lawyer-legislators, a careful and thoughtful balance must be struck. While consideration must be afforded to lawyer-legislators in the discharge of their legislative service and duties, court hearings also must proceed in the normal course as much as is practicable. This is especially true for a matter deemed an emergency where substantial rights of the parties will be irreparably damaged by a delay. Striking the proper balance is a challenging task given the valid, competing interests on both sides. Nonetheless, as Chief Justice, I must do my best to formulate a realistic and workable process for providing legislative protection for practicing lawyers who serve in the General Assembly, while simultaneously ensuring the fair and orderly operation of the state court system.

In my judgment, a distinction must be made between the protection afforded for trials and that afforded for motions hearings and other matters relating to the practice of law. Trials generally do not present emergencies and can be scheduled from August 1 to December 31. Therefore, for the time period outlined below, and subject to certain limited exceptions, a lawyer-legislator is granted absolute protection from trials in the Courts of this State, unless the lawyer-legislator elects to waive this

protection.[1]   For motions hearings and all other aspects of litigation, lawyer-legislator protection is not absolute. The lawyer-legislator must attend to matters that are deemed an emergency by the court.[2]  I find this balancing of interests appropriate because the designation of an emergency denotes that exigent circumstances exist, and in those matters substantial rights of litigants may be irreparably damaged if the hearing is delayed beyond the legislative session.

## I.
## TRIAL PROTECTION

With the limited exception noted below, lawyer-legislators are hereby granted absolute protection from all trials: (1) from January 1 through July 31; and (2) for any specially-called legislative session on or after August 1 to address the completion of gubernatorial vetoes on the General Appropriations Act; and (3) for any additionally called legislative session or instances in which the lawyer-legislator is performing *official* legislative duties as convened by the President of the Senate, the Speaker of the House, or the Chairperson of a committee.

The exception to the grant of absolute protection for trials arises in civil and family court cases where the lawyer-legislator is retained to represent a client after the case is eighteen months or older,[3] and in criminal cases where the lawyer-legislator is retained to represent a defendant after the case is two-years old or older.[4] In these instances, the lawyer-legislator is not entitled to lawyer-legislator protection, and no continuance may be granted on the basis of lawyer-legislator protection. This exception to the rule for absolute trial protection ensures that—where the lawyer-legislator is retained after the case is eighteen months or two-years old, respectively—older cases will not languish for excessive periods of time.

---

[1]  A legislator's waiver of protection in a particular case shall not be construed as waiver in any other case.

[2]  I emphasize that the designation of an emergency must be made solely by the court—the chief administrative judge or presiding judge—and not by a party or counsel in the case caption or through any conclusory allegations in a pleading or motion.

[3]  Where a civil or family court case is administratively struck from the docket, the eighteen-month period will be calculated from the filing of the original complaint.

[4] Measured from the date of indictment(s).

## II.
## HEARINGS AND OTHER MATTERS RELATING TO THE PRACTICE OF LAW

### (a) Presumptive Protection.

For motions hearings and other matters within the practice of law,[5] lawyer-legislators are hereby presumptively granted protection as follows: (1) from January 1 through July 31; and (2) for any specially-called legislative session on or after August 1 to address the completion of gubernatorial vetoes on the General Appropriations Act; and (3) for any additionally called legislative session or instances in which the lawyer-legislator is performing *official* legislative duties as convened by the President of the Senate, the Speaker of the House, or the Chairperson of a committee.

### (b) Emergency Hearings.

This presumptive protection for lawyer-legislators is *not* absolute. When the chief administrative judge or presiding judge determines that an emergency exists and circumstances require a motion hearing to proceed without undue delay, the hearing shall not be continued until the end of the legislative session. Rather, in such a situation, the hearing shall either proceed as scheduled or be promptly rescheduled, preferably to a Monday or Friday. Regrettably, too often in the past the issue of lawyer-legislator protection has been myopically approached as a binary choice, as if a scheduled hearing must either go forward precisely at the scheduled time or be delayed until the end of the legislative session. The wise exercise of discretion is a hallmark of a properly managed trial court docket. This judicial discretion concerning the scheduling of court hearings is embedded throughout our justice system, and there is no valid reason to exempt lawyer-legislator protection from the exercise of judicial discretion with a rigid, categorical approach granting or denying blanket lawyer-legislator immunity.

Accordingly, if the chief administrative judge or presiding judge determines that a brief continuance of a hearing involving urgent and compelling circumstances is appropriate, the matter may be continued briefly and rescheduled. To that end, the

---

[5] The phrase "other matters within the practice of law" includes the wide range of responsibilities that are commonly associated with the practice of law, including but not limited to, attending depositions and attending status conferences.

chief administrative judge or presiding judge may order interim relief during the period of brief delay if necessary to preserve the status quo and protect the rights of the parties.

