# No. 25-1848

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

THE CINCINNATI INSURANCE COMPANY,
*Plaintiff-Appellee*

v.

LEVI OWENS, Personal Representative for the Estate of Christopher McLean,
*Defendant-Appellant*

and

WILMINGTON SHIPPING COMPANY; WAYNE HUNT
*Defendants*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

---

## BRIEF OF APPELLANT

---

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Defendant-Appellant*

John Elliott Parker, Jr.
Parker Law Group, LLP
P.O. Box 487
Hampton, SC 29924
803.534.5218
*Counsel for Defendant-Appellant*

## DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1(2), Appellant Levi Owens submits the following:

**(A) Information Required by FRAP 26.1.** Not applicable – Appellant is an individual.

**(B) Information About Other Financial Interests.** No publicly-held corporation has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit sharing agreement, insurance, or indemnity agreement.

**(C) Information About Other Publicly Held Legal Entities.** Not applicable.

**(D) Information About Trade Association Members.** Not applicable.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT...................................................................i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES.............................................................iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES .................................................................2

STATEMENT OF THE CASE .............................................................3

STANDARD OF REVIEW ................................................................11

    I.    Motion to Stay ......................................................................11

    II.    Fed. R. Civ. P. 15 ................................................................11

    III.    Fed. R. Civ. P. 56 ..............................................................11

SUMMARY OF ARGUMENT...........................................................12

ARGUMENT ....................................................................................13

    I.    The District Court should have stayed this case to allow the underlying case to conclude. ...................................................13

        A.    A stay would have prevented the District Court from improperly asserting Article III jurisdiction. .....................................16

        B.    A stay would have prevented the District Court from improperly asserting jurisdiction under the Declaratory Judgment Act. ....................................................................17

            1.    South Carolina has a strong interest in having its courts decide this issue..............................................19

            2.    The South Carolina Special Referee can resolve this issue more efficiently than federal court. ...........................21

3.    A stay would have prevented unnecessary entanglement between federal and state courts. ..........................22

II.    Owens had the right, via amendment, to investigate the issue of an applicable MCS-90 endorsement. ............................................23

III.    Summary judgment was premature in light of the issues raised by Owens' motions to stay and amend. ...........................................27

CONCLUSION ..............................................................................................28

STATEMENT REGARDING ORAL ARGUMENT ...........................................28

CERTIFICATE OF COMPLIANCE ......................................................................29

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) .......................................................................... 16

*Adams v. Royal Indemnity Co.*,
  99 F.3d 964 (10th Cir. 1996) ............................................................ 25

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937) .............................................................. 18

*Beach Cove Assocs. v. United States Fire Ins. Co.*,
  903 F. Supp. 959 (D.S.C. 1995) ....................................................... 20

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*,
  369 F.3d 385 (4th Cir. 2004) ............................................................ 17

*Brillhart v. Excess Ins. Co.*,
  316 U.S. 491 (1942) .......................................................................... 18

*Canal Ins. Co. v. Distrib. Servs., Inc.*,
  320 F.3d 488 (4th Cir. 2003) ............................................................ 26

*Carolina Cas. Ins. Co. v. Yeates*,
  584 F.3d 868 (10th Cir. 2009) .......................................................... 25

*Carter v. Fleming*,
  879 F.3d 132 (4th Cir. 2018) ............................................................ 11

*Centennial Life Ins. Co. v. Poston*,
  88 F.3d 255 (4th Cir. 1996) ........................................................ 18, 23

*Columbia Ins. Co. v. Reynolds*,
  225 F. Supp. 3d 375 (D.S.C. 2016) .................................................. 19

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ............................................................ 24

*Farabee v. Gardella*,
131 F.4th 185 (4th Cir. 2025)...................................................................27

*Foman v. Davis*,
371 U.S. 178 (1962) .............................................................................. 24

*Forkwar v. Progressive N. Ins.*,
910 F. Supp. 2d 815 (D. Md. 2012) ........................................................ 24

*Harleysville Mut. Ins. Co. v. Cambridge Bldg. Corp.*,
2006 WL 2038302 (D.S.C. July 19, 2006) ...................................22, 23

*Harrods, Ltd. v. Sixty Internet Domain Names*,
302 F.3d 214 (4th Cir. 2002).................................................................27

*Ingle ex rel. Estate of Ingle v. Yelton*,
439 F.3d 191 (4th Cir. 2006)...................................................................11

*John Deere Ins. Co. v. Nueva*,
229 F.3d 853 (9th Cir. 2000) ................................................................. 25

*Johnson v. Oroweat Foods Co.*,
785 F.2d 503 (4th Cir. 1986) ................................................................. 25

*Jordan v. Allstate Ins. Co.*,
2016 WL 4367080 (D.S.C. Aug. 16, 2016) ........................................14

