## 25-1848

# United States Court of Appeals
### *for the*
# Fourth Circuit

THE CINCINNATI INSURANCE COMPANY,

*Plaintiff/Appellee,*

– v. –

LEVI OWENS,
Personal Representative for the Estate of Christopher McLean,

*Defendant/Appellant,*

and

WILMINGTON SHIPPING COMPANY; WAYNE HUNT,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

## BRIEF OF APPELLEE

Charles D. Atkinson
M. Taylor Petty
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-1113

*Counsel for Appellee*

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Plaintiff-Appellee The Cincinnati Insurance Company ("CIC"), makes the following disclosure:

1. CIC is not a publicly held corporation or a publicly held entity.

2. CIC is a wholly-owned subsidiary of Cincinnati Financial Corporation, which is a publicly-held corporation.

3. Cincinnati Financial Corporation, a publicly-held corporation, owns 100% of the stock of CIC.

4. There are other publicly held entities which have a direct financial interest in the outcome of this litigation. Cincinnati Financial Corporation holds an interest, due to its 100% ownership of CIC. Additionally, Penske Truck Leasing, L.P., has a potential interest due to an indemnity agreement and coverage as an additional insured under CIC's policy at issue. Mitsui & Co., a publicly held corporation, holds an approximately 30% interest in Penske Truck Leasing Co., L.P.

5. CIC is not a trade association.

6. This case does not arise out of a bankruptcy proceeding.

7. This is not a criminal case in which there is any organizational victim.

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................i

TABLE OF AUTHORITIES ...............................................................iv

JURISDICTIONAL STATEMENT .......................................................1

COUNTERSTATEMENT OF ISSUES ..................................................2

STATEMENT OF CASE .....................................................................3

    A.    Relevant History of the Wrongful Death Action ................................3

    B.    CIC Seeks Declaration Under the CIC Policies................................5

    C.    Scheduling By the Trial Court .....................................................7

    D.    Status of the Wrongful Death Action............................................10

    E.    The Summary Judgment Motion....................................................11

SUMMARY OF ARGUMENT ...........................................................14

STANDARD OF REVIEW ................................................................17

ARGUMENT ..................................................................................18

    I.    The District Court Did Not Abuse Its Discretion in Denying
Additional Motions to Stay ..........................................................18

        a.    Despite Owens' Arguments, There Is No Pending State
Court Action, Only a Contested Final Judgment.....................19

        b.    Even If There Were a Pending State Court Action, the
*Nautilus* Factors Do Not Require a Stay...................................20

    II.    The District Court Properly Denied Owens' Motion to Amend
Because the Proposed Counterclaim Was Futile ...............................24

        a.    The Pleadings Before the Trial Court Were Sufficient to
Deny the Motion to Amend ....................................................25

        b.    Even If the Amendment Were Futile, the Trial Court
Could and Should Have Denied the Amendment Based
on a Finding of Dilatory Motive by Owens..............................32

       c.     No Amendment Was Necessary for Owens to Present
MCS-90 Arguments in Defense of the Declaratory
Judgment Action ......................................................................35

   III.   The District Court Properly Granted CIC's Unopposed Motion
for Summary Judgment ....................................................................36

       a.     Owens Has Waived Any Legal Arguments Related to the
Sufficiency of the Summary Judgment Order .........................38

       b.     Owens is Judicially Estopped from Arguing Service Was
Insufficient in the Wrongful Death Action ..............................41

CONCLUSION .....................................................................................................43

STATEMENT REGARDING ORAL ARGUMENT ............................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937).................................................................... 35-36

*Armstrong v. U.S. Fire Ins. Co.*,
  606 F. Supp. 2d 794 (E.D. Tenn. 2009) .................................................31

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................ 27, 28

*Auer v. Robbins*,
  519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 79 (1997) .............................32

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................27

*Chase Brexton Health Servcs., Inc. v. Maryland*,
  411 F.3d 457 (4th Cir. 2005) .................................................................17

*Clatterbuck v. City of Charlottesville*,
  708 F.3d 549 (4th Cir. 2013) .................................................................27

*Coleman v Md. Ct. of Appeals*,
  626 F.3d 187 (4th Cir. 2010) .................................................................27

*Custer v. Pan Amer. Life Ins. Co.*,
  12 F.3d 410 (4th Cir. 1993) ..................................................................18

*Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*,
  3 F.4th 605 (4th Cir. 2021) ..................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962) ..........................................................................16

*Forkwar v. Progressive N. Ins. Co.*,
  910 F. Supp. 2d 815 (D. Md. 2012) ....................................................30

*Foxwood Hills Prop. Owners Ass'n v. 783-C, LLC*,
  625 B.R. 851 (Bankr. D.S.C. 2020) ...................................................36

*Frank C. Mailey Enters., Inc. v. Cargill, Inc.*,
  582 F.2d 333 (5th Cir. 1978)..............................................................38

iv

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...............................................................27

*Great Am. Ins. Co. v. C.G. Tate Constr. Co.*,
    303 N.C. 387, 279 S.E.2d 769 (1981) ......................................... 40, 43

*Great W. Cas. Co. v. Gen. Cas. Co. of Wis.*,
    734 F. Supp. 2d 718 (D. Minn. 2010) ...................................................31

*Grenier v. Cyanamid Plastics, Inc.*,
    70 F.3d 667 (1st Cir. 1995) ...................................................................38

*Ill. Nat'l Ins. Co. v. Temian*,
    779 F. Supp. 2d 921 (N.D. Ind. 2011)...................................................31

*Int'l Plastics, Inc. v. State Auto. Mut. Ins. Co.*,
    2023 U.S. Dist. LEXIS 168347 (D.S.C. 2023) ....................................35

*Island Creek Coal Co. v. Lake Shore, Inc.*,
    832 F.2d 274 (4th Cir. 1987) ................................................................32

*Jackson v. Kimel*,
    992 F.2d 1318 (4th Cir. 1993) ..............................................................18

*John S. Clark Co. v. Faggert & Frieden, P.C.*,
    65 F.3d 26 (4th Cir. 1995) ....................................................................42

*Johnson v. Cricket Council USA, Inc.*,
    658 F. Supp. 3d 276 (E.D.N.C. 2023) ..................................................27

*Johnson v. Orowheat Foods Co.*,
    785 F.2d 503 (4th Cir. 1986) ................................................................26

*Kubit v. MAG Mut. Ins. Co.*,
    210 N.C. App. 273, 708 S.E.2d 138 (Ct. App. 2011) .........................43

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) ......................................................... 15, 26

*Lambertson v. Utah Dep't of Corr.*,
    79 F.3d 1024 (10th Cir. 1996) ..............................................................34

*Lancer Ins. Co. v. Hitts*,
    No. 5:09-CV-302 (CAR), 2010 U.S. Dist. LEXIS 134881,
    2010 WL 5351842 (N.D. Ga. Dec. 21) .................................................31

*Leichling v. Honeywell Int'l, Inc.*,
  842 F.3d 848 (4th Cir. 2016) .............................................................. 30

*Lowery v. Stovall*,
  92 F.3d 219 (4th Cir. 1996) ................................................................ 42

*Maryland v. Universal Elections*,
  729 F.3d 370 ....................................................................................... 17

*Massey v. Ojaniit*,
  759 F.3d 343 (4th Cir. 2014) .............................................................. 27

*McMullen v. Lewis*,
  32 F.2d 481 (4th Cir. 1929) ................................................................ 38

*Nautilus Ins. Co. v. Winchester Homes*,
  15 F.3d 371 (4th Cir. 1994) ......................................................... 20, 21

*Ooida Risk Retention Grp., Inc. v. Williams*,
  579 F.3d 469 (5th Cir. 2009) .............................................................. 31

*Penn-America Ins. Co. v. Coffey*,
  368 F.3d 409 (4th Cir. 2004) .............................................................. 21

*Perkins v. U.S.*,
  55 F.3d 910 (4th Cir. 1995) ................................................................ 26

*Reed v. Town of Gilbert*,
  576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) ................ 27

*S.C. Ins. Co. v. Hallmark Enters., Inc.*,
  88 N.C. App. 642, 364 S.E.2d 678 (Ct. App. 1988) ......................... 40

*Save Our Sound OBX v. N.C. Dep't of Transp.*,
  914 F.3d 213 (4th Cir. 2019) ......................................................... 17, 26

*Sec'y of State for Defence v. Trimble Navigation Ltd.*,
  484 F.3d 700 (4th Cir. 2007) .............................................................. 25

