# 25-1848

# United States Court of Appeals
## for the
# Fourth Circuit

THE CINCINNATI INSURANCE COMPANY,

*Plaintiff/Appellee*,

– v. –

LEVI OWENS,
Personal Representative for the Estate of Christopher McLean,

*Defendant/Appellant,*

and

WILMINGTON SHIPPING COMPANY; WAYNE HUNT,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

## APPELLEE'S SUPPLEMENTAL APPENDIX

JASON SCOTT LUCK
JASON SCOTT LUCK ATTORNEY AT LAW
Post Office Box 47
Bennettsville, South Carolina 29512

(843) 479-6863
John E. Parker
PARKER LAW GROUP, LLP
Post Office Box 487
Hampton, South Carolina 29924
(803) 943-2111

*Counsel for Appellant*

Charles D. Atkinson
M. Taylor Petty
WILKES ATKINSON & JOYNER, LLC
127 Dunbar Street, Suite 200
Spartanburg, South Carolina 29306
(864) 591-1113

*Counsel for Appellee*

CP COUNSEL PRESS   (800) 4-APPEAL • (JOB 814152)

## TABLE OF CONTENTS

Plaintiff's Brief in Opposition to
Defendant Levi Owens' Motion to Amended Answer
    filed November 18, 2024 ................................................................................ SA1

Defendant Levi Owens' Reply Memorandum in Support of
Motion to Amend Answer
    filed November 25, 2024 ................................................................................ SA6

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| The Cincinnati Insurance Company,  )<br>　　　　　　　　　　　　　　　　　 )<br>　　　　Plaintiff,　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 )<br>Wayne Hunt, Levi Owens as Personal )<br>Representative for the Estate of Christopher )<br>McLean, and Wilmington Shipping　 )<br>Company,　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 )<br>　　　　Defendants.　　　　　　　　)<br>_____)  | **C.A. NO.: 4:24-cv-00951-JDA**<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT LEVI OWENS' MOTION TO AMEND ANSWER** |

　　　Plaintiff The Cincinnati Insurance Company ("Plaintiff") files the following Brief in Opposition to the Motion to Amend filed by Defendants Levi Owens, as Personal Representative for the Estate of Christopher McLean ("Owens"). The Motion to Amend should be denied, because the proposed amendment is futile. Owens' Motion to Extend should also be denied, because the proposed amendment is futile, due to the admission of breaches of contractual obligations by Defendant Wayne Hunt, through his default in this action.

### NATURE OF CASE

　　　This case is a declaratory judgment action in which Plaintiff seeks a declaration of no coverage under two policies of insurance (the "Policies") issued to Defendant Wilmington Shipping Company ("WSC"), which is presently in default. The Policies have been filed at ECF #1-5 and # 1-6. The Policy Period for both policies was October 1, 2013 to October 1, 2014. (See, *e.g.,* ECF #1-5, p. 36.) The claims at issue arise from a motor vehicle accident (the "Accident") that occurred on December 10, 2013. (See ECF #1, ¶ 24, admitted by Owens in ECF # 12, ¶ 9.) Owens filed suit against Defendant Hunt, and no other parties, on December 8, 2016, and,

1

according to court filings, served Hunt on February 9, 2017. (ECF #1, ¶ 29 and ¶ 30, admitted by Owens in ECF #12, ¶¶ 11 – 12.)

Plaintiff has sought a declaration of no coverage due to a lack of notice provided by either Owens or Hunt. Owens never sued the primary insured, WSC, and it has no judgment against WSC.

## RELEVANT FACTS

Neither insurance policy at issue in this case contains any MCS-90 endorsement. Owens' limitation period for a claim against WSC expired on December 11, 2016, and Owens has not filed any claim against WSC. WSC is presently in default in this action, as is Hunt. (ECF # 17.)

