# No. 25-1848

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE CINCINNATI INSURANCE COMPANY,
*Plaintiff-Appellee*

v.

LEVI OWENS, Personal Representative for the Estate of Christopher McLean,
*Defendant-Appellant*

and

WILMINGTON SHIPPING COMPANY; WAYNE HUNT
*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

## REPLY BRIEF OF APPELLANT

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Defendant-Appellant*

John Elliott Parker, Jr.
Parker Law Group, LLP
P.O. Box 487
Hampton, SC 29924
803.534.5218
*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT IN REPLY .................................................................................... 1

    I.    Proper service on Wayne Hunt in the state wrongful death action is necessary for CIC to possess standing for this action. ................................................................................................... 1

    II.    The physical existence of an MCS-90 endorsement is immaterial. ............................................................................................. 2

    III.    The public must be protected from attempts to evade the protections created by the Motor Carrier Act like that in this case. .................................................................................................... 3

    IV.    Owens opposed CIC's motion for summary judgment. ............................ 5

    V.    CIC's strangely personal judicial estoppel argument misstates Owens. ................................................................................... 6

CONCLUSION .................................................................................................... 7

CERTIFICATE OF COMPLIANCE .................................................................. 9

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adams v. Royal Indemnity Co.*,
  99 F.3d 964 (10th Cir. 1996) ................................................................................ 3

*Canal Ins. Co. v. Distrib. Servs., Inc.*,
  320 F.3d 488 (4th Cir. 2003) ................................................................................ 5

*Carolina Cas. Ins. Co. v. Yeates*,
  584 F.3d 868 (10th Cir. 2009) .............................................................................. 3

*Forkwar v. Progressive N. Ins.*,
  910 F. Supp. 2d 815 (D. Md. 2012) ..................................................................... 4

*John Deere Ins. Co. v. Nueva*,
  229 F.3d 853 (9th Cir. 2000) ................................................................................ 3

*Kisor v. Wilkie*,
  588 U.S. 558 (2019) .............................................................................................. 4

*Pierre v. Providence Washington Ins. Co.*,
  286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001) ................................ 3

*Prestige Cas. Co. v. Michigan Mut. Ins. Co.*,
  99 F.3d 1340 (6th Cir. 1996) ................................................................................ 3

*Travelers v. Transport Ins. Co.*,
  787 F.2d 1133 (7th Cir. 1986) .............................................................................. 3

*Trustgard Ins. Co. v. Collins*,
  942 F.3d 195 (4th Cir. 2019) ................................................................................ 1

*Zinkland v. Brown*,
  478 F.3d 634 (4th Cir. 2007) ................................................................................ 2

**FEDERAL RULES**

Fed. R. Civ. P. 56 ....................................................................................................... 6

**FEDERAL REGULATIONS**

49 CFR § 387.5 ................................................................................................... 3

**STATE CASES**

*Great Am. Ins. Co. v. C.G. Tate Constr. Co.*,
    340 S.E.2d 743 (N.C. 1986) ............................................................................ 6

## ARGUMENT IN REPLY

**I.   Proper service on Wayne Hunt in the state wrongful death action is necessary for CIC to possess standing for this action.**

In order for CIC to have the standing to request a Declaratory Judgment from this Court, CIC <u>must</u> maintain service in the underlying wrongful death action was proper. However, CIC does not advance this position, instead stating or implying that service on Wayne Hunt "has no bearing" or is "irrelevant" on the District Court's coverage analysis. (Appellee Brief pp. 7, 34-35, 39). CIC is mistaken; without proper service in the state wrongful death action, the November 18, 2021, judgment against Hunt is void, and CIC's standing to bring this suit evaporates. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019) (no standing for "conjectural" or "hypothetical" injuries). Even the District Court recognized the need for a finding that Wayne Hunt was properly served in its order by finding the November 18, 2021, judgment "valid and enforceable". (JA517). Further, because a motion for relief from judgment is pending (filed as part of CIC's defense of its insured), the November 18, 2021, judgment was, and is, subject to vacatur at any time.[1] Should this occur, there will be two different courts with two different orders with two contradictory positions on service of process.

---

[1] This lack of finality is one of many reasons Owens sought to have this case stayed until the state court action concluded. (Appellant Brief pp. 13-22).