Of course, if the matter does not involve urgent and compelling circumstances, the presumptive grant of protection from all hearings and other matters within the practice of law shall control as described above. In sum, it is the presence or absence of urgent and compelling circumstances, as determined by the chief administrative judge or presiding judge, that will determine how the request for lawyer-legislator protection will be handled and resolved.

### (c) Scheduling Considerations for Emergency Matters for Hearings and Other Emergency Matters Relating to the Practice of Law.

For clarification, I present two situations where lawyer-legislator protection shall not be granted. First, after a Complaint and Answer have been filed, if a hearing or other matter within the practice of law is scheduled, and that matter is deemed an emergency, a lawyer-legislator may not thereafter become counsel of record and invoke his or her status as a lawyer-legislator as the basis to have the hearing continued beyond the legislative session. Second, where the lawyer-legislator is not lead counsel, and other counsel of record are able to represent the party's interest at the emergency motion hearing or other matter within the practice of law, lawyer-legislator protection during the legislative session shall not be granted. In either of these scenarios, a continuance may be granted, as standard judicial discretion is not foreclosed, but a delay or continuance shall not be granted through the end of the legislative session on the basis of lawyer-legislator protection.

I additionally note that many courts schedule hearings or other matters within the practice of law for lawyer-legislators on Mondays and Fridays during weeks when the Legislature is in session.[6]  This practice shall continue for emergency matters. This practice accommodates the need for a prompt hearing while allowing the lawyer-legislator to serve in the Legislature Tuesday, Wednesday, and Thursday when the Legislature is in session. I order chief administrative judges and presiding judges to move emergency hearings involving lawyer-legislators when the Legislature is in session to a Monday or Friday, even if the rescheduling results in the matter being heard *prior to* the originally scheduled date. By way of example,

---

[6] When the Legislature is in recess and not in session, emergency hearings may be scheduled on any weekday.

special circumstances may warrant requiring a lawyer-legislator to attend a hearing (such as one involving a bond revocation motion, family court motion, or motion to compel discovery[7]) on a Monday or Friday when the Legislature is in session.

Today's order fits well with, and by design follows, the order issued by former Chief Justice Toal (filed May 17, 2001) wherein she granted protection to lawyer-legislators from being called to court:

> [E]xcept in extraordinary circumstances, where substantial rights of the parties to the litigation will be defeated or severely abridged by the delay, or where the litigation involves emergency relief and irreparable damage.

It is perhaps helpful to note that trials and hearings are often continued for a host of reasons. Those reasons may include: illness of a party, witness, or attorney; the unavailability of a material witness, such as an expert; incomplete discovery; and other factors. When all the reasons for continuing and rescheduling a trial or hearing are considered, lawyer-legislator protection is one of the least invoked reasons.

The success of achieving the proper balance between lawyer-legislator protection and the fair and orderly operation of the state court system depends on the good faith cooperation of all participants. I will monitor compliance and provide guidance as warranted.

The order today supersedes all prior administrative orders respecting the subject of lawyer-legislator protection. This order takes effect immediately and remains in effect unless rescinded or amended by the Chief Justice.

s/John W. Kittredge
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
January 31, 2025

---

[7] A motion to compel discovery may or may not require immediate attention, depending on the circumstances. In some situations, discovery comes to a standstill until the motion to compel is resolved. The chief administrative judge or presiding judge shall determine if a motion to compel discovery requires prompt resolution.

JA494

**Subject:** Activity in Case 4:24-cv-00951-JDA The Cincinnati Insurance Company v. Hunt et al Order on Motion to Stay
**Date:** Tuesday, March 18, 2025 at 08:54:31 Eastern Daylight Time
**From:** SCDEfilingstat@scd.uscourts.gov
**To:** scd_ecf_nef@scd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of South Carolina

## Notice of Electronic Filing

The following transaction was entered on 3/18/2025 at 8:53 AM EDT and filed on 3/18/2025
**Case Name:**         The Cincinnati Insurance Company v. Hunt et al
**Case Number:**      4:24-cv-00951-JDA
**Filer:**
**Document Number:** 80(No document attached)

**Docket Text:**
**TEXT ORDER granting [74] Motion to stay deadlines. The unexpired deadlines in the scheduling order are stayed pending the Court's resolution of the pending motion to amend, motion for default judgment, and motion for summary judgment. Signed by the Honorable Jacquelyn D Austin on 3/18/2025. (lgib, )**