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006)...................................................... 11, 26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................................16

*Lyndon S. Ins. Co. v. Walker*,
2019 WL 1118513 (D.S.C. March 11, 2019).....................................20

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .............................................................................17

v

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
　　15 F.3d 371 (4th Cir. 1994) ...................................................................11, 21, 22

*Penn. Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc.*,
　　2006 WL 569589 (D.S.C. March 6, 2006) .........................................................21

*Pierre v. Providence Washington Ins. Co.*,
　　286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001) ...............................25

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
　　344 U.S. 237 (1952) ............................................................................................17

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016) ............................................................................................16

*Trustgard Ins. Co. v. Collins*,
　　942 F.3d 195 (4th Cir. 2019) ......................................................................*passim*

*United States ex. rel. Ahumada v. NISH*,
　　756 F.3d 268 (4th Cir. 2014) .............................................................................11

*Wilton v. Seven Falls Co.*,
　　515 U.S. 277 (1995) ......................................................................................17, 19

**FEDERAL RULES**

Fed. R. Civ. P. 4 ...........................................................................................................20

Fed. R. Civ. P. 15 ................................................................................................1, 11, 24

Fed. R. Civ. P. 56 ................................................................................................1, 11, 27

**FEDERAL STATUTES**

28 U.S.C. § 1291 .............................................................................................................1

49 U.S.C. § 13906 .........................................................................................................23

**STATE CASES**

*Brockington v. Hunt*,
  2025 WL 674181 (S.C.Com.Pl. Jan. 2, 2025)...................................................14

*Great Am. Ins. v. C.G. Tate Constr.*,
  279 S.E.2d 769 (N.C. 1981) ................................................10, 13, 14

*Great Am. Ins. Co. v. C.G. Tate Constr. Co.*,
  340 S.E.2d 743 (N.C. 1986) ...........................................................13

*Oulla v. Velazques*,
  831 S.E.2d 450 (S.C.App. 2019) .....................................................15

**STATE RULES**

Rule 6, SCRCP .....................................................................................4

Rule 12, SCRCP ...................................................................................4

**STATE STATUTES**

S.C. Code § 15-9-370 .......................................................................4, 19

S.C. Code § 15-9-380 ...................................................................5, 19, 20

## JURISDICTIONAL STATEMENT

This is an appeal of a district court's orders denying a stay, refusing to grant leave to amend, and awarding summary judgment to Plaintiff-Appellee The Cincinnati Insurance Company. *See* Fed. R. Civ. P. 15 & 56. The District Court granted Plaintiff-Appellee The Cincinnati Insurance Company on June 25, 2025. Defendant-Appellant timely filed his notice of appeal on July 24, 2025. This Court's jurisdiction rests on 28 U.S.C. § 1291.

**STATEMENT OF ISSUES**

I

Whether the District Court erred when it refused to stay this action while the underlying state wrongful death action remained unresolved.

II

Whether the District Court erred when it refused to allow Appellant-Defendant Owens to amend his answer to request recovery under a potential MCS-90 endorsement.

III

Whether the District Court's award of summary judgment was premature in light of the issues raised by Appellant-Defendant Owens' motions to stay and amend.

## STATEMENT OF THE CASE

This appeal concerns Plaintiff-Appellee The Cincinnati Insurance Company (CIC)'s refusal to pay benefits due under an insurance policy it issued to Defendant Wilmington Shipping Company (WSC). While the case on appeal is a declaratory judgment action for coverage, it also implicates Appellant Levi Owens' incomplete wrongful death and survival action pending before the Marlboro County Court of Common Pleas.

On December 10, 2013, Christopher McLean was the passenger in a vehicle involved in a severe collision with a heavy truck operated by Defendant Wayne Hunt while driving on U.S. Highway 15 near McColl, Marlboro County, South Carolina. (JA252-253, JA400-401). McLean was killed as a result of the collision. (JA401). Appellant Levi Owens, as Personal Representative of McLean's Estate, filed a complaint on December 8, 2016, in the Marlboro County Court of Common Pleas, alleging wrongful death and survival causes of action against Hunt for failing to keep a proper lookout, failing to keep his vehicle within his lane of travel, traveling too fast for the conditions, and failing to yield the right of way, amongst other particular negligent acts and omissions of Hunt.[1] (JA178-180).

---

[1] Maisha Jacobs, the driver of the car in the collision, also filed suit against Hunt. (JA192-194). Because Jacobs ultimately settled with CIC and was dismissed (JA009), her action will not be addressed in this Statement of the Case.