*Sentry Select Ins. Co. v. Thompson*,
  665 F. Supp. 2d 561 (E.D. Va. 2009) ................................................. 31

*Shipbuilders Council of Am., Inc. v. U.S. Coast Guard*,
  578 F.3d 234 (4th Cir. 2009) .............................................................. 32

*Simio v. Flexsim Software Prods.*,
  983 F.3d 1353 (Fed. Cir. 2020) .......................................................... 34

*Smith v. Clarkton*,
  682 F.2d 1055 (4th Cir. 1982) ...................................................34

*Tenneco Chems., Inc. v. William T. Burnett & Co.*,
  691 F.2d 658 (4th Cir. 1982) ....................................................42

*United Capitol Ins. Co. v. Kapiloff*,
  155 F.3d 488 (4th Cir. 1998) ....................................................21

*United States v. Ga. Pac. Corp.*,
  562 F.2d 294 (4th Cir. 1977) ....................................................17

*Weather Modification LLC v. Brackin*,
  340 F.R.D. 316 (D.N.D. 2021) .................................................25

*Wilton v. Seven Falls Co.*,
  515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) .........20

*Zinkland v. Brown*,
  478 F.3d 634 (4th Cir. 2007) ....................................................42

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1332 ..........................................................................1

28 U.S.C. § 2201 ........................................................................15

28 U.S.C. § 2201(a) ....................................................................20

49 U.S.C. § 13906 .................................................................24, 35

49 C.F.R. § 387.7 ........................................................................35

Fed. R. Civ. P. 8(a)(2) ...............................................................28

Fed. R. Civ. P. 12(b)(6) ..........................................25, 26, 30, 31

Fed. R. Civ. P. 13(a)(2)(A) ........................................................35

Fed. R. Civ. P. 15(a) ..................................................................26

Fed. R. Civ. P. 26(a)(1) ..............................................................24

Fed. R. Civ. P. 26(b)(1) ..............................................................24

Fed. R. Civ. P. 56 .......................................................................44

Fed. R. Civ. P. 56(d) ..................................................................37

vii

Fed. R. Civ. P. 56(e) .................................................................18

Fed. R. Civ. P. 59(e) .................................................................15

S.C. Code Ann. § 15-3-530(6) ..................................................19

S.C. R. Civ. P. 3(a) ...................................................................19

S.C. R. Civ. P. 60 .....................................................................20

*Regulatory Guidance for Forms Used to Establish Minimum Levels of Financial Responsibility of Motor Carriers*, 49 C.F.R. Part 387, 70 F.R. 58065-01, 2005 WL 2438280 (Oct. 5, 2005) .................................. 30, 31

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee The Cincinnati Insurance Company ("CIC") filed this action (this "Action") in the District Court, based upon diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332. (JA15-16) Appellee is an Ohio corporation, with its principal place of business in Ohio, and Appellant, as well as all Defendants, were citizens and residents of either North Carolina or South Carolina. (JA15, JA207) The District Court entered judgment for CIC on June 25, 2025. (JA505) Appellant-Defendant Levi Owens, as Personal Representative for the Estate of Christopher McLean ("Owens") filed a Notice of Appeal on July 24, 2025. (JA520) This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as an appeal from a final decision of the District Court.

# COUNTERSTATEMENT OF ISSUES

## I

Whether the District Court properly exercised its discretion when denying Owens'
fourth filed Motion to Stay on March 27, 2025, after having granted three requested
motions to extend deadlines for Owens, as well as having extended the summary
judgment response deadline in response to that same motion.

## II

Whether the District Court correctly denied Owens' Motion to Amend, which
Motion asserted the presence of an MCS-90 endorsement which did not exist as
reflected in the record at the time of the Motion to Amend, and whether amendment
was even necessary, given that Owens had asserted the same arguments as an
affirmative defense to CIC's Declaratory Judgment Action.

## III

Whether the District Court properly granted CIC's Motion for Summary Judgment,
to which Owens failed to file any opposition or to contest any material facts
presented to the Trial Court.

## STATEMENT OF CASE

CIC filed a declaratory judgment action related to potential coverage under policies of insurance issued by CIC (the "CIC Policies") to Defendant Wilmington Shipping Company ("WSC"). Owens challenges the Trial Court's grant of summary judgment holding that CIC owes no coverage under the circumstances. Owens sought coverage under the CIC Policies, after obtaining a default judgment against Defendant Wayne Hunt ("Hunt") in the Court of Common Pleas for Marlboro County, South Carolina (the "Wrongful Death Action"). "The CIC Policies in effect on October 1, 2013, are the CIC policies which would potentially apply to any judgments that Owens obtained against Hunt related to the Accident based on policy periods." (JA400) "Hunt was not a named insured under the CIC Policies but had certain coverages available as a permissive user of vehicles." (JA400) CIC has never contended that Hunt bears any actual fault for the accident that is the basis for the Wrongful Death Action, which involved the driver of the vehicle in which Owens' decedent was a passenger turning left in front of a truck operated by Hunt. (JA252-253)

### A. Relevant History of the Wrongful Death Action

Owens filed the Wrongful Death Action against Defendant Hunt, who was an employee of WSC, but not against WSC directly. (JA177-180) Owens filed the Wrongful Death Action on December 8, 2016, making claims for an automobile

3

accident that occurred on December 10, 2013. (JA177-178) Owens attempted service of the Wrongful Death Action via the South Carolina Department of Motor Vehicles on February 10, 2017.  (JA181) "Neither Owens nor his attorneys sent notice of the Wrongful Death Action to CIC prior to entry of the default judgment." (JA403) "The Policies contained language requiring Hunt to immediately send CIC copies of any summons or legal paper received regarding any 'suit,' as defined in the Business Auto Policy."  (JA403)

On September 28, 2017, Owens' counsel filed an Affidavit of Default as to Hunt in the Wrongful Death Action. (JA182)  On November 16, 2017, Judge Paul Burch executed an Entry of Default in the Wrongful Death Action.  (JA183) On October 22, 2018, Judge Burch executed an Order of Reference, transferring all further decisions to Special Referee Doug Jennings.  (JA184)

Three years later, on November 4, 2021, counsel for Owens sent Hunt, but no other person or entity, a Notice of Hearing, for a hearing before Special Referee Jennings on November 17, 2021.  (JA185-186)  The day after the hearing, on November 18, 2021, Special Referee Jennings entered a default judgment against Hunt in the Wrongful Death Action for Five Million, One Hundred Thousand Dollars ($5,100,000.00).  Owens has provided no evidence that he ever attempted service upon CIC or WSC prior to obtaining any judgment in the Wrongful Death

Action.  Owens never filed suit against WSC related to the Wrongful Death Action or the claims asserted therein.

### B. CIC Seeks Declaration Under the CIC Policies

CIC issued to WSC an automobile liability policy (the "Auto Policy"), bearing Policy Number EBA0104045 (JA37-160), as well as an Excess Liability Policy (the "Excess Policy"), bearing Policy Number ENP0104045 (JA161-176), which provided certain coverages to WSC as well as to drivers authorized to perform work for WSC.  (The Auto Policy and the Excess Policy are collectively referenced as the "CIC Policies.")  Neither of the CIC Policies listed Hunt as a named insured.  (JA72, JA161) The CIC Policies were issued to WSC, a North Carolina Corporation (JA15), and the CIC Policies were delivered to WSC at its Wilmington, North Carolina address.  (JA72)

On November 8, 2022, CIC filed an action for declaratory judgment against Owens, Maisha Jacobs (the driver of Decedent's car, who was later dismissed from the case), WSC, and Hunt, initially in the Eastern District of North Carolina, based on issuance of the CIC Policies in North Carolina, and Hunt and WSC's residence in North Carolina at the time of the underlying accident, as well as service of process on Hunt in North Carolina.  (JA1-3) CIC effected service on all Defendants, including Hunt and Owens.  (JA202-205, JA206.)

On December 8, 2022, CIC filed a Motion for Entry of Default as to Hunt and WSC, based on each party's failure to timely respond to the Complaint. (JA218) The Motion for Entry of Default included Affidavits of Default as to Hunt and WSC, stating dates of service. (JA219-222) On January 11, 2023, the Clerk of Court for the Eastern District of North Carolina made Entry of Default as to Hunt and WSC. (JA230) On February 17, 2023, CIC moved for a default judgment against Hunt and WSC. (JA231-236) No party opposed the Motion at the time. On April 19, 2023, Judge Myers of the Eastern District of North Carolina issued Orders of Default Judgment as to WSC and Hunt. (JA237-240, JA241-244) Those Orders were later set aside, due to jurisdictional objections by Owens.