Although Owens' proposed counterclaim contends that the Policies contain an MCS-90 endorsement, the plain language of the policies shows that they do not. (ECF #1-5, #1-6.) Owens has offered no documentation demonstrating that there is an MCS-90 endorsement contained in any policy issued by CIC at the time of the Accident. Further, under S.C. Code Ann. § 15-3-530, the limitations period for a claim by Owens against WSC ran on December 11, 2016.

The Policies also address out-of-state issues expressly, noting in Section II(A)(2)(b)(1) that the liability policy (upon which the excess policy builds) extends limits of insurance to address financial responsibility laws of the state in which the insured is operation, but it further notes:

> This extension does not apply to the limit or limits specified by any law governing motor vehicle carriers of passengers or property.

(ECF # 1-5, p. 57.) This clearly excludes any application of MCS-90 to the Policies.

## ARGUMENT

1. **OWENS SHOULD BE DENIED LEAVE TO AMEND BASED ON FUTILITY OF THE PROPOSED AMENDMENT.**

    a. **The Subject Policies Do Not Contain and MCS-90 Endorsement.**

Owens counterclaim is predicated on the argument that the Policies "contains [sic] an endorsement required by Section 29 and 30 of the Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*" (ECF # 63-1, ¶ 69.) Further, the proposed counterclaim cites language of the MCS-90 endorsement, despite that not being present in the Policies. Owens has failed to cite the location of the purported endorsement, despite the Policies being in the record before this Court. A review of the Policies demonstrates that the endorsement is not present in the policies.

Although leave to amend should generally be granted freely, the Fourth Circuit has recognized that a trial court should deny leave to amend under Rule 15(a), where "the amendment would have been futile." *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006). In this case, Owens' proposed counterclaim is clearly futile, because it asserts rights under an endorsement which is not part of the policies at issue.

### b. Even if the Subject Policies Had an MCS-90 Endorsement, the MCS-90 Would Apply Solely to Claims Against Named Insureds, Not Hunt.

Even if an MCS-90 endorsement were included, which it is not, the surety-type obligations of the Policies involving MCS-90 apply only to the named insured, which, in this case is WSC, not Hunt. Under 49 C.F.R. § 387.5, "*insured and principal* means the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." *Id.* Under the Policies' Declarations, the named insureds are "Wilmington Shipping Company, Chestnut Enterprises, Chestnut Enterprises Trucking, and East Carolina Bonded Warehouse." (ECF #1-5, p. 36.) Wayne Hunt, the sole judgment debtor, is not a named insured, nor is he a fiduciary of same. Accordingly, Wayne Hunt is not required to have MCS-90 surety coverage. The Federal Motor Carrier Safety Administration has issued its own guidance on the topic, interpreting 49 C.F.R. § 387.15, which requires MCS-90 coverage for certain entities, stating:

> Under 49 CFR 387.5, "insured and principal" is defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Form MCS-90 and Form MCS-82 **are not intended, and do not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary**.

(Federal Motor Carrier Safety Administration, Guidance Q&A, addressing Sectio 387.15, found at https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2020-02/FMCSA-INS-387.15-Q005.docx.) (A copy of the webpage is filed herewith as Exhibit A.) The language of the regulation defining application of MCS-90 is clear that it applies on to named motor carriers, but, even if the regulation were ambiguous, this Court must grant *Auer* deference to an agency interpretation. *Dickenson-Russell Coal Co. v. Sec'y of Labor,* 747 F.3d 251, 256-7 (4th Cir. 2014). "If the regulation is ambiguous, [courts] apply *Auer* deference, meaning that the agency's interpretation controls unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Id.* at 257, *quoting Auer v. Robbins,* 519 U.S. 452, 461, 117 S. Ct. 905 (1997). Based on the plain language of the applicable federal regulations, and the Federal Motor Carrier Safety Administration, if there is any ambiguity in same, even if there were an MCS-90 endorsement present in the policies, said endorsement would not apply to a judgment against Defendant Hunt, because Hunt is not the named insured. Accordingly, the proposed amendment to allow a counterclaim is futile, and the Motion to Amend should be denied.