1

Considering proper service is, in effect, a condition precedent to bringing this Declaratory Judgment action, why would CIC argue service on Wayne Hunt is irrelevant? The answer can be found in the wrongful death action, where CIC's defense of Wayne Hunt relies on an allegation of improper service that, if proven, would void the November 18, 2021, judgment that provides standing for this Declaratory Judgment action. Making an express argument that service was proper before the District Court as requires CIC to contradict its defense of Wayne Hunt, which it is estopped from doing.[2] *Zinkland v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (judicial estoppel). In an attempt to steer clear of Scylla (lack of standing) and Charybdis (judicial estoppel), CIC claims the issue of service is somehow irrelevant. (Appellee Brief pp. 7, 34-35, 39). No amount of repetition of this fallacious argument will moor it to the law; as long as CIC maintains there is no valid state court judgment it cannot pursue this action.

## II.   The physical existence of an MCS-90 endorsement is immaterial.

CIC devotes an inordinately large amount of its brief arguing there was no MCS-90 endorsement in the CIC policy EBA0104045 (effective date October 1, 2013 to October 1, 2014).[3] (Appellee Brief pp. 24-32). The existence or non-

---

[2] Arguing to the District Court that service on Wayne Hunt was proper would also require CIC to undermine its defense of Wayne Hunt, potentially opening CIC to liability for breach of contract and bad faith.

[3] A later policy bearing the same policy number (effective date October 1, 2016, to,

2

existence of an MCS-90 endorsement in the relevant insurance policy is irrelevant to this action. The MCS-90 endorsement is read into a motor carrier's insurance policy as a matter of law. *E.g. Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348 n.6 (6th Cir. 1996); *Travelers v. Transport Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986)). This doctrine of an "implied endorsement" is entirely consistent with the federal Motor Carrier Act's purpose to protect the innocent public. *See generally Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873-74 (10th Cir. 2009) (describing the legal and regulatory framework).

### III. The public must be protected from attempts to evade the protections created by the Motor Carrier Act like that in this case.

This Court has been silent on whether a judgment against a motor carrier's employee would trigger the public protections of an MCS-90 endorsement, even if the motor carrier is not a named party to the lawsuit. Some jurisdictions believe it does. *See, e.g., Pierre v. Providence Washington Ins. Co.*, 286 A.D.2d 139, 730 N.Y.S.2d 550 (N.Y. App. Div. 2001); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000); *Adams v. Royal Indemnity Co.*, 99 F.3d 964 (10th Cir. 1996); *see also* 49 CFR § 387.5 ("Motor carrier means a for-hire motor carrier or a private motor carrier. The term includes, but is not limited to, a motor carrier's agent, officer, or

---

presumably, October 1, 2017) did include an MCS-90 endorsement. (JA395).

representative…").[4] This Court would be wise to join these jurisdictions, even if its holding is limited to the peculiar facts of this case. Wilmington Shipping Company (WSC) was not designated as a defendant in the state wrongful death action; this is because WSC hid behind a lease with Penske Truck Leasing Co., Ltd. (JA401). As a result, law enforcement was unable to include the motor carrier's name in the collision report, and the owner was instead listed as: "Penske Truck Leasing". (JA252). Owens proceeded against Wayne Hunt, but because Hunt chose to not answer the complaint or participate in the lawsuit, Owens was unable to question him in order to discover his employer. The involvement of WSC was not apparent until around October of 2022, when "someone other than [Wayne] Hunt"[5] notified CIC of the default judgment and CIC retained defense counsel. (JA022, JA289, JA508).

This Court has noted that the Motor Carrier Act was passed, at least in part, to curb "abuses that had arisen in the interstate trucking industry which threatened public safety, **including the use by motor carriers of leased or borrowed vehicles to avoid**

---

[4] CIC's argument that and MCS-90 endorsement may not be used to satisfy a judgment against a motor carrier's employee cites *Forkwar v. Progressive N. Ins. Co.*, 910 F.Supp.2d 815 (D.Md. 2012), a district court opinion that relies heavily on deference to agency guidance issued before the Supreme Court severely curtailed such deference in *Kisor v. Wilkie*, 588 U.S. 558 (2019). Without an analysis under *Kisor* of the ambiguity, authority, agency judgment, and unfair surprise in the referenced agency guidance, *Forkwar* and the cases it cites have negligable persuasive value.

[5] This rather cryptic statement by CIC remains unexplained.

4

**financial responsibility for accidents** that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003) (emphasis added). This appeal presents such a situation, where a motor carrier, through the use of a vehicle lease, has avoided the financial responsibility mandated by the Motor Carrier Act. As a result, innocent third parties, and the public, have suffered. WSC should not be rewarded for this conduct, and CIC should be required to pay at least the minimum amount mandated by the Motor Carrier Act.