**4:24-cv-00951-JDA Notice has been electronically mailed to:**

Charles Daniel Atkinson     datkinson@wajlawfirm.com, jsaad@wajlawfirm.com

Jason Scott Luck     jason@luck.law, office@luck.law

Ashley Bruce Nance     anance@parkerlawgroupsc.com, lwiggins@parkerlawgroupsc.com

John Elliott Parker, Jr     jayparker@parkerlawgroupsc.com, teamjay@parkerlawgroupsc.com

Brian Michael Peters, Jr     bpeters@wajlawfirm.com, jsaad@wajlawfirm.com

Morgan Taylor Petty    tpetty@wajlawfirm.com

**4:24-cv-00951-JDA Notice will not be electronically mailed to:**

Gregory Richard Simons
Overholt Law Firm, PC
2505 S. College Rd.
Wilmington, NC 28412

2 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| Wayne Hunt; Levi Owens as Personal | ) | |
| Representative for the Estate of | ) | Defendant Levi Owens' Motion to Stay |
| Christopher McLean; and Wilmington | ) | Deadlines |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean, pursuant to Local Civil Rules 16.00(C) and 6.01, moves the Court to vacate or stay the deadline to respond to Plaintiff The Cincinnati Insurance Company's Motion for Summary Judgment. (ECF No. 77). This request is made in consideration of Defendant's pending Motion to Amend Answer. (ECF No. 63). Defendant Owens would show the following in support of his motion:

1. In Defendant's Motion to Amend Answer, Defendant requested that the Court grant him leave to amend to assert a counterclaim asking for a declaration that the MCS-90 endorsement for the subject policy would by operation of law mandate that Plaintiff was obligated to fulfill its suretyship obligations even if the Court were to make a finding of no coverage based on any provision or condition of the policies.

2. Therefore, any motion for summary judgment that Defendant could file concerning this counterclaim would essentially serve as Defendant's response to Plaintiff's Motion for Summary Judgment.

3. The resolution of Plaintiff's Motion for Summary Judgment prior to resolving Defendant's Motion to Amend Answer would greatly prejudice Defendant by potentially

depriving him of an opportunity to effectively counter Plaintiff's motion prior to a final judgment on the merits of Plaintiff's claims. Defendant diligently filed his Motion to Amend Answer prior to the expiration of the scheduling order's deadline and has reasonably sought to stay all other scheduling order deadlines due to the pending state court action, his motion for supplemental proceedings and a judicial assignment of any claims Defendant Wayne Hunt may have against Plaintiff in that action, and the pending motion to vacate the default judgment in that action.

Therefore, Defendant respectfully requests that the Court stay or vacate the deadlines to respond to Plaintiff's Motion for Summary Judgment until the Court has ruled on Defendant's Motion to Amend Answer, and Defendant has had an opportunity to file a Cross-Motion for Summary Judgment based upon any counterclaims he may be able to assert in this action.

[SIGNATURE PAGE TO FOLLOW]

2

Respectfully submitted,

Dated: March 27, 2025

By: /s/ John E. Parker, Jr.

John E. Parker, Jr. (#13257)
Ashley Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.903.1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean

**JA499**



U.S. Department of Transportation
**Federal Motor Carrier Safety Administration**
## Licensing and Insurance Public

https://li-public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_insurancehistory



### Insurance History

| US DOT: | 522762 | Docket Number: | MC001196950 |

| Legal Name: | WILMINGTON SHIPPING COMPANY |

| Form | Type | Insurance Carrier | Policy/Surety | Coverage From | Coverage To | Effective Date From | Effective Date To |
|------|------|-------------------|---------------|---------------|-------------|---------------------|-------------------|
| 91X | BIPD/Primary | THE CINCINNATI INSURANCE CO. | CAA 585 61 63 | $0 | $1,000,000 | 10/01/2007 | 10/01/2016 Replaced |
| 91X | BIPD/Primary | THE CINCINNATI INSURANCE CO. | CPP 073 83 97 | $0 | $1,000,000 | 10/01/2001 | 10/01/2007 Replaced |
| 91X | BIPD/Primary | UNITED STATES INSURANCE GROUP | 1335971322 | $0 | $1,000,000 | 10/01/1994 | 10/01/2001 Replaced |

Carrier Details    Active/Pending Insurance    Rejected Insurance    Authority History    Pending Application    Revocation



FMCSA Home | DOT Home | Feedback | Privacy Policy | USA.gov | Freedom of Information Act (FOIA) | Accessibility | OIG Hotline | Web Policies and Important Links | Plug-ins | Related Sites | Help

Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE, Washington, DC 20590 - 1-800-832-5660 - TTY: 1-800-877-8339 - Field Office Contacts

April 9, 2025

**Thursday, July 24, 2025 at 10:15:30 PM Eastern Daylight Time**

Subject: Activity in Case 4:24-cv-00951-JDA The Cincinnati Insurance Company v. Hunt et al Order on Motion to Amend/Correct

Date: Monday, April 14, 2025 at 09:44:28 Eastern Daylight Time

From: SCDEfilingstat@scd.uscourts.gov

To: scd_ecf_nef@scd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of South Carolina

### Notice of Electronic Filing

The following transaction was entered on 4/14/2025 at 9:43 AM EDT and filed on 4/14/2025

Case Name:    The Cincinnati Insurance Company v. Hunt et al

Case Number:    4:24-cv-00951-JDA

Filer:

Document Number: 84(No document attached)

**Docket Text:**

**TEXT ORDER denying [63] Motion to Amend. Although a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied if the opposing party would be prejudiced by the amendment, the moving party has acted in bad faith, or the amendment would be futile, Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). In this case, Defendant seeks to add a counterclaim asking for a declaration that the subject insurance policies' MCS-90 endorsement requires Plaintiff to satisfy its surety obligations if it successfully disclaims coverage on the ground that it was not provided with prompt notice of the loss as required by its policies' cooperation provisions. As Plaintiff argues, however, even if an MCS-90 were included in the policies, the surety-type obligations of the policies involving MCS-90 apply only to the named insured, which, in this case is [Wilmington Shipping Co.], not Hunt. [Doc. 64 at 34]; see Forkwar v. Progressive N. Ins., 910 F. Supp. 2d 815, 826, (D. Md. 2012) ("[T]he MCS-90 endorsement provides coverage only to the named insured."). Signed by Honorable Jacquelyn D Austin on 4/14/25.(swel, )**

**4:24-cv-00951-JDA Notice has been electronically mailed to:**

Charles Daniel Atkinson     datkinson@wajlawfirm.com, jsaad@wajlawfirm.com

Jason Scott Luck     jason@luck.law, office@luck.law

Ashley Bruce Nance     anance@parkerlawgroupsc.com, lwiggins@parkerlawgroupsc.com

John Elliott Parker, Jr     jayparker@parkerlawgroupsc.com, teamjay@parkerlawgroupsc.com

Brian Michael Peters, Jr     bpeters@wajlawfirm.com, jsaad@wajlawfirm.com

Morgan Taylor Petty     tpetty@wajlawfirm.com

**4:24-cv-00951-JDA Notice will not be electronically mailed to:**

2 of 2

**JA502**

**Thursday, July 24, 2025 at 10:43:31 PM Eastern Daylight Time**

**Subject:** Activity in Case 4:24-cv-00951-JDA The Cincinnati Insurance Company v. Hunt et al Order on Motion to Stay
**Date:** Monday, April 14, 2025 at 09:46:44 Eastern Daylight Time
**From:** SCDEfilingstat@scd.uscourts.gov
**To:** scd_ecf_nef@scd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of South Carolina

## Notice of Electronic Filing

The following transaction was entered on 4/14/2025 at 9:45 AM EDT and filed on 4/14/2025

**Case Name:**         The Cincinnati Insurance Company v. Hunt et al
**Case Number:**      4:24-cv-00951-JDA
**Filer:**
**Document Number:** 85(No document attached)

## Docket Text:

**TEXT ORDER denying [81] Motion to Stay. The Court will, however, extend Defendant's response deadline to [77] Plaintiff's motion for summary judgment to April 24, 2025. Signed by Honorable Jacquelyn D Austin on 4/14/25.(swel, )**

**4:24-cv-00951-JDA Notice has been electronically mailed to:**

Charles Daniel Atkinson      datkinson@wajlawfirm.com, jsaad@wajlawfirm.com

Jason Scott Luck      jason@luck.law, office@luck.law

Ashley Bruce Nance      anance@parkerlawgroupsc.com, lwiggins@parkerlawgroupsc.com

John Elliott Parker, Jr      jayparker@parkerlawgroupsc.com, teamjay@parkerlawgroupsc.com

Brian Michael Peters, Jr      bpeters@wajlawfirm.com, jsaad@wajlawfirm.com

Morgan Taylor Petty      tpetty@wajlawfirm.com

**4:24-cv-00951-JDA Notice will not be electronically mailed to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | Case No. 4:24-cv-00951-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Wayne Hunt; Levi Owens, *Personal Representative for the Estate of Christopher McLean*; Wilmington Shipping Company; | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants.[1] | ) | |
| _____ | ) | |

This matter is before the Court on motions by Plaintiff Cincinnati Insurance Company ("CIC") for default judgment as to Defendants Wayne Hunt ("Hunt") and the Wilmington Shipping Company ("WSC") and for summary judgment.  [Docs. 65; 77.]