At the time of the subject collision, Hunt possessed a North Carolina driver's license documenting that his address was 16671 NC Highway 210, Rocky Point, North Carolina. (JA252). The South Carolina Department of Public Safety collision report does not document that WSC was Hunt's employer. (JA252-253). Additionally, the heavy truck operated by Hunt in the collision was leased from Penske Truck Leasing Co., Ltd. and was not owned by WSC, as demonstrated by the collision report, but was instead a hired or borrowed vehicle. (JA253). Therefore, Owens subsequently named Hunt as the sole defendant in the Christopher McLean estate's wrongful death action and served him within South Carolina through the Director of the South Carolina Department of Motor Vehicles. *See* S.C. Code § 15-9-370 (SCDMV is the statutorily designated agent for domestic service of process on nonresident motor vehicle drivers.)[2] (JA181).

Hunt did not appear or file an answer as required by Rules 6(e) and 12(a), SCRCP, and the state court entered default against Hunt on November 16, 2017, and on October 22, 2018, referred the actions to a Special Referee to take testimony and determine damages. (JA184). The Special Referee, after notice to Hunt at his North Carolina address, held a damages hearing on November 17, 2021. (JA 185-187). On

---

[2] Defendant Hunt failed to accept and receipt for certified mail containing notice of service sent by the SCDMV, and the notice was subsequently sent by open mail as evidenced by the affidavit of mailing and envelope filed with the circuit court. (JA291-294).

November 18, 2021, the Special Referee awarded Owens a default judgment of $5,000,000.00 in wrongful death actual damages and $100,000.00 in survival actual damages. (JA187-191).

At the time of the subject collision, Hunt was a permissive driver under a business auto policy (EBA0104045) and excess policy (ENP0104045) issued by CIC to WSC. (JA400). In October of 2022, CIC retained defense counsel for Hunt, who on October 26, 2022, filed a motion for relief from the November 18, 2021, default judgment. (JA289-290). Hunt's argument for relief focuses on whether service on the Director of the SCDMV was effective under S.C. Code § 15-9-380. (JA282, JA285-286).

On November 8, 2022, CIC filed this declaratory judgment action in the United States District Court for the Eastern District of North Carolina, seeking declarations that it has no duty to defend or indemnify Hunt with respect to the default judgments. On December 6, 2022, Owens duly answered the complaint. (JA207-216). CIC sought and obtained entries of default as to Hunt and WSC, followed by default judgments. (JA230-244). On May 23, 2023, Owens moved to dismiss this action for want of personal jurisdiction, or in the alternative to transfer it to the District of South Carolina. (JA246-247). Pursuant to the parties' joint request, discovery was stayed while the Eastern District of North Carolina considered this motion. (JA007). On February 23, 2024, the Eastern District of North

Carolina granted Owens' motion in part and transferred this action to the District of South Carolina. (JA254-274).

On February 27, 2024, the Marlboro County Sheriff returned *nulla bona* the Clerk of Court's June 2, 2023, execution of the default judgment against Hunt as the judgment debtor in the wrongful death action. (JA334-335).

On February 28, 2024, Owens filed a motion to stay this action until the wrongful death action was concluded. (JA280-288). Owens noted in this motion that interests of federalism, efficiency, and comity dictated that the District Court abstain from exercising jurisdiction while the underlying wrongful death action was pending. (JA283). On March 13, 2024, the District Court denied this motion, finding "the instant action is not based upon the contention that [Wayne] Hunt was not properly served in the underlying state court case." (JA301). On March 14, 2024, the District Court entered a Scheduling Order in this action setting a deadline of May 9, 2024, for the parties to amend the pleadings. (JA009).

On March 22, 2024, Owens filed a Motion for Supplemental Proceedings in the wrongful death action with the intent of seeking a judicial assignment of any bad faith or breach of contract claims that Hunt may have against Plaintiff. (JA311, JA328).

On April 18, 2024, the parties filed a Rule 26(f) Report informing the Court that a modification of the Court's Scheduling Order deadlines was required.

(JA303). In the parties' April 18, 2024, Rule 26(f) Discovery Plan, Owens contended that Hunt and/or WSC had received actual notice of the underlying tort action and provided such notice to CIC, and that Owens would seek to amend his Answer to assert counterclaims against CIC for a declaration that CIC was required to satisfy its suretyship obligations under the policies' MCS-90 endorsement, as well as causes of action for bad faith and breach of contract once he could obtain a judicial assignment of Hunt's rights. (JA310-311). The Discovery Plan also sets forth that Owens had commenced supplemental proceedings in the underlying action to collect the default judgment, that the hearing was anticipated to occur in May of 2024, and that he reserved the right to request further amendment of the Scheduling Order's deadlines depending on the resolution of the underlying tort action. (JA311). On April 19, 2024, the parties' Consent Amended Scheduling Order was filed, setting a deadline of June 7, 2024, for the parties to amend the pleadings. (JA313-315).