On May 23, 2023, Owens (as well as former Defendant Maisha Jacobs) filed a Motion to Dismiss this action, for lack of personal jurisdiction, or, in the alternative, for a transfer of venue to the District of South Carolina. (JA246-247) Although CIC opposed that Motion, on February 2, 2024, Judge Myers issued an Order finding no personal jurisdiction as to Owens and Jacobs, and ordering the case transferred to the Trial Court, the District of South Carolina. (JA254-274) In that same Order, Judge Myers vacated the default judgments (but not the entries of default) as to Hunt and WSC. (JA271-JA274)

"At all times prior to the entry of default judgment against Hunt, Hunt did not notify CIC of the Wrongful Death Action brought against him." (JA473, JA475-

6

476)  "CIC has no record of receipt of any notice regarding the Wrongful Death Action prior to entry of default judgment."  (JA8, JA478)

### C. Scheduling By the Trial Court

On February 28, 2024, Owens moved to stay this Action, based on an argument that all issues in this Action may be resolved through rulings in the Wrongful Death Action.  (JA280-288) CIC opposed the stay.  On March 13, 2024, the Trial Court issued a text order denying the Motion to Stay, finding that "the instant action is not based upon the contention that Hunt was not properly served in the underlying state court case."  (JA301) The Trial Court further found that the factors Owens cited as requiring a stay do not justify a stay under the facts of this case.  (JA301) In response to the Trial Court's ruling, on April 18, 2024, CIC and Owens jointly submitted their Rule 26(f) Report and discovery plan, which included a proposed discovery deadline of October 9, 2024.  (JA303-312) In the discovery plan, Owens contended that the CIC Policies contained an alleged MCS-90 endorsement, and that Hunt was insured under the CIC Policies even if he was not a named insured (despite the CIC Policies being exhibits to the Complaint).  (JA310) In response to the disclosures, the Trial Court entered a Consent Amended Scheduling Order on April 19, 2024.  (JA313-315)

On June 6, 2024, CIC consented to a modification of that Consent Amended Scheduling Order, in part because of the premature birth of Owens' counsel's child.

7

(JA316-319) As a result, the Trial Court entered a new Second Consent Amended Scheduling Order on June 6, 2024, with a Motions Deadline of March 13, 2025. (JA320-325) In Footnote 1 of the Second Consent Amended Scheduling Order, the Trial Court noted the requirements of <u>Summary Judgment Motion Procedures for Judge Austin</u>, it and further required a moving party to initiate a Rule 56 Conference between the parties and to provide a proposed statement of undisputed material facts filed by the parties jointly.  (JA324)

Under the Second Amended Consent Scheduling Order, Motions to Amend were required to be filed by September 5, 2024.  (JA323) On September 4, 2024, Owens moved to amend the deadline to amend pleadings by 60 days to November 4, 2024, or in the alternative to stay that deadline.  (JA326-332)   The undersigned consented to a 30-day extension in good faith, due to delays in his response to the request for consent; however, the undersigned stated that he could not consent to a stay or a 60-day extension.  (JA352-356) Although the undersigned did not consent, the Trial Court extended the deadline to amend pleadings to November 4, 2024, by text order.  (JA357-358)

On the new deadline to amend, November 4, 2024, Owens again moved to extend the pleading amendment deadline, while also moving "to amend his Answer to assert a counterclaim for a declaration that the Policies['] MCS-90 endorsement requires [CIC] to satisfy its suretyship obligations if it successfully defends coverage

8

on the ground that it was not provided with prompt notice of the loss as required by its policies' cooperation procedures."[1] (JA359)  Pursuant to Local Rule 7.02, DSC, Owens' counsel properly noted that CIC did not consent to the Motion.  (JA369) CIC argued against the extension, noting repeated extensions, and stated that the Motion to Amend should be denied due to futility.  (For reference to filing, *see* JA010; *see also* SA2-SA4) On April 14, 2025, the Trial Court issued a text order denying the Motion to Amend, reasoning that the suretyship obligations which Owens asserted applied only to the named insured, WSC, rendering the amendment sought futile.  (JA501)

On November 18, 2024, CIC moved the Trial Court for default judgments as to WSC and Hunt.  (JA392-393) The Clerk's notice advised that a response to that Motion was due by December 2, 2024.  (JA010) Owens filed no such opposition. (JA010)

As required by the Second Amended Scheduling Order, counsel conducted a Rule 56 conference to discuss the uncontested material facts. (*See* JA399) On March 13, 2025, the day of the Dispositive Motions deadline, Owens filed another Motion to Stay Deadlines, seeking "to stay all deadlines until further notice."  (JA397) This Motion anticipated that CIC would file a Motion for Summary Judgment, in

---

[1]    As previously noted by CIC and as was clear from the CIC Policies, there is no MCS-90 Endorsement in either of the CIC Policies.

accordance with the Trial Court's Dispositive Motions deadline.  (JA396) Later that day, CIC filed its Motion for Summary Judgment along with the parties' Joint Statement of Stipulated Material Facts and CIC's Statement of Material Facts. (JA399-488) On March 18, 2025, the Trial Court granted in part the March 13, 2025 Motion to Stay Deadlines, noting "[t]he unexpired deadlines in the scheduling order are stayed pending the Court's resolution of the pending motion to amend, motion for default judgment, and motion for summary judgment."  (JA495-496)

### D. Status of the Wrongful Death Action

As early as the February 28, 2024 Motion to Stay, Owens reported to the Trial Court that Hunt filed a Motion in the Court of Common Pleas for Marlboro County, seeking relief from the default judgment against Hunt in the Wrongful Death Action.  (JA282) Owens reported in that Motion that "[Owens] requested a hearing in the state court on Hunt's motion for relief from the default judgment, and Defendant hopes to have this motion heard and decided in the coming 60 days." (JA283) Four hundred eighty-four (484) days expired between that initial motion to stay asking for 60 days and the Trial Court's ruling on dispositive motions; however, in that time, Owens never reported any final ruling to the Trial Court.

As justifications for further stays of deadlines, Owens attached to the September 4, 2024 Motion to Stay email correspondence among Owens' counsel, Hunt's counsel for the Wrongful Death Action, and the Special Referee for the

10

Wrongful Death Action, from July through September of 2024, seeking to schedule motions before the Special Referee. (JA344-350) In the Motion, Owens reported that he expected pending motions in the Wrongful Death Action to be heard by the Special Referee by mid-October of 2024, but stated that there were some things beyond the control of Owens' counsel. (JA331) In the November 4, 2024 Motion to Stay, Owens reported to the Trial Court that the Special Referee held a hearing on the pending motions in the Wrongful Death Action on October 10, 2024, ordering mediation and holding rulings in abeyance. (JA368-369) Documents filed with the Trial Court by Owens demonstrate the mediation ordered by the Special Referee as a precursor to ruling on pending motions in the Wrongful Death Action were declared at impasse on October 29, 2024. (JA391) Despite that, Owens provided no evidence that the Special Referee ever ruled on the Motions, and there are no such rulings reflected in the Marlboro County Clerk of Court's file.

Despite seeking multiple stays and alleging factual issues, Owens served no written discovery in this Action, issued no subpoenas, and neither noticed nor took any depositions in this Action.

### E. The Summary Judgment Motion

Because there had been no amendment to the Second Amended Scheduling Order's deadline for dispositive motions, in accordance with that Order, CIC filed a Joint Statement of Material Facts on March 13, 2025, signed by counsel for CIC and

Owens. (JA399-404) CIC and Owens stipulated that the CIC Policies attached to CIC's Complaint were the policies of insurance at issue. (*See* JA400, JA404, JA016, JA037-176) The appendix to this Joint Statement included documentary support for the Stipulated Facts. (JA404 -471) Additionally, CIC filed Movant's Statement of Material Facts, in support of CIC's Motion for Summary Judgment. (JA472-473) The appendix to the Movant's Statement included all evidence supporting that statement. (JA474-486) Also on March 13, 2025, in accordance with the Trial Court's applicable Scheduling Order, CIC filed a Motion for Summary Judgment, stating that "there is no genuine issue of material fact as to whether Wayne Hunt or Wilmington Shipping ever gave CIC notice of the underlying wrongful death action filed in the Court of Common Pleas for Marlboro County, at any time prior to imposition of a default judgment against Hunt on November 18, 2021." (JA487) CIC stated that, "pursuant to North Carolina law, CIC has no obligation to indemnify Hunt or Wilmington Shipping Company for any portion of the judgment debt owed by Hunt to Owens as a matter of law." (JA487-488)