### 2. The Motion for Extension of Scheduling Order Should Be Denied.

Plaintiff has granted Owens two extensions to the amendment deadline, and Plaintiff received a third extension. Owens seeks a fourth extension to pursue a "judicially assigned" bad faith claim of Hunt. Hunt is presently in default in this action, and has admitted, through his default, to having breached his obligations of notice under the Policies. (ECF # 17.) Accordingly, any amendment to assert claims on Hunt's behalf is futile – the admissions made in his default

4

prevent any argument that CIC's actions with regard to Hunt breach any duty of good faith and fair dealing implied in law. Accordingly, any amendment made in this regard would be futile. Additionally, expert identification deadlines under the Scheduling Order have run, and it would be prejudicial to allow Owens to add entirely new claims, absent substantial revision of the Scheduling Order. Accordingly, the Motion for a further extension of the Scheduling Order should be denied.

## CONCLUSION

For the reasons set forth above, Hunt's Motion to Amend and Motion to Extend Scheduling Order deadlines should be denied in full.

November 18, 2024						s/ C. Daniel Atkinson_____
								C. Daniel Atkinson (Fed Id. No. 09626)
								datkinson@wajlawfirm.com
								WILKES ATKINSON & JOYNER, LLC
								127 Dunbar Street, Suite 200
								Spartanburg, SC 29306
								(864) 591-1113

								ATTORNEY FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) C/A No.: 4:24-cv-00951-JDA |
| | ) |
| v. | ) **DEFENDANT LEVI OWENS AS** |
| | ) **PERSONAL REPRESENTATIVE FOR THE** |
| | ) **ESTATE OF CHRISTOPHER MCLEAN'S** |
| | ) **REPLY MEMORANDUM IN SUPPORT OF** |
| | ) **MOTION TO AMEND ANSWER AND** |
| WAYNE HUNT, LEVI OWENS as | ) **MOTION FOR EXTENSION OF DEADLINE** |
| Personal Representative for the ESTATE | ) **TO AMEND PLEADINGS, AND** |
| OF CHRISTOPHER MCLEAN, MAISHA | ) **OBJECTION/OPPOSITION TO** |
| JACOBS, and WILMINGTON SHIPPING | ) **PLAINTIFF'S REQUEST FOR ENTRY OF** |
| CO., | ) **DEFAULT AND MOTION FOR DEFAULT** |
| | ) **JUDGMENT** |
| Defendants. | ) |

Defendant Levi Owens as the Personal Representative for the Estate of Christopher McLean respectfully submits this joint Reply Memorandum in Further Support of his Motion to Amend and Motion for Extension (ECF No. 58) and Objection to Plaintiff The Cincinnati Insurance Co.'s Request for Entry of Default (ECF No. 67), or in the alternative, in opposition to Plaintiff's Motion for Default Judgment (ECF No. 65).

**I.    The proposed amendment is not clearly insufficient or frivolous on its face.**

In its response, CIC argues that Owens' motion to amend should be denied by the Court because it is futile. CIC's argument misconstrues the standard for what constitutes a futile amendment and seeks to have the Court resolve the merits of Owen's amendment before he has had an opportunity to complete discovery on the issues contained therein. "For a motion to amend to be denied for futility, the amendment must be 'clearly insufficient or frivolous *on its face*.'" *Hunt v. Branch Banking & Trust Co.*, Civil Action No. 4:09-cv-2151-TLW-TER, 2010 WL 11640187, at *1 (D.S.C. May 7,

2010) (emphasis added). "Courts generally favor the 'resolution of cases on their merits' . . . [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, e.g., motions to dismiss or for summary judgment . . . or for resolution at trial." *Rambus, Inc. v. Infineon Techs., AG*, 304 F. Supp. 2d 812, 819 (E.D. Va. 2004) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