### IV. Owens opposed CIC's motion for summary judgment.

CIC describes its March 13, 2025, motion for summary judgment as "unopposed". (Appellee Brief p. 36). However, on March 27, 2025, Owens filed a motion to stay that specifically requested the District Court "vacate or stay the deadline to respond to [CIC's] Motion for Summary Judgment." (JA497). This motion further referenced Owens' pending motion to amend, specifically noting Owens' request for:

> …a declaration that the MCS-90 endorsement for the subject policy would by operation of law mandate that [CIC] was obligated to fulfill its suretyship obligations even if the Court were to make a finding of no coverage based on any provision or condition of the policies.
> …any motion for summary judgment that [Owens] could file concerning this counterclaim would essentially serve as [Owens'] response to [CIC's] Motion for Summary Judgment.

(JA497). Owens also raises the existence of the pending motion for supplemental proceedings and a judicial assignment (which would result in a bad faith counterclaim)

5

and the pending motion to set aside the November 18, 2021, state court judgment. The District Court rejected these counterarguments by denying these motions.

Finally, even if Owens did not properly address the facts advanced by CIC, the remedy under the rules of civil procedure is to treat those facts as undisputed. *See* Fed. R. Civ. P. 56(e). Questions of law are not conceded. This is particularly important when the District Court and CIC failed to consider the North Carolina Supreme Court's 1986 follow-up to its 1981 *Great American Insurance Company* case, where it softened the harsh test used by the District Court and CIC: "In *Great American* this Court redefined the 'notice as soon as practicable' provision to mean that the requirement is satisfied despite any delay in notifying the insured, so long as it is occasioned in good faith and the insurer is not materially prejudiced." *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 340 S.E.2d 743, 747 (N.C. 1986).

## V.  CIC's strangely personal judicial estoppel argument misstates Owens.

In an argument that borders on *ad hominem*, CIC claims that Owens now argues service of the state wrongful death suit was improper.[6] (Appellee Brief pp. 41-43). CIC

---

[6] CIC continues this line of attack with its argument regarding dilatory conduct, an argument not considered by the District Court. (Appellee Brief pp. 32-34). Levi Owens buried his son well over a decade ago, and it took him approximately eight years to obtain a civil judgment against Wayne Hunt, the Wilmington Shipping Company employee who killed him. To date, Owens, who is in his seventies, has not seen a penny of compensation for the loss of his son. Levi Owens sees no benefit from further delay, and there is no bad faith underlying the delays to date, which arise primarily from Wilmington Shipping Company using a leased vehicle to conceal its involvement in this matter.

6

is mistaken. Owens continues to maintain service of Wayne Hunt was proper. Owens also notes the state court has not ruled on whether service was proper, as Wayne Hunt's motion for relief from judgment remains pending. These are not contradictory positions.

However, in a remarkable circumstance of "every accusation is an admission", CIC's state court position on the service of Wayne Hunt would judicially estop it from taking the opposite position here. As set forth in Argument I, CIC attempts to sidestep this issue by claiming the service of Wayne Hunt in the underlying action is somehow irrelevant.

## CONCLUSION

The District Court's erroneous decisions hopelessly entangle it with South Carolina state courts and create a procedural and jurisdictional Gordian Knot. The only solution is to cleave it in twain like Alexander; the District Court must be reversed.

*≈ signature page follows ≈*

7

Respectfully submitted,

Dated: 11/18/2025

/s/ Jason Scott Luck

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863

John E. Parker, Jr.
PARKER LAW GROUP, LLP
P.O. Box 487
Hampton, SC 29924
803.534.5218

*Counsel for Defendant-Appellant*

8

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __25-1848__     Caption: __Cincinnati Ins. Co. v. Owens, et al.__

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains __2,060__ [state number of] words

[ ] this brief uses monospaced type and contains _____ [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using __Microsoft Word for Mac v. 16.103.1__ [identify word processing program] in __Times New Roman, 14 pt__ [identify font, size, and type style];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [identify word processing program] in _____ [identify font, size, and type style].

**NOTE:** The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.

(s) __Jason Scott Luck__

Party Name __Appellant Levi Owens__          Date: __11/18/2025__

Print to PDF for Filing    Reset Form    12/09/2024 NA/MEO