**BACKGROUND**[2]

On approximately October 1, 2013, CIC issued two insurance policies, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy") (collectively, the "Policies"), to WSC.  [Docs. 1 ¶¶ 2, 16; 75 ¶ 10.]  This case concerns insurance coverage for an accident that occurred on December

_____

[1] This caption represents the current parties in this litigation.

[2] Pursuant to the undersigned's Rule 56 Summary Judgment motion procedures, the parties submitted a joint statement of stipulated material facts [Doc. 75] and a movant's statement of material facts [Doc. 76].  The Court cites to these documents for the relevant facts included herein and to the Complaint [Doc. 1], the well pled factual allegations of which are taken as true against defaulting defendants in a motion for default judgment, *see* Fed. R. Civ. P. 8(b)(6).

10, 2013, in Marlboro County, South Carolina (the "Accident"). [Docs. 1 ¶¶ 2, 24; 75 ¶ 13.] When the Accident occurred, Hunt, within the scope of his employment with WSC, was driving a truck that WSC had leased from Penske Truck Leasing Co., Ltd. [Docs. 1 ¶ 26; 75 ¶ 14.] Hunt was not a named insured under the Policies but had certain coverages available as a permissive user of the vehicles. [Doc. 75 ¶ 12; *see* Doc. 1-5 at 56.]

When the Accident occurred, Christopher McLean ("McLean") was a passenger in a car driven by Maisha Jacobs, and he died from injuries he suffered in the Accident. [Docs. 1 ¶¶ 24, 25; 75 ¶¶ 15–16.] Defendant Levi Owens has been appointed by the Marlboro County Probate Court to act as personal representative for McLean's estate. [Doc. 75 ¶ 5.]

On December 8, 2016, Owens filed a summons and complaint in the Marlboro County Court of Common Pleas (the "State Court"), Civil Action No. 2016-CP-34-00265 entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant* (the "Wrongful Death Action"). [Docs. 1 ¶ 29; 75 ¶ 17.] In the Wrongful Death Action, Owens alleged that Hunt was liable to Owens for damages as a result of the bodily injury and death McLean suffered in the Accident. [Docs. 1 ¶ 29; 75 ¶ 18.]

Owens, through counsel, stated in proof of service to the State Court that he effected service on Hunt through the South Carolina Department of Motor Vehicles. [Docs. 1 ¶ 30; 75 ¶ 20.] On September 28, 2017, Owens's then-attorney executed an affidavit of default in the Wrongful Death Action. [Docs. 1-9; 75 ¶ 21.]

On November 16, 2017, the Clerk of Court for the State Court filed an entry of default in the Wrongful Death Action that was executed by Judge Paul M. Burch. [Docs. 1 ¶ 35; 75 ¶ 22.]  On October 22, 2018, Judge Burch filed an order of reference referring the Wrongful Death Action to a special referee (the "Special Referee"), for the Special Referee to take testimony and determine the amount of damages to which Owens was entitled.  [Docs. 1 ¶ 38; 75 ¶ 23.]

On November 4, 2021, Owens's counsel filed a notice of hearing in the Wrongful Death Action.  [Docs. 1 ¶ 40; 75 ¶ 24.]  The notice included an affidavit of service stating that the notice was mailed to Hunt at 16671 NC Highway 210, Rocky Point, NC 28457. [Docs. 1-12; 75 ¶ 25.] On November 17, 2021, the Special Referee conducted a damages hearing in the Wrongful Death action.  [Docs. 1 ¶ 43; 75 ¶ 26.]  The next day, the Special Referee filed an order awarding default judgment to Owens in the Wrongful Death Action, finding that Hunt acted negligently and caused damages to Owens and awarding $5,000,000 in wrongful death damages and $100,000 in survival damages (the "Default Judgment Order").  [Docs. 1 ¶ 44; 75 ¶¶ 27–28.]  At the time the Default Judgment Order was issued, CIC had not received notice of the Wrongful Death Action.  [Docs. 1 ¶¶ 32, 34, 36, 39, 42, 70, 74; 76 ¶ 8.]