On May 28, 2024, in the wrongful death case, a South Carolina Circuit Court Judge heard Owens' Motion for Supplemental Proceedings and Hunt's Motion for Relief from Judgment. (JA388). At the hearing, the circuit court held any decision in abeyance and requested supplemental briefing on the issue of whether it had subject matter jurisdiction in light of the October 22, 2018, Order of Reference. (JA388).

On June 6, 2024, the parties filed a Consent Motion to Amend the Scheduling Order based on the events of the May 28, 2024, hearing. (JA316-319). The District Court issued a Second Consent Amended Scheduling Order on June 7, 2024, incorporating the 90-day extensions proposed by the parties. (JA323-325).

On June 14, 2024, Owens filed a memorandum regarding the Special Referee's jurisdiction, and the Circuit Court Judge issued an order on July 24, 2024, finding that jurisdiction for "[a]ny motions filed after [the] order [of reference]" was vested in the Special Referee. (JA340). Owens' counsel contacted the Special Referee, and the parties' motions were scheduled for new hearing on October 10, 2024. (JA367-369, JA382-388).

On September 4, 2024, Owens moved for a 60-day extension to the deadline to amend pleadings, or in the alternative a stay of the deadline to amend pleadings. (JA326-332). The District Court, by order dated September 5, 2024, set the new deadline to amend pleadings to November 4, 2024. (JA357).

The Special Referee heard the parties' motions in the wrongful death case on October 10, 2024. The Special Referee held his decision on the motions in abeyance until the case was mediated, which took place, without success, on October 29, 2024. (JA363, JA367-369, JA391). These motions remain pending before the Special

Referee.[3]

On November 4, 2024, after the unsuccessful mediation, Owens moved for leave to amend his answer to include a declaratory judgment counterclaim requesting a determination of the parties' rights and obligations under an MCS-90 endorsement to CIC's policy or policies. (JA359-381). On November 18, 2024, CIC moved for default judgment as to Hunt and WSC. (JA392-393). On March 13, 2025, Owens moved to stay all deadlines pending the determination of the motions pending in the wrongful death action. (JA396-398). On the same day, CIC moved for summary judgment on its declaratory judgment action. (JA487-488). On March 27, 2025, Owens filed a motion to specifically stay the deadline for him to respond to CIC's motion for summary judgment, citing the pending motion to amend and the motions pending before the Special Referee in the wrongful death action. (JA497-498).

On April 14, 2025, the District Court issued orders denying Owens' motions to amend and stay.[4] (JA501, JA503). On June 25, 2025, the District Court issued an order granting CIC summary judgment and default judgment on its declaratory

---

[3] The docket for *Levi Owens v. Wayne Hunt*, 2016-CP-34-00265, can be viewed online here: https://publicindex.sccourts.org/marlboro/publicindex/

[4] The District Court's order on Owens' motion to stay also provided extra time to respond to CIC's motion for summary judgment, but the District Court's refusal to consider the existence of pending state court motions and the denial of the motion to amend rendered any response to the motion to summary judgment futile.

judgment claim. (JA505-519). The District Court found CIC was not given timely notice required under the notice provisions of the insurance policies CIC issued to WSC, and under the "Three-Step Process" of *Great Am. Ins. v. C.G. Tate Constr.*, 279 S.E.2d 769, 776 (N.C. 1981). The District Court found that "Hunt or WSC" (it does not specify who) did not give CIC notice "as soon as practicable" and it assumed "Hunt or WSC" had a good faith reason for the delay. (JA516-517). The District Court also found CIC was "materially prejudiced": "Because of the delay in CIC's notice of the Wrongful Death Action, CIC was prevented from investigating or litigating the Wrongful Death Action, and the Court issued a valid and enforceable default judgment against Hunt." (JA517). The Clerk of Court entered judgment the same day as the opinion.[5] (JA519).

Owens timely filed his Notice of Appeal on July 24, 2025. (JA520).

---

[5] The judgment in this matter incorrectly states that Judge Joseph Dawson, III, decided this case.

## STANDARD OF REVIEW

### I.     Motion to Stay

Under the circumstances of this case, this Court reviews "essentially *de novo*" the district court's decision to proceed with a declaratory judgment action while the underlying state action was pending. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994).

### II.     Fed. R. Civ. P. 15

This Court reviews a district court's denial of a motion to amend the complaint for abuse of discretion. *See Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (*en banc*). However, if the district court denied such a motion on the grounds that the amendment would have been futile, this Court reviews its legal conclusions *de novo*. *United States ex. rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).

### III.     Fed. R. Civ. P. 56

"[This Court reviews] a district court's decision to grant summary judgment *de novo*…" *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (italics added). This Court reviews the denial of a Fed. R. Civ. P. 56(d) motion for abuse of discretion. *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (Under prior numbering of rule).