Despite the Trial Court's Order of March 18, 2025, which extended all deadlines except the summary judgment deadline, and which stated that the Trial Court would act on the Motion for Summary Judgment, on March 27, 2025, Owens filed another Motion to Stay Deadlines, seeking to "vacate or stay the deadline to respond to [CIC's] Motion for Summary Judgment" and contending that any

response to CIC's Motion for Summary Judgment would be identical to a motion for summary judgment that Owens could file for any counterclaim based on alleged MCS-90 obligations. (JA497-498) Of course, Owens filed this Motion on the deadline for Owens to file a response to CIC's Motion for Summary Judgment. (*See* JA11) CIC filed a response opposing the duplicative Motion to Stay on April 4, 2025. (JA11)

On April 14, 2025, the same day that the Trial Court issued an Order denying Owens' Motion to Amend, the Trial Court issued a Text Order denying Owens' March 27, 2025 Motion to Stay. (JA503) Despite denying the Motion to Stay, the Trial Court extended Owens' deadline to respond to CIC's Motion for Summary Judgment an additional ten days to April 24, 2025. (JA503) This extension gave Owens a total of forty-two days to prepare opposition Statements of Fact and an opposition brief to CIC's Motion for Summary Judgment. Despite this additional time, Owens filed neither an Opposition Statement of Facts in Dispute nor any brief in opposition to CIC's Motion for Summary Judgment. (JA12)

After receiving no opposition from Owens, on June 25, 2025, the Trial Court filed an Opinion and Order granting summary judgment to CIC on CIC's cause of action against Owens for declaratory judgment. (JA505-518) In that Order, the Trial Court noted that, pursuant to the Trial Court's Summary Judgment Motion Procedures, "because no Defendant filed anything in response to the motion for

13

summary judgment that disputed the movant's statement of material facts, all facts in that statement are deemed admitted for summary judgment purposes." (JA509) In the same order, the Trial Court also entered default judgment against Hunt and WSC, finding as to all parties that "[CIC] has no duty to defend or indemnify Hunt under the Policies regarding the Wrongful Death Action." (JA517-518) The Clerk of Court entered this judgment on June 25, 2025. (JA519)

On July 24, 2025, Owens filed a Notice of Appeal, giving rise to the present appeal. (JA520)

## SUMMARY OF ARGUMENT

Owens claims that there has been a "rush" to resolve this Action, which was filed by CIC in November 2022, based on Owens' own Wrongful Death Action commenced six years earlier in 2016, for an almost nine-year-old vehicular accident occurring in December 2013. Owens has sought delay after delay in the case, and he has received many extensions of deadlines to date; however, CIC was and is entitled to a final determination of CIC's rights and obligations under the CIC Policies. Owens had almost nine full months between the Parties' joint submission of the Rule 26(f) Report and the discovery deadline; however, Owens conducted no written, subpoena or deposition discovery. Owens had forty-seven days to respond to CIC's factual contentions and summary judgment arguments; however, Owens failed to submit any opposition. Further delay would not serve justice, it would have

merely further delayed the Trial Court's inevitable finding that CIC was entitled to a declaration of no coverage under the CIC Policies.

Owens' arguments regarding his Motion to Amend are largely red herrings. First, Owens made his assertions regarding the Motor Carrier Safety Act as an affirmative defense to CIC's complaint.  (JA215) This was sufficient to allow discovery on MCS-90 issues, and to allow for presentation of evidence supporting this affirmative defense in opposition to CIC's Motion for Summary Judgment or at an eventual trial on the merits.  *See Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 613 (4th Cir. 2021) (FN 6) (noting that declaratory relief can be sought to resolve construction of disputed contract terms); *see also* 28 U.S.C. § 2201 (noting that any court of United States is authorized to declare rights or legal relations of any interested party seeking a declaration).  Owens acknowledged to the Trial Court that arguments related to an MCS-90 endorsement would "essentially serve as [Owens'] response to [CIC's] Motion for Summary Judgment."  (JA503) Even so, and despite the expiration of the discovery deadline over two months prior to the dispositive motion deadline, Owens presented no MCS-90 evidence or law to the Trial Court in opposition to CIC's Motion for Summary Judgment.  Had there been a valid legal basis for amendment, Owens could have renewed his Motion to Amend after the summary judgment order, in conjunction with a motion for relief under Fed. R. Civ. P. 59(e).  *See Laber v. Harvey,* 438 F.3d 404, 427 (4th Cir. 2006)

(noting that grant of summary judgment alone was not basis to deny motion to amend), *citing Foman v. Davis,* 371 U.S. 178, 182 (1962) (reversing denial of motion to amend after final judgment of dismissal). Owens has not and cannot present evidence that Hunt was a named insured under the CIC Policies, nor did he allege that fact in his Proposed Amended Answer and Counterclaim (JA370-381); therefore, the Trial Court properly denied Owens' Motion to Amend as futile. By failing to produce any evidence supporting MCS-90 claims in opposition to CIC's Motion for Summary Judgment, and by failing to conduct any discovery on the MCS-90 issues in any form, despite that discovery being available due to the assertion of preemption and the enabling statute as an affirmative defense, Owens has proven that the denial of the Motion to Amend had no impact on his defense of the declaratory judgment claims presented by CIC.

Owens obtained multiple extensions to respond to CIC's Motion for Summary Judgment; however, Owens failed to submit any evidence or legal argument in opposition to CIC's Motion for Summary Judgment. In the Joint Statement of Stipulated Material Facts, Owens admitted the genuineness of the CIC Policies, (*see* JA400, JA016, JA037-176), and Owens proved the futility of the amendment sought. In its Memorandum in Support of CIC's Motion for Summary Judgment, CIC addressed the MCS-90 arguments due to the assertion of an affirmative defense related to federal preemption, and Owens appears to concede that MCS-90

16

arguments opposing the declaratory judgment action would be identical to a counterclaim. (JA497-498) Despite this assertion, Owens filed no opposition to CIC's Motion for Summary Judgment, admitting the admissible facts alleged (but not already stipulated to), and waiving further argument on legal issues. The Trial Court's Order granting summary judgment and default judgment are well supported, and the Trial Court's rulings should be affirmed in full.

## STANDARD OF REVIEW

"The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of causes of action on the court's docket.'" *Maryland v. Universal Elections,* 729 F.3d 370, 375, *quoting United States v. Ga. Pac. Corp.,* 562 F.2d 294, 296 (4th Cir. 1977). "As such, [appellate courts] review the denial of a motion to stay under an abuse-of-discretion standard." *Id.; see also Chase Brexton Health Servcs., Inc. v. Maryland,* 411 F.3d 457, 464 (4th Cir. 2005).

Normally, the Fourth Circuit "review[s] a district court's denial of a motion to amend the complaint for an abuse of discretion." *Save Our Sound OBX v. N.C. Dep't of Transp.,* 914 F.3d 213, 227 (4th Cir. 2019). "However, if the district court denied such a motion on the grounds that the amendment would have been futile, [an appellate court] reviews [the district court's] legal conclusions *de novo.*" *Id.*

Appellate courts review grants of summary judgment de novo; however, appellate courts "can affirm on any legal ground supported by the record and are not limited to the ground relied on by the district court." *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993). Although the failure of a non-moving party to respond to a motion for summary judgment "does not fulfill the burdens imposed on moving parties under Rule 56[, . . .] the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion [and supporting documentation filed with the motion]." *Custer v. Pan Amer. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir. 1993). Even so, the district court must review the facts and determine if the moving party is entitled to judgment as a matter of law on the uncontroverted facts presented. *Id.; see also* Fed. R. Civ. P. 56(e) (noting that if adverse party does not respond, summary judgment, if appropriate shall be entered against adverse party).

## ARGUMENT

### I.    The District Court Did Not Abuse Its Discretion in Denying Additional Motions to Stay.

District courts have broad discretion in determining whether to stay cases, and the Trial Court (and CIC) was generous in consenting to multiple delays to allow Owens an opportunity to act in the Court of Common Pleas, which Owens failed to do. In reality, there are two possible outcomes of the post-judgment motions in the

18

Wrongful Death Action: (1) a finding that service on Hunt was improper, which would result in reversal of the judgment, and which would render Owens' claims time-barred[2]; or (2) Hunt was properly served, and did not give CIC notice of the civil action filed against him, defeating coverage under the CIC Policies. Either way, any finding in the Wrongful Death Action would not provide any obligation for CIC to make payment to Owens under the CIC Policies. Accordingly, justice did not require any stay of this Action.