CIC contends that Owens' amendment is futile because the subject policies (ECF No. 1-5, ECF No. 1-6) purportedly do not contain an MCS-90 endorsement. The parties have not actively engaged in discovery at this stage of the litigation, and Owens only received initial discovery requests from CIC on November 18, 2024. CIC would have the Court essentially rule via a motion to amend on an issue of fact, whether the subject policies contain the MCS-90 endorsement, before Owens has even had the opportunity to investigate the relevant facts. This is why the rule on futility only permits the Court to deny a motion to amend when it is obvious from *the face* of the amendment that it would be futile.

Owens alleges in his counterclaim that the policies must have an MCS-90 endorsement, and when viewed in the light most favorable to Owens, this raises a question of fact as to whether CIC has surety obligations to Owens. The Court should not pierce the pleadings and look beyond the face of the Complaint to determine futility on a motion to amend. Regardless, under federal law, the policies are required to have an MCS-90 endorsement.

> The MCA [Motor Carrier Act of 1980] and the subsequent regulations promulgated by the Federal Motor Carrier Safety Administration (FMCSA) require interstate motor carriers to obtain "a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy." In particular, the MCA provides that a commercial motor carrier may operate only if registered to do so, 49 U.S.C. § 13901, and must be "willing and able to comply with . . . [certain] *minimum financial responsibility requirements*," *id.* § 13902(a)(1) (emphasis added).

*Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873-74 (10th Cir. 2009). The means by which a commercial motor carrier can prove financial responsibility through its insurer is with the MCS-90 endorsement. 49 C.F.R. § 387.7(d)(1). The MCS-90 endorsement's purpose is to "protect members of the public injured by interstate motor carrier from uncompensated losses – by mandating coverage where there would otherwise be no coverage." *Am. Alternative Ins. Co. v. Sentry Select Ins. Co.*, 176 F. Supp. 2d 550, 557 (E.D. Va. 2001).

The subject policies were issued to Defendant Wilmington Shipping Company ("WSC"). WSC has been issued a US DOT number and an MC Number, or Docket Number, indicating that it is authorized by the Federal Motor Carrier Safety Administration ("FMCSA") to transport property in interstate commerce. (Ex. 1, SAFER WSC Search). By law, the policies are required to have the MCS-90 endorsement or a surety bond guaranteeing financial responsibility for the subject accident, regardless of whether CIC's policies provide coverage in any particular instance. *See Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003) (quoting 49 C.F.R. §§ 387.7(a), 387.9, 387.15). WSC's active/pending insurance policy with CIC (Policy EBA 010 40 45), as demonstrated on a search of the FMCSA's Licensing and Insurance page, was submitted to the FMCSA with a BMC-91X Form, which was sent directly from CIC to the FMCSA. (Ex. 2, FMCSA Licensing and Insurance WSC Search).

The BMC-91X Form certifies that an insurer is providing the minimum financial responsibility required by the Federal Motor Carrier Safety Regulations with an MCS-90 endorsement. *United Fin. Cas. Co. v. Bountiful Trucking LLC*, Civ. No. 17-5320 (PAM/LIB), 2018 WL 5921010, at *2 (D. Minn. Nov. 13, 2018); *Great West Cas. Co. v. General Cas. Co. of Wisconsin*, 734 F. Supp. 2d 718, 734 (D. Minn. 2010) (citing 49 U.S.C. § 13906(f); 49 C.F.R. §§ 387.7(d)(1), 387.15, 387.313(a)(3), (4)). Even if the MCS-90 endorsement is not attached to a policy, it is

incorporated into the policy as a matter of law. *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348 n.6 (6th Cir. 1996); *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986); *Hagans v. Glens Falls Ins. Co.*, 465 F.2d 1249, 1252 (10th Cir. 1972). CIC's submission of the BMC-91X Form affirmatively representing to the federal government that the policy complies with federal law should estop CIC from denying the existence of the MCS-90 endorsement. CIC's argument that the endorsement is not attached to the subject policy filed with its Complaint is not proof positive that Owen's amendment would be futile.