The Policies included language requiring that Hunt immediately send CIC copies of any summons or legal paper received concerning any "suit," as defined in the Business Auto Policy.  [Docs. 1-5 at 62; 1-6 at 3, 8; 75 ¶ 30.]  Neither Hunt nor Owens nor Owens's attorneys sent CIC notice of the Wrongful Death Action prior to entry of the default judgment.  [Docs. 1 ¶¶ 39, 42, 45; 75 ¶ 29; 76 ¶ 7.]  Indeed, Owens did not attempt to notify CIC of the Wrongful Death Action until September 8, 2023, and did not attempt to

3

notify CIC of the default judgment until February 29, 2024, when John E. Parker, Jr., sent a letter to CIC via email, with a copy of the filed judgment enclosed, requesting that CIC issue a check for the judgment amount. [Docs. 75 ¶¶ 31–32; 76 ¶¶ 11–12.] Once CIC received such notice, it promptly issued a reservation of rights and undertook to defend Hunt pursuant to that reservation of rights. [Docs. 1 ¶ 47; 76 ¶¶ 9–10.]

Plaintiff filed its Complaint in the present case on November 8, 2022, in the Eastern District of North Carolina. [Doc. 1.] The Complaint alleges, as is relevant here, that CIC did not receive timely notice of the Wrongful Death Action, in violation of the conditions of the Policies, and, as a result, CIC suffered material prejudice to its ability to investigate and defend the Wrongful Death Action. [Doc. 1 ¶¶ 70, 74, 77, 79.] The Complaint thus demands a declaration stating that CIC has no obligation under the Policies to defend Hunt or indemnify him in the Wrongful Death Action. [*Id.* at 14.] Hunt was served via personal service on November 16, 2022. [Doc. 9.] WSC was served on November 15, 2022, via United Parcel Service delivery to its registered agent, Elizabeth Ruffin. [Doc. 6.] Plaintiff filed a motion for entry of default on December 8, 2022, as to Hunt and WSC in the Eastern District of North Carolina. [Doc. 13.] The Clerk of Court for the Eastern District of North Carolina entered default as to Hunt and WSC on January 12, 2023. [Doc. 17.] On April 19, 2023, Judge Richard E. Myers II of the Eastern District of North Carolina entered orders of default judgment against Hunt and WSC. [Docs. 21; 22.] On February 23, 2024, Judge Myers issued an order vacating those default judgments and

4

JA508

transferring the case to this Court.[3]  [Doc. 36.]  Judge Myers did not vacate the entries of default against Hunt or WSC.

On November 18, 2024, Plaintiff moved for default judgment against Hunt and WSC.  [Doc. 65.]  On March 13, 2025, Plaintiff also moved for summary judgment. [Doc. 77.]  Defendants have not filed responses, and the time for doing so has expired.[4] Both motions are now ripe for review.

## APPLICABLE LAW

**Declaratory Relief**

The Declaratory Judgment Act provides that a court of the United States, "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks omitted). Courts generally should exercise jurisdiction over declaratory judgment claims "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in

---

[3] In that order, Judge Myers found that Hunt, WSC, Jacobs, and Owens are subject to personal jurisdiction in South Carolina and sets forth the basis for such jurisdiction. [Doc. 36 at 17 (noting that Owens and Jacobs are residents of South Carolina—conferring general jurisdiction—and WSC and Hunt are subject to specific jurisdiction because the Accident occurred in South Carolina).]  This Court has subject matter jurisdiction because complete diversity exists among the parties and the amount in controversy exceeds $75,000.  [Doc. 1.]

[4] Under the undersigned's Summary Judgment Motion Procedures, because no Defendant filed anything in response to the motion for summary judgment that disputed the movant's statement of material facts, all facts in that statement are deemed admitted for summary judgment purposes.

5

JA509

issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (internal quotation marks omitted).

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.

6

**JA510**

Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Motion for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment." *United States v. Clark*, No. 3:17-cv-03440-JMC, 2019 WL 1122933, at *1 (D.S.C. Mar. 12, 2019) (internal quotation marks omitted). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction." *Choice Hotels Int'l, Inc. v. Bonham*, No. 96-

7

2717, 1997 WL 600061, at *1 (4th Cir. Sep. 30, 1997) (internal quotation marks omitted). Thus, prior to entry of default, a plaintiff must show that the defendant in question was properly served with the summons and complaint as required by Rule 4 of the Federal Rules of Civil Procedure.

In considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations in the Complaint not relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). Thus, regarding default judgments, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Anderson v. Found. for Advancement Educ. & Emp't of Am. Indians*, No. 99-1508, 1999 WL 598860, at *1 (4th Cir. Aug. 10, 1999). The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

## DISCUSSION

### Plaintiff's Summary Judgment Motion

"In construing insurance policies, South Carolina courts [and federal courts applying South Carolina substantive law in diversity cases] apply the law of the state where the policy was issued." *Companion Prop. & Cas. Ins. v. Airborne Exp., Inc.*, 631 S.E.2d 915, 916 (S.C. Ct. App. 2006). Here, North Carolina law governs the interpretation of the Policies because they were issued to a North Carolina corporation at its principal place of business in Wilmington, North Carolina. [Docs. 1 ¶¶ 9–10; 75 ¶¶ 7–8]; *see*

*Companion Prop. & Cas. Ins.*, 631 S.E.2d at 916 (applying Georgia law to policy issued to a Georgia corporation and delivered to the corporation in Georgia).

To obtain coverage under the Policies as a permissive user of a WSC-leased vehicle [*see* Doc. 1-5 at 56], Hunt and/or WSC was required to comply with the notice requirements contained in the Policies as a permissive user of a WSC-leased vehicle. Included in the Business Auto Policy are duties imposed on any insured in the event of a suit:

> **2.    Duties in the Event of Accident, Claim, Suit or Loss**
>
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> **a.**    In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss".  Include:
>
> **(1)**    How, when and where the "accident" or "loss" occurred;
>
> **(2)**    The "insured's" name and address; and
>
> **(3)**    To the extent possible, the names and addresses of any injured persons and witnesses.
>
> **b.**    Additionally, you and any other involved "insured" must:
>
> **(1)**    Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
>
> **(2)**    Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

9

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

[Doc. 1-5 at 62.]

The Excess Coverage Liability Policy incorporates the terms, definitions, conditions, limitations, and exclusions of the Business Auto Policy, except for terms and conditions related to duties to investigate or defend, the limits of insurance, the payment of expenses, the premium, cancellation, non-renewal, any renewal agreement, the policy period, or other provisions inconsistent with the Excess Coverage Liability Policy. [Doc. 1-6 at 3.] The Excess Coverage Liability Policy includes in its Conditions duties imposed on any insured in the event of a suit, stating:

**4.** **Duties in the Event of Occurrence, Claim or Suit**

**a.** You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

**(1)** How, when and where the occurrence took place;

**(2)** The names and addresses of injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the occurrence.

**b.** If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage

10

JA514

Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

**c.** You must see to it that we and your underlying insurers:

**(1)** Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

**(2)** Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

**d.** No "insured", except at their own expenses, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

[*Id.* at 8.]

"Notice provisions in insurance contracts have long been recognized as valid in North Carolina." *S.C. Ins. v. Hallmark Enters.* ("*Hallmark*"), 364 S.E.2d 678, 680 (N.C. Ct. App. 1988). Such provisions serve the purpose of allowing the insurer to begin its investigation and other necessary procedures promptly when a claim is made, thereby avoiding the prejudice that could occur from delayed notification. *Id.* Additionally, under North Carolina law, an insurer's duty to defend or indemnify "arises when an insurer receives actual notice of the underlying action." *Kubit v. MAG Mut. Ins.*, 708 S.E.2d 138, 153 (N.C. Ct. App. 2011).

North Carolina's courts utilize a three-step process (the "Three-Step Process") in evaluating an insurer's duty to defend or indemnify when an insurer objects that it did not receive timely notice: (1) first, the court must determine whether the insured gave notice

11

JA515

"as soon as practicable"; (2) if not, the court "must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him"; and (3) "[i]f the good faith test is met [by the insured,] the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay [in reporting]." *Great Am. Ins. v. C.G. Tate Constr.*, 279 S.E.2d 769, 776 (N.C. 1981). Further, under the language of the Policies, "the submission of a 'claim' and the giving of a 'notice' of loss or damage are two separate and distinct occurrences," meaning that even reporting the Accident does not meet all reporting obligations under the Policies. *Metric/Kvaerner Fayetteville v. Fed. Ins.*, 403 F.3d 188, 198 (4th Cir. 2005) (interpreting different policy language). In this case, the Policies required not only that the insureds report the Accident but that they immediately send CIC copies of legal requests and legal papers received relating to suits. [Docs. 1-5 at 62; 1-6 at 3, 8.]

North Carolina's Supreme Court has stated that insurers generally satisfy the first step of the Three-Step Process simply by raising the timeliness of notice as an issue to the court "unless the insurer's allegations that notice was not timely are patently groundless." *Great Am. Ins. v. C.G. Tate Constr.*, 340 S.E.2d 743, 747 (N.C. 1986). The Court concludes that CIC has satisfied the first step in this action by raising timeliness of notice as an issue.