## SUMMARY OF ARGUMENT

The rush to resolve this declaratory judgment action has benefited no one and harmed many. The underlying South Carolina wrongful death case remains unresolved and non-final. Levi Owens repeatedly requested the District Court to stay this matter in order to avoid conflicting decisions, but his motions were denied. Ultimately, on June 25, 2025, the District Court issued an order granting The Cincinnati Insurance Company default and summary judgment in this action. This June 25, 2025, order is an advisory opinion that creates an unfortunate and completely avoidable entanglement between the District Court and the South Carolina state court. Years of unnecessary litigation have now left federal and state courts in conflict and generated a jurisdictionally dubious decision.

While the District Court should have never let this case proceed, when it did, it compounded error by refusing to allow Levi Owens to investigate the existence of a well-known and viable source of recovery: the MCS-90 endorsement purportedly part of the relevant insurance policies.

Ultimately, this Court must cut this Gordian Knot: reverse/vacate the orders of the District Court and stay/dismiss this declaratory judgment so that the state court may complete its task without interference.

## ARGUMENT

**I.    The District Court should have stayed this case to allow the underlying case to conclude.**

The District Court's order granting summary judgment in this matter is bottomed and premised on CIC's purported lack of notice of the underlying wrongful death case and "a valid and enforceable default judgment against Hunt." (JA505-518). The District Court's lack of notice analysis is based on the "Three-Step Process" of *Great Am. Ins.*, 279 S.E.2d at 776, which generally requires a showing of: (1) notice to the insurer "as soon as practicable"; (2) if not, the court "must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him"; and (3) "[i]f the good faith test is met [by the insured,] the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay [in reporting]." *Id.* (JA515-516).

The North Carolina Supreme Court refined the *Great American* test in a subsequent opinion, where it found: "In *Great American* this Court redefined the 'notice as soon as practicable' provision to mean that the requirement is satisfied despite any delay in notifying the insured, so long as it is occasioned in good faith and the insurer is not materially prejudiced." *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 340 S.E.2d 743, 747 (N.C. 1986).

13

The District Court found that "Hunt or WSC" (it does not specify which) did not give CIC notice "as soon as practicable" and it assumed "Hunt or WSC" had a good faith reason for the delay. (JA516-517). The District Court also found CIC was materially prejudiced by this delay by the entry of the "**valid and enforceable** default judgment against Hunt." (JA517). This finding entangles this case and the state court wrongful death case, where there has been no final determination of the validity and enforceability of the default judgment in question. Wayne Hunt's motion to be relieved from or vacate the default judgment against him in the underlying wrongful death action has been pending the entirety of this lawsuit.[6] As long as it (and Owens' motion for supplemental proceedings) remains pending, the final outcome of the wrongful death case remains uncertain. By way of example, any of the following could occur:

(1) The Special Referee could deny the motion to set aside the default judgment and grant the motion for supplemental proceedings, immediately assigning Hunt's bad faith rights. *See Brockington v. Hunt*, 2025 WL 674181 (S.C.Com.Pl. Jan. 2, 2025) (example of judicial assignment of bad faith rights). Owens would then be able to proceed against CIC under a bad faith theory. *See Jordan v. Allstate Ins. Co.*, 2016

---

[6] Wayne Hunt's motion was filed on October 26, 2022, and CIC filed this action on November 8, 2022. (JA014, JA289).

WL 4367080, at *4 (D.S.C. Aug. 16, 2016), *aff'd*, 678 Fed. Appx 171 (4th Cir. 2017) ("Because a bad faith action lies in tort and not in contract, a bad faith claim may exist even in the absence of any violation of an insurance contract provision.").

(2) The Special Referee could grant the motion to set aside the default judgment, and the wrongful death case effectively restarts. With no default judgment, any prejudice to CIC becomes moot, as does the District Court's analysis under *Great American*. WSC can be added or substituted as a party, and a new coverage battle begins.

(3) The Special Referee could deny the motion to set aside the default judgment and grant the motion for supplemental proceedings, setting a hearing where Wayne Hunt admits he placed CIC on notice of this claim years ago. The District Court's analysis under *Great American*, which is based on lack of notice, becomes moot.

(4) The Special Referee could deny both motions but allow Owens to substitute WSC for Hunt in the default judgment. *See Oulla v. Velazques*, 831 S.E.2d 450, 454-455 (S.C.App. 2019) (standard for post-judgment amendment). The District Court's analysis under *Great American* again becomes moot.