### a. Despite Owens' Arguments, There Is No Pending State Court Action, Only a Contested Final Judgment.

Owens' arguments begin with a failed premise – that the Wrongful Death Action was an active, ongoing action. Owens holds a judgment, and Hunt has sought post-judgment relief. That said, Owens filed and received an executed Writ of Execution in the Wrongful Death Action (during the pendency of this Action), which references both a judgment filed and the presence of the Wrongful Death Action on the Marlboro County Judgment Roll, and which seeks an execution upon Hunt's property. (JA334-335) If, as indicated by the filing of a Writ of Execution by Owens

---

[2]     The accident which is the subject of the Wrongful Death Action occurred on December 10, 2013. (JA178) If Plaintiff did not properly serve Hunt within 120 days of filing the Complaint on December 8, 2016, then the Wrongful Death Action was not commenced within the applicable Statute of Limitations period. *See* S.C. R. Civ. P. 3(a) (stating terms for commencement of civil actions); *see also* S.C. Code Ann. § 15-3-530(6) (providing limitations period for wrongful death actions).

during this Action, the judgment in the Wrongful Death Action is final, then there would be no reason for a stay to be necessary in this Action.

> **b.  Even If There Were a Pending State Court Action, the *Nautilus* Factors Do Not Require a Stay.**

Even if this Court determines that the post-trial motions mean that the Wrongful Death Action remains "pending," the Trial Court had broad discretion in considering whether and how to proceed.  The Supreme Court has addressed the discretionary nature of the Declaratory Judgment Act, explaining:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.  On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a)(1988 ed., Supp. V) (emphasis added).

*Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214, 223 (1995).  In comity with this discretionary standard, the Fourth Circuit has stated "we have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment on the underlying claim for which coverage is sought."[3]  *Nautilus Ins. Co. v. Winchester Homes,* 15 F.3d 371, 376 (4th Cir. 1994).  This Court has provided four

---

[3]     In this case, the case is much further along, with Owens holding a judgment which he seeks to enforce, and with Hunt seeking relief from an entered judgment pursuant to S.C. R. Civ. P. 60.

factors to analyze whether to allow federal declaratory judgment action to proceed,

in the light of a pending state court action, now called *Nautilus* factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Penn-America Ins. Co. v. Coffey,* 368 F.3d 409, 412 (4th Cir. 2004), *quoting United*

*Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493-94 (4th Cir. 1998) (quoting *Nautilus*

*Ins.*, 15 F.3d at 377).

None of the *Nautilus* factors support a stay of this case. First, South Carolina

does not have a strong interest in having the issues resolved in its courts – this case

involves interpretation of North Carolina insurance policies pursuant to North

Carolina law. (JA270, JA512-513) North Carolina law governs interpretation of

the CIC Policies, and Owens has never argued otherwise. (JA270, JA512-513)

South Carolina's courts do not have a strong interest in interpreting North Carolina

insurance policies. Owens' Appellant Brief completely misstates the issue for which

CIC sought a declaration, in an effort to justify a stay. (DE 19, p. 19) CIC's

Declaratory Judgment Action never sought a determination of the propriety of

service upon Hunt. (JA25-27)[4] In fact, CIC argued in its declaratory judgment action that, even if Hunt obtained relief from Owens default judgment in the Wrongful Death Action, CIC had no obligation of defense or indemnity. (JA26) Accordingly, the issue of service in the Wrongful Death Action has no impact on this case.

Second, there is no evidence that state courts could resolve the issue more efficiently than federal courts. There are no pending evidentiary matters, other than the Motion to Set Aside Default Judgment, which has been pending in the Court of Common Pleas for Marlboro County since October 26, 2022. (DE 19, p. 13) On February 28, 2024, Owens reported in his Motion to Stay Deadlines that "[Owens] requested a hearing in the state court on Hunt's motion for relief from the default judgment, and Defendant hopes to have this motion heard and decided in the coming 60 days." (JA283) A final hearing on that motion has not yet occurred. There is no increased efficiency in waiting on the state court to act.

Third, as the Trial Court properly noted in denying Owens' February 28, 2024 Motion to Stay, there are no overlapping issues of fact between the Wrongful Death Action and this case which would create unnecessary entanglement between state and federal courts. The pending motion in the Court of Common Pleas for Marlboro

---

[4]     In fact, throughout its Complaint, CIC stated that CIC was entitled to a finding of no coverage even if Hunt had a good faith reason for not disclosing service of the Wrongful Death Complaint at issue. (JA26-27)

County is for relief from default judgment.  (JA289-290) In his first Motion to Stay, Owens incorrectly argued that the central issue was whether "[Owens] allegedly failed to properly serve … Wayne Hunt."  (JA280) The Trial Court properly evaluated the issue and determined that "the instant action is not based upon the contention that Defendant Hunt was not properly served in the underlying state court case.  Accordingly, even assuming that Owens is correct regarding what factors the Court should weigh in considering the motion to stay, those factors do not justify a stay here." (JA307)   There simply are no factual issues necessary to be determined in the Wrongful Death Action which could impact findings in this case; therefore, there is and was no reason to stay this Action.  Owens' contention that he could potentially obtain testimony from a hearing in state court did not bar him from seeking testimony or documents via deposition or written discovery to Hunt in this case, to which Hunt was a party.

Finally, it appears that Owens concedes that this Action is not to be used as a device for "procedural fencing" due to the timing of filing and Hunt's pending Motion to Vacate the Default Judgment.  (DE 19, p. 23)   This is true, and it leaves no factor supporting any argument that the Trial Court abused any discretion in refusing further motions to stay.

## II.    The District Court Properly Denied Owens' Motion to Amend Because the Proposed Counterclaim Was Futile.

In his Brief, Owens argues that he "had the right, via amendment, to investigate the issue of an applicable MCS-90 endorsement." (DE 23, p. 23) The only error in that statement is the apparent contention that an amendment was necessary to investigate or conduct discovery on that issue. Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In his initial Answer, Owens asserted as his Sixth Defense "all defenses and laws as stated in the federal Motor Carrier Act of 1980 (49 U.S.C. § 13906)," including an assertion that "said act preempts state law govern [*sic*] Cincinnati's insurance policies." (JA215) Under the applicable rules, Hunt could have conducted discovery at any time as to MCS-90 status.[5] In reality, Owens served no written discovery requests, subpoenas, or deposition notices related to MCS-90 issues; therefore, Owens waived any right to argue he did not have any sufficient opportunity to investigate these issues.

---

[5]    Both CIC and Owens identified the CIC Policies as documents in their custody or control related to claims and defenses in each of the parties' Fed. R. Civ. P. 26(a)(1) Initial Disclosures on April 18, 2024; so Owens had ample opportunity to conduct discovery on the contents of the CIC Policies.

### a. The Pleadings Before the Trial Court Were Sufficient to Deny the Motion to Amend.

Both the text of Owens' proposed amendment, and the applicable law clearly demonstrate that the Trial Court properly denied Owens' Motion to Amend. (*See* JA376-381 for text of Owens' Proposed Amended Answer and Counterclaim.) When the Court ruled on Owens' Motion to Amend, there was significant evidence before the Trial Court demonstrating the amendment sought was futile. Most notably, the CIC Policies were in the Trial Court's Record, as attachments incorporated into the original Complaint. (JA37-160, JA161-176) Although it is true that "[g]enerally, when deciding a motion under Rule 12(b)(6) or Rule 15, the court is not to consider matters outside the pleadings," *Weather Modification LLC v. Brackin,* 340 F.R.D. 316, 319 (D.N.D. 2021), the documents within the pleadings and exhibits incorporated therein made it clear that the amendment sought was futile, because the MCS-90 endorsement which Owens alleged was in the CIC Policies was clearly not within the text of the CIC Policies. Trial courts (and appellate courts) are allowed to consider documents attached to pleadings as part of a motion to dismiss, "so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

Owens sought to amend his pleadings to add a counterclaim complaint to recovery under the CIC Policies, based on the alleged presence of an MCS-90

endorsement.  (JA378-380)  Although in his Proposed Amended Answer, Owens did not admit the authenticity of the CIC Policies, he did not offer any other form of the CIC Policies to dispute the text of the CIC Policies presented by CIC.  (JA370-381) Owens admitted the validity of the CIC Policies when his counsel signed the Joint Statement of Stipulated Material Facts, filed with the Trial Court. (*See* JA400, JA404, JA016, JA037-176) In fact, when CIC ultimately verified the CIC Policies through affidavit, in connection with CIC's Motion for Summary Judgment (JA477-478), Owens offered no evidence to contest that verification.  Further, nowhere in the Proposed Amended Complaint did Owens allege that Hunt was a named insured of the CIC Policies.  (JA370-381)

Although Fed. R. Civ. P. 15(a) provides for liberal amendment of pleadings, trial courts may deny a Motion to Amend, if the proposed amendment "would have been futile."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Further, "[a] proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.,* 914 F.3d 213, 228 (4th Cir. 2019), *quoting Johnson v. Orowheat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986).  "A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss."  *OBX, supra,* 914 F.3d at 228, *citing Perkins v. U.S.,* 55 F.3d 910, 917 (4th Cir. 1995).  In this case, the Motion to Dismiss which the amendment could not survive is one under Fed. R. Civ. P. 12(b)(6):

26

> To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (quotation omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Coleman v Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); *see Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments" *Giarratano*, 521 F.3d at 302 (quotation omitted); *see Iqbal*, 556 U.S. at 678-79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." *Iqbal*, 556 U.S. at 678-79.