CIC also contends that the proposed amendment is futile because Defendant Wayne Hunt, the driver of the insured commercial truck on the night of the Decedent's death, was not a named insured under the policy. To rebut Owens' reliance on federal case law indicating that an employee driver, as a permissive user of an insured's commercial truck, is a named insured under the MCS-90 scheme, CIC points to FMCSA guidance stating that

> Under 49 CFR 387.5, "insured and principal" is defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Form MCS-90 and Form MCS-82 are not intended, and do not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary.

(ECF No. 64 p. 4). While regulatory guidance can certainly be afforded *Auer* deference, the guidance has to be read *in pari materia* with the MCA and its regulations. The MCA defines "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Federal regulations promulgated pursuant to the MCA and accompanying MCS-90 endorsement define "motor carrier" to include "a motor carrier's agent, officer, or representative." 49 C.F.R. § 387.5; *Canal Ins. Co.*, 320 F.3d at 489, n.3. Thus, under the MCA's guidance and regulations, WSC's agents, including employed drivers like Hunt, are considered to be WSC, and any judgment against WSC's agent as the driver of a commercial vehicle insured under CIC's policies would be subject to

4

SA9

the MCS-90 endorsement just as if the judgment were against WSC. Owens' proposed amendment is not facially futile or frivolous, and the question of whether CIC is obligated to satisfy the default judgment against Hunt under the MCS-90 endorsement must be resolved on its merits, after discovery. The Court should grant Owens' motion to amend.

II. **The Court should hold Plaintiff's request for entry of default and motion for default judgment in abeyance to avoid contradictory orders and judgments.**

CIC lastly argues that because it has asked for an entry of default as to Hunt, any bad faith claim that could be judicially assigned to Owens through supplemental proceedings in state court would be futile because Hunt will be deemed to have breached his cooperation obligations under the subject policies by virtue of his default.[1] Default judgments were previously entered in the Eastern District of North Carolina prior to transfer of venue to this District and Court. (ECF No. 20, ECF No. 21). However, the North Carolina court vacated those judgments upon transfer. (ECF No. 36). In doing so, the court noted that

> In this action, it is necessary that the relief against all Defendants be consistent, so *Frow* applies. Two default judgments already state that Plaintiff has no duty to defend or indemnify Hunt. If, after this action is transferred, the court in South Carolina found that Plaintiff did have a duty to defend or indemnify Hunt, Plaintiff would be subject to two contradictory court orders and judgments in the same action. "[S]uch an incongruity" would be "unseemly and absurd, as well as unauthorized by law."

(ECF No. 36 p. 20).

Similarly, if the Court here were to enter default as to Hunt, but Owens were to prevail and prove that CIC did have a duty to defend or indemnify Hunt, and that Hunt had satisfied the policies' cooperation provisions, then the parties would be subject to two contradictory court orders and judgments in the same action. On the one hand, Hunt would have a viable bad faith claim to assign to

---

[1] Hunt is not represented by personal counsel and Owens therefore has not been able to negotiate an assignment directly with Hunt.

5

SA10

Owens, while on the other hand, he would not. Owens objects to the entry of default and any subsequent entry of a default judgment against Hunt and WSC for this very reason, and requests that the Court hold CIC's request for entry of default and motion for default judgment in abeyance during the pendency of Owens' involvement in the litigation of this action.