As for step two—concerning whether Hunt or WSC had a good faith reason for their delay—the Court will assume that they did as the issue is immaterial to the result in this case. That is so because, as the Court will explain, CIC is nonetheless entitled to

prevail under the third step because the record shows CIC was materially prejudiced by the delay in receiving notice of the suit.

It is undisputed that CIC did not receive notice of the Wrongful Death Action until after the default judgment was entered in Owens's favor.  [Docs. 75 ¶¶ 29, 31–32; 76 ¶¶ 6–8, 11–12.]  When CIC did eventually learn of the default judgment in the Wrongful Death Action from someone other than Hunt, CIC issued a reservation of rights, and it undertook defense of Hunt, pursuant to that reservation of rights.  [Doc. 76 ¶¶ 9–10.] Because of the delay in CIC's notice of the Wrongful Death Action, CIC was prevented from investigating or litigating the Wrongful Death Action, and the Court issued a valid and enforceable default judgment against Hunt.  Thus, the record demonstrates as a matter of law that this delay in notifying CIC of the Wrongful Death Action materially prejudiced CIC's ability to protect its interests.  *See Hallmark*, 364 S.E.2d at 682 (holding that when an insurer did not receive notice of a lawsuit against its insured until after a default judgment had been entered against the insured, the insurer demonstrated that it had suffered material prejudice from the delay).  The Court therefore concludes that Plaintiff prevails at the third step of the test and is entitled to summary judgment.

**Plaintiff's Motion for Default Judgment Against Hunt and WSC**

"In ruling on a motion for default judgment, the court may conduct a hearing in order to . . . (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *J.M. Smith Corp. v. Tom's Family Pharm., Inc.*, No. 7:20-cv-2815-TMC, 2021 WL 5862153, at *2 (D.S.C. Jan. 27, 2021) (citing Fed. R. Civ. P. 55(b)(2)).  In this case, based on Plaintiff's filings, the Court finds that a hearing on the motion is unnecessary.

13

For the reasons already discussed in relation to Plaintiff's summary judgment motion, the Court concludes that the allegations in the Complaint support Plaintiff's entitlement to the declaratory relief requested.  As such the Court declares that Plaintiff has no duty to defend or indemnify Hunt under the Policies regarding the Wrongful Death Action.

## **CONCLUSION**

In light of the above, Plaintiff's motions for default judgment and summary judgment [Docs. 65; 77] are both GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

Florence, South Carolina
June 25, 2025

AO 450 (SCD 04/2010)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | | |
|---|---|---|
| The Cincinnati Insurance Compan, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    4:24-cv-00951-JDA |
| Wayne Hunt; Levi Owens, *Personal Representative* | ) | |
| *for the Estate of Christopher McLean*; Wilmington | ) | |
| Shipping Company, | ) | |
| *Defendant* | ) | |

### SUMMARY JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($__), which includes prejudgment interest at the rate of ____ %, plus postjudgment interest at the rate of ____ %, along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____.

✔ other: Summary Judgment is entered in favor of plaintiff, The Cincinnati Insurance Company, against Levi Owens, *personal representative for the Estate of Christopher McLean*. Default Judgment is entered as to defendants' Wayne Hunt and Wilmington Shipping Company.

This action was *(check one)*:

❏ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❏ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

✔ decided by the Honorable Joseph Dawson, III, United States District Judge, who grants Plaintiff's Motion for Summary Judgment and Motion for Default Judgment.

Date:   June 25, 2025

Robin L. Blume
*CLERK OF COURT*

s/L. Gibbons

_____
*Signature of Clerk or Deputy Clerk*

JA519

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00951-JDA |
| | ) | |
| Wayne Hunt; Levi Owens as Personal | ) | **Notice of Appeal** |
| Representative for the Estate of | ) | |
| Christopher McLean; Maisha Jacobs; | ) | |
| and Wilmington Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |

Notice is hereby given that Levi Owens as Personal Representative for the Estate of Christopher McLean, Defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the March 13, 2024, April 14, 2025, and June 25, 2025, Orders and June 25, 2025, Judgment (Entries 45, 84, 85, 88, & 89).

Dated: 07/24/2025

By: /s/ Jason Scott Luck

John E. Parker, Jr. (#13257)
Ashley Nance (#11093)
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.903.1781
jayparker@parkerlawgroupsc.com
anance@parkerlawgroupsc.com

Jason Scott Luck (#9696)
P.O. Box 47
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Defendant Levi Owens, as**
**Personal Representative of the Estate of**
**Christopher McLean**

**JA520**