Regardless of how the motions pending in the wrongful death case are disposed, that lawsuit's outcome is, and remains, non-final and uncertain. Recognizing this limitation, on February 28, 2024, and again on March 27, 2025, Owen moved the District Court stay this action (or relevant deadlines) to allow the underlying wrongful death action to conclude. (JA280-288, JA497-499). The District Court's refusals to grant these motions (JA301, JA503) were each reversible error in two aspects:

### A. A stay would have prevented the District Court from improperly asserting Article III jurisdiction.

Hunt's pending motion for relief from the default judgment raises a question of standing, which is a jurisdictional issue this Court may examine independently. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). As this Court recognized in *Trustgard*:

> The "irreducible constitutional minimum of standing" requires the petitioner to allege a concrete injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). Ripeness, another justiciability doctrine, determines when a case or controversy is fit for federal judicial review. "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
>
> These constitutional doctrines ensure that we do not exceed the limits of Article III judicial power, *see Spokeo, Inc. v. Robins*, [578 U.S. 330], 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), and so guard against our rendering of an opinion "advising what the law would be upon a

16

hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (internal citations omitted). Instead, we must wait until the case has "taken on fixed and final shape so that [we] can see what legal issues [we are] deciding, [and] what effect [our] decision will have on the adversaries." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (internal citations omitted).

*Id.* at 199-200 (footnotes removed).

"That courts may not issue advisory opinions is one of the most long-standing and well-settled jurisdictional rules..." *Id.* at 200 (citation removed). However, the District Court's refusal to stay this matter has resulted in precisely that: an opinion based on facts and circumstances that are unfixed, nonfinal, and hypothetical. The District Court's order awarding default and summary judgment must be vacated and its orders refusing to stay this matter must be reversed.[7]

### B. A stay would have prevented the District Court from improperly asserting jurisdiction under the Declaratory Judgment Act.

Hunt's pending motion before the state court for relief from the default judgment (and Owens' motion for supplemental proceedings) also raises questions of federalism, efficiency, and comity. The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). A declaratory

---

[7] As this ultimately is a matter of jurisdiction (*i.e.*, abstention), this Court is empowered to vacate all of the orders below and dismiss CIC's lawsuit for want of jurisdiction. *See, e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc).

judgment action is appropriate when the action will settle the legal relations in issue and terminate and afford relief from the uncertainty giving rise to the proceeding. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Declaratory judgment actions should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy…" *Id.* When there are pending state court actions, federal courts should consider whether the issue would be better settled by the state court proceedings. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)); *see also Trustgard*, 942 F.3d at 202 (Courts should "exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction…"). "This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding…'" *Poston*, 88 F.3d at 257 (quoting *Brillhart*, 316 U.S. at 495).

This Court has articulated four factors to consider when weighing whether to abstain from exercising jurisdiction over a declaratory judgment action:

> (1) the state's interest in having its own courts decide the issue; (2) the state courts' ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping.

*Trustgard*, 942 F.3d at 202. By considering the preceding factors, federal courts will be guided by considerations of federalism, efficiency, and comity and may avoid interference with state court proceedings. *Columbia Ins. Co. v. Reynolds*, 225 F. Supp. 3d 375, 380 (D.S.C. 2016). The Supreme Court of the United States has warned that district courts may be engaging in "gratuitous interference" when permitting a federal declaratory action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issue is pending in state court." *Wilton*, 515 U.S. at 283.

The District Court's finding that the wrongful death default judgment is "valid and enforceable" is an implicit finding that Owens' service of Hunt under S.C. Code § 15-9-370 & 15-9-380 was proper. This is precisely the kind of entanglement a stay of this action would have prevented. Had the District Court considered the factors set forth in *Trustgard*, it would have found a stay was proper:

### 1.   South Carolina has a strong interest in having its courts decide this issue.

South Carolina's General Assembly has codified statutes setting forth when personal jurisdiction may be exercised over a nonresident motorist. To that end, South Carolina statutes prescribe the steps that must be taken to effect service over a nonresident motorist by serving process on the Director of the SCDMV. The federal government has no interest in regulating or prescribing methods of instate service of process concerning state law claims, and the Federal Rules of Civil

Procedure defer to state law for prescribing the means to serve individuals and corporations. Fed. R. Civ. P. 4(e)(1). CIC's Complaint in this case references the in-state service of a state tort action under South Carolina law, and the subject accident occurred within South Carolina on a South Carolina roadway. (JA014-016, JA019-020). Compliance with statutory provisions for service on the SCDMV when the nonresident motorist fails to accept notice from the DMV is a novel issue under state law, as there are no binding South Carolina authorities interpreting S.C. Code § 15-9-380. South Carolina not only has a strong interest in having any state law issues regarding service interpreted and decided in a state court, but also in having a state court apply its laws regarding service to the circumstances giving rise to this action.