*Johnson v. Cricket Council USA, Inc.*, 658 F. Supp. 3d 276, 280-281 (E.D.N.C. 2023). "A claim has facial plausibility when the plaintiff [or in this case, the potential counterclaim plaintiff] pleads factual content that allows the court to draw the reasonable inference that the defendant [or counterclaim defendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 868, 883 (2009).

When the Trial Court reviewed the CIC Policies, the documents in the Complaint and Proposed Amended Answer before the Trial Court showed no dispute

27

as to the actual language of the CIC Policies, other than mere averments by Owens. Owens did not identify any specific language in the CIC Policies that created an MCS-90 endorsement. In fact, in support of a reply filing in support of the Motion to Amend, Owens filed a document showing that CIC provided MCS-90 coverage to WSC beginning in October 2016, nearly three years after the accident giving rise to the Wrongful Death Action, further proving the futility of the Proposed Amendment. (JA395)

The Trial Court properly denied the Motion to Amend as futile, because even when reading the Proposed Amended Answer (asserting a counterclaim) in the light most favorable to Owens, there is no contention or other evidence that Hunt was a named insured under the CIC Policies.[6] First, from the uncontradicted language of the CIC Policies, Hunt is not the named insured.[7] The Business Auto Policy states the following named insureds "Wilmington Shipping Company, Chestnut Enterprises, Chestnut Enterprises Trucking, [and] East Carolina Bonded Warehouse." (JA72) The Excess Liability Policy states that "NAMED INSURED is the same as it appears in the Common Policy Declarations…." (JA161) These

---

[6]    Under Fed. R. Civ. P. 8(a)(2), the counterclaim was required to contain "a short and plain statement of the claim showing that [Owens] is entitled to relief." *Id.; see also Ashcroft, supra,* 556 U.S. at 677-78.

[7]    Prior to the Trial Court ruling on the Motion to Amend, Owens expressly admitted that "Hunt was not a named insured under the [CIC] Policies but had certain coverages available as a permissive user of vehicles." (JA400)

28

policies were incorporated attachments to the Complaint, not contradicted by Owens. Further, the uncontradicted CIC Policies show no MCS-90 endorsement, nor did Owens offer one to the Trial Court. In opposition to Owens' Motion to Amend, CIC pointed out that the CIC Policies did not contain MCS-90 provisions. (SA2-3)

In a reply in response to CIC's opposition, Owens referenced the CIC Policies filed with the Complaint by docket entry, implicitly acknowledging their authenticity. (SA7) Further, Owens presented no opposing policies containing the MCS-90. In fact, Owens shifted his argument to that the CIC Policies should be deemed to contain the MCS-90, essentially seeking judicial reformation of the CIC Policies. (SA7-9) This argument regarding reformation of the CIC Policies was not presented in the Proposed Amended Answer submitted to the Trial Court, as Owens sought only a declaration regarding an MCS-90 endorsement he contended to be part of the CIC Policies. (JA378-380) Without an amendment seeking reformation or a motion to further amend, the Trial Court should not have considered any arguments related to reformation of the CIC Policies. Accordingly, it was reasonable for the Trial Court to analyze whether the MCS-90 endorsement was present in the CIC Policies, and the pleadings before the Trial Court showed that it was not. In his Reply, Owens erroneously contended reviewing the CIC Policies, which were attached to and incorporated in the Complaint would "pierce the pleadings and look

29

beyond the face of the Complaint to determine futility." (SA7) As noted before, the futility analysis is essentially a Fed. R. Civ. P. 12(b)(6) analysis here, and "[a] court passing on a motion to dismiss [under Rule 12(b)(6)] may consider attachments to a complaint or the motion to dismiss if 'integral to the complaint and authentic.'" *Leichling v. Honeywell Int'l, Inc.,* 842 F.3d 848, 851 (4th Cir. 2016).[8]

The fact that Owens never even contended that Hunt was a named insured (and later admitted that he was not a named insured) under the CIC Policies is critical, because it is part of the Trial Court's analysis of the viability of the claim under MCS-90 is dependent upon whether Hunt was a named insured. In *Forkwar v. Progressive N. Ins. Co.,* 910 F. Supp. 2d 815 (D. Md. 2012), that court considered whether an insurance policy's MCS-90 endorsement provided for surety coverage for a driver covered under a commercial insurance policy who was not the named insured. *Id.* at 825-28. The court noted that "[o]n October 5, 2005, the Federal Motor Carrier Safety Administration (FMCSA) of the Department of Transportation issued a Regulatory Guidance that answered the precise question before the Court (hereinafter the FMCSA Guidance)." *Id.* at 826, *citing Regulatory Guidance for*

---

[8]     Owens stipulated to the CIC Policies when his counsel signed the Joint Statement of Stipulated Material Facts, filed with the Trial Court. (*See* JA400, JA404, JA016, JA037-176) Owens never presented a challenge to the authenticity of the CIC Policies, and, in fact admitted said authenticity before the Trial Court ruled on the Motion to Amend, by failing to provide any evidence to oppose the affidavit testimony of CIC, through Mitchell Ronziti. (JA477-478)

*Forms Used to Establish Minimum Levels of Financial Responsibility of Motor Carriers*, 49 C.F.R. Part 387, 70 F.R. 58065-01, 2005 WL 2438280 (Oct. 5, 2005). The court further noted that the Regulatory Guidance provided that "*Form MCS-90 and Form MCS-82 are not intended, and do not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary.*" *Id.* (emphasis in original). That court further noted:

> Following the issuance of the FMCSA Guidance, federal courts have been virtually unanimous in holding that the MCS-90 endorsement provides coverage only to the named insured. *See, e.g., Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 477-78 (5th Cir. 2009); *Ill. Nat'l Ins. Co. v. Temian*, 779 F. Supp. 2d 921, 927-28 (N.D. Ind. 2011); *Great W. Cas. Co. v. Gen. Cas. Co. of Wis.*, 734 F. Supp. 2d 718, 737 (D. Minn. 2010); *Lancer Ins. Co. v. Hitts*, No. 5:09-CV-302 (CAR), 2010 U.S. Dist. LEXIS 134881, 2010 WL 5351842, at *6-7 (N.D. Ga. Dec. 21, 2010); *Sentry Select Ins. Co. v. Thompson*, 665 F. Supp. 2d 561, 566-69 (E.D. Va. 2009); *Armstrong v. U.S. Fire Ins. Co.*, 606 F. Supp. 2d 794, 823-26 (E.D. Tenn. 2009).

*Id.* Accordingly, the Trial Court properly concluded that, even assuming the facts asserted in the Proposed Amended Complaint in the light most favorable to Owens, Owens' counterclaim was futile, because it could not survive a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

Although Owens argues that some courts do not restrict MCS-90 coverage to named insureds, because the FMCSA interprets the regulations that way, it is entitled

to *Auer* deference as the body responsible for implementation and enforcement of the regulatory scheme. "Under *Auer* deference, an agency's interpretation of its own regulation is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Shipbuilders Council of Am., Inc. v. U.S. Coast Guard,* 578 F.3d 234, 242 (4th Cir. 2009), *quoting Auer v. Robbins,* 519 U.S. 452, 461, 117 S. Ct. 905, 911, 137 L. Ed. 79, 90 (1997). Based on required deference and existing law, the Trial Court properly found the proposed amendment providing a counterclaim to be futile. Accordingly, the Trial Court properly denied Owens' Motion to Amend, and its ruling should be affirmed by this Court.