CIC's request and motion create a risk of inconsistent judgments in conflict with the Supreme Court of the United States' decision in *Frow v. De la Vega*, 82 U.S. (15 Wall.) 552, 21 L.ed. 60 (1872). Owens has answered CIC's Complaint, and an actual controversy exists between CIC and Owens, even though as an injured party he was not a party to the insurance contract. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 274 (1941). If Owens is successful on the merits of this declaratory judgment action, any default judgment against Hunt, the insured, and WSC would be logically inconsistent. To avoid this possibility, the Court should not enter a default judgment against Hunt and WSC and should hold the judgments in abeyance or deny CIC's motion without prejudice and with leave to refile. *See Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 812 (7th Cir. 1987) (in multi-defendant action, default judgment should not be entered against one defendant where doing so might result in logically inconsistent or contradictory judgments); *see also VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 256 n.6 (7th Cir. 2016) (citing cases for the proposition that a default judgment should not be entered against one defendant until the matter has been resolved against all of the defendants); *Rodriguez v. Irwin*, No. 7:10-CV-102-FL, 2011 WL 737316, at *6 n.5 (E.D.N.C. Feb. 23, 2011); *State Farm Mut. Auto. Ins. Co. v. Jackson*, 736 F. Supp. 958, 961-62 (S.D. Ind. 1990) (setting aside the non-final default judgment and postponing a final ruling until the merits of the declaratory judgment case were adjudicated as to all of the defendants).[2]

---

[2] The Court should deny CIC's request to certify any default judgments as final under Fed. R. Civ. P. 54(b) for similar reasons. There are multiple parties in this action and there is a just reason for delay because the

"[I]n a multi-defendant case where there is an entry of default against only one defendant, the proper course of action is to permit the non-defaulting parties to litigate the case while holding the entry of default in abeyance and deferring any final default judgment against the defaulting defendant." *Penn-America Ins. Co. v. White Pines, Inc.*, 387 F. Supp. 3d 646, 649 (E.D. Va. 2019) (citing *Frow v. De La Vega*, 82 U.S. 552, 554, 15 Wall. 552, 21 L. Ed. 60 (1872)). The Fourth Circuit has found that holding an entry of default in abeyance is proper when multiple claims or multiple parties are present in a case, and less than all defendants default. *U.S. for Use of Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944 (4th Cir. 1967). The Court should do so here and either dismiss CIC's Motion for Default Judgment or hold the entry of default and/or entry of default judgment in abeyance.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant his Motions and hold CIC's request for entry of default and motion for default judgment as to WSC and Hunt in abeyance during the pendency of the litigation. Owens' proposed amendment is not prejudicial to CIC and is not facially frivolous or futile, and Plaintiff's request for an extension to the deadline to amend is supported by good cause and the exercise of due diligence in attempting to meet the deadline. The request will have minimal impact on the Court's Scheduling Order, which has not been amended beyond extending the deadline to amend the pleadings.

[SIGNATURE PAGE TO FOLLOW]

---

risk of inconsistent judgments would be incongruous and could prejudice Owens, who has standing on his own to challenge CIC's claims. *See Scottsdale Ins. Co. v. Bounds*, 2012 WL 1576105 (D. Md. May 2, 2012) ("Yet, the Fourth Circuit and this Court have made clear that, '[w]hen an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing – independent of that of the insured – to defend itself in the declaratory judgment proceeding . . . .'").

| | |
|---|---|
| November 25, 2024<br>Hampton, South Carolina | By: /s/ John E. Parker, Jr.<br><br>John E. Parker, Jr. (#13257)<br>Ashley B. Nance (#11093)<br>PARKER LAW GROUP, LLP<br>P.O. Box 487<br>Hampton, SC 29924<br>803-903-1781<br>jayparker@parkerlawgroupsc.com<br>anance@parkerlawgroupsc.com<br><br>Jason Scott Luck (#9696)<br>P.O. Box 47<br>Bennettsville, SC 29512<br>843.479.6863 (o)<br>843.479.7222 (f)<br>jason@luck.law<br><br>**Attorneys for Defendant Levi Owens, as Personal Representative of the Estate of Christopher McLean** |