Additionally, South Carolina maintains its roadways, responds to, and investigates motor vehicle accidents on those roadways, and motor vehicle liability insurance is an area of extensive state regulation. The federal government has little interest in the regulation of automobile insurance, and Congress has deferred to the states on issues of automobile insurance. The District of South Carolina has found in the past that South Carolina has a strong interest in having issues of motor vehicle insurance coverage decided within state courts. *See Lyndon S. Ins. Co. v. Walker*, 2019 WL 1118513 at *2 (D.S.C. March 11, 2019); *Reynolds*, 225 F. Supp. 3d at 383; *Beach Cove Assocs. v. United States Fire Ins. Co.*, 903 F. Supp. 959, 962-63 (D.S.C. 1995). More importantly, the factual issue of whether Owens properly served Wayne

Hunt will be litigated in state court in the underlying wrongful death action. In order to vacate the default judgment, Wayne Hunt will have to prove in state court that Owens did not comply with the requirements for service on a nonresident motorist. A close review of the factual issue at heart in this declaratory judgment action can lead to only one conclusion: that South Carolina has a strong interest in having the issue resolved in state court, and not a federal court.

**2.    The South Carolina Special Referee can resolve this issue more efficiently than federal court.**

The second factor for the Court to consider in determining whether a stay was appropriate is whether a South Carolina state court could resolve this issue more efficiently. This Court has encouraged district courts to make a "careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding…[and] whether such parties are amenable to process in that proceeding.'" *Penn. Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc.*, 2006 WL 569589 at *8 (D.S.C. March 6, 2006) (quoting *Nautilus*, 15 F.3d at 378-79). As set forth above, there are parallel actions that implicate the factual issue of service of process pending in state and federal court, and the final resolution of the state wrongful death action will have an effect on (potentially mooting) this declaratory judgment action. The most efficient use of judicial

resources is to allow the wrongful death action to finally conclude; only then can and should an analysis of coverage, based on a final judgment, take place.

### 3. A stay would have prevented unnecessary entanglement between federal and state courts.

The third factor asks a court to consider whether allowing a declaratory judgment action to go forward would create unnecessary entanglement between the state and federal courts. "Entanglement means that issues of fact in the federal declaratory action 'are already being litigated by the same parties in the related state court actions.'" *Reynolds*, 225 F. Supp. 3d at 384 (quoting *Nautilus*, 15 F.3d at 379). "While somewhat similar to the second factor, this factor requires the court to consider whether any decision by this court would have a preclusive effect in the state court actions." *Harleysville Mut. Ins. Co. v. Cambridge Bldg. Corp.*, 2006 WL 2038302 at *5 (D.S.C. July 19, 2006). This Court, in another appeal involving an MCS-90 endorsement and a declaratory judgment, found this factor especially compelling. *See Trustgard*, 942 F.3d at 203-204.

The District Court's June 25, 2025, decides the issue of service of process by declaring the default judgment "valid and enforceable". (JA517). The District Court came to this finding without any investigation or discovery into this matter, despite the fact proper service of process is a prerequisite for a "valid and enforceable" judgment. It is troubling that in order for CIC to prevail in this declaratory judgment action, it must seek and obtain a finding of fact that also undermines CIC's defense

of Wayne Hunt in the wrongful death action and exposes Mr. Hunt to $5,100,000.00 in personal liability.[8] This is the entanglement a stay could have avoided.



Owens concedes that it is unlikely that this declaratory judgment action can be successfully used as a device for "procedural fencing" due to the timing of the actions and Hunt's pending motion to vacate the default judgment. However, the abstention factors weigh in favor of dismissal of this action, even if the fourth factor is not met. As described above, there are compelling reasons for abstention in the interest of federalism, efficiency, and comity. A strong showing by Owens under the fourth factor is not necessary for a court to grant relief. *See Poston*, 88 F.3d at 258; *Harleysville Mut. Ins. Co.*, 2006 WL 2038302 at *6. The District Court's order awarding default and summary judgment must be vacated and its orders refusing to stay this matter must be reversed.

## II. Owens had the right, via amendment, to investigate the issue of an applicable MCS-90 endorsement.

Though Owens' December 6, 2022, answer asserted rights arising out of the federal Motor Carrier Act of 1980 (49 U.S.C. § 13906) (MCA), on November 4, 2024, Owens sought to include a counterclaim for declaratory judgment arising out of the MCA's requirement of an MCS-90 endorsement. (JA215, JA310, JA379-380).

---

[8] Should this Court affirm the District Court, the bad faith implications of this litigation strategy would be the subject of further litigation.

In light of the MCA's purpose to protect the innocent public, along with this Court's silence on the legal issue implicated, the District Court's refusal to allow amendment was reversible error.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

The District Court's April 14, 2025, order denied Owens' motion to amend on the basis of futility:

> In this case, [Owens] seeks to add a counterclaim asking for a declaration that the subject insurance policies' MCS-90 endorsement requires [CIC] to satisfy its surety obligations if it successfully disclaims coverage on the ground that it was not provided with prompt notice of the loss as required by its policies' cooperation provisions. As [CIC] argues, however, even if an MCS-90 were included in the policies, the surety-type obligations of the policies involving MCS-90 apply only to the named insured, which, in this case is [Wilmington Shipping Co.], not Hunt… *see Forkwar v. Progressive N. Ins.*, 910 F. Supp. 2d 815, 826, (D.