> **b. Even If the Amendment Were Futile, the Trial Court Could and Should Have Denied the Amendment Based on a Finding of Dilatory Motive by Owens.**

The Fourth Circuit has noted that a dilatory motive, rather than mere delay, is a basis to deny a motion to amend. *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir. 1987). The basis for denying based on a dilatory motive appears tied to findings of bad faith. In this Action, Owens first asserted MCS-90 issues in his Answer, filed in the Eastern District of North Carolina on December 6, 2022. (JA215) Owens raised the same MCS-90 argument, which was duplicative of an affirmative defense already asserted in his Answer, and earlier presented an almost identical allegation to that set forth in his Motion to Amend, in Owens'

portion of the Rule 26(f) Discovery Plan, filed with the Trial Court on April 18, 2024. (JA310-311) In that Discovery Plan, Owens stated an intention to amend pleadings to assert MCS-90 claims, six and half months before filing his Motion to Amend. (JA310-311) Owens obtained a 90-day extension of the deadline to amend pleadings on June 6, 2024 (JA317, JA320), and an additional 60-day extension of the deadline to amend pleadings (with CIC only consenting to a 30-day extension) on September 4, 2024 (JA331, JA357). Owens filed, on the last day to file amend pleadings (a deadline that had already been extended 150 days), a Motion to Amend, to assert almost the identical counterclaim set forth in the Rule 26(f) Discovery Plan on April 18, 2024, and which was referenced in the Answer filed ten and a half months earlier, a proposed counterclaim based on MCS-90 provisions that were patently absent from the CIC Policies incorporated into CIC's Complaint, and even then sought a further extension of the amendment deadline. (JA359-387) After doing so, Owens used the pending Motion to Amend, which asserted nothing different than his affirmative defense, to obtain a 32-day extension of the deadline to respond to CIC's Motion for Summary Judgment, without consent of CIC (JA497-498, JA503), to which Owens ultimately filed no opposition. The dilatory nature is further exacerbated by the failure to comply with the District of South Carolina's Local Civil Rules, which state "[a]ttorneys are expected to file motions immediately after the issues raised thereby are ripe for adjudication." Local Civil Rule 7.04, DSC.

33

There only reasonable conclusion from these filings and the lack of opposition to the Motion for Summary Judgment is that the purpose of the Motion to Amend was a bad faith, dilatory tactic. Accordingly, this provides additional sustaining grounds for denial of the Motion to Amend. *See Smith v. Clarkton,* 682 F.2d 1055, 1059 (4th Cir. 1982)(stating bad faith or dilatory tactics are basis to deny motions to amend); *see also Simio v. Flexsim Software Prods.,* 983 F.3d 1353, 1365 (Fed. Cir. 2020)(denying leave to amend for reasons not in trial court's order, because Circuit Courts may affirm denial of leave to amend for "any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court"), *quoting Lambertson v. Utah Dep't of Corr.,* 79 F.3d 1024, 1029-30 (10th Cir. 1996). In *Lambertson,* one of the additional sustaining grounds found was the failure to attach a proposed amended complaint to the motion to amend, which is very similar to submitting a proposed Amended Answer and Counterclaim arguing the actual presence of MCS-90 (JA378-380), and then arguing in support of the Motion to Amend for reformation of the CIC Policies, which is not referenced in the Amended Answer and Counterclaim (SA6-10). *Lambertson, supra,* 79 F.3d at 1029-30.

### c. No Amendment Was Necessary for Owens to Present MCS-90 Arguments in Defense of the Declaratory Judgment Action.

Owens' appeal of the denial of his Motion to Amend is built upon a faulty premise – that Owens was required to amend his Answer to assert a counterclaim for MCS-90 coverage. In the operative Answer, Owens asserted the Motor Carrier Safety Act as an affirmative defense to CIC's declaratory judgment action. (JA215) First, Owens' proposed counterclaim for declaratory judgment was not compulsory under Fed. R. Civ. 13, because, when CIC filed this Action, the claim at issue was already the subject of another pending action. Fed. R. Civ. P. 13(a)(2)(A). It is clear that Owens' proposed counterclaim seeks the same finding that Owens Sixth Affirmative Defense proposes – a finding that North Carolina's contract law is preempted in part by 49 U.S.C. § 13906 and 49 C.F.R. § 387.7 (2013). (JA215) Owens' Answer put the issue before the Trial Court in the form of an affirmative defense, and no further action was required by Owens to present evidence in support of that affirmative defense. Where a defendant's purported counterclaim mirrors the relief sought in the plaintiff's claims or in defendant's affirmative defenses, a trial court may dismiss [or refuse to allow the submission of] the counterclaim. *Cf. Int'l Plastics, Inc. v. State Auto. Mut. Ins. Co.,* 2023 U.S. Dist. LEXIS 168347, *7-8 (D.S.C. 2023) (refusing to dismiss counterclaim because there were differences in claims and defenses, but recognizing mirror image rule). This further supports the

Trial Court's denial of the Motion to Amend, because the Trial Court would have been within its discretion to dismiss the counterclaim, based on the pending Sixth Affirmative Defense. (JA215)

It is clear that the Federal Declaratory Judgment Act "is meant 'to afford a speedy and inexpensive method of adjudicating legal disputes . . ., and to settle legal rights and remove uncertainty and insecurity without awaiting a violation of the rights or a disturbance of the relationships.'" *Foxwood Hills Prop. Owners Ass'n v. 783-C, LLC,* 625 B.R. 851, 857 (Bankr. D.S.C. 2020), *quoting Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir. 1937). Part of the Trial Court's duty in determining rights and obligations of the parties to this case is an evaluation of affirmative defenses, and Owens was free to present evidence in favor of its MCS-90 arguments in defense of CIC's action, and in defense of CIC's Motion for Summary Judgment; however, Owens presented no such evidence to the Trial Court. Accordingly, Owens can demonstrate no actual harm as a result of the Trial Court's denial of the Motion to Amend. Accordingly, the denial of the Motion to Amend had no impact on Owens' defense of claims, and the Trial Court should be affirmed.

## III. The District Court Properly Granted CIC's Unopposed Motion for Summary Judgment.

Despite having offered no affidavit or declaration to the Trial Court stating specified reasons why Owens could not present facts essential to justify his

36

opposition to CIC's Motion for Summary Judgment, Owens now argues that the Trial Court's ruling on the Motion for Summary Judgment was premature. *See* Fed. R. Civ. P. 56(d) (providing procedure to delay ruling on summary judgment motion). Owens' claim that summary judgment was premature is weak, given that the discovery deadline under the Second Consent Amended Scheduling Order expired on January 7, 2025.[9]   Further, up to the filing of CIC's Motion for Summary Judgment, Owens served no discovery seeking any information on any topic in this case.  Owens concedes in his brief that he filed no Rule 56(d) affidavit or declaration, but he contends that his pending motions required the Trial Court to defer a decision on CIC's Motion for Summary Judgment.  That contention simply is not credible, given that Owens filed no factual or legal opposition to the Motion for Summary Judgment.

Owens had asserted as early as his disclosures pursuant to Local Civil Rule 26.03, DSC, that he intended to "amend his Answer to assert counterclaims for bad faith and breach of contract, as well as a declaration that CIC is obligated to make payments toward the default judgment under any MCS-90 endorsements to the policies." (JA311) That statement was made on April 18, 2024, but somehow, three hundred seventy-one (371) days was insufficient time to find any evidence to support

---

[9]     Although the Second Consent Amended Scheduling Order provided for extension of discovery deadlines by consent, Owens did not request nor did CIC consent to any extension of the discovery deadline.

that contention to present to the Court, after obtaining a forty-two (42) day period to respond to CIC's Motion for Summary Judgment.  (JA503) One of the oldest doctrines in law and equity is that "the law serves the vigilant, and not those who sleep over their rights." *McMullen v. Lewis,* 32 F.2d 481, 486 (4th Cir. 1929).  Here, Owens has slept on his rights, and he is entitled to no further delay.

### a. Owens Has Waived Any Legal Arguments Related to the Sufficiency of the Summary Judgment Order.

As noted above, Owens failed to file any factual or legal opposition to CIC's Motion for Summary Judgment; therefore, Owens has failed to preserve for review any legal arguments related to the Motion for Summary Judgment, including, but not limited to, arguments related to MCS-90 requirements.  "[A]n appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court." *Frank C. Mailey Enters., Inc. v. Cargill, Inc.,* 582 F.2d 333, 334 (5th Cir. 1978).  The First Circuit has noted:

> Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.  If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.

*Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir. 1995) (internal quotations omitted).  Owens filed no opposition to CIC's Motion for Summary Judgment, and it cannot raise new issues now for the first time on appeal.

38

The uncontested facts presented to the Trial Court demonstrated that Owens filed proof of service upon Hunt of multiple pleadings with the Court of Common Pleas in the Wrongful Death Action, and that neither Owens nor Hunt (nor WSC) gave any notice to CIC of the Wrongful Death Action prior to entry of default judgment and commencement of this Action.[10]  As analyzed by the Trial Court, the undisputed facts demonstrate that: (1) Owens filed multiple proofs of service upon Hunt, for the Complaint and Damages Hearing (JA506-507); (2) neither Hunt nor Owens sent CIC notice of the Wrongful Death Action prior to entry of the default judgment (JA507); (3) neither Hunt nor Owens attempted to notify CIC of the default judgment until February 29, 2024; (4) the Court of Common Pleas entered default judgment in the Wrongful Death Action prior to CIC receiving any notice; (5) the CIC Policies included a mandatory notice provision.  (JA506-508)  The Trial Court properly determined that North Carolina law applied, because the CIC Policies were issued to a North Carolina corporation by delivery to its principal place of business in Wilmington, North Carolina.  (JA512) The Trial Court further properly determined that the CIC Policies' Notice provision required Hunt or WSC to notify CIC of a suit promptly.  (JA513-515) The Trial Court also properly determined that

---

[10]      The first notice from Hunt or Owens to CIC in the record is a letter from Owens' counsel to CIC, dated February 29, 2024.  (JA295) As noted in the Complaint in this Action, CIC first learned of the Wrongful Death Action shortly before filing this Action, from someone other than Hunt.  (JA24)

the CIC Policies required Hunt or WSC to report not only the Accident, but also required them to immediately send CIC copies of legal requests and papers related to lawsuits.  (JA516) Finally, the Trial Court properly determined that the Court of Common Pleas' entry of default judgment against Hunt materially prejudiced CIC's ability to protect its interests.  (JA517) Owens has offered no evidence to contradict these findings, and Owens offered no opposition to these factual contentions, which are supported by the record before the Trial Court.  Further, the Trial Court properly applied precedent wherein an insurer obtained a finding of no coverage or duty of indemnity based on prejudice where the insurer did not receive notice until over a year after default judgment was entered against the insurer's insured.  *S.C. Ins. Co. v. Hallmark Enters., Inc.,* 88 N.C. App. 642, 650, 364 S.E.2d 678, 682 (Ct. App. 1988).  To obtain a finding of no duty to defend or indemnify, an "insurer must … show that the changed circumstance [caused by delay in notice] materially impairs its ability to investigate the claim or defend and, thus, to prepare a viable defense." *Great Am. Ins. Co. v. C.G. Tate Constr. Co.,* 303 N.C. 387, 398-99, 279 S.E.2d 769, 776 (1981).  It is axiomatic that an insurer cannot prepare a viable defense to a suit, where there has been a $5.1 million default judgment entered prior to provision of notice to the insurer.  Accordingly, the Trial Court properly made a declaration of no coverage for defense or indemnity under the CIC Policies, and the Trial Court's ruling should be affirmed.

40

### b. Owens is Judicially Estopped from Arguing Service Was Insufficient in the Wrongful Death Action.

Frankly, it is an insult to the time of both CIC and the Trial Court for Owens to argue that the Trial Court erred in finding that the Court of Common Pleas issued a "valid and enforceable default judgment against Hunt" (JA517), when Owens' own counsel has: (1) written to CIC demanding payment in full for an enforceable judgment during the pendency of this declaratory judgment action (JA295-300); (2) filed as an officer of the Court of Common Pleas for Marlboro County a Writ of Execution demanding a levy against Hunt's property, also during the pendency of this Action, and obtained execution of same by the Marlboro County Clerk of Court (JA334-335); and (3) refused to agree to set aside the default judgment in the Court of Common Pleas.[11]  Stated simply, Owens contended service was proper in the Wrongful Death Action to get a $5.1 million judgment against Hunt, and he cannot now argue that it is improper in an effort to collect on that $5.1 million judgment from CIC under the CIC Policies.  Doing so is clearly barred by the doctrine of judicial estoppel, which "is a principle developed to prevent a party from taking a position in a judicial proceeding which is inconsistent with a stance previously taken

---

[11]      As noted earlier, if Owens agreed service of the Wrongful Death Action was legally insufficient, that claim would be time-barred, and CIC would have no duty of defense or indemnity.

in court." *Zinkland v. Brown,* 478 F.3d 634, 638 (4th Cir. 2007).  To obtain a finding

of judicial estoppel, three elements must be demonstrated:

> "First, the party sought to be estopped must be seeking to
> adopt a position that is inconsistent with a stance taken in
> prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th
> Cir. 1996). The position at issue must be one of fact as
> opposed to one of law or legal theory. *Id.* "Second, the
> prior inconsistent position must have been accepted by the
> court." *Id.* Lastly, the party against whom judicial estoppel
> is to be applied must have "intentionally misled the court
> to gain unfair advantage." *Tenneco Chems., Inc. v. William
> T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982). This
> bad faith requirement is the "determinative factor." *John
> S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28
> (4th Cir. 1995).

*Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (last citation in block quotation

edited for clarity to reflect prior full citation in case).  In the Wrongful Death Action,

Owens has repeatedly represented that Owens correctly effected service upon

Hunt.[12]  Completion of service is an issue of fact, rather than an issue of law.  While

the undersigned is wary to state that any effort to mislead by Owens is intentional,

it is clear that Owens has represented service is good to obtain a judgment in the

Wrongful Death Action, while arguing that service may be bad to avoid a negative

declaration regarding coverage in this Action.  At the very least, Owens must take

one consistent position or the other with this Court and with the Court of Common

---

[12]     Owens also declared good service upon Hunt in support of his Motion to
Dismiss for Lack of Personal Jurisdiction in the Eastern District of North Carolina.
(JA246-249)

Pleas. CIC has taken no position as to this factual issue, and service being good or bad is not a genuine issue of material fact for the declaration sought; therefore, CIC need not take a position. (JA20) *See, e.g., Great Am. Ins. Co. v. C.G. Tate Constr. Co.,* 303 N.C. 387, 399-400, 279 S.E.2d 769, 776-77 (1981) (holding that even where insured had a good faith reason for delay in reporting, insurer has no duty to defend [or therefore indemnify] where insured failed to give timely notice of suit); *see also Kubit v. MAG Mut. Ins. Co.,* 210 N.C. App. 273, 275, 708 S.E.2d 138, 142-43 (Ct. App. 2011) (holding that insurer's duty to defend [or later indemnify] arises only when insurers are given actual notice of complaint). Stated directly, Owens must decide whether his position is that service upon Hunt was invalid, which means he has no enforceable judgment and the Statute of Limitations has run as to claims presented in the Wrongful Death Action, or that service was valid, in which case CIC has no duty to defend or indemnify Hunt. Either position would require this Court to affirm the Trial Court's declaration of no coverage under the CIC Policies.[13]

## CONCLUSION

The Trial Court did not abuse its discretion in denying Owens' Motion to Stay, after generously extending deadlines on multiple occasions, and the Trial Court properly analyzed the pleadings and applicable law in denying Owens' Motion to

---

[13]      If somehow Owens survived a statute of limitations challenge, the passage of nearly twelve years since the Accident has materially impaired CIC's investigation of the Accident and should bar coverage under the *Great American* standard.

43

Amend.  Owens failed to oppose CIC's Motion for Summary Judgment with factual submissions or legal arguments, and the evidence in the record and applicable law support the Trial Court's grant of summary judgment pursuant to Fed. R. Civ. 56.  Accordingly, the rulings of the Trial court should be AFFIRMED IN FULL.

## STATEMENT REGARDING ORAL ARGUMENT

There are no novel legal issues presented in this case.  Owens has failed to preserve any legal issues for consideration by this Court; therefore, CIC states that oral argument is unnecessary in this case.  The pleadings and record speak for themselves.

Respectfully Submitted,

/s/ Charles Daniel Atkinson
Charles Daniel Atkinson
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767
datkinson@wajlawfirm.com

*Attorney for Plaintiff-Appellee*
*The Cincinnati Insurance Company*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 25-1848     **Caption:** The Cincinnati Insurance Company, Appellee v. Levi Ov

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____10,686____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word 2016_____ [*identify word processing program*] in
14 Point Times New Roman_____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Charles Daniel Atkinson_____

Party Name Appellee_____

Dated: 10/27/2025_____