24

Md. 2012) ("[T]he MCS-90 endorsement provides coverage only to the named insured.").

(JA501). A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

Owens' theory of recovery is not frivolous or legally deficient. Federal law requires that a motor carrier have an "MCS-90" endorsement, or a substitute, for its traditional insurance policy. *See generally Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873-74 (10th Cir. 2009) (describing the legal and regulatory framework). An MCS-90 endorsement is not technically insurance, but a surety agreement obligating the insurer to pay any final judgment against the insured for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles. *Trustgard*, 942 F.3d at 198.

This Court and the District of South Carolina are silent as to whether an MCS-90 endorsement mandates payment of the surety to an injured third party in scenarios such as this, where the insured defaults and the insurer denies coverage based on the cooperation clause provisions in its policies. However, other jurisdictions have found payment is appropriate. *See, e.g., Pierre v. Providence Washington Ins. Co.*, 286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000); *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1996).

25

Further, mandating payment under an MCS-90 endorsement would effectuate the policy underlying the MCA. The MCA was passed, at least in part, to curb "abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). Penske Truck Leasing Co., Ltd., owned the truck involved in this fatal collision. (JA252, JA401, JA506). Hunt's true employer remained unknown until at some point after defense counsel appeared in the wrongful death action (around October of 2022). (JA289, JA508). To allow WSC and its insurer to use a vehicle lease to dodge responsibility for the death of Christopher McLean runs contrary to the purpose of the MCA and is, quite frankly, unjust.[9]

---

[9] Though not considered by the District Court, the record reflects no bad faith or dilatory motive on the part of Owens, and no prejudice as to CIC. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). "An amendment is not prejudicial…if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* Owens' December 6, 2022, answer (JA215) and his April 18, 2024, Discovery Plan (JA307, JA310-311) place CIC on notice of this potential argument. Delay in asserting a counterclaim for declaratory judgment is due solely to the Special Referee's delay in resolving the motions pending before him. (JA362-369).

III.    **Summary judgment was premature in light of the issues raised by Owens' motions to stay and amend.**

The District Court granted Summary Judgment based on Hunt's failure to notify CIC of the underlying wrongful death suit and the prejudice from the "valid and enforceable" default judgment. (JA505-518). As set forth the previous arguments, Owens presented the District Court with substantial questions of jurisdiction, abstention, and adherence to the MCA. Owens also requested the District Court "stay or vacate the deadlines to respond to [CIC's] Motion for Summary Judgment until the [District] Court has ruled on [Owens'] Motion to Amend Answer, and [Owens] has had an opportunity to file a Cross-Motion for Summary Judgment based upon any counterclaims he may be able to assert in this action." (JA497-498). All of these considerations demanded the District Court defer or deny CIC's motion for summary judgment. *See* Fed. R. Civ. P. 56(d).[10]

Finally, the District Court's finding of a "valid and enforceable" default judgment contains no analysis of how it made that finding. It is axiomatic proper service of process is a necessary for any valid judgment, and the District Court was

---

[10] While Owens did not specifically cite this rule, and he did not present the District Court with an affidavit or declaration in support of this request, his pending motions make it abundantly clear the basis for deferring consideration of summary judgment. This Court has been generous in granting requests to defer or deny summary judgment when the reasons why are apparent, even if there has been technical noncompliance with the rules. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-247 (4th Cir. 2002); *see also Farabee v. Gardella*, 131 F.4th 185, 198 (4th Cir. 2025) (Harris, J., concurring).

well aware that CIC was contesting service in the underlying wrongful death case.

(JA282, JA285, JA291-292, JA301, JA328, JA498). The June 25, 2025, order

contains no analysis or consideration on this critical matter.

Accordingly, the District Court's June 25, 2025, order must be reversed or

vacated to allow the state court wrongful death action to conclude.

## CONCLUSION

The District Court should be reversed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument, which he believes would aid the decisional

process on matters of South Carolina law and the unsettled MCS-90 endorsement

issue.

Respectfully submitted,

Dated: 09/30/2025

/s/ Jason Scott Luck

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863

John E. Parker, Jr.
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.534.5218

*Counsel for Defendant-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __25-1848__    **Caption:** __Cincinnati Ins. Co. v. Owens, et al.__

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains __approx. 6795__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using __Microsoft Word for Mac v.16.91__ [*identify word processing program*] in __Times New Roman, 14 pt__ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) __Jason Scott Luck__

Party Name __Levi Owens__

Dated: __09/30/2025__

29

[ Print to PDF for Filing ]    [ Reset Form ]    04/12/2020  SCC